# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
### CHARLOTTESVILLE DIVISION

|  |  |
|---|---|
| DAMIAN STINNIE, *ET AL.*,<br><br>*Plaintiffs,*<br><br>v.<br><br>RICHARD D. HOLCOMB, IN HIS OFFICIAL CAPACITY AS COMMISSIONER OF THE VIRGINIA DEPARTMENT OF MOTOR VEHICLES,<br><br>*Defendant.* | CASE NO. 3:16–cv–00044<br><br><br>MEMORANDUM OPINION<br><br><br>JUDGE NORMAN K. MOON |

Damian Stinnie owes fees, fines, and costs to Virginia's courts. He cannot pay them, so Virginia law requires that his driver's license be suspended until he pays. But the suspension makes it difficult to get and keep a job. In other words, because he cannot pay the fees, his license is suspended, but because his license is suspended, he cannot pay the fees. Caught in this cycle, Stinnie and others have sued the Commissioner of Virginia's Department of Motor Vehicles ("DMV"). They argue that the *Commissioner* suspended their licenses and that those suspensions violated their federal constitutional rights to due process and equal protection.

Because jurisdiction is absent from the current iteration of this lawsuit, the Constitution prevents this Court from ruling on the substance of Plaintiffs' due process and equal protection challenges, however meritorious they may prove to be when decided in a proper forum.

First, Congress and the Constitution have not granted federal district courts the authority to hear appeals from state courts. The U.S. Supreme Court is the only federal court authorized to do so. Because this case involves allegedly unconstitutional suspension orders of *Virginia state courts*, Plaintiffs must seek relief from Virginia's appellate courts and ultimately the U.S. Supreme Court, not this Court.

Second, the Constitution empowers a federal court to hear a case only if the court could fix the harm plaintiffs allegedly suffered at the hands of the defendant. Here, because the state courts (not the Commissioner) suspended the licenses, the complained-of injury is not fairly traceable to the Commissioner and cannot be fixed by a court order against him.

Third, the Constitution's Eleventh Amendment forbids certain kinds of lawsuits in federal court against States. The Supreme Court has recognized, however, that the Eleventh Amendment does not prohibit lawsuits seeking to stop a state official from violating federal law. But this exception applies only when the state official has a special relationship to the supposedly unlawful conduct. Because that special relationship is absent here, the exception is inapplicable, and the Eleventh Amendment bars the case against the Commissioner.

This Court reiterates it is not deciding whether Virginia's license suspension scheme is unconstitutional. All this Court is deciding (indeed, all it has the legal authority to decide) is that it lacks the lawful ability to rule on the merits of Plaintiffs' challenge, at least as this lawsuit is currently constituted. Thus, the Commissioner's motion to dismiss will be granted.

## OVERVIEW

Part I of this Opinion explains the standard of review.

In Part II, the Court broadly outlines the allegations in Plaintiffs' Complaint.

Part III discusses the exact nature of Plaintiffs' constitutional challenge. Plaintiffs make clear that they challenge their license suspensions issued (in their view) by the Commissioner pursuant to Va. Code § 46.2-395(B).

Next, Part IV analyzes the text, structure, and meaning of § 46.2-395. This analysis reveals that a suspension under § 46.2-395 is done *by the state court*, not the Commissioner, for failure to pay court costs and fines.

2

Part V explains that this case is barred from federal district court by the *Rooker-Feldman* doctrine. Generally speaking, that doctrine holds that federal courts (other than the Supreme Court) cannot hear challenges to state court orders, like those at issue here.

In Part VI, the Court concludes that Plaintiffs lack constitutional standing in this case to challenge their suspensions. The harm they complain of (unconstitutional license suspensions) was not caused by the Commissioner. Ordering the Commissioner to "reinstate" the licenses would neither be related to the constitutional violation nor remedy the underlying suspensions.

Part VII finds that the Commissioner is not sufficiently responsible for and associated with the suspensions, and as such he is entitled to Eleventh Amendment immunity.

Finally, Part VIII notes other jurisdictional issues.

## I. STANDARD OF REVIEW

The Commissioner argues that the Complaint fails to allege a claim for relief. Under the associated standard, the Court assumes the truth of the Complaint's factual allegations and draws reasonable inferences in Plaintiffs' favor, but it does not adhere to the Complaint's legal conclusions, unadorned labels, conclusory statements, and formulaic recitation of the elements. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678, 680–81 (2009). The Court may consider attachments to the Complaint. *Leichling v. Honeywell Int'l, Inc.*, 842 F.3d 848, 851 (4th Cir. 2016).

The Commissioner, though, also seeks dismissal for lack of jurisdiction. He does not specify whether he mounts a "facial" challenge to the Complaint or a "factual" one based on additional evidence. As his only submissions were judicially noticeable state court orders (dkts. 10-1, 30-1) and the parties did not seek an evidentiary hearing, the Court concludes it is a facial one. *See 24th Senatorial Dist. Republican Comm. v. Alcorn*, 820 F.3d 624, 629 (4th Cir. 2016) (distinguishing facial from factual challenges to jurisdiction). Accordingly, the Court applies the

familiar *Twombly/Iqbal* standard, taking care not to accord the "presumption of truth to conclusory statements and legal conclusions contained in [the] complaint." *Beck v. McDonald*, No. 15-1395, -- F.3d --, 2017 WL 477781, at *4 (4th Cir. Feb. 6, 2017). Importantly, this rule applies even when legal conclusions are couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *SD3, LLC v. Black & Decker, Inc.*, 801 F.3d 412, 422 (4th Cir. 2015).[1]

## II. THE ALLEGATIONS

### A. The Plaintiffs

Plaintiffs Damian Stinnie, Demetrice Moore, Robert Taylor, and Neil Russo are indigent Virginians who have suspended driver's licenses "for failure to pay court costs and fines that they could not afford." (Complaint ¶ 1). They allege that their suspensions were "automatic and mandatory upon default." (*Id.* ¶ 4). They request declaratory and injunctive relief against the Commissioner to:

> address and remedy the systemic, pervasive, and ongoing failure of the Commonwealth to provide basic protections afforded by the Due Process and Equal Protection Clauses of the United States Constitution before taking the harsh enforcement measure of suspending driver's licenses against indigent people whose poverty prevents them from paying debts owed to courts.

(*Id.* ¶ 6). Plaintiffs "seek to represent a class consisting of all persons whose Virginia's driver's licenses are suspended due to unpaid court debt and who, *at the time of the suspension*, were not able to pay due to their financial circumstances." (*Id.* ¶ 373 (emphasis added)).

---

[1]     *E.g.*, *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198–99 (4th Cir. 2014); *Cook v. Howard*, 484 F. App'x 805, 810 (4th Cir. 2012) (disregarding "legal conclusions masquerading as factual allegations" which were "inaccurate legal conclusions at that"). While not deferring to the Complaint's legal conclusions and "naked assertions," *Iqbal*, 556 U.S. at 678, the Court—in recounting the Complaint—will nonetheless at times refer to them to provide context for the reader.

4

They contend that "DMV is the entity responsible for the issuance, suspension, and revocation of driver's licenses."[2] (Complaint ¶ 22). A driver's license is critical for life functions such as employment, education, and family care. (*Id.* ¶¶ 30–31). In recent years, hundreds of thousands of Virginians allegedly have had their licenses suspended for failure to pay court costs and fines. (*Id.* ¶¶ 32–33). Such suspensions "can trap the poor in an impossible situation: inability to reinstate their licenses without gainful employment, yet inability to work without a license." (*Id.* ¶ 34).

"Plaintiffs' licenses," they claim, "were suspended *by the Defendant*[3] immediately upon their default, without any inquiry into their individual financial circumstances, or the reasons underlying their failure to pay." (Complaint ¶ 39 (emphasis added)). They cannot enter into repayment installment plans, either because the state courts to which they own money do not have such plans or because they cannot afford the plans that are offered. (*Id.* ¶ 41).

Mr. Stinnie is the lead named plaintiff. He received four traffic citations in late 2012 or early 2013, three of which resulted in conviction and over $1,000 in fines and court costs. (Complaint ¶¶ 53–54, 57, 61). Earning only $300 per week, he was unable to pay off this debt, leading—according to him—the *Commissioner* to suspend his license on May 20, 2013, without assessing whether he had the ability to pay. (*Id.* ¶¶ 61–67). Stinnie was cited seven days later for driving on a suspended license. (*See id.* ¶ 68; Va. Code § 46.2-301). He was convicted of

---

[2]     This statement of law is discussed later. Virginia Code § 46.2-200 does provide that the DMV generally "shall be responsible for . . . the issuance, suspension, and revocation of driver's license," but it does not grant the DMV exclusive authority to suspend licenses. In more specific circumstances, *courts* are instead granted that authority. *See infra* pages 15–16 and footnote 19; *e.g.*, Va. Code § 46.2-395(B) (providing that "the court shall forthwith suspend" a convict's license if fines and costs are not "immediate[ly] pa[id] in full"); Va. Code § 46.2-301(D) (providing that "the court shall suspend" the license of person convicted of driving on a suspended license).

[3]     *See supra* footnote 1 and accompanying text.

5

this offense on September 19, 2013, while still hospitalized for lymphoma. (Complaint ¶ 73). He incurred additional fines and court costs for that conviction, further hampering his financial situation, as did medical treatments he needed to fight lymphoma. (*Id*. ¶¶ 68–78).

This cycle repeated itself in 2016 when—after battling poor health, homelessness, and a dire financial situation—he received more fines and costs for reckless driving and driving on a suspended license. (Complaint ¶¶ 89–99). As of July 2016, Stinnie owed $1,531 in costs and fines to various state courts. (*Id*. ¶¶ 111–18). He cannot afford to pay this amount given his limited income and payments for his car, which doubles as shelter when he cannot procure housing. (*See id*. ¶¶ 105–10).

As for Plaintiffs Moore, Taylor, and Russo, their particular circumstances differ somewhat from Stinnie (*e.g.*, their underlying charges of conviction, the severity of their indigency and causes thereof), but the basic pattern is the same. All were convicted of some traffic violation or crime, thus incurring court costs, fees, and fines they could not afford to pay.[4] Their licenses were suspended as a result, frustrating their ability to provide for themselves and creating a risk of additional convictions if they drove in an effort to do so. (*See* Complaint ¶ 341). Additional convictions (for driving suspended or other infractions) followed, compounding their financial situation and providing further bases for suspension.

## B.     The Alleged "License-for-Payment Scheme"[5]

Under Virginia law, a judge in a criminal case resulting in conviction notifies the clerk of the costs incident to the proceeding. Complaint ¶ 259; Va. Code § 19.2-335. The clerk then aggregates this information into a statement; the total is considered both a criminal fine and a

---

[4]     *See*, *e.g.*, Complaint ¶¶ 123–24, 136, 140, 152, 166–70, 173, 176–77, 182–83, 192, 212, 224–25, 229, 231–34, 252–53.

[5]     *See supra* footnote 1 and accompanying text.

judgment in favor of the Commonwealth. *Id.* ¶¶ 259 (citing Va. Code § 19.2-336), 272–73 (citing Va. Code §§ 17.1-375.5, 19.2-336). Interest begins to accrue on the 41st day after the final judgment. (*Id.* ¶ 280; Va. Code § 19.2-353.5). Particular kinds of costs and fees may be assessed depending on the nature of the case. (Complaint ¶¶ 261–64). However, Virginia's general district and circuit courts[6] have uniform cost-and-fee schedules that do not vary based on the ability to pay. (*Id.* ¶¶ 268–71; dkts. 1-1 & 1-2).

At trial (or by mail to those convicted *in absentia*), the general district and circuit courts provide defendants with forms (Form DC-210 in the general district court and Form CC-1379 in the circuit court, hereinafter "Suspension Forms") explaining that nonpayment of costs or fines results in a suspended license; these Suspension Forms—which are attached to and referenced in the Complaint—do not mention the ability to pay. (Complaint ¶¶ 275, 277–78; *see* dkts. 1-3 & 1-4). Significantly, both Suspension Forms indicate that the defendant:

> can avoid **this** suspension [of his driver's license] **going into effect** only if the court actually receives payment in full . . . **by the effective date** of this suspension . . . . If payment in full is not received by the Court within 30 days of sentencing, the suspension **goes into effect** . . . .

(Dkt. 1-3 at ECF 3, Part I; dkt. 1-4 at ECF 3, Part I (emphasis added)).

If "immediate payment" is not received, the person's driver's license is suspended "automatically," without any inquiry into the reasons for default. (Complaint ¶¶ 284–85 (citing Va. Code § 46.2-395)). According to Plaintiffs, the Commissioner suspends the licenses.[7] (*Id.* ¶¶ 66, 103, 129, 152, 174, 179, 227). Through administrative channels, the suspension is

---

[6] These are two trial-level courts in Virginia. To simplify, general district court operates largely as a small claims and traffic offense court, whereas circuit courts are the forum for larger civil claims, criminal prosecutions, and *de novo* appeals from rulings of the general district courts. *See generally* Va. Code §§ 16.1-77, 17.1-513.

[7] As discussed *infra*, however, the statute unambiguously states that "the *court* shall forthwith suspend" the license, a point supported by the Suspension Forms. Va. Code § 46.2-395(B) (emphasis added); *see supra* footnote 1 and accompanying text.

7

communicated to the DMV, where an employee makes a data entry concerning it. (*See id.* ¶¶ 286–89, 294). Individuals who cannot pay their costs or fines within 30 days may make alternative payment arrangements with the state court to toll the effectiveness of their suspensions; the contours of these payment plans, however, vary and are not available in all of Virginia's trial courts. (*See id.* ¶¶ 296, 302–19).

## III.    The Nature of Plaintiffs' Challenge

The Complaint is often critical of Virginia's courts' failure to consider Plaintiffs' indigency or ability to pay fines and costs. (Complaint ¶¶ 62, 64, 75, 99, 125, 138, 171, 204, 226). Plaintiffs also oppose Virginia's overall legal structures and procedures for assessing court costs, suspending licenses, communicating the suspensions, and reinstating licenses: They bundle these aspects together and label them collectively as a "payment-for-license scheme" or "system," or an "unlawful court debt collection scheme" or "system." (*See id.* ¶¶ 259–320, 335, 341, 372, 403, 405–06, 412, 416, 422, 427–28, 432, 440, 445–46, 449).

The true gravamen of the Complaint, though, is the suspension of Plaintiffs' licenses, which Plaintiffs repeatedly assert was done *by the Commissioner* without notice or consideration of their ability to pay. (Complaint ¶¶ 39, 66, 67, 103, 129–30, 152–53, 174–75, 179–80, 227–28, 251, 370, 412; *see* dkt. 21 (hereinafter Pls' Br.) at 11 ("the gravamen of Plaintiffs' Complaint [is] Va. Code § 46.2-395's automatic suspension of driver's licenses"). Thus, Plaintiffs ask the Court "to enjoin the [Commissioner] from issuing orders of driver's license suspension against the Plaintiffs and the Class Members," and to declare "that the [Commissioner's] policies, practices, acts, and/or omissions as described herein" are unlawful. (*Id.* ¶¶ 374, Prayer for Relief (c); *see also id.* Prayer for Relief (d), (e)).

8

While these requests are somewhat broad (given the number and scope of the "policies, practices, and acts" the Complaint recounts), Plaintiffs have specified what this case boils down to and what they challenge as unconstitutional: Virginia Code § 46.2-395, entitled "Suspension of license for failure or refusal to pay fines or costs." Specifically, they:

> seek injunctive and declaratory relief against Defendant Richard D. Holcomb in his official capacity for his actions *in suspending their licenses pursuant to Va. Code § 46.2-395(B).*

(Pls' Br. at 7 (emphasis added); *see id.* at 11, 22, 24–25, 29–30, 42–43; dkt. 55 (Hr'g Tr.) at 24 (Plaintiffs' counsel: "This is about the driver's licenses."), 49–50 ("Plaintiffs are challenging an unconstitutional statute," § 46.2-395). Plaintiffs emphasize this repeatedly.[8] And the Class they seek to represent is comprised of individuals who both (A) have suspended licenses for nonpayment of court costs and (B) could not pay their costs at the time of suspension. (Complaint ¶ 373).

Plaintiffs maintain they "are simply asking this Court to order Defendant to stop engaging in an unconstitutional practice—the automatic suspension of driver's licenses without notice, without a hearing, and without regard for inability to pay." (Pls' Br. at 3). They "simply ask that Defendant cease suspending driver's licenses" and reinstate their own. (*Id.* at 15). But an examination of Va. Code § 46.2-395 reveals the matter is not as simple as Plaintiffs contend.

---

[8] *See, e.g.,* Pls' Br. at 10 ("Plaintiffs challenge as unconstitutional Va. Code § 46.2-395's automatic and mandatory suspension of driver's licenses."), 11 ("the gravamen of Plaintiffs' Complaint [is] Va. Code § 46.2-395's automatic suspension of driver's licenses"), 14 ("Plaintiffs' requested relief [is] enjoining the Defendant from suspending driver's licenses automatically under Va. Code § 46.2-395. . ."), 19 ("Defendant . . . suspends their licenses without providing any post-default notice or hearing regarding their ability to pay the fines and costs"), 20 ("the harm results from Defendant's independent act of suspending the driver's license"), 34 ("They are challenging the automatic suspension of their driver's licenses by Defendant for being unable to pay").

9

## IV.    THE TEXT AND MEANING OF VIRGINIA CODE § 46.2-395

The foundational principle of statutory interpretation is that the examination of a law must begin with its text.  *See United States v. Neuhauser*, 745 F.3d 125, 128 (4th Cir. 2014).  The analysis often concludes there too:  "When the text of the statute is clear, our interpretive inquiry ends."  *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 538 (1994); *e.g.*, *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1755 (2014).  The Court applies the "fundamental canon of statutory construction that words will be interpreted as taking their ordinary, contemporary, common meaning."  *United States v. Serafini*, 826 F.3d 146, 149 (4th Cir. 2016).

### A.    The Framework

#### 1.    Subsection (B)

Plaintiffs challenge the constitutionality of their suspensions under Va. Code 46.2-395(B), which reads in critical part as follows:

> In addition to any penalty provided by law and subject to the limitations on collection under §§ 19.2-340 and 19.2-341, **when any person is convicted** of any violation of the law of the Commonwealth . . .[9] **and fails or refuses to provide for** *immediate* **payment in full of any [fines or costs**[10]**] lawfully assessed against him**, or fails to make deferred payments or installment payments as ordered by the court[11], **the** *court* **shall** *forthwith* **suspend the person's privilege to drive** a motor vehicle on the highways in the Commonwealth. **The driver's license of the person shall continue suspended until the [fines or costs] ha[ve] been paid in full**.  However, if the defendant, after having his license suspended, pays the reinstatement fee to the [DMV] and enters into an agreement under § 19.2-354 that is acceptable to the court to make deferred payments or installment payments of unpaid [fines or costs] as ordered by the court, the defendant's driver's license shall thereby be restored . . . .

---

[9]      The omitted language refers to convictions for violating the laws "of the United States or of any valid local ordinance."  That language is not relevant to this case.

[10]      The full text is "any fine, costs, forfeitures, restitution, or penalty."  For brevity, the Court uses the phrase "fines or costs" throughout this Opinion.

[11]      Virginia courts are authorized to arrange deferred payments or installment plans to help individuals pay off court fines and costs.  *See* Va. Code § 19.2-354.

10

(boldface and italicized emphasis added).  Several points about this passage merit attention.

First, at the moment of conviction in a Virginia criminal case, full payment of any assessed fines and costs is due "immediate[ly]."

Second, if the defendant does not make immediate payment, his driver's license is suspended "forthwith"—meaning immediately or without delay.[12]  Plaintiffs acknowledge that the suspension is "automatic" and "immediate" upon nonpayment.  (*See* Complaint ¶¶ 284–85; Pls' Br. at 2, 4, 10).  Every conviction involving a fine or costs thus effectively includes the suspension of the person's license (*see* Suspension Forms), although in many instances the defendant may make payment shortly thereafter.[13]  In other words, the suspension may be brief, but it continues "until the fines, costs, forfeiture, restitution, or penalty has been paid in full." (As discussed shortly, however, the *effective date* of the suspension is different from the date of the suspension itself.)

Third and critically, the suspension is unequivocally and unambiguously ordered *by the court*.  As the statute plainly says:  "the *court* shall forthwith suspend the person's privilege to drive a motor vehicle."  Va. Code § 46.2-395(B) (emphasis added); *see* Pls' Br. at 4 n.2 ("it is the court that issues the order of suspension . . .").  This cuts to the heart of Plaintiffs' case, which rests on their licenses being suspended by the Commissioner.

---

[12]     *See* Black's Law Dictionary (10th ed. 2014) ("immediately; without delay"); Merriam Webster's Collegiate Dictionary 458 (10th ed. 1994) ("immediately"); Webster's New World Dictionary 241 (1984) ("without delay"); American Heritage Dictionary of the English Language (1976) (William Morris, ed.) ("at once; immediately; without delay").

[13]     While a defendant may have his license restored by reaching an alternative payment plan with the sentencing court pursuant to Va. Code § 19.2-354 and then paying DMV an administrative reinstatement fee, this process occurs only "*after* having his license suspended" in the first place.  Va. Code § 46.2-395(B) (emphasis added).

11

The subsequent portion of the statute, Subsection (C), dovetails with Subsection (B) and further explains how the statute operates.

> **Before transmitting to the Commissioner** *a record of the person's failure or refusal to pay* all or part of any [fines or costs] or a failure to comply with an order issued pursuant to § 19.2-354, **the clerk of the court that convicted the person shall provide or cause to be sent to the person written notice** *of the suspension* . . . , [which is] *effective 30 days from the date of conviction*, **if the [fine or cost] is not paid prior to the effective date of the suspension as stated on the notice**.
>
> Notice shall be provided to the person at the time of trial or shall be mailed by first-class mail to the address certified on the summons or bail recognizance document as the person's current mailing address, or to such mailing address as the person has subsequently provided to the court as a change of address. If so mailed on the date of conviction or within five business days thereof, or if delivered to the person at the time of trial, such notice shall be adequate notice of the license suspension and of the person's ability to avoid suspension by paying the [fines or costs] prior to the effective date. No other notice shall be required to make the suspension effective. **A record of the person's failure or refusal** *and of the license suspension* **shall be sent to the Commissioner if the [fine or cost] remains unpaid** *on the effective date of the suspension* **specified in the notice or on the failure to make a scheduled payment**.

Va. Code § 46.2-395(C) (boldface and italicized emphasis added). This provision distinguishes several concepts, including: the suspension itself; the effective date of the suspension; and a "record" of nonpayment.

Subsection (C) requires the court clerk to provide the person with "notice of the suspension" made by the court pursuant to Subsection (B). But Subsection (C) also makes clear that the suspension is not "effective [until] 30 days from the date of conviction." If the fines and costs are paid during this 30-day grace period, then—as Subsection (B) contemplates—the suspension is lifted before ever going into effect.

If, however, payment is not made within the 30-day window, two things occur. First, the suspension order becomes *effective*, that is, legally "enforceable."[14] So, for instance, a defendant could be charged and successfully prosecuted anew with driving on a suspended license if he drives on the 31st day, but not before.

Second, nonpayment after 30 days results in the court clerk transferring certain information to the Commissioner. The clerk transmits a record of the defendant's nonpayment. But the clerk also sends a record "of the license suspension" to the Commissioner. Va. Code § 46.2-395(C). In other words, the suspension is a legal reality that preexists any involvement whatsoever from the Commissioner. This comports perfectly with Subsection (B), which made clear that the state court (not the Commissioner) suspends the license.

<u>3.</u>     <u>The Suspension Forms</u>

The Suspension Forms used by Virginia's courts and attached to the Complaint also affirm the correct understanding of the statute. (*See* dkts. 1-3 & 1-4). Both Suspension Forms include a "**PART I**" which is an **"ACKNOWLEDGMENT OF SUSPENSION OR REVOCATION OF DRIVER'S LICENSE**." (Dkt. 1-3 at ECF 2, 3; dkt. 1-4 at ECF 3 (boldface and capitalization in original)). The Forms allow for identification of the following basis for suspension:

> I acknowledge that I have been notified that my driver's license/driving privilege . . . has been suspended . . . effective thirty day from the date of sentencing . . . pursuant to Va. Code § 46.2-395 as a result of my failure to pay all or part of my fines, costs, forfeiture, restitution, and/or penalty of $ ___ plus any additional court-appointed attorney fee, if applicable.

---

[14]     Black's Law Dictionary (10th ed. 2014); *see* Merriam Webster's Collegiate Dictionary 368 (10th ed. 1994) (defining "effective" as "being in effect; operative," as in "the tax becomes effective next year"); American Heritage Dictionary of the English Language (1976) (William Morris, ed.) ("Operative; in effect" as in "The law is effective immediately").

(Dkt. 1-3 at ECF 2; *see* dkt. 1-4 at ECF 2 (using similar language)). The circuit court Form even refers to itself as an "Order and Notice" and includes blanks for the circuit judge's signature. (Dkt. 1-3 at ECF 2, 3). Each Form includes space for the defendant's signature and then affirms:

> I understand that I can avoid **this** suspension [of my driver's license] **going into effect** only if the court actually receives payment in full of such [fines and costs] **by the effective date** of **this** suspension . . . . If payment in full is not received by the Court within 30 days of sentencing, the suspension **goes into effect** . . . .

((Dkt. 1-3 at ECF 3; dkt. 1-4 at ECF 3 (emphasis added)). Accordingly, the Forms track the distinction between a suspension—issued by courts under Subsection (B)—and its effective date 30 days later (which triggers the clerk's obligation under Subsection (C) to send the Commissioner a record both of the suspension and of nonpayment).

### B. Plaintiffs' Position

Plaintiffs repeatedly contend that the Commissioner suspended their licenses. Yet they concede in a footnote that the Commissioner "correctly points out that, under Va. Code § 46.2-395, it is the court that issues the order of suspension . . . ." (Pls' Br. at 4 n.2). Plaintiffs do not yield completely, though. Rather, they argue that they:

> have alleged (Compl. ¶¶ 286-89) that **the 'order of suspension' is nothing more than a transmittal of a record of non-payment** and that it is the Defendant who **actually** suspends the license, which **only** he has the authority to do under § 46.2-200.

(*Id.* (emphasis added)). This argument is unavailing. It misstates both the cited allegations of the Complaint (which do not equate a record of nonpayment with a suspension order) and the law (which distinguishes between the two).

For one, a record of nonpayment and the suspension order are two separate things. Plaintiffs do allege that "the court transmits a person's record of nonpayment" to the DMV. (Complaint ¶ 286). But the Complaint does not allege—as the above-quoted portion of Plaintiffs'

brief contends—that the record of nonpayment *is the same thing* as a suspension order.  (*See id.* ¶¶ 287–89).  The allegation recounts only part of the Subsection (C), which makes plain that the court *also* transmits a (preexisting) record "of the license suspension," not just a record of nonpayment.  Va. Code § 46.2-395(C).[15]  This, of course, reaffirms what Subsection (B) expressly states:  That the *court* issues the suspension order.  The point is further substantiated by Plaintiffs' attachments to the Complaint:  the Suspension Forms apprising defendants of the distinction between the suspension and its subsequent effective date. (*See* dkts. 1-3 & 1-4).

Plaintiffs' other assertion—that "only" the Commissioner has authority to suspend licenses[16]—also is unsupported.  The statute cited in support of Plaintiffs' position says that the DMV, "under the supervision and management of the Commissioner," generally "shall be responsible for . . . the issuance, suspension, and revocation of driver's licenses." Va. Code § 46.2-200.[17]  Yet nowhere does § 46.2-200 assign the power to suspend licenses "only" or exclusively or solely or entirely to the Commissioner or DMV, and for good reason.

The General Assembly not only granted Virginia's courts the power to suspend licenses for nonpayment of court costs and fees, it *obliged* them to do so.  Va. Code § 46.2-395(B) ("the

---

[15]    This distinction fits logically with the rest of the statute.  Because the defendant has a 30-day grace period during which to pay his fines (and thus avoid the effectiveness of the suspension, though not the suspension itself), it makes good sense to statutorily distinguish the suspension, on one hand, from proof of nonpayment after 30 days (which triggers the suspension's legal enforceability). Plaintiffs' view—which treats the suspension and nonpayment as the same thing—renders meaningless this statutory distinction.

[16]    Pls' Br. at 4 n.2; *see id.* at 10, 11 (claiming DMV has "sole" responsibility for suspensions); *see also* Hr'g Tr. at 53–54, 58–59.

[17]    The dissonance of relying on § 46.2-200 is notable.  On one hand, Plaintiffs assert they are challenging suspensions made (ostensibly) by the Commissioner pursuant to § 46.2-395(B).  (*See* Complaint ¶¶ 284–85, 290; Pls' Br. at 4 ("suspension . . . is automatic and mandatory . . . [u]nder Va. Code § 46.2-395(B)"), 7 (seeking relief from Commissioner's "actions in suspending their licenses pursuant to Va. Code § 46.2-395(B)"); *id.* at 11, 14).  But if that is so, why resort to a different statute to show the Commissioner's suspension authority?  The reason is obvious: The Commissioner has no authority to suspend anything pursuant to § 46.2-395(B), courts do.

15

court *shall* forthwith suspend . . ." (emphasis added)). This implicates a basic canon of statutory interpretation: That a statute speaking specifically on a subject (as § 46.2-395(B) does regarding suspension for nonpayment) prevails over one phrased in general terms (like § 46.2-200).[18] In fact, § 46.2-395(B) is one of many statutes—including several in Title 46.2—granting specific suspension authority *to the courts* instead of the Commissioner in certain situations.[19] This reflects the General Assembly's conscious choice to vest—in specified circumstances like those implicated here—suspension authority in the courts rather than the Commissioner.

Finally, while Plaintiffs would ignore Subsection (B)'s unambiguous command to "the court," their approach would also reduce other portions of the law to irrelevance. Recall Subsection (C)'s function, *supra* Part IV.A.2, which requires the court clerk—on the effective date of the suspension—to provide the Commissioner with a record of both the suspension order and of nonpayment. Plaintiffs' theory of Subsection (B) would make Subsection (C) both illogical and superfluous. *See Cty. of Albemarle v. Camirand*, 285 Va. 420, 424–25 (2013) (avoiding "absurd result[s]" and employing "basic canon[] of statutory construction [that] statutes should be interpreted, if possible, to avoid rendering words superfluous"); *United States v. Joshua*, 607 F.3d 379, 386–87 (4th Cir. 2010).

If the *Commissioner* is who suspends licenses for nonpayment, why would the General Assembly command that a "record" of "the license suspension shall be sent" to him by the clerk?

---

[18]     *See Credit Union Ins. Corp. v. United States*, 86 F.3d 1326, 1333 (4th Cir. 1996); *Gas Mart Corp. v. Bd. of Sup'rs of Loudoun Cty.*, 269 Va. 334, 350 (Va. 2005); *Virginia ex rel. Dep't of Corr. v. Brown*, 259 Va. 697, 706 (Va. 2000).

[19]     *E.g.*, Va. Code §§ 46.2-301(D) (providing that "the court shall suspend" the license of person convicted of driving on a suspended license), 46.2-392, 46.2-393(A), 46.2-397; *see also Reittinger v. Virginia*, 260 Va. 232, 234 (2000) ("The court also suspended Reittinger's driver's license for a period of six months, pursuant to the provisions of Code § 18.2–259.1."); *Rivenbank v. Virginia*, No. 1970-07-4, 2009 WL 1514494, at *1 (Va. Ct. App. June 2, 2009) (same).

16

Va. Code § 46.2-395(C). There is no apparent reason for a court clerk to send the Commissioner a record of a suspension that he himself (supposedly) issued, and Plaintiffs have proffered none.

Indeed, the clerk's statutorily mandated effort would be not only fruitless, but impossible. In Plaintiffs' view, the Commissioner creates the suspension. But if that is right, then Subsection (C)'s command that the court clerk transmit a "record . . . of the license suspension" to the Commissioner asks the clerk to do the impossible: There can be no "record" of something that does not yet exist.[20]

Courts, of course, attempt to give meaning to every word in a statute, strive to avoid absurd results, and presume that the legislature does not write laws that require impossible or vain acts.[21] Plaintiffs' understanding would violate these well-established principles, creating discord and disunity in the statute where none exists.

## C.    Summary

To review, Virginia Code § 46.2-395 functions as follows. When a defendant is convicted in state court, his fines and costs are due immediately. When payment (as here) is not made immediately, his license is suspended immediately ("forthwith") by the court.[22] The

---

[20]    *See*, *e.g.*, Black's Law Dictionary (10th ed. 2014) (defining "record" as a "documentary account of *past* events, usu[ally] designed *to memorialize* those events") (emphasis added); Webster's New World Dictionary 500 (1984) ("any registered evidence of an event, etc.").

[21]    *Camirand*, 285 Va. at 424–25; *PKO Ventures, LLC v. Norfolk Redevelopment & Hous. Auth.*, 286 Va. 174, 183 (2013) ("when interpreting and applying a statute [courts assume] that the General Assembly chose, with care, the words it used in enacting the statute, and we are bound by those words"); *Branch v. Virginia*, 14 Va. App. 836, 839 (Va. Ct. App. 1992) ("a statute should never be construed so that it leads to absurd results").

[22]    When a suspension is initially lifted by obtaining a court-approved payment plan pursuant to Va. Code § 19.2-354, then the court forthwith issues a new suspension if "he fails to make deferred payments or installment payments . . . ." Va. Code § 46.2-395(B). In this scenario, the clerk notifies the person of the (new) suspension by mail rather than at his criminal proceeding, even though the Order approving the payment plan also informed the person that a missed payment triggers suspension. *See* Va. Code § 46.2-395(C); dkt. 1-4 (Circuit Court

17

suspension, however, does not take effect until 30 days later.  Thus, the defendant has a 30-day grace period to pay his fines and costs in full (or arrange a payment plan with the court).  If he pays, the suspension is lifted by operation of law before ever going into effect.  If he does not pay, his suspension then becomes effective on Day 31.  At that point, the court clerk sends the Commissioner a record of both his nonpayment and of the suspension itself for administrative and data-entry purposes.

## V.     THE *ROOKER-FELDMAN* DOCTRINE BARS THE CASE FROM THIS COURT.

### A.     Basic *Rooker-Feldman* Principles

The *Rooker-Feldman* doctrine "holds that lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments." *Thana v. Bd. of License Commissioners for Charles Cty., Md.*, 827 F.3d 314, 319 (4th Cir. 2016).  "Review of such judgments may be had only in" the superior state courts, as well as the U.S. Supreme Court pursuant to 28 U.S.C. § 1257(a).  *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983); *see id.* at 486; *Brown & Root, Inc. v. Breckenridge*, 211 F.3d 194, 198 (4th Cir. 2000).  The doctrine is jurisdictional.  *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283–86 (2005); *Am. Reliable Ins. Co. v. Stillwell*, 336 F.3d 311, 316 (4th Cir. 2003).

Analytically, *Rooker-Feldman* is rooted in the constitutional principles of federalism and separation of powers:  State courts are generally able to decide questions of federal law, and federal district courts exercise jurisdiction over only specific genres of cases identified by

Suspension Form) at ECF 3, Part II(1) (requiring defendant on payment plan to provide changes in address) & Part II(5) ("Order and Notice of Deferred Payment or Installment Payments" apprising defendant that "if the Court has ordered deferred or installment payments, I must make all required payments on time and if I fail to make a scheduled payment, my driver's license shall immediately be suspended forthwith pursuant to Virginia Code §46.2-395"); *see also* dkt. 1-3 (General District Court Suspension Form) at ECF 2–3, Part II(2) & (6) (imposing similar requirement as a condition for granting a "Petition" for deferred payment, installment payments, or community service).

18

Congress. *See Washington v. Wilmore*, 407 F.3d 274, 279 (4th Cir. 2005); *Brown & Root, Inc. v. Breckenridge*, 211 F.3d 194, 198–99 (4th Cir. 2000); *see also Feldman*, 460 U.S. at 483 n.16; *Tafflin v. Levitt*, 493 U.S. 455, 458–59 (1990) ("state courts have inherent authority, and are thus presumptively competent, to adjudicate claims arising under the laws of the United States"); 28 U.S.C. § 1257(a).[23]

The doctrine thus incentivizes state litigants to—rather than rush to federal court after losing—press their constitutional claims in state court and appeal an adverse ruling up the judicial hierarchy, all the way to the U.S. Supreme Court if necessary.[24] *See* 28 U.S.C. 1257(a). This structure has the added benefit of affording "the state court the first opportunity to consider a state statute or rule in light of federal constitutional arguments" and perhaps "give the statute a saving construction in response to those arguments." *Feldman*, 460 U.S. at 483 n.16.

In recent years, appellate courts have clarified that *Rooker-Feldman* is not an expansive doctrine. *See Exxon*, 544 U.S. at 283–84. It does not create a jurisdictional bar to concurrent litigation, or to lawsuits challenging state administrative or executive actions (although abstention doctrines, *res judicata*, limitations periods, or other impediments may apply). *See id.* at 292–93; *Thana*, 827 F.3d at 320–21. Nevertheless, its core application has been reaffirmed:

---

[23]     *Rooker-Feldman* "does not bar review of a ruling of a state court in habeas corpus proceedings." *Plyler v. Moore*, 129 F.3d 728, 732 (4th Cir. 1997). The reason is that, through habeas, Congress created a system of federal collateral review of state court criminal judgments against a "person in custody pursuant to [an allegedly unconstitutional] judgment of a State court." 28 U.S.C. § 2254(a); *see In re Gruntz*, 202 F.3d 1074, 1079 (9th Cir. 2000). No party plausibly suggests that this proceeding sounds in habeas, the Complaint alleges claims under 42 U.S.C. § 1983, and Plaintiffs have not contended that they are in custody pursuant to the suspension orders they challenge. Thus, the habeas carveout to *Rooker-Feldman* does not apply.

[24]     In this way, *Rooker-Feldman* is a cousin of the *Younger* abstention doctrine, whereby a federal court will abstain from hearing a constitutional challenge to ongoing state criminal proceeding. *See generally Younger v. Harris*, 401 U.S. 37 (1971). As a result, the litigant must raise his constitutional defense in state court, and appeal up the judicial chain to his state's highest court and, eventually, the U.S. Supreme Court.

19

*i.e.*, "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon*, 544 U.S. at 284.

## B.     Application to This Case

The Supreme Court has reviewed the archetypal situation to which the doctrine historically and currently applies. In both *Rooker* and *Feldman*:

> the losing party in state court filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment. Plaintiffs in both cases, alleging federal-question jurisdiction, called upon the District Court to overturn an injurious state-court judgment.

*Exxon*, 544 U.S. at 291–92. So too here. As explained in Part IV, *supra*, license suspension orders are issued by the state court pursuant to Va. Code § 46.2-395(B). This is apparent from the statute's text and structure, as well as the Suspension Forms used by Virginia's trial courts. And now, Plaintiffs ask this Court to undo those very judgments as violations of due process and equal protection. *See* Complaint ¶¶ 399–450, Prayer for Relief. But a plaintiff "may not escape the jurisdictional bar of *Rooker–Feldman* by merely refashioning its attack on the state court judgments as a § 1983 claim." *Jordahl v. Democratic Party of Va.*, 122 F.3d 192, 202 (4th Cir. 1997); *see Am. Reliable Ins. Co. v. Stillwell*, 336 F.3d 311, 316 (4th Cir. 2003).[25]

To be sure, Plaintiffs—insisting that their suspensions were not issued by a court—*say* they are not challenging anything done by a state court. (*See, e.g.*, Pls' Br. at 3, 19, 34). But their own statements reveal the true nature of the case. "At issue here," Plaintiffs observe, "is the Commonwealth's own justice system." (*Id.* at 30; *see id.* at 4 n.2 (conceding that state courts issue suspension orders)). They "simply challenge the suspension of their licenses with no

---

[25]     Other Circuits agree. *E.g.*, *Southerland v. City of N.Y.*, 681 F.3d 122, 124 n.1 (2d Cir. 2012); *Prince v. Ark. Bd. of Examiners in Psychology*, 380 F.3d 337, 340 (8th Cir. 2004); *Remer v. Burlington Area Sch. Dist.*, 205 F.3d 990, 997 (7th Cir. 2000).

20

notice, no hearing, and no determination of their ability to pay." (*Id*. at 19). But the matter is not so simple. Plaintiffs overlook the imperative question (Suspended *by whom*?) answered by the text ("the court shall forthwith suspend . . .") and structure of the law (Va. Code § 46.2-395) they challenge, as well as by the Suspension Forms.[26]

The situation thus is akin to *Jordahl v. Democratic Party of Virginia*, 122 F.3d 192 (4th Cir. 1997). There, as here, plaintiffs challenged "an unconstitutional scheme" of Virginia statutes; but the Fourth Circuit found that the alleged harm—like the alleged harm here—"is the result of the state court" orders, not of the named defendant. *Id*. at 203. "If the state courts did not issue the injunctions, the [plaintiff] would have no harm of which to complain." *Id*.

Plaintiffs' brief does try to avoid *Rooker-Feldman* by casting this case as involving a state "administrative" action to which the doctrine does not apply. *See Thana*, 827 F.3d at 320–21. Plaintiffs write: "*Defendant* receives a list of defaulted debtors and *suspends their licenses* without providing any post-default notice or hearing regarding their ability to pay the fines and costs. It is *this administrative act* that forms the basis of the claims." (Pls' Br. at 19 (emphasis added)). "[I]n this case," they claim, "the harm results from *Defendant's independent act of suspending the driver's licenses* without providing any notice or hearing on the ability to pay." (*Id*. at 20 (emphasis added)).

The Court need not further belabor the central flaw in this argument, discussed above: The text and structure of § 46.2-395 (as well as the Suspension Forms attached to the Complaint)

---

[26]    There are sound strategic reasons for Plaintiffs' disclaimers: "If [a plaintiff] is not challenging the state-court decision, the *Rooker–Feldman* doctrine does not apply. If, on the other hand, he is challenging the state-court decision, the *Rooker–Feldman* doctrine applies." *Davani v. Va. Dep't of Transp.*, 434 F.3d 712, 718–19 (4th Cir. 2006). Thus they must argue that the Commissioner, not the state courts, suspended their licenses—while nevertheless also acknowledging what the statute actually says. (Pls' Br. at 4 n.2).

make plain that the state court suspends the licenses, not the Commissioner. The suspension is a judicial one, not an independent administrative or executive act.[27]

## C. The Existence of Alternative Forums

Lastly, Plaintiffs argue they have no other forum in which to raise their constitutional objections to suspension, thus implying that this Court must have jurisdiction. (*See* Pls' Br. at 16, 34–35 & n.10). The absence of alternative forums is a poor reason to decide an otherwise jurisdictionally defective case. Regardless, the contention illustrates how *Rooker-Feldman*'s underlying principles and function are frustrated by this Complaint, so the Court will discuss it.

Plaintiffs assert that they "have no other remedy" (Pls' Br. at 16; *see id*. ("if this case is dismissed, the Plaintiffs have no alternative remedy")), and that "only this Court can hold Va. Code § 46.2-395 unconstitutional." (Dkt. 35 at 2; *see id*. at 6 ("Only a decision of this Court can . . . fix the constitutional injuries suffered by Plaintiffs and the class members").[28] The Supreme Court has long rejected that stance, holding that state courts are capable of deciding questions of federal law. *See Tafflin v. Levitt*, 493 U.S. 455, 458 (1990); *Maine v. Thiboutot*, 448 U.S. 1, 3 n.1 (1980). Thus, indigent individuals (or anyone) challenging their suspension orders can press their arguments in the state trial and appellate courts, and before the U.S. Supreme Court.

---

[27]     Plaintiffs' reliance on *Powers v. Hamilton Cty. Public Defender Com'n*, 502 F.3d 592 (2007), is misplaced because *Powers* is not analogous to this case. There, the state court assessed Mr. Powers a fine, nonpayment of which led to his incarceration. *Id*. at 596. He sued his state-employed public defenders for their "policy of not asking for an indigency hearing before a probationer is incarcerated for failure to pay a fine," essentially turning a malpractice claim into a § 1983 claim. *Id*. at 598. Thus, the constitutional attack in *Powers* was against the *Public Defender's* failure "to ask for an indigency hearing" before punishment for nonpayment, not against *the judicial order itself* that imposed the punishment (in *Powers*, an incarceration; here, license suspension).

[28]     To the extent these statements speak not to the alleged unavailability of another forum, but of Plaintiffs' *inability to prevail* there due to a doctrinal impediment (*e.g.*, statute of limitations, *res judicata*, failure to timely note an appeal), that consideration is not relevant.

22

"All citizens are presumptively charged with knowledge of the law." *Othi v. Holder*, 734 F.3d 259, 270 (4th Cir. 2013). Virginia law states that—for any conviction resulting in fines or costs—payment is due "immediately" and, when not immediately made, the court suspends the license immediately (or in statutory parlance, "forthwith"). Va. Code § 46.2-495(B). Armed with this knowledge, there is no reason a defendant could not present in state court the very constitutional arguments pressed in this case. All he need do is raise them during the proceeding (for instance, after a finding of guilt, like any other objection to a sentence or punishment).[29]

If the state trial court rejects his arguments, the defendant may then file an appeal within 10 days (from the general district court) or 30 days (from the circuit court). *See* Va. Code §§ 8.01-675.3, 16.1-132, 16.1-136 (permitting *de novo* appeal from general district court); *see also* Va. Code §§ 16.1-69.5(a), 16.1-131.1 (providing "[p]rocedure when constitutionality of a statute is challenged in" general district court). If still dissatisfied, he can petition the Virginia Court of Appeals to hear the case, then the Supreme Court of Virginia, and then the United States Supreme Court. *See* Va. Sup. Ct. Rules 5A:12, 5:14, 5:17; Va. Code §§ 8.01-675.3, 16.1-132; 28 U.S.C. § 1257(a); *e.g.*, *Williams v. Virginia*, 270 Va. 580, 583–84 (Va. 2005) (considering challenge to legality of punishment, not to underlying guilt); *see also* Va. Code § 16.1-131.1.

In fact, this Court is aware that Virginia's appellate courts have heard appeals of allegedly unconstitutional, automatic license suspensions before. *See*, *e.g.*, *Walton v. Virginia*, 24 Va. App. 757, 758–59 (1997) (Moon, C.J.) (considering due process challenge to "automatic suspension of a person's driver's license" triggered by a court's "judgment of conviction" pursuant to Va. Code § 18.2-259.1(A)), *aff'd* 255 Va. 422, 424, 427 (1998).

---

[29]    This approach also comports with § 46.2-395(B)'s statement that suspension is "[i]n addition to" other penalties resulting from conviction, as well as Plaintiffs' understanding of the suspension orders as a punishment. (*See*, *e.g.*, Complaint ¶ 7; Pls' Br. at 1, 2, 3, 4, 28, 29, 30–31, 37, 38, 40, 41).

23

Plaintiffs' objection to this route—one contemplated by *Rooker-Feldman* and the federalism and separation of powers principles that animate it—again ignores the text of § 46.2-395. They maintain that they could not:

> raise issues concerning the constitutionality of Va. Code § 46.2-395's mandatory and automatic license suspension provision in such an appeal because their *licenses would not have been suspended* by the time they note their appeal [*i.e.*, 10 or 30 days after conviction in a general district or circuit court, respectively].
>
> . . . .
>
> Driver's license suspension is not reviewable on appeal of the underlying conviction.[30] The suspension of the driver's license *occurs at the same time as, or after*, the deadline to appeal the underlying conviction has passed.

(Pls' Br. at 16, 34–35 (emphasis added); *see* Hr'g Tr. at 56–57). This position conflates the suspension order—issued "forthwith" "when any person is convicted" if "immediate" full payment is not made, Va. Code § 46.2-395(B)—with its effective date: "30 days from the date of conviction, if" payment is still outstanding. *Id*. § 46.2-395(C).[31] Thus, the premise of the

---

[30] Plaintiffs identify no authority for this proposition, and the law indicates otherwise. *See Walton*, 24 Va. App. at 758–59, *aff'd* 255 Va. 422, 424, 427 (1998). Basic principles regarding judgments likewise support the appealability of courts' suspension orders. *See* Va. Code § 8.01-669 (defining judgment as an "order" or "decree"); *Starrs v. Virginia*, 287 Va. 1, 7 (Va. 2014) (explaining that a judgment is a court's determination of party's rights).

[31] Indeed, the law routinely distinguishes the date of an order from the date of its effectiveness or enforceability. *See, e.g.*, Fed. R. Civ. P. 62(a); Fed. R. Crim. P. 38(b)(1); Va. Code §§ 8.01-676(C), 19.2-319; *Wilson v. Virginia*, 67 Va. App. 82, 91 (Va. Ct. App. 2016) (discussing state courts' authority to delay imposition or execution of judgment).

Moreover, the time to appeal an order is commonly *dependent* on its issuance but *independent* of its enforceability. *Compare* Fed. R. App. P. 4(a)(1)(A) (30-day deadline to appeal civil judgment), *and* Fed. R. App. P. 4(b)(A) (14-day deadline to appeal criminal judgment), *and* Va. Code § 8.01-671 (three month deadline to appeal to Virginia Supreme Court *with* Fed. R. Civ. P. 62(a) (civil judgment not enforceable until 14 days after entry), *and* Fed. R. Crim. P. 38(a)(b)(1), *and* Va. Code § 8.01-676.1(C).

24

block-quoted argument above—that the time to appeal runs before *the suspension* itself occurs—is inaccurate.[32]

In sum, Plaintiffs had an opportunity to present their constitutional claims to the state courts and, eventually, the U.S. Supreme Court. Now, however, they are—in the words of the *Thana* Court—paradigmatic "state-court losers" who want "the process for appealing a state court judgment to the Supreme Court under 28 U.S.C. § 1257(a) [to be] sidetracked by an action filed in a district court specifically to review that state court judgment." 827 F.3d at 320. The *Rooker-Feldman* doctrine therefore applies.

## VI.  PLAINTIFFS LACK CONSTITUTIONAL STANDING.

Additionally, the Court holds that Plaintiffs lack constitutional standing. The Constitution extends the "judicial power" of federal courts to only "cases" or "controversies." U.S. Const. art. III § 2. The Supreme Court has cautioned that "no principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006). Inherent in that role—and derived from "the Constitution's central mechanism of separation of powers"—is the concept of "standing," which "is part of the common understanding of what it takes to make a justiciable case." *Steel Co. v. Citizens for a*

---

[32]      At oral argument, a slightly different hypothetical was raised: A defendant in general district court fails to appeal in 10 days because he can pay by the effective date (*i.e.*, 30 days), but—after the time to appeal lapses yet before the effective date—he fails to pay. (*See* Hr'g Tr. at 28, 29–30, 64–66, 70–71). Thus, his reason to appeal arose after his chance to appeal expired.

First, the Complaint does not implicate that situation, as Plaintiffs seek to represent a class of persons who could not pay "at the time of the suspension" (*i.e.*, Day 0) and who thus had reason to appeal within 10 days. (Complaint ¶ 373). Second, if a person becomes indigent after the 10-day deadline to appeal but before the suspension takes effect on Day 30, he can petition the general district court to reopen his case. *See* Va. Code § 16.1-133.1.

As for a hypothetical, subsequent suspension imposed for a missed payment under a payment plan (*see* Hr'g Tr. at 29), Plaintiffs have offered no explanation why that suspension would not be a new, independent, appealable order. *See supra* footnote 30.

25

*Better Env't*, 523 U.S. 83, 102 (1998).  Plaintiffs bear the burden of establishing that they have standing, which they have failed to do.  *Id*. at 104.[33]

To have standing, a plaintiff must meet three requirements.  First, she must allege "injury in fact—a harm suffered by the plaintiff that is concrete and actual or imminent, not conjectural or hypothetical."  *Steel Co*., 523 U.S. at 102 (internal quotations omitted).  This requirement is not in dispute, as Plaintiffs contend they have suffered harm:  the allegedly-unconstitutional suspensions of their licenses.

"Second, there must be causation—a fairly traceable *connection* between the plaintiff's *injury* and the complained-of conduct *of the defendant*."  *Steel Co.*, 523 U.S. at 103 (emphasis added).  Third, "there must be redressability—a likelihood that the requested relief will redress the alleged injury."  *Id*.  "An injury sufficient to meet the causation and redressability elements of the standing inquiry must result from the actions of the [defendant], not from the actions of a third party beyond the Court's control."  *Doe v. Virginia Dep't of State Police*, 713 F.3d 745, 755 (4th Cir. 2013).  This case implicates the second and third requirements.

### A.      Causation/Traceability

The traceability analysis is straightforward.  "Traceability is established if it is *likely* that the injury was caused by the conduct complained of *and not by the independent action of some third party* not before the court."  *Doe*, 713 F.3d at 755 (emphasis added).  Plaintiffs challenge the constitutionality of Va. Code § 46.2-395(B).  (*E.g.*, Pls' Br. at 7, 22, 24, 25, 29, 30, 42, 43,

---

[33]      The parties debate whether the Commissioner is the proper defendant and whether the state court clerks must be present as defendants under Federal Rule of Civil Procedure 19.  (*E.g.*, dkt. 10 at 14–21; dkt. 31 at 13–17).  Although not strictly jurisdictional, *see Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 119–22 (1968); *Koehler v. Dodwell*, 152 F.3d 304, 309 n.7 (4th Cir. 1998), the issue encompasses concerns analogous to those presented by standing.  In any event, the Court must address standing *sua sponte* if the issue is in doubt.  *E.g.*, *Juidice v. Vail*, 430 U.S. 327, 331 (1977); *United States v. Bullard*, 645 F.3d 237, 246 (4th Cir. 2011).

26

45; Hr'g Tr. at 46, 52). As explained at length in Part IV, the state courts suspend licenses under that statute. Thus, the injury Plaintiffs complain of was caused not by the Commissioner, but by the "independent action of some third party," *Doe*, 713 F.3d at 755—in this case, the Virginia judiciary. Put differently, assuming that the suspensions were unconstitutional, they were unconstitutional due to something the state courts (which are not parties here) did or failed to do.

### B. Redressability

"An injury is redressable if it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Doe*, 713 F.3d at 755 (internal quotations omitted). A judgment in Plaintiffs' favor against the Commissioner would not redress the injury of their suspensions; only an order invalidating the state court suspensions would do that. *See S.C. Coastal Conservation League v. U.S. Army Corps of Engineers*, 789 F.3d 475, 483 (4th Cir. 2015) (holding that "nonredressability" was "plain" when vacating decision by defendant still would not affect the complained-of harm).

The Commissioner's marginal role—overseeing the entry or "processing" of the court suspension orders into statewide databases (Complaint, Prayer for Relief (d); *see* Va. Code § 46.2-395(C); Complaint ¶ 289; Pls' Br. at 5; dkt. 31 at 2–3)—illustrates the lack of redressabilty. Suppose this Court ordered the Commissioner to disregard the notices of suspension and nonpayment he received from the court clerks pursuant to Va. Code § 46.2-395(C). (*See* Complaint, Prayer for Relief (d)). The suspensions consequently would not appear in statewide databases he administers. Yet that would not affect the existence and validity of the state courts' suspension orders under Subsection (B), as Plaintiffs concede.[34] Legally, the licenses are still

---

[34] "THE COURT: . . . What I'm getting at, if we order the Commissioner to change his record, what does that do to the court record? [PLAINTIFFS' COUNSEL]: Your Honor, I don't think that it addresses the court record." (Hr'g Tr. at 49).

suspended.  The inaccurate databases may decrease the likelihood Plaintiffs will be charged with driving on suspended licenses.  *See Barden v. Virginia*, 64 Va. App. 700, 702 (Va. Ct. App. 2015) (indicating that police check DMV's database to ascertain driver's status).  But the legal reality of their suspensions would be unchanged.  An officer with notice of the suspensions and the true state of affairs—*e.g.*, he has a copy of the suspension order (*see* dkts. 1-3 & 1-4), or was present when the court announced it—could justifiably issue a driving-suspended citation.[35]

Plaintiffs, of course, also seek a mandatory injunction against the Commissioner requiring him to reinstate their licenses without a reinstatement fee.[36]  (Complaint, Prayer for Relief (e); Pls' Br. at 14; *see* Complaint ¶¶ 40, 43).  The futility of this remedy is demonstrated by *Barden v. Virginia*, and the fact that Virginia distinguishes the reinstatement of a license from the cessation of a suspension.  *See* Va. Code § 46.2-100 (defining "suspension").  Those separate concepts map onto separate criminal offenses:  driving without a valid license and driving on a suspended one.  *Compare* Va. Code 46.2-300 *with* Va. Code § 46.2-301.

In *Barden*, the defendant appealed his 2013 arrest for driving on a suspended license. Mr. Barden had several pre-2013 suspensions, including indefinite ones for (like Plaintiffs here) failure to pay court costs.  64 Va. App. at 702–03, 709.  The undisputed evidence showed that—

---

[35]   The inverse situation further illustrates the disconnect between the Commissioner and the suspensions.  Suppose the state court does *not* issue a suspension order, but—through a clerical error or bureaucratic oversight—the Commissioner's databases reflect that it did.  An officer might—reasonably relying on the (incorrect) databases—cite a citizen for driving suspended. But the charge is faulty and the citizen has a complete defense, because her license was not suspended at all.  *See*, *e.g.*, *Barden*, 64 Va. App. at 702–05, 710–11 (overturning conviction for driving on suspended license because all suspensions had expired, even though defendant's failure to apply for reinstatement of license could be prosecuted under different statute as driving without a valid license).

[36]   Aside from redressability issues, this request circles back into the problem of causation and traceability.  Plaintiffs ask the Court to craft a constitutional remedy (against the Commissioner) for the constitutional harm they suffered at the hands of nonparties, the state courts.  There is no fit between ordering the Commissioner to reinstate licenses when it was the state courts that (by hypothesis) unconstitutionally suspended them.

28

before his 2013 arrest—either the terms of the suspensions lapsed or Mr. Barden had paid the fees underlying the indefinite suspensions, thus lifting them. *Id*. at 703, 708. He admitted, though, "that he had not paid any reinstatement fees; nor had he applied for a new or renewal driver's license at the time he was stopped." *Id*.; *see id*. at 704–05 ("appellant concedes that he did not formally reapply to have his license reinstated or renewed").

The Court of Appeals overturned the conviction because suspension and reinstatement are two legally and analytically distinct events, which track two distinct crimes. The Court's analysis relied on the statutory definition of "suspension" in Va. Code § 46.2-100, which applies throughout Title 46.2.

> [P]eriods of suspension . . . come about *independent* of the Commissioner's reinstatement . . . of one's driver's license. Code § 46.2–100 clarifies this point. Under that provision, the legislature has defined 'suspension' to 'mean[ ] that the document or privilege suspended has been temporarily withdrawn, but may be reinstated *following the period of suspension*' . . . . In other words, Code § 46.2–100 references the reinstatement . . . of a suspended . . . license *as an event separate from* (and in this context, subsequent to) the termination of the period of suspension . . . . Thus, Code § 46.2–100 makes reinstatement . . . of a driver's license *contingent upon the termination of the period of suspension* or revocation—not vice versa, as the Commonwealth contends.

*Barden*, 64 Va. App. at 707 (second emphasis in original). Mr. Barden, then, could have been convicted of driving without a valid license, *see* Va. Code § 46.2-300, because he failed to have his license reinstated by the Commissioner after his suspensions lapsed. *Barden*, 64 Va. App. at 709–10. But his conviction for driving on a suspended license could not stand.

Plaintiffs' position in this case—like the Commonwealth's position in *Barden*—rests on the (incorrect) belief that reinstatement and the end of a suspension go hand-in-hand. But as *Barden* held, it "is the termination of the period of suspension . . . that triggers an individual's eligibility for reinstatement . . . ." *Id*. at 711. The Complaint admits this point, recognizing that

29

one must first "become eligible" for reinstatement before a license can be reinstated. (Complaint ¶ 43).

A "period of suspension . . . terminates *independent* of reinstatement" by the Commissioner of a person's driver's licenses. *Barden*, 64 Va. App. at 711 (emphasis added). That independence reveals the absence of redressability, because Fourth Circuit "precedent declin[es] to find redressability where an additional, unchallenged rule could prevent a plaintiff from having her injury cured." *Doe*, 713 F.3d at 757.

So here's the point: Even if—notwithstanding traceability difficulties—this Court ordered the Commissioner to reinstate Plaintiffs' licenses, that ruling would (at most) protect them from prosecution for driving without a valid license. But reinstatement would not cure Plaintiffs' suspensions. *See S.C. Coastal*, 789 F.3d at 482–83 (affirming dismissal for lack of redressability because granting relief sought would not prevent complained-of harm); *Iota Xi Chapter of Sigma Chi Fraternity v. Patterson*, 566 F.3d 138, 149 (4th Cir. 2009) (holding fraternity's constitutional "claim is not redressable because a ruling on that claim would not alter" university's discipline supported by other grounds). It would not undo the state courts' suspension orders. And it would not allow Plaintiffs to legally drive on the Commonwealth's roads, because they would still possess suspended licenses. *See Doe*, 713 F.3d at 755–57; *24th Senatorial Dist. Republican Comm. v. Alcorn*, 820 F.3d 624, 633 (4th Cir. 2016) (lack of redressability where third party's actions would prevent effective relief even if constitutional challenge succeeded); *Covenant Media of S.C., LLC v. City of N. Charleston*, 493 F.3d 421, 430 (4th Cir. 2007) (no redressability when unchallenged law still banned noncompliant billboard, even if challenged law was overturned).

30

The Suspension Forms attached to the Complaint further convey the distinction between the end of a suspension and reinstatement, explaining that an individual cannot legally drive until his suspension ends *and* his license subsequently is reinstated by the DMV. Specifically, the Forms inform a defendant that he "may not operate a motor vehicle in the Commonwealth of Virginia until:"

(1)     All periods of suspension . . . have expired, AND

(2)     [He] ha[s] paid all unpaid fines, costs, forfeiture, restitution, and/or penalty (if any) and the period of suspension (if any) has expired, **AND**

(3)     The [DMV] reinstates [his] license (if suspended) . . . after:

      (a)     [He] ha[s] paid the reinstatement fee (if any) to the [DMV], AND [other administrative requirements are met.]

(Dkt. 1-3 at ECF 3, Part I(1)–(3); dkt. 1-4 at ECF 3, Part I(1)–(3) (boldface emphasis added).

*     *     *

Because Plaintiffs allege a harm (their license suspensions and concomitant inability to legally drive) that is not traceable to the Commissioner and would not be remedied by an order against him, they lack standing under Article III of the Constitution.

## VII.     ELEVENTH AMENDMENT IMMUNITY PRECLUDES THIS LAWSUIT.

The Commissioner also asserts Eleventh Amendment immunity. (Dkt. 10 at 21–22). Under *Ex parte Young*, a suit to enjoin unconstitutional acts of a state official may proceed against him without running afoul of the Eleventh Amendment's prohibition on federal lawsuits filed by citizens against a State. 209 U.S. 123, 159–60 (1908). The Commissioner, however, maintains that the *Young* exception to Eleventh Amendment immunity does not apply to just any state official. (Dkt. 10 at 21–22). Rather, the sued official must have a "special relation" with the challenged statute or action.

The Fourth Circuit expounded upon this requirement in *McBurney v. Cuccinelli*, which considered whether Virginia's Attorney General was entitled to Eleventh Amendment immunity in a lawsuit challenging the constitutionality of Virginia's FOIA statute. 616 F.3d 393, 396 (4th Cir. 2010). The Court emphasized that the "special relation" test requires both "*proximity to* and *responsibility for* the challenged state action." *Id*. at 399 (emphasis in original); *see Wright v. North Carolina*, 787 F.3d 256, 262 (4th Cir. 2015). The *McBurney* Court held that the relevant statutory language—"contrary to the [plaintiffs'] characterization"—did not refer to the Attorney General but to local Commonwealth's Attorneys. 616 F.3d at 400 (citing Va. Code § 2.2-3713(A)).

So too in this case. Plaintiffs sue the Commissioner in his official capacity for his supposed actions "in suspending their licenses pursuant to Va. Code § 46.2-395(B)." (Pls' Br. at 7; *see id*. at 2, 4, 11, 29, 30, 42, 43, 45). But "contrary to [Plaintiffs'] characterization," the Commissioner under Subsection (B) does not suspend the licenses—state courts do—and so he is not "responsib[le] for the challenged state action." *McBurney*, 616 F.3d at 399, 400. Subsection (B) barely mentions the DMV, referencing only its role in collecting fees for license reinstatement, which—as discussed *supra*, Part VI.B—is different from suspension.

Applying the Eleventh Amendment bar to this suit also comports with additional Circuit precedent. In a constitutional challenge to a South Carolina law mandating employee contributions to pension plans, the Fourth Circuit found that Eleventh Amendment immunity applied to state officials who administered, managed, and invested the collected funds. *Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 540–41, 549–51 (4th Cir. 2014). The *Hutto* plaintiffs sought an injunction to prohibit enforcement of the law (*i.e*., prevent deductions from their paychecks). *Id*.

32

at 550.  But state law "nowhere" gave the sued officials the responsibility of ensuring deductions were made.  *Id.* at 551.  Instead:

> the role of the state officials named in the complaint is merely to wait passively for the funds to be transmitted . . . and, once the funds have arrived, to manage and invest them. As such, the complaint seeks to enjoin the Retirement System's trustees and administrators from participating in a process in which they actually have no role.

*Id.*

Just as the *Hutto* plaintiffs challenged the constitutionality of action (the deductions) required of *someone* by state law, Plaintiffs here contest the constitutionality of action (license suspensions) they admit someone is "automatically" required to carry out under state law.[37]  But the *Hutto* plaintiffs did not sue those responsible under South Carolina law for ensuring the deductions take place, and so too Plaintiffs have not sued those responsible under Va. Code § 46.2-395(B) for their suspensions.  *See also Wright*, 787 F.3d at 261–62 (holding that proposed defendants were not sufficiently connected to challenged law because state law "clearly assigns" authority to others).  Likewise, the Commissioner—who awaits, from the court clerk, a record of nonpayment and of the suspension, *see* Va. Code § 46.2-395(C)—is analogous to the *Hutto* defendants, whose role was "merely to wait passively for the funds to be transmitted to the Retirement System and, once [there], to manage and invest them." *Hutto*, 773 F.3d at 551.

*McBurney* and *Hutto* reveal that the *Ex parte Young* does not apply to the Commissioner in this particular instance, and thus the suit is barred by the Eleventh Amendment.

## VIII. OTHER JURISDICTIONAL ISSUES

In supplemental briefing, the parties debated whether Virginia Supreme Court Rule 1:24—issued on November 1, 2016, and effective February 1, 2017—moots this case.  *See*

---

[37]  *See, e.g.*, Complaint ¶¶ 4, 29, 284–85, 403, 405, 412, 418; Pls' Br. at 1, 2, 3, 4, 10, 11, 17, 30.

33

http://www.courts.state.va.us/courts/scv/amendments/2016_1101_rule_1_24.pdf.  The Court

lacks jurisdiction over this case for three other, clearer reasons, so it need not decide the issue.[38]

The Commissioner also argues that the statute of limitations bars some of the Plaintiffs'

claims for declaratory relief.  (Dkt. 10 at 26–30).  The limitations period for a claim under 42

U.S.C. § 1983 is two years, which begins to run when the plaintiff had reason to know of the

injury.  *See Abeles v. Metro. Washington Airports Auth.*, No. 16-1330, 2017 WL 374741, at *6

(4th Cir. Jan. 26, 2017).  The limitations period in this case may be entwined with additional

standing concerns.[39]  The complex entanglement of these issues—along with the independent

---

[38]  Rule 1:24 effectuates Va. Code § 19.2-354's command that Virginia courts offer payment plans to those who cannot pay their court costs after thirty days, *i.e.*, by the suspension's effective date.  Va. Sup. Ct. R. 1:24(b).  Notice of this option is required.  Va. Sup. Ct. R. 1:24(c).  Courts must consider a person's financial resources (including indigency) when fashioning a plan, and the down payment amount a court may impose as part of a plan is capped.  Va. Sup. Ct. R. 1:24(d).  The Rule, however, does not negate Va. Code § 46.2-395(B)'s mandate that courts must forthwith suspended licenses if immediate payment in full is not made.

Several bills to amend § 46.2-395 were introduced during the 2017 session of Virginia's General Assembly.  State Senator Adam Ebbin offered a proposal with significant changes to § 46.2-395(B).  S.B. 1280, 2017 Gen. Assemb. Sess. (Va. Jan. 11, 2017).  The bill first would have moved the payment due date from "immediately" to 90 days after assessment of costs and fines.  Second, it would have eliminated mandatory suspension, instead permitting state courts to issue show cause orders why a license should not be suspended for nonpayment.  Third, state courts then would have discretion to suspend licenses for nonpayment, but only upon a finding of intentional refusal to pay or failure to make good faith efforts.

The amended version of SB1280 that passed the Senate, however, includes only the first of these changes.  *See* S.B. 1280, 2017 Gen. Assemb. Sess. (Va. Jan. 25, 2017).  And even that version failed to pass the House.  *See*  http://lis.virginia.gov/cgi-bin/legp604.exe?ses=171&typ=bil&val=sb1280&submit=GO (indicating SB1280 tabled in committee).

[39]  For instance, suppose a plaintiff's license was suspended more than two years prior to this lawsuit and then suspended again *within* two years prior to its filing.  *See* Complaint ¶¶ 66–68, 129, 224–27, 238, 241–42. Assuming each suspension is a completed constitutional violation rather than an ongoing one, *A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 348 (4th Cir. 2011); *Miller v. King George Cty.*, 277 F. App'x 297, 299–300 (4th Cir. 2008), the limitations period would bar challenges to the first suspension but not the second.  Yet that dichotomy creates a redressability problem:  Even a favorable ruling on the second suspension would not affect the validity of the first.

reasons jurisdiction is lacking—persuades the Court that deciding the mixed limitations/standing question would be imprudent.

## SUMMARY

Virginia law leads state judges to automatically suspend a defendant's driver's license for nonpayment of court fees and fines, regardless of his ability to pay. That unflinching command may very well violate Plaintiffs' constitutional rights to due process and equal protection.

But the Constitution does not allow a federal district court to decide the matter at this time. At least on this record, jurisdiction is absent for three separate reasons: the *Rooker-Feldman* doctrine; a lack of Article III standing; and Eleventh Amendment immunity.

That conclusion, of course, does not forever insulate Virginia's driver's license suspension law from challenge. Claims like the ones in this case can be pressed in the state courts and eventually in the U.S. Supreme Court, and it may be possible to reconstitute them in a form and against a defendant such that a lower federal court would have jurisdiction. For now, though, this Court is empowered only to dismiss this case without prejudice for lack of jurisdiction. An appropriate order will issue.

The Clerk of the Court is hereby directed to send a certified copy of this memorandum opinion and the accompanying order to all counsel of record.

Entered this ____15th____ day of March, 2017.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE

35