**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division**

**DAMIAN STINNIE,** *et al.***,**

      **Plaintiffs,**

**v.**                                           **Civil Action No. 3:16-cv-44**

**RICHARD D. HOLCOMB,
in his official capacity as the Commissioner
of the VIRGINIA DEPARTMENT OF
MOTOR VEHICLES,**

      **Defendant.**

## RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

Mark R. Herring
*Attorney General of Virginia*

Stephen A, Cobb
*Deputy Attorney General*

Janet W. Baugh (VSB # 44649)
*Senior Assistant Attorney General*

Margaret Hoehl O'Shea (VSB # 66611)
Christian A. Parrish (VSB #44427)
*Assistant Attorneys General*

OFFICE OF THE ATTORNEY GENERAL
Criminal Justice & Public Safety Division
202 North Ninth Street
Richmond, VA 23219
(804) 225-2206 – Telephone
(804) 786-4239 – Facsimile
moshea@oag.state.va.us

October 26, 2018

# TABLE OF CONTENTS

**INTRODUCTION** ...................................................................................................... 1

**PROCEDURAL HISTORY** ........................................................................................ 2

**APPLICABLE FACTS** ............................................................................................... 4

**ARGUMENT AND AUTHORITIES** ........................................................................ 7

   **A.  Likelihood of Success on the Merits** ......................................................... 8

      *1.  The Rooker-Feldman doctrine bars adjudication of this dispute.* ....................... 9

      *2.  The Plaintiffs lack Article III standing.* ................................................... 10

      *3.  The Commissioner is immune from suit.* .................................................. 12

      *4.  Plaintiffs are not likely to succeed on their procedural due process claim.* ................... 14

      *5.  Plaintiffs are not likely to succeed on their claim that Code § 46.2-395 is unconstitutional because it is "fundamentally unfair."* ................................. 17

      *6.  Plaintiffs are not likely to succeed on their equal protection claim.* ................................ 18

      *7.  The Commissioner does not engage in "extraordinary collection efforts" that might violate the Equal Protection Clause.* ............................................. 21

   **B.  Irreparable Harm** ..................................................................................... 22

   **C.  Balance of the Equities and the Public Interest** ....................................... 24

**CONCLUSION** ......................................................................................................... 25

**CERTIFICATE OF SERVICE** ................................................................................. 27

## INTRODUCTION

Plaintiffs, five individuals whose state-issued licenses to drive motor vehicles were revoked based upon unpaid court fines and costs, have filed this putative class action against the Commissioner of the Virginia Department of Motor Vehicles ("DMV").  Although their initial complaint was dismissed for lack of jurisdiction—including a finding that the Commissioner is immune from suit and that Plaintiffs lack standing to sue him—Plaintiffs have reinitiated suit against the same Defendant, and without substantial change.  In this second go-around, Plaintiffs also seek a sweeping preliminary injunction that would restore the Plaintiffs' driving privileges, prevent the Commissioner from assessing any reinstatement fees, and enjoin the Commissioner from "enforcing" Virginia Code § 46.2-395 "against Plaintiffs and the Future Suspended Class Members without notice and determination of ability to pay."

Plaintiffs' motion for preliminary injunction should be denied. As before, Plaintiffs seek an injunction against a state official who is not empowered to grant the relief requested.  As this Court has already found, and as Virginia law makes crystal clear, the Commissioner does not suspend driving privileges for nonpayment of fines and costs—the courts do.  Nor does the Commissioner "enforce" Virginia Code § 46.2-395—the courts do.  And, lastly, the Commissioner does not oversee the formulation of deferred payment plans, community service options, and installment plans—the courts do.  The glaring error that doomed Plaintiffs' cause in its first iteration is also fatal to their present request for preliminary injunctive relief:  Courts cannot bind a state actor, through issuance of an injunction, to engage in conduct that is beyond the scope of his official authority.

Almost a century ago, the United States Supreme Court recognized that "no injunction ought to issue against officers of a State clothed with authority to enforce the law in question,

unless in a case reasonably free from doubt and when necessary to prevent great and irreparable injury."[1]  Plaintiffs cannot meet these threshold requirements.  Because they have not altered the underlying character of their action, they are not likely to succeed on the merits of their case. Enjoining the Commissioner would not prevent Virginia state courts from continuing to issue suspension orders—and therefore the requested injunction would do nothing to prevent the alleged irreparable harm.  And considering the nature of the relief requested, neither the balance of the equities nor the public interest weigh in favor of issuing preliminary equitable relief. Plaintiffs cannot shoulder their heavy burden of proving a clear entitlement to a preliminary injunction, and their motion should be denied.

## PROCEDURAL HISTORY

On July 6, 2016, the four original Plaintiffs brought a putative class action against the Commissioner, challenging the constitutionality of § 46.2-395 as applied to themselves and others who are unable to pay their court debts.  The Commissioner moved to dismiss the complaint, arguing that the claim was procedurally-barred and also substantively failed to state a claim.  This Court granted the motion to dismiss, finding that the Court lacked jurisdiction to adjudicate the constitutional claims presented in the complaint.  Specifically, this Court reasoned that the *Rooker-Feldman* doctrine applied because the Plaintiffs were attempting to use a federal forum to constructively invalidate an otherwise valid state-court judgment.  Second, this Court found that the Plaintiffs lacked standing to bring suit because they could not carry their burden of showing that the Commissioner caused their asserted injury or that the injury would be redressed by the requested relief.  And third, this Court concluded that the Commissioner was entitled to Eleventh Amendment immunity because he does not fall within the *Ex Parte Young* exception,

---

[1] *Mass. State Grange v. Benton*, 272 U.S. 525, 527 (1926); *see also Fenner v. Boykin*, 271 U.S. 240, 243 (1926) (noting that federal injunctions against state law enforcement should be issued only "under extraordinary circumstances where the danger of irreparable loss is both great and immediate").

considering that he is not responsible for the Plaintiffs' suspensions.  The Plaintiffs moved for reconsideration of that decision, which this Court denied.

Plaintiffs appealed to the Fourth Circuit, which dismissed the appeal.  The Fourth Circuit reasoned that it lacked appellate jurisdiction because the case had been dismissed without prejudice.  Because it appeared from the order of dismissal that the Plaintiffs might be able to amend their complaint to state a proper claim against a proper party, the Fourth Circuit concluded that the dismissal order was not a final order for purposes of vesting appellate jurisdiction in that Court.  The Fourth Circuit did not reach the merits or otherwise consider the substance of this Court's order of dismissal.

On September 11, 2018, the Plaintiffs filed an amended complaint, motion for class certification, and motion for preliminary injunctive relief.  The five Plaintiffs (one original Plaintiff, and four new parties to the action) again allege that they "are Virginia residents who have suffered indefinite suspension of their driver's licenses for failure to pay court costs and fines . . . that they could not afford to pay."  Am. Compl. ¶ 1.  They allege two putative classes of plaintiffs:  "a Suspended Class consisting of all persons whose drivers' licenses are currently suspended due to failure to pay court debt," and "a Future Suspended Class consisting of all persons whose drivers' licenses will be suspended due to their failure to pay court debt."  Am. Compl. ¶ 298.  As before, the Plaintiffs allege:  (1) a procedural due process violation, based on the alleged lack of an "ability to pay" hearing and overall lack of "fundamental fairness" (Counts I, II and IV); and (2) and Equal Protection claim, based on allegations that Code § 46.2-395 impermissibly discriminates against individuals who are willing, but unable, to pay their court-related debt, and that the statutory scheme also discriminates because it is unfairly coercive (Counts III & V).  Plaintiffs assert a facial and as-applied challenge to Code § 46.2-395.

## APPLICABLE FACTS

Considering that this Court has exhaustively analyzed Virginia Code § 46.2-395 and its various subparts in its prior memorandum opinion, the Commissioner will not reiterate each component part of the suspension mechanism at issue here.  In sum, the relevant statutes provide:

- If a defendant fails to "immediately" pay "in full" fines or costs assessed by the convicting court, "***the court***" suspends that individual's driving privileges.[2]

- Virginia law allows a thirty-day grace period before that suspension goes into effect.[3]

- If payment in full is not received during those thirty-days, and the defendant does not otherwise enter into a deferred or installment payment plan, the clerk of court transmits the record of non-payment to DMV, and the suspension become effective.[4]

- Either at the time of trial, or by letter mailed to an address of record, the clerk of court sends written notice of the suspension, notifying the defendant that he has 30 days from the date of conviction to pay his fine and costs in full.[5]

- As long as that written notification is given by the court clerk, "[n]o other notice shall be required to make the suspension effective."[6]

As these statutes make clear, "the suspension is a legal reality that preexists any involvement whatsoever from the Commissioner."[7]

If a defendant "is unable to make payment of the [fines and costs] within 30 days of sentencing," the court "shall" order the defendant to pay the fine and costs in deferred

---

[2] Va. Code § 46.1-395(B) (emphasis added).

[3] Va. Code § 46.2-395(C).

[4] *Id.*

[5] *Id.*; *see also* ECF 1-3 & 1-4.

[6] *Id.*

[7] Mem. Op. (ECF No. 59), at p. 13.

payments.[8]  This option is also available if a suspension has already become effective.[9]  Other alternatives available to individuals whose suspensions have become effective include the right to petition the court for a restricted license[10] and the ability to discharge the debt through community service.[11]

With the 2018 codification of Virginia Supreme Court Rule 1:24, courts are statutorily-required to give written notice of the availability of deferred and installment payment plans, as well as community service options.[12]  Also, when determining the amount of time that should be provided for a defendant to pay off his fines and costs, "a court *shall* take into account the defendant's financial resources and obligations, including any fines and costs the defendant owes in other courts," so that ultimately, "[t]he length of a payment agreement and the amount of the payments . . . shall be reasonable in light of the defendant's financial resources and obligations."[13]  Courts retain continuing jurisdiction over unpaid fines and costs, including the ability to modify its prior order if presented with evidence that a defendant cannot pay the debt,[14] and if a defendant is brought back before the court to explain non-payment of fines and costs, the court "may enter an order allowing the defendant additional time for payment, *reducing the amount due* or of each installment, *or remitting the unpaid portion in whole or in part*."[15]

---

[8] Va. Code § 19.2-354(A); *see also* Code § 19.2-354.1; Va. Sup. Ct. R. 1:24.

[9] Va. Code § 46.2-395(B).

[10] Va. Code § 46.2-395(E).

[11] Va. Code § 19.2-354(C).

[12] Va. Code § 19.2-354.1(B).

[13] *Id.* (emphasis added); *see also* Va. Sup. Ct. R. 1:24(d).

[14] *Ohree v. Commonwealth*, 26 Va. App. 299, 310 (1998) ("[A] defendant who finds that his or her financial condition . . . prevent[s] . . . compl[iance] with a deferral or installment plan . . . may petition the trial court for a modification of its prior order," and the court considering that petition should consider "the defendant's financial position and his or her ability to pay.").

[15] Va. Code § 19.2-358(C) (emphasis added).

As this Court previously observed, this statutory scheme, by its very text, establishes the following.  "First, at the moment of conviction in a Virginia criminal case, full payment of any assessed fines and costs is due 'immediate[ly].'"[16]  Second, "if the defendant does not make immediate payment his driver's license is suspended 'forthwith'—meaning immediately or without delay."[17]  And "[t]hird and critically, the suspension is unequivocally and unambiguously ordered *by the court*."[18]  Although Plaintiffs continue to contest this third point, the Virginia statutory scheme has not changed on this point.

Administratively, "DMV never receives [] physical paper copies of any [conviction] orders."[19]  Rather, "[t]he [conviction] data is transmitted" to DMV "via various codes inputted by the clerks' offices in the local courts."[20]  Thus, "[w]hen a defendant is convicted of an offense in any of the courts of the Commonwealth, the clerks input data into their computer system; that data is then sent to [the Office of the Executive Secretary] and then to DMV via the Court Automated Information System (CAIS)."[21]  Contrary to the Plaintiffs' allegations,[22] "DMV receives no information via the Financial Management System (FMS)."[23]  Rather, "[w]hen the information is sent to DMV via CAIS, DMV's [computer] system automatically populates the DMV system with the relevant information," and "no human manipulates the data."[24]

---

[16] Mem. Op. (ECF No. 59), at p. 11.

[17] *Id.*

[18] *Id.* (emphasis in original).

[19] Ex. 1, Affidavit of Millicent Ford ("Ford Aff."), ¶ 6.

[20] Ford Aff. ¶ 7.

[21] Ford Aff. ¶ 8.

[22] Am. Compl. ¶ 49; *see also* Plfs. Mem. in Supp. (ECF No. 90), at pp. 3-4.

[23] Ford Aff. ¶ 8.

[24] Ford Aff. ¶ 9.

When a criminal defendant "is assessed fines and costs and fails to pay," DMV recognizes that "the court is authorized to suspend the defendant's driver's license."[25]  However, "DMV does not issue this suspension."[26]  Rather, "the clerk's office inputs an 'indicator' into the system that tells DMV that the court has suspended the driver's license of that particular individual."[27]  "In addition, the court will fill in a date in [a specific field], to indicate the effective date of the fines and costs suspension."[28]  Also, "[a]fter the system updates the court suspension, DMV's computer system automatically generates a 'notice of court suspension' that is mailed to the driver."[29]  "This letter details the court's suspension and what the driver needs to do to obtain his or her license."[30]

"DMV never posts a fines and costs suspension to a driver's record absent a suspension indicator from the court."[31]  And "[b]ecause all information and court orders are sent to DMV via the automated system," when DMV receives that indicator, it becomes aware that the transmitting court has "issued the suspension."[32]

## ARGUMENT AND AUTHORITIES

"A preliminary injunction is an extraordinary remedy intended to protect the status quo and prevent irreparable harm during the pendency of a lawsuit."[33]  Preliminary equitable relief "shall be granted only if the moving party clearly establishes entitlement to the relief sought,"

---

[25] Ford Aff. ¶ 10.

[26] *Id.*

[27] Ford Aff. ¶ 11.

[28] *Id.*

[29] Ford Aff. ¶ 14.

[30] *Id.*

[31] Ford Aff. ¶ 15.

[32] *Id.*

[33] *Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017).

which requires a showing "'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'"[34]  Injunctions should be sparingly granted, and "only in those circumstances when the exigencies of the situation demand such relief."[35]

Plaintiffs are not entitled to an injunction because they once again sued the wrong individual rather than a defendant who can grant them their requested relief.  The Fourth Circuit decision remanding this case for further proceedings did not address or otherwise disturb this Court's prior findings regarding the relationship between Code § 46.2-395 and the Commissioner.  And that analysis applies now in equal force.  Because Plaintiffs have not fixed the flaws that infected their initial complaint, this Court lacks jurisdiction to adjudicate their constitutional claims against this particular Defendant.  Thus, for all the reasons the Court has already explained, Plaintiffs are not likely to prevail in their claims against this Defendant.

Substantively, Plaintiffs are not likely to prevail, either.  Virginia law provides ample notice of its suspension provisions, and the legislation does not facially discriminate against people who are poor.  Because Plaintiffs cannot establish a due process or equal protection violation, they are not likely to succeed on the merits of this complaint.  For these reasons, and as discussed below, their motion should be denied.[36]

## A.     Likelihood of Success on the Merits

A plaintiff seeking preliminary injunctive relief must establish likelihood of success on the merits, and this element must be shown by "clear and convincing [evidence] on the part of

---

[34] *Id.* (quoting *Winter v. Nat'l Res. Defense Council*, 555 U.S. 7, 20 (2008)).

[35] *Wetzel v. Edwards*, 635 F.2d 283, 286 (4th Cir. 1980); s*ee Doe v. N.Y. Univ.* 666 F.2d 761, 773 (2d Cir. 1981) ("Where, as here, mandatory relief is sought, as distinguished from maintenance of the status quo, a strong showing of irreparable injury must be made, since relief changing the status quo is not favored unless the facts and law clearly support the moving party.").

[36] Of note, this Court has recently denied a request for a preliminary injunction in similar litigation.  *See Luciano v. Va. Dep't of Motor Vehicles*, No. 7:18cv00328 (ECF No. 25) (W.D. Va. Oct. 26, 2018).

8

the plaintiff."[37]  Procedurally and substantively, Plaintiffs cannot establish, by clear and convincing evidence, that they are likely to prevail on the merits of the amended complaint.

       1.      ***The Rooker-Feldman doctrine bars adjudication of this dispute.***

As this Court previously found, the *Rooker-Feldman* doctrine[38] precludes this Court from exercising jurisdiction over the claims in the amended complaint.  Under this doctrine, "a 'party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court.'"[39]  The Fourth Circuit treats *Rooker-Feldman* "as jurisdictional,"[40] reasoning that "Congress  . . . vested the authority to review state court judgments in the Supreme Court alone," and federal district courts are only empowered to exercise original—not appellate—jurisdiction.[41]  "The *Rooker-Feldman* doctrine, therefore, preserves a fundamental tenet in our system of federalism that, with the exception of habeas cases, appellate review of state court decisions occurs first within the state appellate system and then in the United States Supreme Court."[42]  Accordingly, "[a] litigant may not circumvent these jurisdictional mandates by instituting a federal action which, although not styled as an appeal, 'amounts to nothing more than an attempt to seek review of [the state court's] decision by a lower federal court.'"[43]  Also, a plaintiff "may not escape the jurisdictional bar of *Rooker-Feldman* by merely refashioning its attack on the state court judgments as a § 1983 claim."[44]

---

[37] *Mycalex Corp. of Am. v. Pemco Corp.*, 159 F.2d 907, 912 (4th Cir. 1947).

[38] *See D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923).

[39] *Am. Reliable Ins. Co. v. Stillwell*, 336 F.3d 311, 316 (4th Cir. 2003) (quoting *Johnson v. DeGrandy*, 512 U.S. 997, 1005-06 (1994)).

[40] *Id.*; *see also Friedman's, Inc. v. Dunlap*, 290 F.3d 191, 196 (4th Cir. 2002); *Plyler v. Moore*, 129 F.3d 728, 731 (4th Cir. 1997); *Jordahl v. Democratic Party of Va.*, 122 F.3d 192, 197 n.5 (4th Cir. 1997).

[41]  *Brown & Root, Inc. v. Breckenridge*, 211 F.3d 194, 198-99 (4th Cir. 2000).

[42] *Stillwell*, 336 F.3d at 316.

[43] *Id.* (quoting *Plyler*, 129 F.3d at 733) (second alteration in original).

[44] *Jordahl*, 122 F.3d at 202; *see also Liedtke v. State Bar*, 18 F.3d 315, 317 (5th Cir. 1994).

Rather, if, "'in order to grant the federal plaintiff the relief sought, the federal court must determine that the [state] court judgment was erroneously entered *or must take action that would render the judgment ineffectual*,' *Rooker-Feldman* is implicated."[45]

As articulated by the Supreme Court, "in a federal system it is important that state courts be given the first opportunity to consider the applicability of state statutes in light of constitutional challenge."[46]  But rather than challenge the court orders that imposed fines and costs in conjunction with their various convictions, Plaintiffs again seek an indirect appeal of otherwise valid state court judgments, with which the Commissioner merely complied. Specifically, Plaintiffs ask this Court to prohibit the DMV from administratively inputting *any* new license suspension orders and to reinstate all licenses suspended for failure to pay court fines and costs.  In other words, Plaintiffs want to undo all of their existing orders of suspension, constructively invalidating those presumptively valid state court orders.  This is precisely the type of federal intervention *Rooker-Feldman* was designed to avoid.

As before, this Court should reject Plaintiffs' attempt to circumvent state-court review of Virginia's license suspension statute through this *de facto* appellate challenge to their underlying state court decisions.  Plaintiffs are not likely to succeed on the merits of their suit because the complaint should be dismissed, under the *Rooker-Feldman* doctrine, for lack of jurisdiction.[47]

### 2.    *The Plaintiffs Lack Article III Standing.*

Article III of the Constitution requires, at a minimum, that a plaintiff demonstrate:  "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent,

---

[45] *Id.* (quoting *Ernst v. City of Youth Servs.*, 108 F.3d 486, 491 (3d Cir. 1997) (emphasis added).

[46] *Cardinale v. Louisiana*, 394 U.S. 437, 439 (1969).

[47] *See Normandeau v. City of Phoenix*, No. CV-11-1629, 2012 U.S. Dist. LEXIS 23438, at *12-13 (D. Ariz. Feb. 24, 2010); *cf. Younger v. Harris*, 401 U.S. 37, 44-45 (1971) ("[T]he National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States.").

not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."[48]   As this Court has previously held, Plaintiffs do not meet the second or third Article III standing requirements in this suit against the Commissioner.

As to the second prong of the Article III analysis, "[t]raceability is established if it is likely that the injury was caused by the conduct complained of and not by the independent action of some third party not before the court."[49]   Because "the state courts suspend licenses under [Code § 46.2-395], . . . the injury Plaintiffs complain of was caused not by the Commissioner, but by the independent action of some third party—in this case, the Virginia judiciary."[50]   Or "[p]ut differently, assuming the suspensions were unconstitutional, they were unconstitutional due to something the state courts (which are not parties here) did or failed to do."[51]   Plaintiffs challenge, as before, the perceived unfairness of the strict payment plans, lack of ability to pay analysis, and failure to provide community service options to avoid license suspension.   But the DMV is not responsible for any of these issues.

The Plaintiffs' claims fail under the third prong, too.   As this Court has reasoned, "[a] judgment in Plaintiffs' favor against the Commissioner would not redress the injury of their suspensions; only an order invalidating the state court suspensions would do that."[52]   That is, "[e]ven if—notwithstanding traceability difficulties—this Court ordered the Commissioner to reinstate Plaintiffs' licenses, that ruling would (at most) protect them from prosecution for

---

[48] *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

[49] *Doe v. Va. Dep't of State Police*, 713 F.3d 745, 755 (4th Cir. 2013).

[50] Mem. Op. (ECF No. 59), at p. 27 (quotations and citation omitted).

[51] *Id.*

[52] *Id.*

driving without a valid license.  But reinstatement would not cure Plaintiffs' suspensions.  It would not undo the state courts' suspension orders.  And it would not allow Plaintiffs to legally drive on the Commonwealth's roads, because they would still possess suspended licenses."[53]

Plaintiffs, therefore, are not likely to succeed on the merits of their litigation because they have not remedied their lack of Article III standing.

### 3.   *The Commissioner is immune from suit.*

In *Ex parte Young*, the Supreme Court created an exception to Eleventh Amendment immunity, permitting private litigants to file suits against state officials that seek only prospective injunctive or declaratory relief.[54]  However, the *Ex parte Young* exception to Eleventh Amendment immunity applies only if the defendant state officer, by virtue of his office, has the authority to address the allegedly unconstitutional act.[55]  Accordingly, federal courts have refused to apply *Ex parte Young* where the officer who is sued has no authority to enforce the challenged statute.[56]  For this reason, "[t]he Fourth Circuit has read *Ex parte Young* to require "a 'special relation' between the state officer sued and the challenged statute to avoid the Eleventh Amendment's bar.'"[57]  The special relation requirement ensures that any "injunction will be effective with respect to the underlying claim."[58]

As this Court previously held, the Commissioner is entitled to immunity under the Eleventh Amendment[59] because he does not have a special relation to the state statute requiring

---

[53] *Id.* at p. 30 (citations omitted).

[54] *Ex parte Young*, 209 U.S. 123 (1908).

[55] *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1341 (11th Cir. Ala. 1999).

[56] *Id.* (citations omitted).

[57] *Harris v. McDonnell*, 988 F. Supp. 2d 603, 606 (W.D. Va. 2013) (citing *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 331 (4th Cir. 2001))

[58] *Id.* at 607.

[59] *See McBride v. Virginia*, 2:08-cv-367, 2008 U.S. Dist. LEXIS 112438 (E.D. Va. Sept. 23, 2008) (dismissing a §

courts to impose fines and costs or to order the suspension of driver's licenses for failure to pay those fines and costs.  The Commissioner has no role in developing payment plans, community service schemes, or the extent to which an individual's ability to pay is considered by any of the various courts in the Commonwealth.  As previously discussed, when a debtor fails to pay fines and costs or to make deferred or installment payments, "the *court* shall forthwith suspend the person's privilege to drive a motor vehicle on the highways in the Commonwealth."[60]  A license suspended under this statute shall continue to be suspended until the fines and costs are paid in full, unless the individual enters into an agreement to make deferred or installment payments "that [are] acceptable to the *court*."[61]

Thus, it is not the DMV (or the Commissioner) who suspends a driver's license based upon nonpayment of fines and costs.  The decision to suspend is made at the court level.  As a result, an injunction against the Commissioner would not redress Plaintiffs' injury because the Commissioner is not empowered to grant the relief that Plaintiffs seek.  The Commissioner has no authority to conduct an ability-to-pay hearing after a state court has entered a presumptively valid order, nor does the Commissioner have the authority to intervene, pre-suspension, and insist upon the hearing Plaintiffs request.

Because the Commissioner lacks the authority to convene a pre- or post-deprivation hearing or otherwise undo the challenged license suspension, he does not stand in a special

---

1983 challenge to Va. Code § 46.2-395 because the suit was barred by the Eleventh Amendment); *Tinsley v. Virginia*, 3:00-cv-670, 2001 U.S. Dist. LEXIS 25249, *9-15 (E.D. Va. Feb. 15, 2001) (dismissing a § 1983 claim challenging a driver's license suspension under Va. Code § 46.2-395 and holding that the Department of Motor Vehicles was entitled to immunity under the Eleventh Amendment).

[60] Va. Code § 46.2-395(B) (emphasis added).

[61] *Id.*

relationship to the allegedly unconstitutional statute.  For this reason, *Ex Parte Young* does not apply, and the Commissioner is entitled to Eleventh Amendment immunity.[62]

### 4. Plaintiffs are not likely to succeed on their procedural due process claim.

As the Commissioner previously acknowledged, suspension of a driver's license implicates a state-created property interest, and "[d]ue process [typically] entitles an individual to notice and some form of hearing before state action may finally deprive him or her of a property interest."[63]  Although the due process clause generally requires notice and an opportunity to be heard, it does not mandate that a state provide a hearing prior to the initial deprivation.  As a result, courts apply the balancing test from *Mathews v. Eldridge* to determine "the specific dictates of due process in any given case."[64] These four considerations are:  (1) the private interest that will be affected by the official action; (2) the risk of any erroneous deprivation of such interest through the procedures used, (3) the probable value, if any of additional or substitute procedural safeguards; and (4) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.[65]  Because the Virginia statutory scheme appropriately safeguards against the risk of erroneous deprivation, Plaintiffs are not likely to succeed on their procedural due process claim.

First, the Supreme Court and the Fourth Circuit have recognized that the private interest in a driver's license, although important, is not "'vital and essential.'"[66]  Established precedent

---

[62] *See* Mem. Op. (ECF No. 59), at pp. 31-33; *Summit Med. Assocs. v. Pryor*, 180 F.3d 1326, 1341 (11th Cir. 1999).

[63] *Cryder v. Oxendine*, 24 F.3d 175, 177 (11th Cir. 1994).

[64] *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

[65] *Id.*

[66] *Tomai-Minogue v. State Farm Mut. Auto. Ins. Co.*, 770 F.2d 1228, 1235 (4th Cir. 1985) (quoting *Dixon v. Love*, 431 U.S. 105, 113 (1977)).

14

therefore provides that the pre-deprivation, ability-to-pay hearing Plaintiffs seek is not constitutionally-required.[67]

Second, the Virginia statutory scheme appropriately minimizes the risk of *erroneous* deprivation.  Criminal defendants are given multiple notices and opportunities to be heard, both at the time the fees and costs are assessed, and at the time a court issues a license suspension for failing to pay those fines and costs.  Specifically:

- Notice of the possibility of suspension for nonpayment of fines and costs is first given in the form of the publicly-available Virginia statute expressly stating that a driver's license will be suspended upon nonpayment of financial obligations.[68]

- Notice is next given in court at the time of conviction, and then through the written notice provided at that time or mailed by the clerk within the 30-day grace period.[69]

- Opportunity to be heard is given at the time of sentencing, and again if the defendant files a petition with the court setting forth his financial condition.[70]

- Another opportunity to be heard attaches to the defendant's ability to appeal the criminal conviction and sentence.[71]

---

[67] *Dixon*, 431 U.S. at 115 (upholding Illinois law allowing for summary revocation of a license and holding that due process did not require a pre-deprivation hearing); *see also Tomai-Minogue,* 770 F.2d at 1236 (where appellant's license was suspended based on default judgment in another jurisdiction, she had no right to pre-deprivation hearing).

[68] *See City of West Convina v. Perkins*, 525 U.S. 234, 241 (1999) ("No similar rationale justifies requiring individualized notice of state-law remedies which, like those at issue here, are established by published, generally available state statutes and case law."); *cf. Reetz v. Michigan*, 188 U.S. 505, 509 (1903) ("When a statute fixes the time and place of [an event], no special notice to parties interested is required.  The statute is itself sufficient notice.").

[69] "Under most circumstances, notice sent by ordinary mail is deemed reasonably calculated to inform interested parties that their property rights are in jeopardy." *Evans*, 308 F. Supp. 2d at 326 (quotation omitted) (holding that a notice of suspension mailed to an individual who had not paid a court-imposed fine was sufficient to satisfy due process).

[70] Va. Code § 19.2-355(A).

[71] *See Evans v. City of New York*, 308 F. Supp. 2d 316, 326-27 (S.D.N.Y. 2004) (upholding a license suspension following failure to pay a court-imposed fine, noting that "the plaintiff was afforded a hearing on his underlying

- Another opportunity to be heard exists through the statutory mechanism that allows the sentencing court to reduce or forgive the debt if the defendant has made a good faith effort to pay the fines and costs.

The multiple notices and opportunities to be heard "provide a reasonably reliable basis for concluding that the facts justifying the official action are as a responsible government official warrants them to be."[72]  For this reason, the *reliability* of the suspension mechanism—meaning, has the court correctly determined that an individual did not pay court-ordered fines and costs?— would not be enhanced by the addition of further pre-deprivation remedies.[73]  Balancing all available procedural safeguards, the Virginia statutory scheme appropriately protects against erroneous deprivation of an individual's driver's license based upon nonpayment of court-imposed fees and costs.

With respect to the third *Mathews* factor, additional or substitute procedural safeguards would add little to the existing scheme.  With the enactment of Rule 1:24, and the codification of Va. Code § 19.2-354.1, courts are already required to take a debtor's ability to pay into account, make payment plans available, and offer non-monetary alternatives such as community service. And courts already have the continuing authority to modify or cancel a court-created debt altogether.  Adding in an additional hearing or notice level would add virtually nothing to the procedural safeguards already in place.[74]

---

speeding violation," that he "could have appealed his conviction on that offense, but chose not to do so," and "was given fourteen days to pay the fine imposed as a result of his conviction," reasoning that, all things considered, "[t]he plaintiff was given notice, by means reasonably calculated to reach him, that his license would be suspended if he failed to pay the fine by the specified date").

[72]*Mackey v. Montrym*, 443 U.S. 1, 13 (1979).

[73] *See id.* at 17 ("We fail to see how reliability would be materially enhanced by mandating the presuspension 'hearing' deemed necessary by the District Court.").

[74] *See Dixon v. Love*, 431 U.S. 105, 113 (1977) (concluding that, although a subsequent evidentiary hearing "might make the licensee feel that he has received more personal attention, [] it would not serve to protect any substantive rights"); *see also Tomai-Minogue*, 770 F.2d at 1236.

Finally, with respect to the fourth *Mathews* factor, inserting an additional evidentiary hearing at the administrative agency level would add substantial fiscal and administrative burdens on the government.  Courts are already required to consider a debtor's ability to pay when making payment alternatives available.  And the Commissioner does not have the statutory authority to conduct the ability-to-pay hearings that Plaintiffs evidently request.  Considering that the requested hearing is beyond the scope of authority that the Virginia legislature has granted to the Commissioner, the burden imposed on DMV would be particularly unwarranted.

As one court has noted, "[r]egulatory schemes providing for automatic suspension of licenses on non-payment of mandated fees have been [routinely] upheld."[75]  Considering the four procedural due process factors identified by the Supreme Court in *Mathews*, Plaintiffs have not alleged sufficient facts to lift their situation out of this general rule, and they are not likely to succeed on their procedural due process claim.[76]

### 5.   Plaintiffs are not likely to succeed on their claim that Code § 46.2-395 is unconstitutional because it is "fundamentally unfair."

To the extent that Plaintiffs assert Code § 46.2-395 is unconstitutional because it is "fundamentally unfair" for the Commissioner to "enforce" the statute against them, this does not state an independent due process or equal protection claim.  The "fundamental fairness" line of cases come into play when a criminal defendant challenges a decision that has been made in the context of a criminal prosecution—such as application of a particular criminal penalty or other criminal rule of procedure.[77]  As the Supreme Court recently explained, whether a litigant was "exposed to a procedure offensive to a fundamental principle of justice" concerns, "for example, the allocation of burdens of proof and the type of evidence qualifying as admissible" in a

---

[75] *Magnum Towing & Recovery, LLC v. City of Toledo*, 430 F. Supp. 2d 689, 698 (N.D. Ohio 2006).

[76] *See Evans v. Rhodes*, 2016 U.S. Dist. LEXIS 126677, at *11-12 (N.D. Fla. Feb. 29, 2016).

[77] *See Medina v. California*, 505 U.S. 437, 445-46 (1992).

criminal prosecution.[78]  Where, by contrast, a litigant challenges a collateral "deprivation of property," rather than a part of the criminal trial itself, "*Mathews* 'provides the relevant inquiry.'"[79]  For this reason, if these Plaintiffs wish to challenge as "fundamentally unfair" the suspension of their driving privileges as a part of their criminal convictions, that is an argument that must be raised in a direct challenge to the criminal sentence imposed by the convicting court—an action Plaintiffs have avoided.

Regardless, as the Supreme Court has noted, the "fundamental fairness" inquiry is "far less intrusive" that the due process framework "approved in *Mathews*."[80]  The "narrower" analytical approach is intended to afford "substantial deference to legislative judgments" in the areas of "criminal procedure and the criminal process."[81]  As discussed above, the Commonwealth of Virginia has set forth multiple procedural steps to safeguard the deprivation of the property interest at issue here.  Those procedural protections satisfy the requirements of *Mathews* and the Due Process Clause.  Because the *Mathews* test is satisfied, it follows that the "narrower" and less intrusive "fundamental fairness" inquiry is, too.  That plaintiffs do not like the final outcome—or believe it to be "unfair"—does not state a separate constitutional claim under these circumstances.[82]

### 6.    *Plaintiffs are not likely to succeed on their equal protection claim.*

"To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal

---

[78] *Nelson v. Colorado*, 137 S. Ct. 1249, 1255 (2017).

[79] *Id.* (quoting *Kaley v. United States*, 571 U.S. 320, 350 n.4 (2014)).

[80] *Medina*, 505 U.S. at 446.

[81] *Id.* at 445-46.

[82] *See, e.g.*, *Bearden v. Georgia*, 461 U.S. 660, 665 (1983) ("[W]e generally analyze the fairness of relations between the criminal defendant and the State under the Due Process Clause, while we approach the question whether the States has invidiously denied one class of defendants a substantial benefit available to another class of defendants under the Equal Protection Clause.").

treatment was the result of intentional or purposeful discrimination."[83]  "Once this showing is made, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny."[84]

Here, Plaintiffs are not likely to succeed on their claim that they have been treated differently from other, similarly-situated individuals.  The thrust of the equal protection inquiry is whether the plaintiff can "identify persons materially identical to him or her who ha[ve] received different treatment."[85]  To pass the similarly-situated threshold, "the 'evidence must show a high degree of similarity'"[86]—that is, "'apples should be compared to apples.'"[87]

Plaintiffs cannot show that they are treated differently than individuals who engage in identical conduct.  Under Virginia's statutory scheme, *any* individual who fails to pay court-imposed fines and costs will have his driver's license suspended, regardless of income, race, gender, nationality, or other trait.  For this reason, Virginia's statutes do not provide dissimilar treatment to equally-situated individuals.  And absent dissimilar treatment, the equal protection clause is not implicated.

Further, Plaintiffs cannot establish that any difference in treatment is a result of intentional or purposeful discrimination.  In order to state an equal protection claim, Plaintiffs must set forth "specific, non-conclusory factual allegations that establish improper motive."[88]  They have not done so here.  Because the complaint does not allege intentional or purposeful discrimination, Plaintiffs have not stated a plausible equal protection violation.

---

[83] *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001).

[84] *Id.*; *see also Sylvia Dev. Corp. v. Calvert Cty.*, 48 F.3d 810, 818-19 (4th Cir. 1995).

[85] *Kolbe v. Hogan*, 813 F.3d 160, 185 (4th Cir. 2016) (Agee, J., concurring).

[86] *Id.* (quoting *LaBella Winnetka, Inc. v. Village of Winnetka*, 628 F.3d 937, 942 (7th Cir. 2010).

[87] *Id.* (quoting *Barrington Cove Ltd. P'ship v. R.I. Hous. & Mortg. Fin. Corp.*, 246 F.3d 1, 8 (1st Cir. 2001).

[88] *Williams v. Hansen*, 326 F.3d 569, 584 (4th Cir. 2003).

Finally, even if Plaintiffs could establish unequal treatment and intentional discrimination, any difference in treatment between Plaintiffs and other individuals would survive rational-basis review.  "[W]hen a state regulation or policy is challenged under the Equal Protection Clause, unless it involves a fundamental right or a suspect class, it is presumed to be valid and will be sustained 'if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose.'"[89]   Because Plaintiffs' allegations do not implicate a fundamental right,[90] and because indigent individuals are not a suspect class,[91] the license suspension statute need only survive rational-basis review.

"Under rational basis review, courts generally uphold governmental decisions that are rationally related to a state interest. This is a deferential standard, placing the burden on [the aggrieved party] 'to negate every conceivable basis which might support' the governmental action."[92]  Rational basis requires only "a constitutionally minimal level of rationality; it is not an invitation to scrutinize either the instrumental rationality of the chosen means (i.e., whether the classification is the best one suited to accomplish the desired result), or the normative rationality of the chosen governmental purpose (i.e., whether the public policy sought to be achieved is preferable to other possible public ends)."[93]

---

[89] *Veney v. Wyche*, 293 F.3d at 731 (quoting *Heller v. Doe*, 509 U.S. 312, 319-320 (1993)).

[90] Although Plaintiffs point to a "fundamental principle of 'equal justice'," the Complaint does not implicate a fundamental *right*, for the purposes of an equal protection analysis.  *Burson*, 402 U.S. at 539; *Ellett*, 174 Va. at 414.

[91] *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 29 (1973) (stating that "wealth discrimination alone" does not "provide[] an adequate basis for invoking strict scrutiny").

[92] *Stevens v. Holder*, 966 F. Supp. 2d 622, 642 (E.D. Va. 2013) (citation omitted); *see Giarratano v. Johnson*, 521 F.3d 298, 302-03 (4th Cir. 2008).

[93] *Van Der Linde Hous., Inc. v. Rivanna Solid Waste Auth.*, 507 F.3d 290, 295 (4th Cir. 2007); *see also Heller v. Doe*, 509 U.S. 312, 320 (1993); *FCC v. Beach Comm'ns*, 508 U.S. 307, 313 (1993) (legislation that does not burden fundamental rights survives rational basis review if "there is any reasonably conceivable state of facts that could provide a rational basis" for the legislation).

These rational objectives were affirmatively identified by the Virginia Supreme Court and the General Assembly.  In adopting Rule 1:24, and codifying 19.2-354.1, both noted that the suspension of a driving privilege for non-payment of costs and fines furthered governmental interests in facilitating the payment of court-related debt, collecting monies due to the government, and ensuring payment of restitution to victims of crime.[94]  By imposing a motivation to accomplish what an individual might otherwise be disinclined to do (*i.e.*, pay money to the court), the suspension of driver's licenses for non-payment of court-imposed fees and costs is rationally-related to these legitimate government purposes.

Similar purposes have been upheld by other courts under rational-basis review.[95]  Considering the presumption of validity that attaches to duly-enacted legislation, Plaintiffs are not likely to succeed on their claim that Code § 46.2-395 offends the equal protection clause.  Indeed, carried to its logical conclusion, allowing Plaintiffs to avoid payment of fines and costs because they allegedly cannot pay them could potentially carry over into other, unintended spheres—such as allowing indigent individuals to avoid paying sales taxes on groceries or clothing because those taxes disproportionately impact the poor.  Extending the equal protection clause to that extent would be both unprecedented and unwarranted.[96]

### 7. *The Commissioner does not engage in "extraordinary collection efforts" that might violate the Equal Protection Clause.*

Plaintiffs also argue that the Commissioner engages in collection efforts that are inherently coercive, and that therefore violate the Equal Protection Clause.  As discussed at

---

[94] Va. Code § 19.2-354.1; Va. Sup. Ct. R. 1:24.

[95] *City of Milwakee v. Kilgore*, 193 Wis. 2d 168 (1995); *In the Interest of M.E.G.*, 13-01-117-CV, 2002 Tex. App. LEXIS 1948, at *5 (Tex. Ct. App. Mar. 14, 2002).

[96] *Cf. Douglas v. California*, 372 U.S. 353, 361-62 (1963) (Harlan, J., dissenting) ("Every financial exaction which the State imposes on a uniform basis is more easily satisfied by the well-to-do than by the indigent.  Yet I take it that no one would dispute the constitutional power of the State to levy a uniform sales tax, to charge tuition at a state university, [or] to fix rates for the purchase of water from a municipal corporation.").

length in the Court's prior opinion, and in this submission, the Commissioner does not impose any license suspensions for failure to pay fines and costs. The Commissioner does not "coerce" anyone. Any challenge to the allegedly coercive nature of a license suspension based on failure-to-pay needs to be taken up with the entity that imposes that suspension: the state court, and its attendant order of conviction.

Regardless, Virginia law affords wide latitude towards indigent defendants who cannot afford to pay their fines and costs. Individuals whose driving privileges have been suspended can apply to the court for a restricted license, which would allow them to travel to and from work. They can enter into a deferred or installment payment plan. They can have their licenses reinstated by paying off court debt through community service, and they can have their debt forgiven by the court if they cannot satisfy the terms of a payment plan. This is a far cry from the restrictions at issue in *James v. Strange*, 407 U.S. 128 (1972), which *denied* exemptions to indigent defendants that were allowed to other judgment debtors. By contrast, Code § 46.2-395 affords *additional* avenues for satisfaction of fines and costs, up to and including forgiveness of the debt. Plaintiffs, then, are not exposed "to more severe collection practices than the ordinary civil debtor."[97] If anything, they are *less* severe. For these reasons, Plaintiffs are not likely to succeed on the merits of their claim that Code § 46.2-395 violates the Equal Protection Clause.

## B.      Irreparable Harm

To obtain the extraordinary remedy of preliminary injunctive relief, "a plaintiff must demonstrate more than just a 'possibility' of irreparable harm,"[98] and must "overcome the presumption that a preliminary injunction will not issue when the harm suffered can be remedied

---

[97] *Alexander v. Johnson*, 742 F.2d 117, 124 (4th Cir. 1984).

[98] *Di Biase*, 872 F.3d at 230.

by monetary damages at the time of judgment."[99]  In addition, to qualify as "irreparable," the harm must be "neither remote nor speculative but actual and imminent,"[100] such that it imposes a real and immediate threat.[101]

Plaintiffs assert that, because their "constitutional right[s] are being violated," irreparable injury should be assumed.[102]  As an initial matter, the only areas in which courts have been willing to assume irreparable harm from a constitutional violation involve the right to privacy and some First Amendment concerns.[103]  This case involves neither.  Regardless, for the reasons discussed above, Plaintiffs cannot establish that this Defendant is violating their constitutional rights, and, therefore, it would be improper to assume irreparable harm in this context.

Plaintiffs' primary argument regarding irreparable harm focus on the economic injuries they allegedly suffer by not being able to drive.  Economic injuries are, by their very nature, compensable through monetary damages and do not, therefore, constitute irreparable harm.[104] That aside, Plaintiffs have not established that they were denied a restricted license, which should be available to them under the terms of Code § 46.2-395.  Nor have they established that they were uniformly denied an opportunity to enter into a community service plan, nor have they established that they unsuccessfully petitioned the state court for remitteur or forgiveness of their debt.  This Court should hesitate to find a substantial risk of irreparable harm, where Plaintiffs

---

[99] *Id.*

[100] *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989).

[101] *Dan River, Inc. v. Icahn*, 701 F.2d 278, 283 (4th Cir. 1983).

[102] Plfs. Mem. in Support (ECF No. 90), at p.33.

[103] *See, e.g.*, *Siegel v. LePore*, 234 F.3d 1163, 1178 (11th Cir. 2000).

[104] *Tso v. Murray*, No. 16-cv-2480, 2017 U.S. Dist. LEXIS 113963, at *5 (D. Colo. July 21, 2017) ("Plaintiff has, at most, made allegations that he will suffer serious or substantial harm in the form of economic loss [if his drivers' license is suspended].  These allegation[s] fall short of establishing *irreparable* harm." (emphasis in original)).

evidently have not availed themselves of the statutory opportunities that might alleviate the very harm they claim to suffer.

## C.     Balance of the Equities and the Public Interest

The remaining inquiries—balance of the hardships and the public interest—do not weigh in favor of preliminary equitable relief, particularly considering that the injunctive relief sought is mandatory, in that it seeks to alter the status quo and, in essence, decide this case in favor of the moving party.  As the Fourth Circuit has cautioned, mandatory preliminary injunctions should be sparingly granted, and "only in those circumstances when the exigencies of the situation demand such relief."[105]

Of paramount importance to a proper consideration of these two factors is that the Plaintiffs have—again—sued the wrong party.  To implement the Plaintiffs' requested relief, this Court would—of necessity—have to bind the state courts that issue the orders of suspension.  Yet, "[i]t is firmly established that 'a court may not enter an injunction against a person who has not been made a party to the case before it.'"[106]

To properly contest their individualized orders of suspension, Plaintiffs should challenge the individual court collection plans that they object to, rather than seeking to impose broad injunctive relief across the Commonwealth.  Each circuit court in Virginia has its own system for implementing Code § 46.2-395.  An injunction from this Court, addressed to the Commissioner, would make the Commissioner newly-responsible for determining whether each license suspension order was proper, effectively stripping the statutory suspension authority from the

---

[105] *Wetzel v. Edwards*, 635 F.2d 283, 286 (4th Cir. 1980).

[106] *Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.*, 96 F.3d 1390, 1394 (Fed. Cir. 1996); *see also Scott v. Donald*, 165 U.S. 107, 117 (1897) ("The decree is also objectionable because it enjoins persons not parties to the suit."); *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 108-13 (1969) ("[O]ne is not bound by a judgment in personam resulting from litigation in which he is not designated as a party or to which he has not been made a party by service of process."); *see also* Fed. R. Civ. P. 65(d).

state courts and artificially placing it with the Commissioner.  An injunction to that effect would undermine Virginia's entire system, judicially-vesting the Commissioner with supplemental authority above and beyond that which the General Assembly has seen fit to grant.  This Court should decline Plaintiffs' invitation to override the legislature and dismantle Virginia's statutory scheme in this manner.

## CONCLUSION

Despite a detailed analysis from this Court, discussing why it is that the state courts issue failure-to-pay license suspensions under Code § 46.2-395, rather than the Commissioner, Plaintiffs have elected to re-file their complaint against the same party.  Apart from an affidavit that misstates the actual process by which a suspension is conveyed to DMV, Plaintiffs have proffered no new allegations or evidence that would alter the plain and unambiguous language of the statute.  It is surely easier from the Plaintiffs' perspective to simply sue the Commissioner, rather than going through the potentially laborious process of determining which court clerks have implemented objectionable repayment plans, and then attempting to effectuate service of process on those individuals.  But however meritorious Plaintiffs' policy arguments might appear, however sympathetic their personal stories might sound—those factors do not allow Plaintiffs to short-cut the litigation process and obtain equitable relief against an individual who is both immune from suit and lacks the power to provide them with the relief they seek.

Plaintiffs have not carried their burden of establishing, by clear and convincing evidence, that they are likely to prevail on the merits of their resurrected litigation against this lone Defendant.  Their motion for a preliminary injunction should be denied.

Respectfully submitted,

RICHARD D. HOLCOMB

25

By:_____/s/_____

Margaret Hoehl O'Shea, VSB # 66611
Assistant Attorney General
Criminal Justice and Public Safety Division
Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
Phone:  (804) 225-2206
Fax:  (804) 786-4239
E-mail:  moshea@oag.state.va.us

## CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of October 2018, I electronically filed the foregoing

Response in Opposition to Plaintiffs' Motion for a Preliminary Injunction with the Clerk of the

Court using the CM/ECF system, which will send a notification of such filing (NEF) to the

following CM/ECF participants:

Angela A. Ciolfi
Patrick Stephen Levy-Lavelle
Legal Aid Justice Center
1000 Preston Ave., Suite A
Charlottesville, VA 22903
(434) 529-1810
Fax: (434) 977-0558
Email: angela@justice4all.org
Email: pat@justice4all.org

Jonathan Todd Blank
McGuire Woods LLP
Court Square Building
310 Fourth Street, N.E., Suite 300
Charlottesville, VA 22902
(434) 977-2509
Email: jblank@mcguirewoods.com

David Preston Baugh
David P. Baugh, Esq., PLC
2025 E. Main Street, Suite 114
Richmond, VA 23223
(804) 225-8035
Email: dpbaugh@dpbaugh.com

Leslie Carolyn Kendrick
University of Virginia School of Law
580 Massie Road
Charlottesville, VA 22903
(434) 243-8633
Fax: (434) 924-7536
Email: kendrick@virginia.edu

*Counsel for Plaintiffs*

And I hereby certify that I have mailed by United States Postal Service the document to the

following non-CM/ECF participant:  N/A

_____/s/_____
Margaret Hoehl O'Shea, VSB No. 66611
Assistant Attorney General
Criminal Justice and Public Safety Division
Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
Phone:  (804) 225-2206
Fax:  (804) 786-4239
E-mail:  moshea@oag.state.va.us
