# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### Charlottesville Division

DAMIAN STINNIE,
MELISSA ADAMS,
ADRIANNE JOHNSON,
WILLIEST BANDY, and
BRIANNA MORGAN,

      **Plaintiffs,**

v.                                                **Civil Action No. 3:16-cv-44**

RICHARD D. HOLCOMB,
**In his official capacity as the Commissioner**
**of the VIRGINIA DEPARTMENT OF MOTOR VEHICLES,**

      **Defendant.**

## MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

Mark R. Herring
*Attorney General of Virginia*

Stephen A. Cobb
*Deputy Attorney General*

Janet W. Baugh (VSB # 44649)
*Senior Assistant Attorney General*

Margaret Hoehl O'Shea (VSB # 66611)
Christian A. Parrish (VSB #44427)
*Assistant Attorneys General*

OFFICE OF THE ATTORNEY GENERAL
Criminal Justice & Public Safety Division
202 North Ninth Street
Richmond, VA 23219
(804) 225-2206 – Telephone
(804) 786-4239 – Facsimile
moshea@oag.state.va.us

November 14, 2018

# Table of Contents

INTRODUCTION .................................................................................................. 1

STATEMENT OF FACTS ..................................................................................... 2

ARGUMENT AND AUTHORITIES ..................................................................... 3

   I.   Standard of Review ................................................................................... 3

   II.  Applicable Virginia Statutes ................................................................... 5

   III. Summary of Allegations .......................................................................... 8

   IV. The Amended Complaint is Procedurally-Barred. ................................... 8

      A.   *The Rooker-Feldman doctrine bars adjudication of this dispute.* ................ 8

      B.   *Plaintiffs lack Article III standing.* .............................................. 10

      C.   *The Commissioner is immune from suit.* .................................... 12

   V.  Substantively, the Amended Complaint fails to state a claim upon which relief may be granted. ...................................................... 16

      A.   *Because Plaintiffs have not plausibly alleged that the suspension mechanism would never satisfy Constitutional dictates, their facial challenge fails.* .................................................................... 16

      B.   *Plaintiffs have not stated a plausible procedural due process claim.* .......... 17

      C.   *Plaintiffs' allegation that Code § 46.2-395 is unconstitutional because it is "fundamentally unfair" does not state a claim.* ............................ 21

      D.   *Plaintiffs have not alleged a plausible equal protection claim.* ................. 22

      E.   *The Commissioner does not engage in "extraordinary collection efforts" that might violate the Equal Protection Clause.* ............................ 24

CONCLUSION ..................................................................................................... 25

CERTIFICATE OF SERVICE .............................................................................. 27

**INTRODUCTION**

This Court dismissed Plaintiffs' original complaint under Rule 12 of the *Federal Rules of Civil Procedure*, agreeing that the case failed, procedurally, because (among other things) Plaintiffs sued the wrong defendant. Plaintiffs appealed, but the Fourth Circuit dismissed the appeal for lack of appellate jurisdiction, reasoning that this Court's final order had left room for Plaintiffs to bring a properly-pled claim against a proper defendant.

On remand, Plaintiffs have filed an amended complaint. The amended complaint does not fix the procedural and substantive flaws that infected their first complaint. Commissioner Holcomb did not then—and does not now—have the statutory authority to suspend an individual's driving privileges because that person failed to pay their court-ordered fines and costs. That authority lies, by statute, in the courts—and the courts alone. The Commissioner, lacking that critical nexus to the challenged statutory scheme, is immune from suit.

As this Court also held, the *Rooker-Feldman* doctrine precludes Plaintiffs from obtaining the relief sought—in essence, an order robbing the state judiciary of the ability to enforce a portion of a presumptively valid and final state order of conviction. And substantively, even assuming Plaintiffs have a protected interest in the non-suspension of their driver's licenses, the procedural protections afforded by the applicable state statutes are sufficient to safeguard that interest. For this reason, and because the statutes are rationally related to a legitimate government interest, Plaintiffs' procedural due process claim fails. Similarly, because Plaintiffs fail to allege that they are being treated differently than similarly-situated individuals, and because they have not alleged facts that the Commissioner has acted with discriminatory intent, their equal protection claim also fails. For these reasons, and as discussed in more detail below, the Commissioner requests that this Court GRANT his motion to dismiss.

"[W]hen ruling on a defendant's motion to dismiss, a [trial] judge must accept as true all of the factual allegations contained in the complaint."[1]  So viewed, the essential allegations of the complaint are as follows.

1.      Plaintiffs, all residents of the Commonwealth of Virginia, meet the income requirements for being declared indigent under Virginia Code § 19.2-159. Am. Compl. ¶¶ 12, 14, 16, 18, 20.  Each plaintiff has had his driver's license suspended for failure to pay outstanding court fines and costs.  Am. Compl. ¶¶ 85-86.  To obtain restoration of their drivers' licenses, Plaintiffs must either pay off the outstanding debt, or obtain a payment plan from the court to which they are indebted. Am. Compl. ¶ 87.

2.      Plaintiff Stinnie's driving privileges were first suspended in 2012, when he was unable to pay the court fines and costs associated with three separate traffic offenses.  Am. Compl. ¶ 97.   Since that time, his drivers' license "has been suspended multiple times for failure to pay court costs and fines related to traffic offenses." Am. Compl. ¶ 104.  Although Stinnie recently arranged a payment plan to pay off his fines and costs, he ultimately defaulted on his payment plan, and his driving privileges were again suspended.  Am. Compl. ¶ 128.

3.      Plaintiff Adams' license is presently suspended because she failed to pay "the costs and fines related to various traffic and misdemeanor offenses, including driving on a suspended license." Am. Compl. ¶ 140.  Although Adams entered into a deferred payment plan, she ultimately defaulted on her payments, and her license was suspended in 2014.  Am. Compl. ¶¶ 148-50.  Adams currently owes $2975 in court debt, and she "does not think" she could "keep up" with monthly installment payments.  Am. Compl. ¶¶ 169, 174.

---

[1] *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted).

4.      Plaintiff Johnson's license is suspended for failure to pay the fines and costs "related to various traffic and criminal offenses, including driving on a suspended license." Am. Compl. ¶ 177. Following a 2013 criminal conviction, she was placed on a payment plan and successfully made payments for approximately three years. However, she ultimately defaulted on her payments. Johnson periodically attempts to enter into new payment plans, but her license has been "re-suspended multiple times, most recently in June 2018." Am. Compl. ¶ 185.

5.      Plaintiff Bandy's driving privileges were suspended between 2011 and 2018 for failure to pay court debt. Am. Compl. ¶¶ 209, 211. "At present," however, "there are no court debt suspensions on Mr. Bandy's license." Am. Compl. ¶ 212. Rather, Bandy has arranged to pay off his existing court debt through a community service option and an installment plan. Am. Compl. ¶¶ 226, 231-32. Presently, Bandy has a learner's permit. He "expects to have a full and active driver's license soon," after "passing driver's license tests." Am. Compl. ¶ 233.

6.      Plaintiff Morgan's "license was suspended for several years," and "may soon be suspended again," based upon her failure to pay court-ordered fines and costs. Am. Compl. ¶¶ 254, 257. Specifically, Morgan currently owes $452 in court debt "to two different courts." One court "converted her debt into 44 hours of community service," and she entered into a payment plan with the other court. Am. Compl. ¶¶ 278, 280. However, Morgan "is very worried that she cannot keep up with monthly court debt payments." Am. Compl. ¶ 284.

## ARGUMENT AND AUTHORITIES

### I.      Standard of Review

**<u>Rule 12(b)(1)</u>**. Federal district courts are courts of limited jurisdiction. "Thus, when a district court lacks subject matter jurisdiction over an action, the action must be dismissed."[2] A

---

[2] *U.S. v. Jadhay*, 555 F.3d 337, 347 (4th Cir. 2009).

challenge to a court's subject matter jurisdiction can be raised at any time and is properly considered on a motion under Rule 12(b)(1) of the *Federal Rules of Civil Procedure*. The burden of proving subject matter jurisdiction in response to a Rule 12(b)(1) motion rests with the plaintiff, the party asserting jurisdiction.[3] "Because questions of standing and ripeness concern this Court's subject matter jurisdiction under the case or controversy clause of Article III, such issues are properly raised in a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1)."[4]

**Rule 12(b)(6)**. "[T]he purpose of Rule 12(b)(6) is to test the legal sufficiency of the complaint."[5] Although federal pleading standards do not require detailed factual allegations, a plaintiff must submit more than an unadorned, "the defendant-unlawfully-harmed-me accusation."[6] "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'"[7]

To survive a Rule 12(b)(6) motion to dismiss, the non-moving party's complaint must therefore allege facts that "state a claim to relief that is plausible on its face."[8] A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully."[9] But "[w]here a complaint pleads facts

---

[3] *Williams v. U.S.*, 50 F.3d 299, 304 (4th Cir. 1995); *see also McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).

[4] *Kegler v. U.S. Dep't of Justice*, 436 F. Supp. 2d 1204 (D. Wyo. 2006).

[5] *Randall v. U.S.*, 30 F.3d 518, 522 (4th Cir. 1994).

[6] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007)).

[7] *Id.*

[8] *Twombly*, 550 U.S. at 570.

[9] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"[10]  Although a court should assume the veracity of well-pleaded factual allegations, conclusory statements are not sufficient.[11]  Even when a plaintiff's facts are "well-pleaded," if those facts do not permit the court to infer more than the mere possibility of misconduct, "the complaint has alleged—but it has not 'show[n]'— that the pleader is entitled to relief."[12]  Moreover, this Court is "not bound to accept as true a legal conclusion couched as a factual allegation."[13]  Rather, a plaintiff's legal conclusions must be supported by factual allegations that make the claim plausible.

**Rule 12(b)(7)**.  A case may be dismissed under Rule 12(b)(7) of the *Federal Rules of Civil Procedure* when a party required by Rule 19 has not been joined.  Rule 19 sets forth a two-step inquiry to determine whether a party should be joined: (1) whether the party is "necessary" to the action under Rule 19(a); and (2) whether the party is "indispensable" under Rule 19(b).[14]  A party is "indispensable" if that "party's appearance is so essential that the case must be dismissed" if it cannot be joined.[15]

## II.  Applicable Virginia Statutes

Considering that this Court has exhaustively analyzed Virginia Code § 46.2-395 and its various subparts in its prior memorandum opinion, the Commissioner will not reiterate each component part of the suspension mechanism at issue here.  In sum, the relevant statutes provide:

---

[10] *Id*. (citing *Twombly*, 550 U.S. at 557).

[11] *Id.* at 663-64.

[12] *Id*. at 679.

[13] *Id*. at 678.

[14] *Nat'l Union Fire Ins. Co. v. Rite Aid of S.C., Inc.*, 210 F.3d 246, 249 (4th Cir. 2000).

[15] *Deere & Co. v. Prop. Res. & Excavation, LLC*, 3:15-cv-531, 2016 U.S. Dist. LEXIS 87070, at *2 (E.D. Va. July 5, 2016) (quoting *DPR Const., Inc. v. IKEA Prop., Inc.*, 1:05-cv-259, 2005 U.S. Dist. LEXIS 13407, at *2 (E.D. Va. July 5, 2005)).

- If a defendant fails to "immediately" pay "in full" fines or costs assessed by the convicting court, "***the court***" suspends that individual's driving privileges.[16]

- Virginia law allows a thirty-day grace period before that suspension goes into effect.[17]

- If payment in full is not received during those thirty-days, and the defendant does not otherwise enter into a deferred or installment payment plan, the clerk of court transmits the record of non-payment to DMV, and the suspension become effective.[18]

- Either at the time of trial, or by letter mailed to an address of record, the clerk of court sends written notice of the suspension, notifying the defendant that he has 30 days from the date of conviction to pay his fine and costs in full.[19]

- As long as that written notification is given by the court clerk, "[n]o other notice shall be required to make the suspension effective."[20]

As these statutes make clear, "the suspension is a legal reality that preexists any involvement whatsoever from the Commissioner."[21]

If a defendant "is unable to make payment of the [fines and costs] within 30 days of sentencing," the court "shall" order the defendant to pay the fine and costs in deferred payments.[22] This option is also available if a suspension has already become effective. [23] Other alternatives available to individuals whose suspensions have become effective include the right to petition the court for a restricted license[24] and the ability to discharge the debt through community service.[25]

---

[16] Va. Code § 46.1-395(B) (emphasis added).

[17] Va. Code § 46.2-395(C).

[18] *Id.*

[19] *Id.*; *see also* ECF 1-3 & 1-4.

[20] *Id.*

[21] Mem. Op. (ECF No. 59), at p. 13.

[22] Va. Code § 19.2-354(A); *see also* Code § 19.2-354.1; Va. Sup. Ct. R. 1:24.

[23] Va. Code § 46.2-395(B).

[24] Va. Code § 46.2-395(E).

[25] Va. Code § 19.2-354(C).

With the 2018 codification of Virginia Supreme Court Rule 1:24, courts are statutorily-required to give written notice of the availability of deferred and installment payment plans, as well as community service options.[26] Also, when determining the amount of time that should be provided for a defendant to pay off his fines and costs, "a court *shall* take into account the defendant's financial resources and obligations, including any fines and costs the defendant owes in other courts," so that ultimately, "[t]he length of a payment agreement and the amount of the payments . . . shall be reasonable in light of the defendant's financial resources and obligations."[27] Courts retain continuing jurisdiction over unpaid fines and costs, including the ability to modify its prior order if presented with evidence that a defendant cannot pay the debt,[28] and if a defendant is brought back before the court to explain non-payment of fines and costs, the court "may enter an order allowing the defendant additional time for payment, *reducing the amount due* or of each installment, *or remitting the unpaid portion in whole or in part*."[29]

As this Court previously observed, this statutory scheme, by its very text, establishes the following. "First, at the moment of conviction in a Virginia criminal case, full payment of any assessed fines and costs is due 'immediate[ly].'"[30] Second, "if the defendant does not make immediate payment his driver's license is suspended 'forthwith'—meaning immediately or without delay."[31] And "[t]hird and critically, the suspension is unequivocally and unambiguously ordered *by the court*."[32]

---

[26] Va. Code § 19.2-354.1(B).

[27] *Id.* (emphasis added); *see also* Va. Sup. Ct. R. 1:24(d).

[28] *Ohree v. Commonwealth*, 26 Va. App. 299, 310 (1998).

[29] Va. Code § 19.2-358(C) (emphasis added).

[30] Mem. Op. (ECF No. 59), at p. 11.

[31] *Id.*

[32] *Id.* (emphasis in original).

### III.    Summary of Allegations

Although couched as five separate claims, the issues raised in the complaint collapse into two discrete questions:  (1) whether Virginia's "automatic" driver's license suspension procedure for nonpayment of court fines and costs violates the due process clause, and (2) whether Virginia's "automatic" driver's license suspension procedure for nonpayment of court fines and costs violates the equal protection clause.  For the reasons that follow, the Commissioner asserts that the complaint is both procedurally-barred and substantively inadequate.  Accordingly, the Commissioner requests that the amended complaint be dismissed under Rule 12 of the *Federal Rules of Civil Procedure*.

### IV.    The Amended Complaint is Procedurally-Barred.

#### A.    *The Rooker-Feldman doctrine bars adjudication of this dispute.*

As this Court previously found, the *Rooker-Feldman* doctrine[33] precludes this Court from exercising jurisdiction over the claims in the amended complaint.  Under this doctrine, "a 'party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court.'"[34]  The Fourth Circuit treats *Rooker-Feldman* "as jurisdictional,"[35] reasoning that "Congress  . . . vested the authority to review state court judgments in the Supreme Court alone," and federal district courts are only empowered to exercise original—not appellate—jurisdiction.[36]  "The *Rooker-Feldman* doctrine, therefore,

---

[33] *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923).

[34] *Am. Reliable Ins. Co. v. Stillwell*, 336 F.3d 311, 316 (4th Cir. 2003) (quoting *Johnson v. DeGrandy*, 512 U.S. 997, 1005-06 (1994)).

[35] *Id.*; *see also Friedman's, Inc. v. Dunlap*, 290 F.3d 191, 196 (4th Cir. 2002); *Plyler v. Moore*, 129 F.3d 728, 731 (4th Cir. 1997); *Jordahl v. Democractic Party of Va.*, 122 F.3d 192, 197 n.5 (4th Cir. 1997).

[36]  *Brown & Root, Inc. v. Breckenridge*, 211 F.3d 194, 198-99 (4th Cir. 2000).

preserves a fundamental tenet in our system of federalism that, with the exception of habeas cases, appellate review of state court decisions occurs first within the state appellate system and then in the United States Supreme Court."[37]  Accordingly, "[a] litigant may not circumvent these jurisdictional mandates by instituting a federal action which, although not styled as an appeal, 'amounts to nothing more than an attempt to seek review of [the state court's] decision by a lower federal court.'"[38]  Also, a plaintiff "may not escape the jurisdictional bar of *Rooker-Feldman* by merely refashioning its attack on the state court judgments as a § 1983 claim."[39]  Rather, if, "'in order to grant the federal plaintiff the relief sought, the federal court must determine that the [state] court judgment was erroneously entered *or must take action that would render the judgment ineffectual*,' *Rooker-Feldman* is implicated."[40]

As articulated by the Supreme Court, "in a federal system it is important that state courts be given the first opportunity to consider the applicability of state statutes in light of constitutional challenge."[41]  But rather than challenge the court orders that imposed fines and costs in conjunction with their various convictions, Plaintiffs again seek an indirect appeal of otherwise valid state court judgments, with which the Commissioner merely complied. Specifically, Plaintiffs ask this Court to prohibit the DMV from administratively inputting *any* new license suspension orders and to reinstate all licenses suspended for failure to pay court fines and costs.  In other words, Plaintiffs want to undo all of their existing orders of suspension, constructively invalidating those presumptively valid state court orders.  This is precisely the

---

[37] *Stillwell*, 336 F.3d at 316.

[38] *Id.* (quoting *Plyler*, 129 F.3d at 733) (second alteration in original).

[39] *Jordahl*, 122 F.3d at 202; *see also Liedtke v. State Bar*, 18 F.3d 315, 317 (5th Cir. 1994).

[40] *Id.* (quoting *Ernst v. City of Youth Servs.*, 108 F.3d 486, 491 (3d Cir. 1997) (emphasis added).

[41] *Cardinale v. Louisiana*, 394 U.S. 437, 439 (1969).

type of federal intervention *Rooker-Feldman* was designed to avoid.

As before, this Court should reject Plaintiffs' attempt to circumvent state-court review of Virginia's license suspension statute through this *de facto* appellate challenge to their underlying state court decisions. The amended complaint should be dismissed, under the *Rooker-Feldman* doctrine, for lack of jurisdiction.[42]

## B. *Plaintiffs lack Article III standing.*

Article III of the Constitution requires, at a minimum, that a plaintiff demonstrate: "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."[43] As this Court has previously held, Plaintiffs do not meet the second or third Article III standing requirements in this suit against the Commissioner.[44]

---

[42] *See Normandeau v. City of Phoenix*, No. CV-11-1629, 2012 U.S. Dist. LEXIS 23438, at *12-13 (D. Ariz. Feb. 24, 2010); *cf. Younger v. Harris*, 401 U.S. 37, 44-45 (1971) ("[T]he National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States.").

[43] *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

[44] Claims involving those Plaintiffs whose drivers' licenses are not presently suspended for failure to pay fines and costs lack should be dismissed for the additional reason that those claims are not ripe for adjudication. "A claim is unripe 'if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *United States v. Simmons*, 604 F. App'x 280 (4th Cir. 2015) (per curiam) (quoting *Scoggins v. Lee's Crossing Homeowners Ass'n*, 718 F.3d 262, 270 (4th Cir. 2013) (internal quotations omitted)). Although Plaintiff Bandy and Plaintiff Morgan are worried that they might lose their driving privileges again at some point in the future, their claim of possible future deprivation is "contingent upon future events," which "may not occur at all." For this reason, their constitutional claims fail for the additional reason that they are not presently ripe. *See United Public Workers v. Mitchell*, 330 U.S. 75, 89 (1947); *see also United States v. Petrillo*, 332 U.S. 1, 5 (1947) ("We have consistently refrained from passing on the constitutionality of a statute until a case involving it has reached a stage where the decision of a precise constitutional issue is a necessity.").

As to the second prong of the Article III analysis, "[t]raceability is established if it is likely that the injury was caused by the conduct complained of and not by the independent action of some third party not before the court."[45]  Because "the state courts suspend licenses under [Code § 46.2-395], . . . the injury Plaintiffs complain of was caused not by the Commissioner, but by the independent action of some third party—in this case, the Virginia judiciary."[46]  Or "[p]ut differently, assuming the suspensions were unconstitutional, they were unconstitutional due to something the state courts (which are not parties here) did or failed to do."[47]  Plaintiffs challenge, as before, the perceived unfairness of the strict payment plans and the lack of ability-to-pay hearing.  But the DMV is not responsible for any of these issues.

The Plaintiffs' claims fail under the third prong, too.  As this Court has reasoned, "[a] judgment in Plaintiffs' favor against the Commissioner would not redress the injury of their suspensions; only an order invalidating the state court suspensions would do that."[48]  That is, "[e]ven if—notwithstanding traceability difficulties—this Court ordered the Commissioner to reinstate Plaintiffs' licenses, that ruling would (at most) protect them from prosecution for driving without a valid license.  But reinstatement would not cure Plaintiffs' suspensions.  It would not undo the state courts' suspension orders.  And it would not allow Plaintiffs to legally drive on the Commonwealth's roads, because they would still possess suspended licenses."[49]

Plaintiffs, therefore, have not remedied their lack of Article III standing, and the case should be dismissed for lack of subject matter jurisdiction.

---

[45] *Doe v. Va. Dep't of State Police*, 713 F.3d 745, 755 (4th Cir. 2013).

[46] Mem. Op. (ECF No. 59), at p. 27 (quotations and citation omitted).

[47] *Id.*

[48] *Id.*

[49] *Id.* at p. 30 (citations omitted).

## C.     *The Commissioner is immune from suit.*

In *Ex parte Young*, the Supreme Court created an exception to Eleventh Amendment

immunity, permitting private litigants to file suits against state officials that seek only

prospective injunctive or declaratory relief.[50]   However, the *Ex parte Young* exception applies

only if the defendant state officer, by virtue of his office, has the authority to address the

allegedly unconstitutional act.[51]   Accordingly, federal courts have refused to apply *Ex parte*

*Young* where the officer who is sued has no authority to enforce the challenged statute.[52]   For this

reason, "[t]he Fourth Circuit has read *Ex parte Young* to require "a 'special relation' between the

state officer sued and the challenged statute to avoid the Eleventh Amendment's bar.'"[53]   The

special relation requirement ensures that any "injunction will be effective with respect to the

underlying claim."[54]

As this Court previously held, the Commissioner is entitled to immunity under the

Eleventh Amendment[55] because he does not have a special relation to the state statute requiring

courts to impose fines and costs or to order the suspension of driver's licenses for failure to pay

those fines and costs.   The Commissioner has no role in developing payment plans, community

service schemes, or the extent to which an individual's ability to pay is considered by any of the

---

[50] *Ex parte Young*, 209 U.S. 123 (1908).

[51] *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1341 (11th Cir. Ala. 1999).

[52] *Id.* (citations omitted).

[53] *Harris v. McDonnell*, 988 F. Supp. 2d 603, 606 (W.D. Va. 2013) (citing *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 331 (4th Cir. 2001))

[54] *Id.* at 607.

[55] *See McBride v. Virginia*, 2:08-cv-367, 2008 U.S. Dist. LEXIS 112438 (E.D. Va. Sept. 23, 2008) (dismissing a § 1983 challenge to Va. Code § 46.2-395 because the suit was barred by the Eleventh Amendment); *Tinsley v. Virginia*, 3:00-cv-670, 2001 U.S. Dist. LEXIS 25249, *9-15 (E.D. Va. Feb. 15, 2001) (dismissing a § 1983 claim challenging a driver's license suspension under Va. Code § 46.2-395 and holding that the Department of Motor Vehicles was entitled to immunity under the Eleventh Amendment).

various courts in the Commonwealth.  As previously discussed, when a debtor fails to pay fines and costs or to make deferred or installment payments, "the *court* shall forthwith suspend the person's privilege to drive a motor vehicle on the highways in the Commonwealth."[56]  A license suspended under this statute shall continue to be suspended until the fines and costs are paid in full, unless the individual enters into an agreement to make deferred or installment payments "that [are] acceptable to the *court*."[57]

Thus, it is not the DMV (or the Commissioner) who suspends a driver's license based upon nonpayment of fines and costs.  The decision to suspend is made at the court level.  Because the Commissioner lacks the authority to convene a pre- or post-deprivation hearing or otherwise undo the challenged license suspension, he does not stand in a special relationship to the allegedly unconstitutional statute.  For this reason, *Ex Parte Young* does not apply, and the Commissioner is entitled to Eleventh Amendment immunity.[58]

**D.  *Court clerks are indispensable parties whose joinder is not feasible.***

Rule 12(b)(7) of the Federal Rules of Civil Procedure permits dismissal for failure to join an indispensable party under Rule 19.  The moving party bears the burden of demonstrating that "the person who is not joined is needed for a just adjudication."[59]  In the Fourth Circuit, determining whether a party is necessary and indispensable is a two-step inquiry.[60]  First, courts must determine whether a party is necessary because of its relationship to the matter under

---

[56] Va. Code § 46.2-395(B) (emphasis added).

[57] *Id.*

[58] *See* Mem. Op. (ECF No. 59), at pp. 31-33; *Summit Med. Assocs. v. Pryor*, 180 F.3d 1326, 1341 (11th Cir. 1999).

[59] *Graves v. Vitu*, 5:12-cv-65, 2013 U.S. Dist. LEXIS 17140, *17-18 (W.D. Va. Feb. 7, 2013) (citing *Am. Gen. Life*, 429 F.3d at 92 (internal citations omitted)).

[60] *Id.* (citing *Owens—Illinois, Inc. v. Meade*, 186 F.3d 435, 440 (4th Cir.1999)).

consideration.[61]  Second, if the party is necessary, the court must determine if the party can be

joined.[62]  If the party cannot be joined, the court must determine whether the proceeding can

continue without the party, or whether the action must be dismissed.[63]  "While '[c]ourts are loath

to dismiss cases based on nonjoinder of a party,' dismissal is warranted 'when the resulting

defect cannot be remedied and prejudice or inefficiency will certainly result.'"[64]  A decision to

dismiss under Rule 19 is fact-specific and should consider "the practical potential for prejudice

to all parties, including those not before it."[65]  The key inquiry is whether, if the action were to

proceed, "could a decree be crafted in a way that protects the interests of the missing party and

that still provides adequate relief to a successful litigant?"[66]  Because the various judges and

court clerks throughout the Commonwealth are not parties to this action, the Court cannot award

the relief that Plaintiffs seek, and the complaint should fail for want of a proper Defendant.[67]

Here, the various court clerks in the Commonwealth are tasked with: (1) providing notice

of a license suspension, and (2) establishing individual payment plans, including community

service options, based on ability to pay.[68]  Thus, the court clerks are necessary parties under Rule

19.  The action should be dismissed because a judgment for Plaintiffs would prejudice the absent

---

[61] *Id.*

[62] *Id.*

[63] *Id.; see also* Fed. R. Civ. P. 19(b).

[64] *Id.*

[65] *Id.* (citations omitted).

[66] *Id.* (quoting *Teamsters Local Union No. 171 v. Keal Driveaway Co.*, 173 F.3d 915, 918 (4th Cir. 1999)).

[67] The judges and courts issuing the orders imposing fines and costs may also be necessary parties to this action.  However, joinder of these entities is infeasible because they are entitled to judicial immunity and, therefore, cannot be sued in this forum.

[68] Va. Code § 19.2-354.

court clerks who are not present to defend their actions.[69]  This prejudice cannot be lessened by a narrow judgment because it is the courts and the court clerks who suspend licenses and implement payment plans, not the DMV.[70]  If this action is dismissed, Plaintiffs have an adequate remedy in state court by challenging, at the time of conviction, the court orders imposing fines and costs, or by later petitioning those courts for modification of the prior orders based on their inability to pay.[71]

It is not feasible to join all of the court clerks in the Commonwealth in this action, much less the judges who issue the suspension orders.  First, the court clerks are likely entitled to various forms of immunity and defenses such as claim preclusion.  Moreover, each court system has a unique system for imposing fines and costs and the resultant driver's license suspension for failure to pay.  The payment plans offered in the various jurisdictions are not "one size fits all."  Plaintiffs challenge, in essence, the perceived unfairness of the strict payment plans, lack of ability to pay analysis, and failure to provide community service options to avoid license suspension.  The DMV is not responsible for any of these issues.

In sum, Plaintiffs appear to want the Commonwealth to adopt a uniform scheme across all courts in the state to impose fines and costs on individuals only in a way that they can afford to pay, or to abandon the statutory suspension mechanism altogether.  But there is a longstanding divide between the state and localities in Virginia.  The Commonwealth cannot implement a statewide system on behalf of the local courts.  The Commissioner of the DMV, in particular, cannot do so.

---

[69] Fed. R. Civ. P. 19(b)(1).

[70] Fed. R. Civ. P. 19(b)(2).

[71] *See* Section IV(A), *supra* (discussion concerning the *Rooker-Feldman* doctrine).

As a result, this case cannot proceed without having, as parties, the specific judges who issue the suspension orders, and/or the court clerks who (in contravention of state law) still fail to take a defendant's ability to pay into consideration when offering deferred or installment payment plans. Because joinder of the judges and clerks is infeasible, this matter should be dismissed under Rule 12(b)(7) and Rule 19 of the *Federal Rules of Civil Procedure*.

## V. Substantively, the Amended Complaint fails to state a claim upon which relief may be granted.

Procedural bars aside, Plaintiffs have not stated a plausible challenge to the constitutional validity of the Virginia statutes governing the suspension of drivers' license for nonpayment of fines and costs. All legislation is presumed to be constitutional, and, therefore, the party attacking the legislation has the burden of proving that it is unconstitutional.[72] Any reasonable doubt whether a statute is constitutional shall be resolved in favor of its validity, and courts will declare a statute invalid only if it is plainly repugnant to some constitutional provision.[73] For the reasons that follow, Plaintiffs' allegations do not set forth sufficient grounds for striking down the applicable Virginia statutes.

### A. *Because Plaintiffs have not plausibly alleged that the suspension mechanism would never satisfy Constitutional dictates, their facial challenge fails.*

"A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid."[74] So "[t]he fact that [a challenged statute] might operate unconstitutionally under some conceivable set of circumstances to render is insufficient to render

---

[72] *Riddleberger v. Chesapeake Railway*, 229 Va. 213, 215 (1985).

[73] *Blue Cross v. Commonwealth*, 221 Va. 349, 358 (1980).

[74] *United States v. Salerno*, 481 U.S. 739, 745 (1987).

it wholly invalid, since [the Supreme Court has] not recognized an 'overbreadth' doctrine outside the limited context of the First Amendment."[75]

Plaintiffs have not alleged sufficient facts to carry their "heavy burden" of demonstrating that there are "no set of circumstances" under which the Commonwealth's license suspension mechanism would satisfy constitutional dictates. For example, to sustain a facial challenge, Plaintiffs would have to establish that the Constitution is violated when: (1) an individual who possesses the ability to pay their court debt, (2) receives the statutory notices provided for under state law, and (3) has actual knowledge of the pending suspension, but (4) knowingly declines to pay, and (5) has their driving privileges revoked as a result of that knowing and conscious decision. Plaintiffs do not and cannot plausibly allege that this situation would transgress the due process or equal protection clauses. For this reason, their facial claim fails at the outset.

### B. *Plaintiffs have not stated a plausible procedural due process claim.*

As the Commissioner previously acknowledged, suspension of a driver's license implicates a state-created property interest, and "[d]ue process [typically] entitles an individual to notice and some form of hearing before state action may finally deprive him or her of a property interest."[76] Although the due process clause generally requires notice and an opportunity to be heard, it does not mandate that a state provide a hearing prior to the initial deprivation. As a result, courts apply the balancing test from *Mathews v. Eldridge* to determine "the specific dictates of due process in any given case."[77] These four considerations are: (1) the private interest that will be affected by the official action; (2) the risk of any erroneous deprivation of such interest through the procedures used, (3) the probable value, if any of

---

[75] *Id.*

[76] *Cryder v. Oxendine*, 24 F.3d 175, 177 (11th Cir. 1994).

[77] *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

additional or substitute procedural safeguards; and (4) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.[78]  Because the Virginia statutory scheme appropriately safeguards against the risk of erroneous deprivation, Plaintiffs have not sufficiently pled a plausible procedural due process claim.

First, the Supreme Court and the Fourth Circuit have recognized that the private interest in a driver's license, although important, is not "'vital and essential.'"[79]  Established precedent therefore provides that the pre-deprivation, ability-to-pay hearing Plaintiffs seek is not constitutionally-required.[80]

Second, the Virginia statutory scheme appropriately minimizes the risk of *erroneous* deprivation.  Defendants are given multiple notices and opportunities to be heard, both at the time the fees and costs are assessed, and at the time a court issues a license suspension for failing to pay those fines and costs.  Specifically:

- Notice of the possibility of suspension for nonpayment of fines and costs is first given in the form of the publicly-available Virginia statute expressly stating that a driver's license will be suspended upon nonpayment of financial obligations.[81]

---

[78] *Id.*

[79] *Tomai-Minogue v. State Farm Mut. Auto. Ins. Co.*, 770 F.2d 1228, 1235 (4th Cir. 1985) (quoting *Dixon v. Love*, 431 U.S. 105, 113 (1977)).

[80] *Dixon*, 431 U.S. at 115 (upholding Illinois law allowing for summary revocation of a license and holding that due process did not require a pre-deprivation hearing); *see also Tomai-Minogue,* 770 F.2d at 1236 (where appellant's license was suspended based on default judgment in another jurisdiction, she had no right to pre-deprivation hearing).

[81] *See City of West Convina v. Perkins*, 525 U.S. 234, 241 (1999) ("No similar rationale justifies requiring individualized notice of state-law remedies which, like those at issue here, are established by published, generally available state statutes and case law."); *cf. Reetz v. Michigan*, 188 U.S. 505, 509 (1903) ("When a statute fixes the time and place of [an event], no special notice to parties interested is required.  The statute is itself sufficient notice.").

- Notice is next given in court at the time of conviction, and then through the written notice provided at that time or mailed by the clerk within the 30-day grace period.[82]

- Opportunity to be heard is given at the time of sentencing, and again if the defendant files a petition with the court setting forth his financial condition.[83]

- Another opportunity to be heard attaches to the defendant's ability to appeal the criminal conviction and sentence.[84]

- Another opportunity to be heard exists through the statutory mechanism that allows the sentencing court to reduce or forgive the debt if the defendant has made a good faith effort to pay the fines and costs.

The multiple notices and opportunities to be heard "provide a reasonably reliable basis for concluding that the facts justifying the official action are as a responsible government official warrants them to be."[85] For this reason, the *reliability* of the suspension mechanism—meaning, has the court correctly determined that an individual did not pay court-ordered fines and costs?—

---

[82] "Under most circumstances, notice sent by ordinary mail is deemed reasonably calculated to inform interested parties that their property rights are in jeopardy." *Evans*, 308 F. Supp. 2d at 326 (quotation omitted) (holding that a notice of suspension mailed to an individual who had not paid a court-imposed fine was sufficient to satisfy due process).

[83] Va. Code § 19.2-355(A).

[84] *See Evans v. City of New York*, 308 F. Supp. 2d 316, 326-27 (S.D.N.Y. 2004) (upholding a license suspension following failure to pay a court-imposed fine, noting that "the plaintiff was afforded a hearing on his underlying speeding violation," that he "could have appealed his conviction on that offense, but chose not to do so," and "was given fourteen days to pay the fine imposed as a result of his conviction," reasoning that, all things considered, "[t]he plaintiff was given notice, by means reasonably calculated to reach him, that his license would be suspended if he failed to pay the fine by the specified date").

[85] *Mackey v. Montrym*, 443 U.S. 1, 13 (1979).

would not be enhanced by the addition of further pre-deprivation remedies.[86]  Balancing all available procedural safeguards, the Virginia statutory scheme appropriately protects against erroneous deprivation of an individual's driver's license based upon nonpayment of court-imposed fees and costs.

With respect to the third *Mathews* factor, additional or substitute procedural safeguards would add little to the existing scheme.  With the enactment of Rule 1:24, and the codification of Va. Code § 19.2-354.1, courts are already required to take a debtor's ability to pay into account, make payment plans available, and offer non-monetary alternatives such as community service. And courts already have the continuing authority to modify or cancel a court-created debt altogether.  Adding in an additional hearing or notice level would add virtually nothing to the procedural safeguards already in place.[87]

With respect to the fourth *Mathews* factor, the Commissioner does not have the statutory authority to conduct the ability-to-pay hearings that Plaintiffs evidently request.    Courts are already required to consider a debtor's ability to pay when making payment alternatives available.  Considering that the requested hearing is beyond the scope of authority that the Virginia legislature has granted to the Commissioner, the burden imposed on DMV would be particularly unwarranted.

 "Regulatory schemes providing for automatic suspension of licenses on non-payment of mandated fees have been [routinely] upheld."[88]  Considering the four procedural due process

---

[86] *See id.* at 17 ("We fail to see how reliability would be materially enhanced by mandating the presuspension 'hearing' deemed necessary by the District Court.").

[87] *See Dixon v. Love*, 431 U.S. 105, 113 (1977) (concluding that, although a subsequent evidentiary hearing "might make the licensee feel that he has received more personal attention, [] it would not serve to protect any substantive rights"); *see also Tomai-Minogue*, 770 F.2d at 1236.

[88] *Magnum Towing & Recovery, LLC v. City of Toledo*, 430 F. Supp. 2d 689, 698 (N.D. Ohio 2006).

factors identified in *Mathews*, Plaintiffs have not alleged sufficient facts to lift their situation out of this general rule and, therefore, have not stated a plausible due process claim.[89]

### C. Plaintiffs' allegation that Code § 46.2-395 is unconstitutional because it is "fundamentally unfair" does not state a claim.

To the extent that Plaintiffs assert Code § 46.2-395 is unconstitutional because it is "fundamentally unfair" for the Commissioner to "enforce" the statute against them, this does not state an independent due process or equal protection claim. The "fundamental fairness" line of cases come into play when a criminal defendant challenges a decision that has been made in the context of a criminal prosecution—such as application of a particular criminal penalty or other criminal rule of procedure.[90] As the Supreme Court recently explained, whether a litigant was "exposed to a procedure offensive to a fundamental principle of justice" concerns, "for example, the allocation of burdens of proof and the type of evidence qualifying as admissible" in a criminal prosecution.[91] Where, by contrast, a litigant challenges a collateral "deprivation of property," rather than a part of the criminal trial itself, "*Mathews* 'provides the relevant inquiry.'"[92] For this reason, if these Plaintiffs wish to challenge as "fundamentally unfair" the suspension of their driving privileges as a part of their criminal convictions, that is an argument that must be raised in a direct challenge to the criminal sentence imposed by the convicting court—an action Plaintiffs have avoided.

Regardless, as the Supreme Court has noted, the "fundamental fairness" inquiry is "far less intrusive" that the due process framework "approved in *Mathews*."[93] The "narrower"

---

[89] *See Evans v. Rhodes*, 2016 U.S. Dist. LEXIS 126677, at *11-12 (N.D. Fla. Feb. 29, 2016).

[90] *See Medina v. California*, 505 U.S. 437, 445-46 (1992).

[91] *Nelson v. Colorado*, 137 S. Ct. 1249, 1255 (2017).

[92] *Id.* (quoting *Kaley v. United States*, 571 U.S. 320, 350 n.4 (2014)).

[93] *Medina*, 505 U.S. at 446.

analytical approach is intended to afford "substantial deference to legislative judgments" in the areas of "criminal procedure and the criminal process."[94]  As discussed above, the Commonwealth of Virginia has set forth multiple procedural steps to safeguard the deprivation of the property interest at issue here.  Those procedural protections satisfy the requirements of *Mathews* and the Due Process Clause.  Because the *Mathews* test is satisfied, it follows that the "narrower" and less intrusive "fundamental fairness" inquiry is, too.  That plaintiffs do not like the final outcome—or believe it to be "unfair"—does not state a separate constitutional claim under these circumstances.[95]

**D.**     ***Plaintiffs have not alleged a plausible equal protection claim.***

"To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination."[96]  "Once this showing is made, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny."[97]

The thrust of the equal protection inquiry is whether the plaintiff can "identify persons materially identical to him or her who ha[ve] received different treatment."[98]  Plaintiffs have not plausibly alleged that they have been treated differently from other, similarly-situated individuals who engage in identical conduct.  Under Virginia's statutory scheme, *any* individual who fails to

---

[94] *Id.* at 445-46.

[95] *See, e.g.*, *Bearden v. Georgia*, 461 U.S. 660, 665 (1983) ("[W]e generally analyze the fairness of relations between the criminal defendant and the State under the Due Process Clause, while we approach the question whether the States has invidiously denied one class of defendants a substantial benefit available to another class of defendants under the Equal Protection Clause.").

[96] *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001).

[97] *Id.*; *see also Sylvia Dev. Corp. v. Calvert Cty.*, 48 F.3d 810, 818-19 (4th Cir. 1995).

[98] *Kolbe v. Hogan*, 813 F.3d 160, 185 (4th Cir. 2016) (Agee, J., concurring).

pay court-imposed fines and costs will have his driver's license suspended, regardless of income, race, gender, nationality, or other trait. For this reason, Virginia's statutes do not provide dissimilar treatment to equally-situated individuals. And absent dissimilar treatment, the equal protection clause is not implicated.

Further, Plaintiffs cannot establish that any difference in treatment is a result of intentional or purposeful discrimination. In order to state an equal protection claim, Plaintiffs must set forth "specific, non-conclusory factual allegations that establish improper motive."[99] They have not done so here. Because the amended complaint does not allege intentional or purposeful discrimination, Plaintiffs have not stated a plausible equal protection violation.

Finally, even if Plaintiffs could establish unequal treatment and intentional discrimination, any difference in treatment between Plaintiffs and other individuals would survive rational-basis review. "[W]hen a state regulation or policy is challenged under the Equal Protection Clause, unless it involves a fundamental right or a suspect class, it is presumed to be valid and will be sustained 'if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose.'"[100] Because Plaintiffs' allegations do not implicate a fundamental right,[101] and because indigent individuals are not a suspect class,[102] the license suspension statute need only survive rational-basis review.

The rational objectives of the statutes at issue were affirmatively identified by the Virginia Supreme Court and the General Assembly. In adopting Rule 1:24, and codifying 19.2-

---

[99] *Williams v. Hansen*, 326 F.3d 569, 584 (4th Cir. 2003).

[100] *Veney v. Wyche*, 293 F.3d at 731 (quoting *Heller v. Doe*, 509 U.S. 312, 319-320 (1993)).

[101] Although Plaintiffs point to a "fundamental principle of 'equal justice'," the Complaint does not implicate a fundamental *right*, for the purposes of an equal protection analysis. *Burson*, 402 U.S. at 539; *Ellett*, 174 Va. at 414.

[102] *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 29 (1973) (stating that "wealth discrimination alone" does not "provide[] an adequate basis for invoking strict scrutiny").

354.1, both noted that the suspension of a driving privilege for non-payment of costs and fines furthered governmental interests in facilitating the payment of court-related debt, collecting monies due to the government, and ensuring payment of restitution to victims of crime.[103]  By imposing a motivation to accomplish what an individual might otherwise be disinclined to do (*i.e.*, pay money to the court), the suspension of driver's licenses for non-payment of court-imposed fees and costs is rationally-related to these legitimate government purposes.

Similar purposes have been upheld by other courts under rational-basis review.[104] Considering the presumption of validity that attaches to duly-enacted legislation, Plaintiffs have not stated a plausible claim that Code § 46.2-395 offends the equal protection clause.

### E.    *The Commissioner does not engage in "extraordinary collection efforts" that might violate the Equal Protection Clause.*

Plaintiffs also argue that the Commissioner engages in collection efforts that are inherently coercive, and that therefore violate the Equal Protection Clause.  As discussed at length in the Court's prior opinion, and in this submission, the Commissioner does not impose any license suspensions for failure to pay fines and costs.  The Commissioner does not "coerce" anyone.  Any challenge to the allegedly coercive nature of a license suspension based on failure-to-pay needs to be taken up with the entity that imposes that suspension:  the state court, and its attendant order of conviction.

As previously stated, Virginia law affords wide latitude towards indigent defendants who cannot afford to pay their fines and costs.  This situation is a far cry from the restrictions at issue in *James v. Strange*, 407 U.S. 128 (1972), which *denied* exemptions to indigent defendants that were allowed to other judgment debtors.  Plaintiffs are not exposed "to more severe collection

---

[103] Va. Code § 19.2-354.1; Va. Sup. Ct. R. 1:24.

[104] *City of Milwakee v. Kilgore*, 193 Wis. 2d 168 (1995); *In the Interest of M.E.G.*, 13-01-117-CV, 2002 Tex. App. LEXIS 1948, at *5 (Tex. Ct. App. Mar. 14, 2002).

practices than the ordinary civil debtor."[105]  If anything, they are *less* severe.  For these reasons,

Plaintiffs have not plausibly alleged that Code § 46.2-395 violates the Equal Protection Clause

because it requires "extraordinary" collection efforts on the part of anyone, much less this named

Defendant.

## CONCLUSION

In their amended complaint, Plaintiffs again set forth a policy-driven argument that the

Commonwealth of Virginia should change its laws governing the suspension of a drivers' license

based on nonpayment of court-ordered fines and costs.  But the Commissioner does not suspend

licenses for nonpayment of court debt—the suspension is done, unequivocally and in the first

instance, by the state courts.  Plaintiffs might make more headway with their arguments if raised

in connection with an appeal of their attendant criminal sentences, or, at the very least, if filed

against a proper defendant with the authority to enact the protective measures they seek.  Their

continued desire to litigate this issue in a federal forum—against this Defendant—is mystifying.

Because, as before, Plaintiffs' suit is procedurally-barred, and because, substantively,

they have failed to state a plausible claim to relief, Defendant respectfully requests that this

Court GRANT his motion to dismiss.

Respectfully submitted,

RICHARD D. HOLCOMB

By:_____/s/_____
Margaret Hoehl O'Shea, VSB # 66611
Assistant Attorney General
Criminal Justice and Public Safety Division
Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
Phone:  (804) 225-2206

---

[105] *Alexander v. Johnson*, 742 F.2d 117, 124 (4th Cir. 1984).

Fax:  (804) 786-4239
E-mail:  moshea@oag.state.va.us

## CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of November, 2018, I electronically filed the foregoing Memorandum in Support of Motion to Dismiss with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following CM/ECF participants:

Angela A. Ciolfi
Patrick Stephen Levy-Lavelle
Legal Aid Justice Center
1000 Preston Ave., Suite A
Charlottesville, VA 22903
(434) 529-1810
Fax: (434) 977-0558
Email: angela@justice4all.org
Email: pat@justice4all.org

Jonathan Todd Blank
McGuire Woods LLP
Court Square Building
310 Fourth Street, N.E., Suite 300
Charlottesville, VA 22902
(434) 977-2509
Email: jblank@mcguirewoods.com

David Preston Baugh
David P. Baugh, Esq., PLC
2025 E. Main Street, Suite 114
Richmond, VA 23223
(804) 225-8035
Email: dpbaugh@dpbaugh.com

Leslie Carolyn Kendrick
University of Virginia School of Law
580 Massie Road
Charlottesville, VA 22903
(434) 243-8633
Fax: (434) 924-7536
Email: kendrick@virginia.edu

*Counsel for Plaintiff*

And I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participant: N/A

_____/s/_____
Margaret Hoehl O'Shea, VSB No. 66611
Assistant Attorney General
Criminal Justice and Public Safety Division
Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
Phone: (804) 225-2206
Fax: (804) 786-4239
E-mail: moshea@oag.state.va.us
