| | |
|---|---|
| DAMIAN STINNIE, MELISSA ADAMS, and ADRAINNE JOHNSON, individually, and on behalf of all others similarly situated; WILLIEST BANDY, and BRIANNA MORGAN, individually, and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>        v.<br><br>RICHARD D. HOLCOMB, in his official capacity as the Commissioner of the VIRGINIA DEPARTMENT OF MOTOR VEHICLES,<br><br>        Defendant. | Civ. No: 3:16-cv-00044 |

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF THEIR
MOTION FOR CLASS CERTIFICATION**

**I.     INTRODUCTION**

Plaintiffs seek to represent two classes of persons whose licenses have been or will be suspended automatically when they fail to pay court-related debt. Defendant, Commissioner Richard D. Holcomb, carries out this suspension process under Section 46.2-395 of the Code of Virginia (1) without notice, (2) without a hearing, and (3) without consideration of these persons' inability to pay. Each of these failures constitutes a violation of Plaintiffs' and the class members' constitutional rights. And every class member has been or will be subjected to the Commissioner's uniform practice.

1

As such, Plaintiffs seek to certify two classes. First, a Suspended Class consists of all persons whose driver's licenses are currently suspended for failure to pay court debt under Section 46.2-395. Second, a Future Suspended Class consists of all persons whose driver's licenses will be suspended for failure to pay court debt under Section 46.2-395. All class members had or will have their licenses suspended for failure to pay – without notice, without a hearing, and without consideration of their inability to pay. Plaintiffs fall squarely within these classes. Their individual experiences simply demonstrate the real harm Defendant's actions cause, and establish why the injunctive and declaratory relief sought is necessary. Contrary to Defendant's assertions, the individual effects of Defendant's unlawful practice on the various class members has no bearing on class certification. This is because Plaintiffs seek uniform, class-wide declaratory and injunctive relief.

Plaintiffs seek a declaration that Section 46.2-395 of the Code of Virginia is unlawful and violates their and the class members' rights under the Constitution and laws of the United States. Plaintiffs also seek an injunction (1) to enjoin the Commissioner from enforcing Section 46.2-395 against Plaintiffs and members of the Future Suspended Class; and (2) to remove any suspensions imposed pursuant to Section 46.2-395 from Plaintiffs' and Suspended Class members' driving records. Am. Compl. 43-44, ECF No. 84. This lawsuit seeking injunctive relief for Defendant's uniform practice of violating class members' constitutional rights is precisely the type of suit for which Rule 23(b)(2) was intended to provide class certification. *See Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 614, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997); *Thorn v. Jefferson–Pilot Life Ins. Co.,* 445 F.3d 311, 330 (4th Cir. 2006).

Accordingly, this action should be certified as proposed.

## II. ARGUMENT

### A. Plaintiffs Have Provided Ample Evidence To Show Compliance with Rule 23.

The Defendant is wrong when he implies that satisfying Rule 23 requires Plaintiffs to prove their underlying case. Resp. in Opp'n. to Pls.' Mot. for Class Cert. 9, ECF No. 128. Rule 23 determines merely how a case should proceed and whether the class action mechanism is appropriate, not how the underlying case itself should ultimately be decided. *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 143 n. 2 (4th Cir. 2001) (merits not relevant to certification decision). Contrary to Defendant's assertion, only "*sometimes*" is it "necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982)) (emphasis added). Rather, the Court in *Dukes* quotes *Falcon* for the proposition that "[s]ometimes the issues are plain enough from the pleadings." *Id.*

Here, the essential facts supporting Plaintiffs' motion for class certification are (despite Defendant's attempts to gin up factual variations) not in dispute. Plaintiffs challenge Defendant's implementation of a statewide law that violates the Constitution of the United States. Under that law, there is no notice telling a driver's license holder that they have allegedly defaulted on payment; no hearing on the propriety of license suspension; and no consideration as to the suspendee's inability to pay.[1] Instead, upon default, suspension is mandatory. Whether these failures violate the Constitution, as Plaintiffs allege and believe, has yet to be decided, but

---

[1] Although Defendant states that Plaintiffs are incorrect in asserting that drivers receive "no notice" of alleged default because Virginia law requires the clerk to provide information that a suspension will become effective within 30 days of default, this argument misses the mark. "Notice" that a license *will be* suspended immediately upon default is *not* the same as due process notice of the default itself and of the right to be heard. Resp. in Opp'n. to Pls.' Mot. for Class Cert. 9, ECF No. 128.

3

the nonexistence of these procedures is indisputable, as is their uniform application to all class members.

To muddy the waters, Defendant incorrectly focuses on the Plaintiffs' and class members' inability to pay and the lack of uniformity in their individual financial circumstances. Uniformity in their inability to pay, however, is ultimately not necessary for class certification. The real harms that Virginia's license suspension law has done to the named Plaintiffs and their families merely show the real-world effects of the challenged law. But the systemic lack of due process violates the rights of every suspendee, regardless of their financial circumstance. The essence of this case is not in prejudging who would ultimately be adjudicated as "unable to pay" under a system that granted due process, but in challenging whether a Virginia law that disclaims all process violates the Constitution and the rights of each and every citizen whose license is suspended per its terms.

> **B.** **All Class Members' Claims Stem From the Commissioner's Common Practice – Suspending Licenses Without a Pre-Deprivation Notice and a Hearing Requiring Inquiry About Inability to Pay – Making Certification Under Rule 23(b)(2) Appropriate.**

Defendant's challenges to the proposed classes rest on one irrelevant contention – that not all class members are unable to pay the court fines and costs that resulted in (or will result in) their driver's licenses suspensions. Regardless of whether this assumption is true, it is immaterial to the relief sought and the question of whether this case can proceed as a class action. All of Plaintiffs' claims are in essence process claims – seeking to enjoin the current system in place for driver's license suspensions due to a failure to pay court fines and costs because it provides no process.

First, Count I of the complaint sets out that Section 46.2-395 of the Code of Virginia is unconstitutional for mandating automatic driver's license suspension without notice or a hearing.

4

This procedural due process claim rests on the lack of pre-deprivation notice and a hearing that applies to *everyone* who has had a driver's license suspended under Section 46.2-395.[2] Through Defendant's practices, every driver whose license has been suspended under Section 46.2-395 has had their due process rights violated. Indeed, in the Court's order granting preliminary injunctive relief, the Court noted that "the provision is unconstitutional across the board" because the suspension without notice or a hearing "violates the procedural due process rights of *every driver* whose license is suspended under Section 46.2-395." Order 15 & n.6, ECF No. 126 (emphasis added); *see also id.* at 18 ("§ 46.2-395, on its face, provides no procedural hearing at all."). Thus, Plaintiffs seek relief for *every driver* whose license has been suspended under that provision through the removal of such suspensions. In addition, going forward, *every driver* facing potential suspension under Section 46.2-395 should receive adequate notice and a hearing prior to the suspension of their license. Because these steps are not currently in place, an injunction enjoining Defendant's automatic suspension of licenses under Section 46.2-395 is necessary.

Second, Counts II-V, which are premised on *Bearden v. Georgia*, 461 U.S. 660 (1983) and related cases, and their concern with the disproportionate punishment of the poor, similarly

---

[2] Though Defendant devotes significant space in his brief to the "individualized" factual circumstances of the class members, which he claims vary in (1) notice given, (2) the lag time between notice and deprivation, and (3) "the availability of a post-sentencing ability-to-pay hearing," these supposed "variations" in facts are inapposite. The law that Plaintiffs challenge is uniformly applicable to the class members. It is also unconstitutional because it does not require and guarantee notice, a hearing, and a determination of ability to pay prior to license suspension. Instead, it makes license suspension mandatory upon default. The factual "disparities" that Defendant highlights do not change this underlying and predominant fact. That some class members may have had their financial circumstances assessed in connection with the setting of a payment plan (and not as a prerequisite to the suspension of their license); knew that their license would be suspended in the event of default; or had more or less lag time between the imposition of a fine and the suspension of their license is irrelevant.

5

focus on the failure to have a process in place. Though technically distinct, "due process and equal protection principals converge" when a court considers such claims. *Bearden*, 461 U.S. at 665. Indeed, the remedy commanded by *Bearden* and similar cases is to grant a pre-deprivation process to *everyone* facing suspension with the goal of determining whether the particular individual has the ability to pay. *Id.* at 672-73 (holding that declining to "inquire into the reasons for the failure to pay" is "contrary to the fundamental fairness required by the Fourteenth Amendment."); *see also Alexander v. Johnson*, 742 F.2d 117, 124 (4th Cir. 1984) (in order to avoid an equal protection violation, the state "must take cognizance of the individual's resources, the other demands on his own and family's finances, and the hardships he or his family will endure if repayment is required."). Thus, the relief sought – an injunction prohibiting the suspension of licenses under Section 46.2-395 where an individual's ability to pay has not been assessed prior to deprivation – applies to *every* class member.

In sum, it is the *absence* of procedures to apprise every class member of the suspension, to conduct a hearing, and to determine the class member's ability to pay the assessed fines and costs that forms the basis of the constitutional violations. The requested relief simply seeks to prevent Defendant from continuing this practice.

Focusing on the classes, the Suspended Class seeks an injunction ordering the removal of license suspensions undertaken pursuant to Section 46.2-395, and enjoining the Commissioner from charging a fee to reinstate licenses that are otherwise eligible (after such suspension removals) for reinstatement. Each and every member of the Suspended Class is entitled to this relief as their licenses were suspended without notice, without a hearing, and without consideration of their ability to pay. Thus, the Defendant would have to remove suspensions for failure to pay from everyone's license (whether or not such failure resulted from their inability to

6

pay), because *all of those people* were denied the process owed prior to suspension.[3]

The Future Suspended Class seeks to enjoin Defendant from enforcing Section 46.2-395 until the Commonwealth implements a system that complies with the United States Constitution (by providing pre-deprivation notice and an ability-to-pay hearing). Again, this procedural requirement will apply to every member in the Future Suspended Class and protect them from future suspensions.

The pivotal question in certifying a (b)(2) class is whether the requested relief applies to the class as a whole. *See Dukes*, 564 U.S. at 360 (citing Rule 23(b)(2)). Here, it does, as both classes seek a declaration that Section 46.2-395 is unconstitutional and the Commissioner's policies, practices, acts, and/or omissions are unlawful and violate the class members' constitutional rights.

### C. Defendant's Cohesion Defense Fails Because Plaintiffs Seek Rule 23(b)(2) Certification Without Monetary Relief.

Defendant's contention that the classes are not "cohesive", claiming (generically and without citation to specific evidence) that members have "disparate factual circumstances that would require individualized determinations", misses the mark. Resp. in Opp'n. to Pls.' Mot. for Class Cert. 19, ECF No. 128. The Fourth Circuit has expressly stated that "Rule 23(b)(2)'s

---

[3] What is critical to all of Plaintiffs' claims is that Defendant suspends all licenses without due process notice, without a hearing, and without an inquiry into an individual's ability to pay court debt. Removal of such suspensions is necessary to correct Defendant's constitutional violations. Requiring a constitutionally adequate process prevents future violations and avoids any "windfall" Defendant claims. Once such suspensions are removed, Defendant can institute a constitutionally sufficient process to filter drivers unwilling to pay from those unable to pay, and take appropriate action (including suspension) against the "unwilling" drivers. Critically, there is no need to identify the individual class members because everyone would be entitled to the post-removal notice, hearing, and assessment. Only individuals who are unable to pay would ultimately obtain the benefit afforded under the process required by Counts II-V, but that process is nonetheless required and wholly absent now.

7

categorical exclusion of class actions seeking primarily monetary relief ... *ensures that the class is sufficiently cohesive* [such] that the class-action device is properly employed." *Thorn v. Jefferson–Pilot Life Ins. Co.,* 445 F.3d 311, 330 (4th Cir. 2006) (emphasis added); *see also Berry v. Schulman*, 807 F.3d 600, 608 (4th Cir. 2015) ("[B]ecause of the group nature of the harm alleged and the broad character of the relief sought, the (b)(2) class is, by its very nature, assumed to be a homogenous and cohesive group with few conflicting interests among its members.") (quoting *Allison v. Citgo Petroleum Corp.,* 151 F.3d 402, 413 (5th Cir. 1998)).

In this Circuit, the "presumption of cohesiveness" breaks down only where the class action "is more about individual monetary awards than it is about uniform injunctive or declaratory remedies." *Berry*, 807 F.3d at 608-09. Indeed, the only cases involving (b)(2) classes in which "cohesiveness" has been a concern are medical monitoring cases where "the remedy sought must often be individualized based on the exposure level and medical history of the class members."[4] *Harris v. Rainey*, 299 F.R.D. 486, 498 (W.D. Va. 2014) (referencing *Rhodes v. E.I. du Pont de Nemours & Co.*, 253 F.R.D. 365, 371–72 (S.D.W. Va. 2008) (medical

---

[4] Medical monitoring cases, such as those cited by Defendant, are far afield from the civil rights cases and constitutional challenges for which the Rule 23(b)(2) procedure was specifically designed. *See* Newberg on Class Actions §§ 4:26, 4:45 (5th ed.). In the context of medical monitoring (in which plaintiffs allegedly exposed to toxic substances, but not yet manifesting any physical ailments, seek medical monitoring for early disease detection), courts face numerous, individual factual questions (e.g., resolving who was exposed to the substance, and for what period of time, and for whom monitoring is the appropriate remedy) that affect who should be granted injunctive relief, and thus often make class treatment inappropriate. *See id.* at § 4:45; *see also Barnes v. Am. Tobacco Co.,* 161 F.3d 127, 146 (3d Cir. 1998). But cohesiveness in the context of a constitutional challenge to a uniform state law, as here, cannot be challenged because the remedy sought, if granted, would necessarily apply to all. Newberg on Class Actions § 4:34 (5th ed.) ("The glue that makes a class action efficient in the (b)(2) context is that the class members' claims are so inherently intertwined that injunctive relief as to any would be injunctive relief as to all. For example, if a prisoner in a prison conditions lawsuit secures a ruling that a prison policy violates the Constitution, the court-ordered injunctive relief will necessarily apply to all other prisoners." Cohesiveness is but the "test to ensure that such glue in fact exists[.]")

8

monitoring case) and *Coleman v. Union Carbide Corp.*, No. CIV.A. 2:11–0366, 2013 WL 5461855, at *19–21 (S.D.W. Va. Sept. 30, 2013) (same)).[5] Here, Plaintiffs and class members seek class-wide declaratory and injunctive relief from an unconstitutional system of license suspensions. Although the process afforded in a constitutional system for license suspensions may ultimately require individual determinations, that does not change the uniform nature of the relief in this case—the removal of unconstitutional driver's license suspensions and the prevention of future constitutional violations—or the fact that Plaintiffs and class members are not seeking monetary damages.

> **D. Class Certification Is Appropriate Because Plaintiffs Are Seeking Uniform and Not Individualized Relief.**

As set forth above, no individualized relief is sought by the classes. If the classes were certified, no individual hearings would be required and no manageability issues would arise. Instead, the relief sought would apply uniformly to the class members. Although the Plaintiffs' testimony and affidavits demonstrate the very real harms inflicted by Defendant's constitutional violations, the claims and the requested relief turn on the *Defendant's* policies and practices. "It is clear that here, whatever factual nuances may exist among putative class members, the legal relief sought is the same: a declaratory judgment striking down Virginia's law[] [suspending driver's licenses under Section 46.2-395] and a permanent injunction barring [its] enforcement." *Harris*, 299 F.R.D. at 490. This "relief rests on identical questions of law and would clearly resolve the claims 'classwide' and in 'one stroke.'" *Id.*

---

[5] Notably, both *Rhodes* and *Coleman* predate the Fourth Circuit's decision in *Berry* and relied upon non-controlling Third Circuit caselaw.

9

Although some class members could have established an inability to pay the assessed fines and costs at the time of suspension while others presumably could not, had a process been in place to take into consideration ability to pay, *all class members* were deprived of the opportunity to have their economic status taken into account.[6] Stated differently, Defendant conflates two distinct things – whether individualized hearings are needed to define membership in a cognizable class for the purposes of class certification in this case (they are not), and the fact that a due process regime of individualized hearings could rescue Section 46.2-395 (were it to be amended as such) from being unconstitutional. Here, all that matters for class certification purposes is that the relief sought applies to all class members. It does.

### E. Defendant's Direct Action Defense Ignores that Defendant's Conduct Need Not Be Damaging To Each Class Member under Rule 23(b)(2).

While Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class," "*it is well-settled that the defendant's conduct described in the complaint need not be directed or damaging to every member of the class*." Newberg on Class Actions § 4:28 (5th ed.) (emphasis added); *see also Harris*, 299 F.R.D. at 494–95 (quoting Wright & Miller § 1775) (in the 23(b)(2) context, "the party opposing the class does not have to act directly against each member of the class").

Instead, "[t]he key is whether the party's actions would affect all persons similarly situated so that those *acts apply generally to the whole class*." *Id*. (emphasis added)*; see also* Fed. R. Civ. P. 23, Advisory Committee Note to 1966 Amendment of Subdivision (b)(2) ("Action or inaction is directed to a class within the meaning of [Rule 23(b)(2)] even if it has taken effect or is threatened only *as to one or a few members of the class*, provided it is based on grounds which have general application to the class.") (emphasis added). As such, "the plaintiffs

---

[6] *See* discussion at fn. 3, *supra*.

do not need to establish that [the] defendants' conduct is damaging or offensive to every member of the proposed class." *Harris*, 299 F.R.D. at 497 (quoting *Kernan v. Holiday Universal, Inc.*, No. JH90–971, 1990 WL 289505, at *5 (D. Md. Aug. 14, 1990)); *id.* ("[a]ll members of a class 'need not be aggrieved by or desire to challenge the defendants' conduct in order for some of them to seek relief under Rule 23(b)(2).'") (quoting Wright & Miller § 1775 (internal alterations omitted)).

This principle is well recognized in this district. In *Scott v. Clarke*, a class of female prisoners sought a ruling that the facility was providing inadequate medical care in violation of the Eighth Amendment. 61 F. Supp. 3d 569, 573 (W.D. Va. 2014). Although it was unknown which class members would seek medical care or had suffered harm as a result of the inadequate medical care provided, this Court certified the class. *Id.* at 587, 591. The Court reasoned that the "key factual issues at the heart of Plaintiffs' claims of constitutionally deficient medical care do not turn on an individual plaintiff's particular personal health concerns, but rather on [the defendants'] alleged systemic failure to provide a level of medical care to all of its residents that complies with constitutional norms." *Id.* at 585-86. This is because "every inmate" at the facility "is necessarily subject to the same medical, mental health, and dental care policies and practices of the [defendant]" and every one of them is susceptible to the risk of harm if the defendant's policies provide constitutionally deficient care. *Id.* at 587 (quoting *Parsons v. Ryan*, 754 F.3d 657, 678-79 (9th Cir. 2014)).

Similarly, in *Harris*, the plaintiffs sought to certify a class of all same-sex couples in Virginia in seeking to declare unconstitutional and enjoin the defendants' denial of marriage applications for same-sex couples. 299 F.R.D. at 489. The defendants argued that not all same-sex couples necessarily wanted to get married or have their marriage recognized. *Id.* at 490, 494.

11

The court explained that the subjective intent of the class members did not matter because "[a]ny of the putative subclass members would receive the same treatment from [defendants] (the denial of their marriage application) for the same reason (being a same-sex couple)." *Harris*, 299 F.R.D. at 495. Thus, the relief would apply to the class as a whole regardless of who took advantage of it.

Here, the Defendant's conduct – the failure to provide notice and an ability to pay hearing prior to suspending the driver's license – "appl[ies] generally to the class." Fed. R. Civ. P. 23(b)(2). As in *Scott*, the key factual issues do not turn on Plaintiffs' particular personal finances, but rather on the Commissioner's and the statute's across-the-board failure to provide due process notice, a hearing, and consideration of the class member's ability to pay. Just as the courts cannot predict each and every person who will need medical treatment or seek to get married, they cannot predict each and every person who will be unable to pay their court fines and costs. An individual's economic status can fluctuate – a person who is well-off one day, may not be the next. That is why the relief mandated by *Bearden* and related cases (and sought by Plaintiffs here) sets out the process whereby, prior to revocation for failure to pay, the revoking party "must inquire into the reasons for the failure to pay." 461 U.S. at 672.

*Harris* and *Scott* demonstrate that the critical inquiry in addressing certification under Rule 23(b)(2) is whether the requested relief would apply to the class as a whole. Fed. R. Civ. P. 23(b)(2) (certification is appropriate when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."); *see also Cole v. City of Memphis*, 839 F.3d 530, 542 (6th Cir. 2016) ("the focus in a (b)(2) class is more heavily placed on the nature of the remedy sought"); *Shelton v. Bledsoe*, 775 F.3d 554, 561 (3d Cir. 2015)

12

(same).  Here, the requested relief applies to each and every member of the respective classes.

That alone satisfies the requirements of 23(b)(2).

> **F. Defendant's Ascertainability Defense Fails Because the Class Members Are Defined in a Manner that Makes Them Easily Identifiable.**

While the Fourth Circuit has not explicitly addressed the issue[7], Defendant overstates the "ascertainability" requirement for a class action as, where applied at all, it is greatly relaxed in the context of Rule 23(b)(2) class actions.  *See, e.g., Cole v. City of Memphis*, 839 F.3d 530, 542 (6th Cir. 2016), *cert. denied*, 137 S. Ct. 2220 (2017) ("The precise identity of each class member need not be ascertained here, particularly given that notice is not required as it would be in a (b)(3) class."); *Shelton v. Bledsoe*, 775 F.3d 554, 561 (3d Cir. 2015) ("Because the focus in a (b)(2) class is more heavily placed on the nature of the remedy sought, and because a remedy obtained by one member will naturally affect the others, the identities of individual class members are less critical in a (b)(2) action than in a (b)(3) action."); *Shook v. El Paso Cnty.*, 386 F.3d 963, 972 (10th Cir. 2004) ("[M]any courts have found Rule 23(b)(2) well suited for cases

---

[7] Defendant cites *EQT Prod. Co. v. Adair*, 764 F.3d 347 (4th Cir. 2014) for the proposition that the Fourth Circuit holds that "ascertainability" is a requirement for Rule 23(b)(2) classes.  Resp. in Opp'n. to Pls.' Mot. for Class Cert. 20, ECF No. 128.  *EQT*, however, was a hybrid Rule 23(b)(2) and (b)(3) class.  It did not give the Court occasion to consider whether ascertainability need be proved when only a 23(b)(2) class is sought to be certified, or when the requested relief is a declaration that a law is unconstitutional and a uniform injunction against its enforcement.  Requiring that a class be ascertainable where individual relief is sought (as in *EQT*) is categorically different than requiring that ascertainability be proven here.  Indeed, district courts in the Fourth Circuit agree that *EQT* does not resolve the issue of whether ascertainability must be proven in a purely 23(b)(2) context.  *Buffkin v. Hooks*, No. 1:18CV502, 2018 WL 6271855, at *5 (M.D.N.C. Nov. 30, 2018) (noting that while the Fourth Circuit has not specifically addressed the issue, most courts hold that the requirement of ascertainability is applied less stringently in Rule 23(b)(2) cases).  Further, where ascertainability *is* discussed in the Rule 23(b)(2) context, courts acknowledge that class members "need not be identified at the time of certification" and that "the key" of the ascertainability inquiry is the "indivisible nature of the injunctive or declaratory remedy warranted" such that "each individual class member would [not] be entitled to a *different* injunction or declaratory judgment against the defendant." *Id*. (internal citations omitted).  The proposed classes here clearly meet this more lenient ascertainability standard.

13

where the composition of a class is not readily ascertainable; for instance, in a case where the plaintiffs attempt to bring suit on behalf of a shifting prison population."); *Yaffe v. Powers*, 454 F.2d 1362, 1366 (1st Cir. 1972) ("[N]otice to the members of a (b)(2) class is not required and the actual membership of the class need not therefore be precisely delimited.").

As the Sixth Circuit recently explained,

> [i]n the Rule 23(b)(3) context, ascertainability aids the inherent efficiencies of the class device by ensuring administrative feasibility, and as we read our own precedent and the precedent of other courts, ascertainability is a requirement tied almost exclusively to the practical need to notify absent class members and to allow those members a chance to opt-out and avoid the potential collateral estoppel effects of a final judgment… But "the requirement that the class be defined in a manner that allows ready identification of class members serves several important objectives that either do not exist or are not compelling in (b)(2) classes." [] *Since notice is not required for a (b)(2) class, the practical efficiencies that come with knowing the precise membership of the class are nonexistent*.

*Cole*, 839 F.3d at 541 (internal citations omitted) (emphasis added).

The advisory committee's notes for Rule 23(b)(2) further demonstrate that ascertainability is not required in the (b)(2) context because the defendant's action need not have an "effect" on all members within the class, such as civil-rights actions where members of the class "are incapable of specific enumeration." *See* Fed. R. Civ. P. 23 advisory committee's note to 1966 amendment; *see also Cole*, 839 F.3d at 542. Indeed, if courts were to apply a strict ascertainability requirement in the 23(b)(2) context, certification of the very civil-rights cases that the rule was designed to foster would be virtually impossible. Newberg on Class Actions § 4:26 (5th ed.) ("The rule makers … designed Rule 23(b)(2) specifically for cases stemming from the civil rights movement. These cases, like the iconic *Brown v. Board of Education*, tended to seek broad declaratory or injunctive relief for a *numerous and often unascertainable or amorphous class of persons*.") (emphasis added). Because the proposed classes seek certification under Rule 23(b)(2), the ascertainability requirement does not apply.

14

The irony in this case is that Defendant is now trying to exploit *its own constitutional violation* – the failure to conduct a pre-deprivation assessment of the class members' ability to pay – as a basis to prevent class-wide relief. This cannot be permitted. Class actions are equitable devices and relief should be afforded where justice so requires. *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 833 (1999) (discussing history of class action mechanism).

The class definitions are clear – all persons whose driver's licenses are currently suspended or will be suspended due to their failure to pay court debt, pursuant to Section 46.2-395 of the Code of Virginia. They are readily identifiable – the DMV can locate from its own records the individuals whose licenses are suspended pursuant to Section 46.2-395. Thus, ascertainability is not at issue here.

### G. Defendant's Typicality and Commonality Defenses Fail Because the Defendant's Course of Conduct is the Same.

Where, as here, the claim arises from the same event, practice, or course of conduct and is based on the same legal theory, the commonality and typicality requirements are met.[8] *Manuel v. Wells Fargo Bank, Nat'l Ass'n*, No. 3:14CV238, 2015 WL 4994549, at *12 (E.D. Va. Aug. 19, 2015) (finding commonality where "[a]ll class members will have been subjected to this practice"); *Thomas v. FTS USA, LLC*, 312 F.R.D. 407, 419 (E.D. Va. 2016) (finding typicality where named plaintiff "was subjected to the same procedures as all putative class members and it is those procedures that are challenged"). Here, because Plaintiffs and every class member were all subjected to the same lack of process, Plaintiffs meet the typicality and commonality requirements. Every one of the members of the proposed classes is equally subject

---

[8] Defendant does not challenge the other Rule 23(a) requirements.

to Section 46.2-395 at the time they default on payments owed to the courts.  Furthermore, the requested relief sought for each class, respectively, would benefit all members of that class.

Defendant tries to stake out a "factual question at the center of each of the as-applied claims – whether each class member is in fact 'unable to pay,'" but this misses the mark.  As noted, Section 46.2-395 provides no process whatsoever—no notice, no opportunity to be heard, and no consideration of inability to pay.  Whether a person is "unable to pay" would be central to any kind of due process regime that might resuscitate Section 46.2-395 from unconstitutionality, but no such determination need be made here to define cognizable classes.  *Bearden* and related cases make clear that constitutional court debt recoupment systems must give process to everyone.  Virginia, by contrast, gives process to no one.  Thus, anyone suspended in the absence of such process has a claim for relief, and the commonality and typicality requirements are met.

### III. CONCLUSION

WHEREFORE, for the foregoing reasons, Plaintiffs respectfully request that the Court enter an order certifying the Suspended and Future Suspended Classes and granting such further relief that the Court deems just and proper.

Date:   January 31, 2019

By:  */s/ Jonathan T. Blank*
Jonathan T. Blank (VSB No.: 38487)
Travis C. Gunn (VSB No.: 86063)
Benjamin P. Abel (VSB No.: 88961)
Brooke A. Weedon (VSB No.: 91164)
Alyssa M. Pazandak (*pro hac vice*)
MCGUIREWOODS LLP
Court Square Building
310 Fourth Street NE, Suite 300
Post Office Box 1288
Charlottesville, VA 22902
Ph: (434) 977-2509
Fax: (434) 980-2258
jblank@mcguirewoods.com

Angela A. Ciolfi (VSB No.: 65337)
Pat Levy-Lavelle (VSB No.: 71190)
LEGAL AID JUSTICE CENTER
1000 Preston Avenue, Suite A
Charlottesville, VA 22903
Ph: (434) 529-1810
Fax: (434) 977-0558
*angela@justice4all.org*

David P. Baugh (VSB No.: 22528)
DAVID P. BAUGH, ESQ., PLC
2025 E. Main Street, Suite 114
Richmond, VA 23223
Ph: (804) 743-8111
Fax: (804) 225-8035
*dpbaugh@dpbaugh.com*

Leslie Kendrick (VSB No.: 90104)
580 Massie Rd.
Charlottesville, VA 22903
Ph: (434) 243-8633
Fax: (434) 924-7536
*kendrick@virginia.edu*

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 31, 2019, I electronically filed the foregoing instrument with the Clerk of Court using the CM/ECF System, which will send a notification of such filing to the following CM/ECF participants:

    Janet W. Baugh (VSB No. 44649)
    Senior Assistant Attorney General
    Margaret Hoehl O'Shea (VSB No. 66611)
    Christian A. Parrish (VSB No. 446427)
    Assistant Attorneys General
    Office of the Attorney General
    202 North Ninth Street
    Richmond, Virginia 23219
    Phone: (804) 786-4596
    Fax: (804) 786-4239
    E-mail: jbaugh@oag.state.va.us

    David M. Parker
    Neil K. Gilman
    Maya M. Eckstein
    Stuart A. Raphael
    Trevor S. Cox
    Hunton Andrews Kurth LLP
    Riverfront Plaza, East Tower
    951 East Byrd Street
    Richmond, VA 23219
    E-mail: dparker@HuntonAK.com
           ngilman@HuntonAK.com
           meckstein@HuntonAK.com

                                    By:    */s/ Jonathan T. Blank*

                                            Jonathan T. Blank (VSB No.: 38487)
                                            MCGUIREWOODS LLP
                                            Court Square Building
                                            310 Fourth Street NE, Suite 300
                                            Post Office Box 1288
                                            Charlottesville, VA 22902
                                            Ph: (434) 977-2509
                                            Fax: (434) 980-2258

107094918_1.docx