**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION**

| | |
|---|---|
| DAMIAN STINNIE, MELISSA ADAMS, and ADRAINNE JOHNSON, individually, and on behalf of all others similarly situated; WILLIEST BANDY, and BRIANNA MORGAN, individually, and on behalf of all others similarly situated,<br><br>       Plaintiffs,<br><br>       v.<br><br>RICHARD D. HOLCOMB, in his official capacity as the Commissioner of the VIRGINIA DEPARTMENT OF MOTOR VEHICLES,<br><br>       Defendant. | Civ. No: 3:16-cv-00044 |

**PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
CASE AS MOOT OR, IN THE ALTERNATIVE, FOR A STAY OF PROCEEDINGS**

Plaintiffs, by their undersigned counsel, state as follows for their Brief in Opposition to Defendant's Motion to Dismiss Case as Moot or, in the Alternative, for a Stay of Proceedings:

**I.     INTRODUCTION**

This case is not moot. Virginia Code § 46.2-395 is still the law of the Commonwealth of Virginia. Budget Amendment No. 33 (the "Budget Amendment") did not and could not change that reality. The Budget Amendment, while a very important step by the General Assembly, simply suspended the operation of Virginia Code § 46.2-395 for one budget cycle, "freezing" court debt and restoring licenses only temporarily. Moreover, Defendant seeks dismissal of this action now, when the Department of Motor Vehicles (the "DMV") has not yet implemented the Budget Amendment and cannot do so until July 1, 2019. As of the date of this filing, hundreds of thousands

of Virginians face a myriad of hardships such as being unable to drive to work or medical appointments—without risk of jail time—because their licenses are currently suspended due to their inability to pay court debt. It is also unclear that implementation of the budget on July 1, 2019 will provide even temporary relief to all putative class members. Equally important, the expectation of future harm from Virginia Code § 46.2-395 is unequivocally real so long as § 46.2-395 has not been permanently repealed. Both today and in the future, Plaintiffs remain at the mercy of Virginia Code § 46.2-395.

As it stands, Plaintiffs and putative class members face imminent[1] re-suspension of their driver's licenses after the budget expires on June 30, 2020. Re-suspension is not speculative and remains the *automatic* consequence of that expiration. Permanent amendment or repeal is the only legislative solution that resolves Plaintiffs' situation. At this point, it is pure speculation to assume that permanent repeal will be back on the legislative agenda in 2020. Even then, the General Assembly would still need to vote to repeal the statute. Until—and only if—that legislative resolution is reached, § 46.2-395 remains the law and re-suspension remains the default outcome after the budget expires.

Additionally, more than 300,000 members of the proposed Suspended Class are not affected by the Budget Amendment. The word "solely" limits the effect of the Budget Amendment

---

[1] Defendant's Reply in Support of Expedited Motion to Stay Discovery (EFC No. 151) cites to four inapposite cases to argue that Plaintiffs do not face imminent harm. The four cases do not help Defendant but rather support the Plaintiffs. *Meghrig v. KFC Western, Inc.*, 516 U.S. 479 (1996), is inapposite because it deals with a RCRA statutory pre-condition for filing a citizen suit. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332 (2006), proves Plaintiffs' point that Defendant's argument cannot be based on how a legislature will act in the future just as Defendant tries to do with his present Motion. *Clapper v. Amnesty Int'l USA,* 568 U.S. 398 (2013), is distinguishable because speculation of a wiretap result is different than the certainty of the known end date of Virginia's budget. *Doe v. Va. Dep't of State Police*, 713 F.3d 745 (4th Cir. 2013), is based on something that may happen in the future as opposed to the certainty of the budget expiring on June 30, 2020.

2

on those individuals whose licenses were suspended prior to July 1, 2019, pursuant both to § 46.2-395 and to an independent (non-court debt) suspension where the independent (non-court debt) suspension has not been lifted. This litigation clearly seeks removal of § 46.2-395 suspensions for these more than 300,000 people as an item of requested relief, but the Budget Amendment's language does not clearly afford them reinstatement.

Ultimately, Plaintiffs have not received the relief sought. The statute has not been declared unconstitutional. Plaintiffs have not been relieved of the fear of losing their licenses without notice and an opportunity to be heard. Equitable relief is needed now because the Commissioner is speculating on a repeal that cannot be guaranteed.

The Court also should reject Defendant's alternative request to stay this case until the General Assembly has the opportunity to consider a permanent resolution in 2020. That request is rooted in the same speculation as his Motion to Dismiss, and Defendant's speculation should not be used to drive this litigation at the pace he desires to the detriment of nearly a million Virginians. Indeed, there is no reason to delay the Motion to Dismiss, class certification, discovery, dispositive motions, or—if needed—a trial. The Commonwealth's grounds for delay—that the constitutional issues are difficult and sensitive and the myriad other reasons given—are not a reason to delay adjudication.

In short, Va. Code § 46.2-395 remains the law in Virginia. It still affects all Virginians at least indirectly, with nearly one million suffering directly from the harms it has caused. The General Assembly did a great thing with the Budget Amendment, but it has failed twice to rid the Commonwealth once and for all of § 46.2-395's unconstitutional practice. Plaintiffs want their day

3

in court with the hope of a positive outcome to this civil rights issue. It is time to let justice take its course.

## II. BACKGROUND

### A. Virginia's Statutory Scheme

Plaintiffs rely on the Court's December 21, 2018 Memorandum Opinion (ECF No. 126) for its explanation of Virginia Code § 46.2-395. Specifically, if a person fails to pay assessed costs within 40 days of the designated date, a fines and costs indicator is automatically and electronically transmitted to DMV, and then DMV records a license suspension and sends a letter informing the defaulted individual that his or her license has been suspended for failure to pay court debt. (ECF No. 126, ¶¶ 26–31.) Plaintiffs also rely on their Memorandum in Opposition to Defendant's Motion to Dismiss (ECF No. 130) and their Memorandum in Support of Plaintiffs' Motion for Class Certification (ECF No. 87). Plaintiffs further rely on the testimony provided on November 15, 2018 at the preliminary injunction hearing.

### B. Governor Northam's Budget Amendment

On February 11, 2019, the Virginia House of Delegates' Courts of Justice Subcommittee on Criminal Justice voted to pass by indefinitely a bill that would have repealed Virginia Code § 46.2-395. *See* S.B. 1013, Subcommittee Vote (Feb. 11, 2019), https://lis.virginia.gov/cgi-bin/legp604.exe?191+vot+H0801V0134+SB1013 (last visited May 7, 2019). In response, on March 26, 2019, Governor Northam proposed the Budget Amendment to provide temporary relief to individuals whose driver's licenses had been automatically suspended for failure to pay court debt. *See* Commonwealth of Virginia Office of the Governor, *Governor Northam Announces Budget Amendment to Eliminate Driver's License Suspensions for Nonpayment of Court Fines and Costs* (Mar. 26, 2019), https://www.governor.virginia.gov/newsroom/all-releases/2019/march/headline-839710-en.html (last visited May 7, 2019).

Contrary to the misquotes attributed to Plaintiffs' counsel,[2] the true and accurate statement authorized by the Executive Director of the Legal Aid Justice Center on the day the Budget Amendment was passed is as follows:

> Without question, we celebrate an important victory today along with many of our clients in the *Stinnie v Holcomb* litigation, but we also hold the understanding that our efforts are not complete. **The passage of this amendment does not moot the *Stinnie* case**, nor does it end our legislative advocacy: **the action taken in this amendment lives only as long as the current budget cycle, "freezing" court debt-related driver's license suspensions until the existing statute can be fully repealed**.

Legal Aid Justice Center Press Release, *Driver's Licenses Reinstated for Thousands*, https://www.justice4all.org/2019/04/03/drivers-licenses-reinstated-for-thousands (Apr. 3, 2019) (emphasis added).

### C.  The 2019 Elections and the 2020 General Assembly Session

In November 2019, all 100 House of Delegates seats and all 40 Senate seats are up for re-election. *See* Ballotpedia, *Virginia Senate elections, 2019*, https://ballotpedia.org/Virginia_State_Senate_elections,_2019; *Virginia House of Delegates elections, 2019*, https://ballotpedia.org/Virginia_House_of_Delegates_elections,_2019. The Legal Aid Justice Center hopes there are 140 co-patrons to reintroduce legislation to repeal Va. Code § 46.2-395 in the 2020 session, but no Senator or Delegate is guaranteed that they will be re-elected to reintroduce or introduce a repeal bill in 2020. In fact, because there are a number of primaries, the Defendant cannot know—much less predict—who all the candidates are going to be.

---

[2] Defendant mistakenly claims that Plaintiffs' counsel conceded that this case is moot by quoting two news articles. (Def.'s Mem. Supp. Mot. Dismiss at 1 n.1 & 6 n.26, ECF No. 143.)

### III. ARGUMENT

#### A. This Lawsuit is Not Moot.

*1. Legal Standard*

Article III of the United States Constitution limits federal courts to the resolution of actual cases and controversies, and this "requirement subsists through all stages of federal judicial proceedings." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990). Accordingly, "[t]he parties must continue to have a 'personal stake in the outcome' of the lawsuit." *Id.* at 478 (citations omitted). A case is moot "when the challenged conduct ceases such that there is no reasonable expectation that the wrong will be repeated, then it becomes impossible for the court to grant any effectual relief whatever to the prevailing party[.]" *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000) (quotations and citation omitted). "A case is not moot . . . if a party can demonstrate that the apparent absence of a live dispute is merely a temporary abeyance of a harm that is 'capable of repetition, yet evading review.'" *Brooks v. Vassar*, 462 F.3d 341, 348 (4th Cir. 2006) (quoting *Mellen v. Bunting*, 327 F.3d 355, 364 (4th Cir. 2003)).

*2. The Budget Amendment is Temporary and Not Capable of Mooting this Case*

Cases involving the constitutionality of a statute can be mooted in two ways: (1) by the amendment of that statute; or (2) by the repeal of that statute. *See Brooks*, 462 F.3d at 348 ("When a legislature *amends or repeals* a statute, a case challenging the prior law can become moot 'even where re-enactment of the statute at issue is within the power of the legislature.'" (emphasis added)). Neither is the case here. The Budget Amendment at issue in this case is not a repeal or amendment of § 46.2-395 and merely limits enforcement of § 46.2-395 for a temporary duration— until the budget expires in June 2020. This distinction is critical because a *temporary* reprieve from an unconstitutional statute does not moot a challenge in the same manner as a *permanent* legislative change.

6

The two cases cited by Defendant prove the distinction between a budget amendment and a permanent repeal. In *Brooks*, the plaintiffs challenged Virginia's Alcoholic Beverage Control Act on the grounds that its "Distribution, Delivery, and Shipping Privileges" unconstitutionally discriminated against out-of-state producers and sellers of wine and beer. The district court ruled in favor of the plaintiffs. Before the appeal was heard, and in response to the district court's decision declaring those privileges unconstitutional, the Virginia General Assembly amended the statute at issue to track the district court's order. The unconstitutional language subject to the plaintiffs' challenge, therefore, was no longer the law. On appeal, the Fourth Circuit ruled that the legislature's intervention—which changed the law permanently, subject only to future legislative action—mooted its need to rule. The permanent nature of that amendment distinguishes *Brooks* from the present case where there is no amendment of Virginia Code § 46.2-395, but rather only a temporary budget provision.

The same is true in *Central Radio Co. v. City of Norfolk*, 811 F.3d 625, 631 (4th Cir. 2016). There, the Fourth Circuit declared an appeal as moot because the General Assembly amended the statute at issue (a law exempting certain flags, emblems, and works of art from regulation) and removed the challenged language. There, like *Brooks*, the unconstitutional language was permanently omitted from the law. In the present case, Va. Code § 46.2-395 is still the law, temporarily halted for a limited time period. In *Central Radio*, the plaintiff was subject to future harm *only if* intervening legislative action took place (*i.e.*, the legislature acted to re-enact the unconstitutional law). Consequently, the Fourth Circuit decided that there was "little likelihood" that the legislature would reenact the statute as previously written. *Central Radio*, 811 F.3d at 632. In reaching its decision, the court afforded great weight to the permanent nature of the amendment and the uncertainty surrounding future legislative action that would be needed to change it.

7

Here, Va. Code § 46.2-395 remains wholly unchanged. The temporary Budget Amendment relieves Plaintiffs from its enforcement for just one year. A mere 40 days after the budget expires on June 30, 2020, and potentially as soon as July 1, 2020, the license suspensions lifted by the Budget Amendment will be reinstated against nearly one million Virginians. The risk of future harm, therefore, is not only real, it is the default consequence of the law as written. In the absence of repeal, Plaintiffs' constitutional challenge remains live. *See Carpenter v. Dep't of Transp.*, 13 F.3d 313, 314 n.1 (9th Cir. 1994) (finding case was not moot where programmatic change cited by defendant was only temporary); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983) (noting that a citywide moratorium would not moot an otherwise valid claim for injunctive relief because moratorium by its terms was not permanent). Were the Court to rule otherwise, it would create a perverse incentive for lawmakers to avoid litigation by temporarily relieving plaintiffs of the harm caused by unconstitutional or illegal practices. The ability of lawmakers to moot a challenge to unconstitutional laws without enacting permanent change would hinder the judicial branch's function of checking other branches of government.

Moreover, the Defendant, like the losing plaintiff in *Central Radio*, can only speculate about the possibility of legislative action. Defendant argues that "[a] permanent repeal of . . . § 46.2-395 is *likely* to be back on the legislative agenda in 2020." (Def.'s Mem. Supp. Mot. Dismiss 5 (emphasis added), ECF No. 143.), but offers no conclusive evidence indicating that such an effort would be successful. Defendant does not even know who will be voting on the repeal if a repeal is proposed. Defendant further ignores that § 46.2-395 has not been repealed to date and that the most recent attempt to repeal the statute failed at the hands of just four members of the General Assembly. *See* Dave Ress, *Of gatekeepers and drivers licenses*, Daily Press (Feb.

8

11, 2019 6:45pm), http://www.dailypress.com/news/politics/shad-plank-blog/dp-nws-drivers-license-suspension-20190211-story.html.

In short, Defendant cites no case that supports the proposition that a temporary budget amendment moots a constitutional challenge, and this case should not be the first.

### 3. *Plaintiffs Have Not Conceded Mootness*

Defendant's suggestion that this case is moot by Plaintiffs' own admission is disingenuous at best. As an initial matter, Defendant offers no legal basis that supports its assertion that this case can be deemed moot based on comments made by Plaintiffs' counsel outside of litigation. Defendant does not assert judicial estoppel nor could he. Plaintiffs' out-of-court statements cannot serve to estop Plaintiffs from pursuing this case. *See King v. Herbert J. Thomas Mem'l Hosp.*, 159 F.3d 192, 196 (4th Cir. 1998) (explaining that judicial estoppel applies where inconsistent positions are taken in judicial or administrative *proceedings*). Moreover, contrary to Defendant's claim, Plaintiffs have not conceded, and will not concede, that this case is moot.

Most notably, Plaintiffs have not received the relief sought. Plaintiffs filed this lawsuit so that the Court would declare § 46.2-395 unconstitutional. While the temporary Budget Amendment is a step in the right direction, it does not repeal § 46.2-395 or its future, unconstitutional effects. Plaintiffs' "greatest wish," in turn, has not been granted. As made clear in the Legal Aid Justice Center's post-amendment press release, the Budget Amendment is just the beginning:

> [W]e also hold the understanding that our efforts are not complete. **The passage of this amendment does not moot the *Stinnie* case**, nor does it end our legislative advocacy: **the action taken in this amendment lives only as long as the current budget cycle, "freezing" court debt-related driver's license suspensions until the existing statute can be fully repealed**.

9

Legal Aid Justice Center Press Release, *Driver's License Reinstated for Thousands*, https://www.justice4all.org/2019/04/03/drivers-licenses-reinstated-for-thousands/ (Apr. 3, 2019) (emphasis added).

### 4. *Plaintiffs Qualify for Equitable Relief*

Defendant alternatively argues that the case should be dismissed as moot for "prudential reasons." Defendant erroneously suggests that Plaintiffs "can no longer prove entitlement to equitable relief" because they have "already obtained 'the ultimate object of their action for injunctive and declaratory relief.'" (Def.'s Mem. Supp. Mot. Dismiss 10-12 (quoting *S-1 v. Spangler*, 832 F.2d 294, 297 (4th Cir. 1987)), ECF No. 143.) Again, Defendant ignores the reality that the relief the Budget Amendment affords Plaintiffs is temporary in nature. Once the budget expires, Plaintiffs' licenses will be automatically re-suspended, and the unconstitutional effects of § 46.2-395 remain real. For that reason, there exists no prudential reason to dispose of Plaintiffs' request for equitable relief.

Defendant cites two cases in support of his misguided contention: *Spangler*, and the aforementioned *Lyons*. *Spangler* is distinguishable on the grounds that the circumstances that mooted that case were not subject to a scheduled expiration like the Budget Amendment here. *Spangler* involved a lawsuit against government officials for the reimbursement of costs used in placing handicapped children in private school. While litigation was pending, the school board provided the plaintiffs with the tuition reimbursements they ultimately sought. Because the plaintiffs received that money—the "ultimate object" of their lawsuit—the Fourth Circuit found it unnecessary to address the equitable relief. Tellingly, the plaintiffs in *Spangler* sought their relief in the alternative, seeking either tuition reimbursements from a local entity *or* declaratory and injunctive relief from state rules that allegedly limited plaintiffs' procedural rights at the local

10

level.³ In the present case, the Plaintiffs seek not just the removal of current suspensions but also freedom from the specter of future suspensions, via a declaration that § 46.2-395 is unconstitutional. A temporary reprieve through the budget has not and cannot provide comprehensive relief. Thus, Plaintiffs remain entitled to equitable relief.

*Lyons* simply does not support Defendant's position. *Lyons* involved a challenge to a police practice of applying restraint techniques in an unconstitutional manner. In the midst of litigation, the police department issued a six-month moratorium on the use of that specific restraint technique. The Supreme Court held that while the temporary moratorium did not moot the case, Lyons was not entitled to equitable relief because it was too speculative to allege that he would again be subject to the restraint technique in violation of both the law and departmental policy. *Lyons*, 461 U.S. at 108 ("[E]ven assuming that Lyons would again be stopped for a traffic or other violation in the reasonably near future, it is untenable to assert, and the complaint made no such allegation, that strangleholds are applied by the Los Angeles police to every citizen who is stopped or arrested regardless of the conduct of the person stopped. We cannot agree that the 'odds' that Lyons would not only again be stopped for a traffic violation but would also be subjected to a chokehold without any provocation whatsoever are sufficient to make out a federal case for equitable relief." (internal citations omitted)); *see also id.* at 101 ("[T]he case is not moot, since the moratorium by its terms is not permanent."). Unlike in *Lyons*, here it is not at all speculative that Plaintiffs may again be subject to deprivation of their constitutional rights. On the contrary, absent affirmative action on behalf of the legislature, of which there is no guarantee, the law mandates that Plaintiffs will be

---

³ Further, *Spangler* was not a putative class action, meaning the parents' receipt of tuition reimbursements also implicated standing issues. *Spangler*, 832 F.2d at 298.

11

subject to license suspension for unpaid court debt, without notice and without hearing, after June 2020.

In other words, unless the legislature acts to repeal § 46.2-395, Plaintiffs will face—in a little over one year—the same unconstitutional consequences that precipitated this lawsuit in the first place. There is no prudential reason to deny Plaintiffs the equitable relief they seek.

> 5. *The Budget Amendment Does Not Clearly Affect All Members of the Proposed Suspended Class*

As previous briefing in this case has noted, nearly one million drivers presently suffer from § 46.2-395 suspensions. However, there is some indication (both in the language of the Budget Amendment and in public explanations of it) that relief from court debt driver's license suspensions may be afforded, when July 1, 2019 comes, only to the subset of these drivers (roughly 627,000 in number) who have no other suspensions or impediments to reinstatement.

The language of the Budget Amendment can be read narrowly. It states, in pertinent part:

> The Commissioner of the Department of Motor Vehicles shall reinstate a person's privilege to drive a motor vehicle that was suspended prior to July 1, 2019, solely pursuant to § 46.2-395 of the Code of Virginia and shall waive all fees relating to reinstating such person's driving privileges.

Va. Legislative Information System, 2019 Session Budget Amendments-HB1700, Amendment 33, Item 3-6.03, https://budget.lis.virginia.gov/amendment/2019/1/HB1700/Enrolled/GE/. The word "solely" could limit the effect of the Amendment on those people who were suspended prior to July 1, 2019, pursuant both to § 46.2-395 and to an independent (non-court debt) suspension where the independent (non-court debt) suspension has not been lifted. This litigation clearly seeks

12

removal of § 46.2-395 suspensions for these more than 300,000[4] people as an item of requested relief, but the Budget Amendment's language does not clearly afford them reinstatement.

Public explanations of the Budget Amendment raise the same issue. Consider Governor Northam's explanation of the Budget Amendment in H.B.1700: "I have proposed a language amendment that eliminates the unfair practice of revoking a person's driver's license for failure to pay court fines and fees. *This action will help over 600,000 Virginians.*" Va. Legislative Information System, 2019 Session Budget Amendments-HB1700Governor's Recommendations https://budget.lis.virginia.gov/amendment/2019/1/HB1700/Enrolled/GE/ (emphasis added).

Similarly, at the press conference announcing the Budget Amendment, Governor Northam announced that the bill would "restore rights, for driving privileges, to over 600,000 Virginians. That's a lot of Virginians who are unable to keep their driver's licenses." Legal Aid Justice Center Facebook, Governor Northam announces a budget amendment (Mar. 26, 2019), https://www.facebook.com/LegalAidJusticeCenter/videos/301868197174449/?__tn__=%2Cd%2CP-R&eid=ARCVZTDl4MjxHZHlXUkQ-9pgKh-XWZO1zySr6vwyrQR12Ndu_jurKOLpryqEop5f2EugHrUkU6GxIWuT. Similarly, Secretary of Finance Aubrey Layne reported that the Budget Amendment "would help 600,000 people." Michael Martz, *Cox will allow votes on I-81 and license suspensions as legislature meets Wednesday*, Richmond Times-Dispatch (Apr. 2, 2019), *available at* https://www.richmond.com/news/virginia/cox-will-allow-votes-on-i--and-license-suspensions/article_7cccfd3a-4e40-5d74-badb-aa26eb293259.html.

---

[4]Defendant's counsel indicated on May 6, 2019 that the Budget Amendment will be applied broadly to apply to the more than 300,000 individuals. However, public statements continue to reference 600,000 people being helped by the Budget Amendment, instead of one million. See *infra* at Section III.A.5.

13

In short, not only is any relief provided by the Budget Amendment merely temporary, but there is some indication—in both the language of the amendment itself and in public pronouncements—that it does not provide relief to the more than 300,000 members of the proposed Suspended Class in this case who have both court debt (§ 46.2-395) suspensions and other suspensions.

### B. Defendant's Speculation of Legislative Resolution Does Not Justify a Stay

*1. Legal Standard*

"A federal court's 'power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *Volvo Grp. N. Am., LLC v. Truck Enterprises, Inc.*, No. 7:18-CV-00043-EKD, 2018 WL 3599198, at *2 (W.D. Va. May 9, 2018) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). "Where there is a fair possibility that a stay 'will work damage' to the party opposing it, the party seeking a stay must make out 'a clear case of hardship or inequity in being required to go forward.'" *Id.* (quoting *Landis*, 299 U.S. at 255).

*2. A Stay Would Work Damage to Plaintiffs*

As with his mootness argument, Defendant's request for a stay is rooted in the *possibility* that the legislature might vote in a manner that achieves the Plaintiffs' desired result. Plaintiffs recognize that such a legislative resolution is possible. Plaintiffs, of course, wish for that result, and have wished for that result for years. But it is likewise possible that a legislative resolution is not reached, as has been the outcome of the legislative repeal effort for years. If so, Plaintiffs again become subject to the deprivation of their driving privileges under § 46.2-395. And the 300,000 persons that are not subject to the effect of the Budget Amendment are still putative class members and harmed. As a consequence, the stakes of this litigation are too high to delay Plaintiffs' request

14

for the permanent relief they seek simply because a wait-and-see approach would be less burdensome on Defendant.

Moreover, Defendant's implication that Plaintiffs can merely restart this litigation on an indefinite date down the road severely misses the mark. First, such a stay is contrary to this Court's "policy of efficient and expeditious resolution of cases." *Skinner v. Armet Armored Vehicles, Inc.*, No. 4:12-CV-00045, 2015 WL 540156, at *5 (W.D. Va. Feb. 10, 2015) (citation omitted). Second, a stay in this case is practically infeasible. This case has already been pending for more than two years. If the General Assembly does not repeal § 46.2-395, Plaintiffs will not be able to obtain their desired relief overnight. Obtaining relief would require discovery and possibly a trial. In the meantime, Plaintiffs' licenses would automatically revert to suspended status either on the day the budget expired or 40 days after the budget expired. The prospect that their lives would be upended is all too real. Because a stay would prejudice Plaintiffs, Defendant can meet his burden only if he makes out a clear case of hardship or inequity, and he has not.

### 3. *Defendant Cannot Make Out a Clear Case of Hardship or Inequity*

Defendant does not make out a case of hardship or inequity, much less a clear one. In a conclusory manner, Defendant claims that he will suffer hardship and inequity if a stay is not implemented because he has been inconvenienced by the filing of this lawsuit and the obligations that come with litigating it. Defendant's position boils down to a contention that litigating this case will waste resources. Staying this case, however, will waste *more* resources. *See Gibbs v. Plain Green, LLC*, 331 F. Supp. 3d 518, 526 (E.D. Va. 2018) ("Although denying a stay can risk waste, the opposite can also be true: *granting* a stay may waste judicial resources."), *appeal dismissed*, No. 18-1908, 2018 WL 7223994 (4th Cir. Sept. 13, 2018); *Hooker v. Sirius XM Radio, Inc.*, No. 4:13CV3, 2015 WL 10937407, at *3 (E.D. Va. Sept. 25, 2015) ("Defendant asserts that not

15

granting a stay would cause a 'waste of time,' but the Court concludes that granting the stay would likely be a greater waste of time."). Indeed, the parties have spent more than two years litigating this case. The Court has before it motions to dismiss and for class certification. An August 5, 2019 trial date has been set for months. Plaintiffs are entitled to their day in court and an expeditious resolution, not a further delay.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant's Motion and grant it such further relief that the Court deems just and proper.

Date:  May 7, 2019                    By:    */s/ Jonathan Blank*
                                             Jonathan T. Blank (VSB No.: 38487)
                                             Benjamin P. Abel (VSB No.: 88961)
                                             MCGUIREWOODS LLP
                                             652 Peter Jefferson Parkway, Suite 350
                                             Charlottesville, VA 22911
                                             (434) 977-2509
                                             jblank@mcguirewoods.com

                                             Angela A. Ciolfi (VSB No.: 65337)
                                             Pat Levy-Lavelle (VSB No.: 71190)
                                             LEGAL AID JUSTICE CENTER
                                             1000 Preston Avenue, Suite A
                                             Charlottesville, Virginia 22903
                                             (434) 529-1810
                                             angela@justice4all.org

                                             David P. Baugh (VSB No.: 22528)
                                             DAVID P. BAUGH, ESQ., PLC
                                             2025 E. Main Street, Suite 114
                                             Richmond, Virginia 23223
                                             (804) 743-8111
                                             dpbaugh@dpbaugh.com

                                             Leslie Kendrick (VSB No.: 90104)
                                             580 Massie Rd.
                                             Charlottesville, Virginia 22903
                                             (434) 243-8633
                                             kendrick@virginia.edu

                                             *Counsel for Plaintiffs*

# CERTIFICATE OF SERVICE

I hereby certify that on May 7, 2019, I electronically filed the foregoing instrument with the Clerk of Court using the CM/ECF System, which will send a notification of such filing to the following CM/ECF participants:

Janet W. Baugh (VSB No. 44649)
Senior Assistant Attorney General
Margaret Hoehl O'Shea (VSB No. 66611)
Christian A. Parrish (VSB No. 446427)
Assistant Attorneys General
OFFICE OF THE ATTORNEY GENERAL
202 North Ninth Street
Richmond, Virginia 23219
(804) 786-4596
jbaugh@oag.state.va.us

David M. Parker
Neil K. Gilman
Maya M. Eckstein
Stuart A. Raphael
Trevor S. Cox
HUNTON ANDREWS KURTH LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
dparker@HuntonAK.com
ngilman@HuntonAK.com
meckstein@HuntonAK.com

By: */s/ Jonathan Blank*
Jonathan T. Blank (VSB No.: 38487)
MCGUIREWOODS LLP
652 Peter Jefferson Parkway, Suite 350
Charlottesville, VA 22911
(434) 977-2509
jblank@mcguirewoods.com

115887890_16.docx