```
 1                 UNITED STATES DISTRICT COURT
                   WESTERN DISTRICT OF VIRGINIA
 2                    Charlottesville Division

 3   DAMIAN STINNIE, et al.,           Civil No. 3:16cv00044

 4            Plaintiffs,

 5        vs.                          Charlottesville, Virginia

 6   RICHARD D. HOLCOMB,
                                       11:05 a.m.
 7            Defendant.               March 25, 2019

 8
                     TRANSCRIPT OF MOTION HEARING
 9            BEFORE THE HONORABLE NORMAN K. MOON
              UNITED STATES SENIOR DISTRICT JUDGE
10
     APPEARANCES:
11
     For the Plaintiffs:
12
     JONATHAN TODD BLANK          LAURA ANN LANGE
13   McGuireWoods LLP             McGuireWoods LLP
     652 Peter Jefferson Parkway, Tower Two-Sixty
14   Suite 350                    260 Forbes Avenue, Suite 1800
     Charlottesville, VA 22911    Pittsburgh, PA 15222-3142
15
     For the Defendant:
16   MAYA MIRIAM ECKSTEIN         NEIL KEITH GILMAN
     Hunton & Williams LLP        Hunton Andrews Kurth, LLP
17   Riverfront Plaza, East Tower 2200 Pennsylvania Avenue, NW
     951 East Byrd Street         Washington, DC 20037
18   Richmond, VA 23219

19

20

21

22   Court Reporter:             Sonia Ferris, RPR, OCR
                                  U.S. Court Reporter
23                                116 N. Main St.  Room 314
                                  Harrisonburg, VA 22802
24                                540.434.3181.  Ext. 7
     Proceedings recorded by mechanical stenography; transcript
25   produced by computer.
```

```
 1              THE COURT:  Good morning.

 2              Call the case, please.

 3              THE CLERK:  Yes, Your Honor.

 4              This is Civil Action No. 3:16cv44, Damian Stinnie and

 5    others, versus Richard D. Holcomb.

 6              THE COURT:  Plaintiffs ready?

 7              MR. BLANK:  Yes, Your Honor.

 8              THE COURT:  Defendants ready?

 9              MS. ECKSTEIN:  Yes, Your Honor.

10              THE COURT:  We'll take up the motion to dismiss

11    first.

12              MS. ECKSTEIN:  Thank you, Your Honor.

13              Maya Eckstein for the Commonwealth and the

14    Commissioner.

15              The Court is very familiar with the case.  It's

16    written one memorandum opinion addressing the motion to

17    dismiss.  It's written another memorandum opinion addressing

18    the preliminary injunction.  As you may expect, we agree with

19    one; we disagree with the other.  The change in your thinking

20    on some of those issues leads me to believe I might have an

21    uphill battle today.  I'm accepting the challenge and,

22    hopefully, I can convince you with respect to some of these

23    claims, at least, to dismiss them.

24              What I'd like to do to start is to set the table.

25    We're here on a motion to dismiss to address the sufficiency
```

```
 1   of the amended complaint.  We're not addressing the evidence

 2   from the preliminary injunction hearing.  We believe it would

 3   be inappropriate for the Court to consider that evidence on a

 4   motion to dismiss.  If you do, however, consider it, we would

 5   like to remind the Court that some of that evidence is

 6   inconsistent with the very statutes that are at issue here,

 7   and also some of the forms, the summonses and the like, that

 8   are at issue here.

 9          So this motion to dismiss addresses the statutory

10   scheme that's at issue, and we must view those statutes

11   together, not in isolation.  So what I'd like to do first is

12   to talk about that statutory scheme.

13          The scheme makes clear that with respect to fines and

14   costs, the courts issue suspension orders, not the DMV.

15   Section 46.2-395(B) explicitly states, "The court shall

16   forthwith suspend" the driver's license.

17          Section C of that same statute states that, "Before

18   transmitting to the commissioner of the DMV a record of the

19   person's failure or refusal to pay, the clerk of the court

20   that convicted the person shall provide written notice of the

21   suspension of his license."  Also, in Section C, it states

22   that, "The suspension will be effective" -- "the suspension

23   will be effective 30 days from the date of conviction if the

24   fines and costs is not paid prior to the effective date of

25   the suspension as stated on the notice that is provided.  The
```

1    notice shall be provided to the person at the time of trial

2    or shall be mailed to the person."

3            Section C also states that, "A record of the person's

4    failure or refusal, and of the license suspension, shall be

5    sent to the commissioner if the fines and costs remain unpaid

6    on the effective date of the suspension specified in the

7    notice or on the failure to make a scheduled payment."

8            So Section 46.2-395 makes clear that it is the court

9    that suspends a license and that suspension occurs on the

10   date of sentencing.  It becomes effective 30 days later if

11   the fines and costs aren't paid, but that suspension also

12   occurs.

13           The statutory scheme also makes clear that notice and

14   an opportunity to be heard are provided to these individuals

15   regarding the availability of payment plans, community

16   service, and even cancellation of the entire financial

17   obligation, based on the person's financial condition.

18           Section 19.2-354.1(B) explicitly states that "The

19   court shall give a defendant ordered to pay fines and costs

20   written notice of the availability of payment plans and

21   community service."

22           Section D of that same statute states that, "In

23   determining the length of time to pay under a deferred" --

24   "modified, deferred or installed payment agreement, and the

25   amount of the payments, a court shall take into account the

1    defendant's financial resources and obligations, including

2    fines and costs owed by the defendants in other courts."

3    Section D also states that, "The length of the payment

4    agreement and the amount of the payments shall be reasonable

5    in light of the defendant's financial resources and

6    obligations, and shall not be based solely on the amount of

7    fines and costs."

8           Then we also have Section 19.2-358(C), which states

9    that, "If a person fails to make payments under a payment

10   plan, and it appears that the default of the payment of fees

11   and costs is excusable based on the inability to pay, the

12   court may enter an order allowing the defendant additional

13   time for repayment, reducing the amount due of each

14   installment, or remitting, cancelling, the unpaid portion in

15   whole or in part."

16          Now, all of this is also confirmed by the notices

17   that are provided to defendants in these situations.

18   Examples of those notices are attached to the plaintiff's

19   amended complaint and original complaint.  If the Court would

20   like copies, I have copies here.  In the amended complaint,

21   Exhibit 3, we have the Virginia uniform summons -- may I pass

22   one up?

23          THE COURT:  You may.

24          (Said document handed to the Court.)

25          MS. ECKSTEIN:  Again, this is Exhibit 3 to the

1    amended complaint.

2            In the bottom left there, there's a spot for the

3    court to check "driver's license suspended effective in

4    30 days and fines and costs are not paid in 30 days."  That

5    is consistent with the statutory scheme that we've just

6    discussed.

7            Similarly, Exhibit C to the original complaint -- and

8    I'll pass up Exhibit C and Exhibit D to the original

9    complaint.

10           (Said documents handed to the Court.)

11           Exhibit C to the original complaint is a suspension

12   notice provided to the general district court at the time of

13   sentencing, and at that time, you can see, midway through, it

14   refers there to notification regarding suspension.  "I

15   acknowledge that I have been notified that my driver's

16   license/driving privilege has been suspended or revoked for a

17   period of," et cetera, et cetera.

18           At the bottom of that first page, there's a petition

19   that the defendant can fill out there providing them an

20   opportunity to petition for a payment plan or a community

21   service.  On the next page under part one, there, it provides

22   a defendant explicit notice of the suspension and the process

23   that he or she can use to attain a payment plan.

24           Exhibit D to the original complaint, which was also

25   handed to you, is a similar form that's used in the circuit

```
 1    court, which has all of that same information.
 2          So now that we have that table essentially set, what
 3    I'd like to do is apply these facts to the five claims that
 4    we have here in the case.
 5          Claim one is a due process claim.  It's a facial
 6    challenge.  As we've just gone through, notice and an
 7    opportunity to be heard are provided by the plain language of
 8    the statutes that we've gone through.  The statutes are plain
 9    on their face.  The notice is provided on a summons and at
10    sentencing of the suspension that will become effective if
11    fines and costs are not paid in 30 days upon payment
12    according to a plan.  The opportunity to be heard is offered
13    at sentencing and at the multitude of times that a defendant
14    can ask for a payment plan, community service or even
15    complete cancellation of the financial obligation.  The
16    plaintiffs, to survive a facial challenge, must show that
17    there are no set of circumstances under which the act would
18    be valid.  That's the U.S. v. Salerno case.  They cannot do
19    this, and they don't dispute that.  They challenge the
20    standard, but they don't offer a different standard.  In
21    fact, the Fourth Circuit has applied that standard, the
22    Salerno standard, repeatedly.  It did so as recently as 2016
23    in United States v. Hosford, 843 F.3d 161.  This was a case
24    involving the Second Amendment.  It has cited the standard in
25    Salerno in numerous cases since as well.
```

1          Admittedly, the Fourth Circuit has applied a

2     different standard in abortion cases and that's because of a

3     different standard the Supreme Court laid out in the <u>Casey</u>

4     case and its progeny, but that's simply not applicable here.

5     The plaintiffs cannot show there's no set of circumstances

6     under which the act would be valid.  They don't dispute this,

7     and the claim should be dismissed as a result.

8          Now in claim one in this due process claim, they also

9     present an as-applied challenge, and that challenge is based

10     on the supposed need for pre-deprivation hearing, but one is

11     provided here.  A pre-deprivation hearing is provided at

12     sentencing.  Even if that wasn't the case, there is no

13     constitutional requirement for a pre-deprivation hearing.

14     The Fourth Circuit has explicitly stated as much in

15     <u>Tomai-Minogue v. State Farm Mutual Auto Insurance</u>.  That's

16     cited in our brief.  That's 770 Fd.2 1228.  The Fourth

17     Circuit in that case explicitly held that pre-deprivation

18     hearings are not required for the loss of drivers' licenses.

19     In that case, no pre-deprivation hearing was offered for the

20     suspension of a driver's license for failure to satisfy a

21     judgment.  What was offered was an appeal after the

22     deprivation, after the suspension.  The Fourth Circuit in

23     addressing that case applied the <u>Matthews v. Eldridge</u> factor,

24     and the first factor, the private interest, the court held,

25     "The private interest in a driver's license is not so vital

and essential as are social insurance payments on which the

recipients may depend for his very subsistence.  We do not

disparage the importance of a driver's license in this day

and time."  It noted, though, the Supreme Court has

"expressly held that the interest in a driver's license is

not so great as to require a pre-deprivation hearing."  And

it cited Dixon v. Love for that proposition.

        With respect to the second Matthews factor, the court

held the risk of erroneous deprivation was small because

either the defendant paid the judgment or didn't pay the

judgment.  The same is true here.  Either the defendant paid

the fees or didn't pay the fees according to a payment plan

that took into consideration the defendant's financial

resources.

        The third factor, the government interest, the court

held was hardly inconsequential.  The aim is to ensure that

motorists are financially responsible and will satisfy any

judgement against them.  Similar reasoning applies here.

        Notably, the Fourth Circuit in that case,

Tomai-Minogue, also held that notice was sufficient, even

though the defendant in that case -- or the plaintiff in that

case, did not receive notice until after the suspension went

into effect.  The plaintiff received prompt written notice of

a suspension from DMV that informed her clearly of the

reasons for the suspension and cited the statutory authority

1    for the suspension.   The Fourth Circuit believed that to be

2    sufficient.   We have more than that here.   We have notice

3    before the deprivation.   That case squarely applies here and

4    requires dismissal of the first claim.

5          In the second claim, claim two, the plaintiffs allege

6    a due process claim under this concept of fundamental

7    fairness.   That's explicitly how they allege that claim.   But

8    the fundamental problem with plaintiff's fundamental fairness

9    claim is that the fundamental fairness analysis does not

10   apply.   They seek to apply the Griffin v. Illinois case in

11   the Supreme Court, as well as related Supreme Court cases

12   since then -- Williams, Tate, Bearden and Mayer -- but they

13   don't apply here.   Those cases all involve the loss of rights

14   that the Supreme Court has declared to be fundamental, such

15   as liberty in terms of imprisonment or incarceration, and the

16   right of access to the courts.   The Supreme Court has

17   explicitly held that the right to drive or intrastate travel

18   is not one of those fundamental rights, and that was in the

19   Dixon v. Love case.   Illinois law suspended the drivers'

20   licenses of those who repeatedly were convicted of certain

21   traffic offenses in a given period of time.   The court

22   applied the Matthew v. Eldridge test, not a fundamental

23   fairness analysis that's set forth in Griffin and its

24   progeny.

25         As the Fourth Circuit noted in Tomai-Minogue, and in

1    <u>Dixon</u>, the court held, "The private interest in a driver's

2    license is not so great and that something less than an

3    evidentiary hearing is sufficient prior to the adverse

4    action."  In applying <u>Matthews v. Eldridge</u>, it determined

5    that the risk of error was small and the government's

6    interest was significant.

7          That was the holding in a case recently in Oregon,

8    <u>Mendoza v. Garrett</u>, and that's also cited in our brief.  That

9    case is very similar to this one in which the plaintiffs in

10   that case challenged the license suspension statutory scheme

11   in Oregon that is similar to the one here.  That case was a

12   preliminary injunction ruling in which the court held that

13   the plaintiffs were not likely to succeed on their

14   fundamental fairness due process claim because fundamental

15   fairness did not apply, for the reasons I've discussed.  That

16   was also the holding in <u>Fowler v. Johnson</u>, which is also

17   addressed in our brief.  Again, that was a similar case

18   challenging the suspension of licenses as a result of the

19   failure to pay fines and costs.  This is out of Michigan, and

20   that was a preliminary injunction hearing as well where the

21   court held that the plaintiffs were not likely to succeed on

22   a fundamental fairness due process claim for the same

23   reasons.  As a result, claim two should be dismissed.

24   Fundamental fairness simply does not apply.

25          Claim three, plaintiffs allege equal protection

1    claim, also fundamental fairness, and in the amended

2    complaint, the plaintiffs assert the statute "punishes

3    poverty," and they don't specifically refer to fundamental

4    fairness in their complaint, but in their opposition brief,

5    they make clear that's what they advocate should apply here,

6    and they rely principally on the Fourth Circuit's opinion,

7    Alexander v. Johnson.   Alexander v. Johnson, though, was a

8    fundamental fairness case in which the plaintiff challenged

9    the statute that ordered a criminal defendant to repay the

10   cost of court-appointed counsel or risk additional prison

11   time.   That fits squarely in the fundamental fairness

12   analysis.   You have the fundamental right of liberty to avoid

13   incarceration at stake there.   That's not what's at stake

14   here.   What we have at stake here is the loss of a driver's

15   license, which may cause a significant burden, but it doesn't

16   rise to the level of a constitutional fundamental fairness

17   analysis.   As a result, that claim should be dismissed as

18   well.

19        With claim four, plaintiffs allege an equal

20   protection claim under the rational basis analysis.   With

21   that application of fundamental fairness, the plaintiffs must

22   allege, for this claim, discriminatory intent with respect to

23   a suspect class and a disparate impact.   They do not allege

24   discriminatory intent.   They refer in the complaint to the

25   legislature having knowledge that the law, the statutory

```
 1   scheme we have here in Virginia, does affect those

 2   individuals who do not have the ability to pay, but that is

 3   not evidence of discriminatory intent.  It does not state the

 4   legislature -- and they do not allege -- that the legislature

 5   passed the law because of that effect on the poor.  It says

 6   nothing other than the legislature passed that law in spite

 7   of that information.

 8           The Fourth Circuit in Sylvia Development Corporation

 9   v. Calvert County Maryland explicitly explained that to prove

10   that a statute has been administered or enforced

11   discriminatorily, "more must be shown than the fact that a

12   benefit was denied to one person while conferred on another.

13   A violation is established only if the plaintiff can prove

14   that the state intended to discriminate."

15           In addition to failing to sufficiently allege an

16   intent to discriminate, the plaintiffs here do not allege the

17   existence of a suspect class.  As we've discussed, there is

18   no fundamental right to a driver's license or the right to

19   intrastate travel.  As such, there is no suspect class here.

20   The Fowler case out of Michigan came to the same conclusion

21   and held that without a fundamental right of discrimination

22   based on a suspect class, not even rational basis review

23   applied to the case.  As a result, that claim also should be

24   dismissed.

25           Finally, we have claim five, the equal protection
```

```
 1    claim, and this is where plaintiffs allege extraordinary
 2    collection efforts.  The plaintiffs rely on James v. Strange,
 3    but that case doesn't support the claim.  The debtors here
 4    are entitled to the same exemptions as any other debtors.  No
 5    exemptions have been removed.  In fact, the statutes here
 6    provide additional safeguards to debtors allowing for payment
 7    plans or even cancellation of the debt explicitly as a result
 8    of the debtor's financial circumstances.  The fact that the
 9    Commonwealth has additional -- has an additional method of
10    enforcement at its disposal here by suspending a driver's
11    license does not lead to a different conclusion.  The
12    enforcement procedures need not be identical to be
13    constitutional with respect to debtor to the state versus
14    private debtors.  All of the exemptions apply to these
15    debtors as to any other debtor, and they have many
16    opportunities to plead their case for payment plans and
17    cancellation as a result of their financial circumstances,
18    and that claim, thus, also must be dismissed.
19          Having addressed the claims, I want to address just
20    briefly the other arguments that we've made in our brief
21    regarding Rooker-Feldman, Ex Parte Young, standing, and
22    joinder.  I think I can address them all in one, frankly, and
23    I know the Court has already ruled with respect to
24    Rooker-Feldman, Ex Parte Young, and standing in conjunction
25    with the ruling and, with respect, we believe that ruling is
```

```
 1   in error.

 2          The fundamental concept that runs through all of

 3   these arguments is that it is the court -- the courts that

 4   suspend licenses, not the DMV.  The DMV, essentially, flips a

 5   switch.  It gets information from the court saying a license

 6   has been suspended, fees have not been paid; therefore, we

 7   want it to reflect in the DMV record that the license is

 8   suspended.  That is why under Ex Parte Young the DMV

 9   commissioner does not have the special relation to the

10   challenged statute.  The commissioner doesn't impose fines

11   and costs and it doesn't order suspensions.  It also doesn't

12   remove suspensions.  It can remove record of the suspension

13   from the DMV record, but that is all the commissioner can do.

14   The suspension remains in the court file.  The driver's

15   license remains suspended, according to the court.  That

16   order has not been lifted.  That is why the traceability and

17   redressability elements of standing haven't been met here and

18   that's also why joinder would be appropriate of the circuit

19   court and general district court clerks, but is not feasible,

20   but they would be required parties here because only they can

21   take that action that would be required.  Accordingly, Your

22   Honor, we respectfully ask the complaint be dismissed.

23          THE COURT:  Thank you.

24          MR. BLANK:  Good morning, Your Honor.

25          THE COURT:  Good morning.
```

1           MR. BLANK:  Jonathan Blank on behalf of Damian

2    Stinnie, Melissa Adams, Adrainne Johnson, Williest Bandy and

3    Brianna Morgan.

4           I won't take too much time, Your Honor.  First, I'd

5    like to make a couple introductory remarks.  I'll start with

6    October 2018, the Attorney General for the Commonwealth of

7    Virginia.

8           In the context of the unconstitutionality of bail

9    bonds, he said, "We cannot have a justice system that

10   determines fairness based on wealth and means.  That is wrong

11   and unjust."

12          We agree with him.  He went on to opine on the

13   constitutional violations of such a system.  Here, we have

14   close to one million Virginians with suspended licenses based

15   on a failure to pay a court debt because people are too poor

16   to pay.  We had 200,000 jail days last year because of a

17   failure to pay court debt because people are too poor to pay.

18   We have the same constitutional violations that the Attorney

19   General spoke about with the bail bonds, and we have more.

20   We have a constitutional crisis.  This lawsuit -- this

21   lawsuit is the vehicle to address those constitutional

22   questions.  It's the vehicle to address this constitutional

23   crisis.

24          This Court shouldn't dismiss this case.  This Court

25   shouldn't dismiss any of these counts.  This Court should let

```
1    this case go forward.

2         I'll touch briefly on the jurisdictional issues.

3    They spent very little time because Your Honor ruled on them

4    on Rooker-Feldman.  It doesn't bar jurisdiction over

5    plaintiff's claims.  That's on page 9 of your opinion.

6    Plaintiffs established their injuries fairly traceable to the

7    commissioner, on page 11 of your opinion.  The alleged

8    injuries are reasonable, page 12 -- excuse me -- redressible,

9    page 12.  Because of the commissioner's obligations under

10   46.2395, he has the special relationship required by Ex Parte

11   Young.  Nothing that they said today, nothing they put in

12   their pleadings, nothing that has been said so far should

13   change your ruling or anything dealing with those issues.

14        Indispensable party.  Turn quickly to that.  Three

15   salient points.  The clerk's necessary.  Are they

16   indispensable?  More important, for this, the burden is on

17   the Commonwealth to prove both of those things.  Not a shred

18   of evidence.  What proof?  The only evidence you saw was at

19   the preliminary injunction hearing.  We put on the two

20   clerks.  They said they've got nothing to do with it.  They

21   keep talking about the court orders and the statute.  You

22   heard, and in this context you can rely on what was said at

23   the preliminary injunction hearing -- not an order that was

24   entered, not an order that was found.  The clerks don't enter

25   the suspensions.  They want to talk about the statute.  We
```

1    want to talk about what's going on in real life.  We want to

2    talk about what we pled in our complaint.  That's the

3    standard under 12(b)(6), an alternative.  That's what this

4    Court's asked to do.  The standard 12(b)(6) motions should

5    only be granted when the complaint does not contain

6    sufficient factual matters accepted as true to allow the

7    court to draw reasonable inferences that the plaintiff cannot

8    prevail.  The Commonwealth never even talked about what we

9    pled in the complaint.  They want to go to these

10   constitutional principles that I'll be glad to address, but

11   go back to the complaint, and it is crystal clear that we

12   alleged facts to support each one of these counts.  A

13   violation of procedural due process based on lack of

14   availability to pay.  Count 1.  We alleged a person's

15   driver's license is a property interest.  We alleged the

16   plaintiffs did not receive a pre-deprivation hearing.  We

17   alleged the plaintiffs were not afforded notice of a

18   pre-deprivation hearing.  We allege the plaintiffs were not

19   afforded a pre-deprivation hearing.  That's all that's

20   needed.  The complaint is chock-full of these specific

21   allegations.

22          They want to talk about Salerno and Tomai.  First of

23   all, the exclusive procedural safeguards they're talking

24   about in Salerno -- they don't exist.  Tomai -- that's

25   talking about a case that deals with specific safety concerns

1    on the road.  We're not talking about safety concerns on the

2    road in Tomai.  We're talking about, here, an automatic

3    license suspension that the commissioner puts in place.

4    That's what we're talking about.

5         Count 2, a violation of due process based on

6    fundamental fairness for punishing people because they are

7    too poor to pay.  We alleged 46.2395 punishes a person based

8    on his or her inability to pay rather than willful refusal to

9    pay.  We allege that each of the plaintiffs are willing to

10   pay, and we alleged that each of the plaintiffs cannot pay.

11   That's all that's needed.  That's all that's needed.

12        We do rely on Bearden and I ask the Court to go back

13   and look at Bearden and these cases.  They support, if you

14   want to look at the law, every single thing that we have said

15   as a factual matter in the complaint.

16        Count 3, a violation of equal protection clause.  The

17   Code is set up to treat people not in poverty differently

18   than those in poverty.  Again, plaintiffs are too poor to

19   pay.  The plaintiffs are too poor to pay and the plaintiffs

20   are being treated differently than people that are not too

21   poor to pay.  If that is not the case, again, put yourselves

22   in the same situation.  If you had a traffic offense, which I

23   have, am I being treated differently than Adrainne Johnson?

24   Of course I am.  Is Adrainne Johnson being treated

25   differently than me?  Of course she is.  That's what we

1    allege in the complaint.  That's all that we need to allege

2    at this point.  Let us have the chance to prove it.

3            We don't need to prove discriminatory intent, but my

4    colleague said we didn't allege it.  Paragraphs 60 and 61 is

5    enough for the allegation with inferences held in our favor

6    to prove that we alleged the discriminatory intent.  We don't

7    need to even allege that here, but we have.

8            A violation of due process clause -- there's no

9    rational basis for suspending people's license for

10   nonpayment.  We alleged the plaintiffs' licenses were

11   automatically suspended when they didn't pay.  We allege the

12   license is the protected property interest.  We allege the

13   plaintiffs' license is essential to their livelihood.  We

14   allege there's no rational basis to motor vehicle safety and

15   automatic suspension of license.  We allege the

16   commissioner's on the board of the national organization,

17   AAMVA, that studied the issue and found there's no rational

18   basis.  We allege there's no rational basis to incentivize

19   payment by automatically spending licenses.  We allege that

20   suspending licenses makes it less likely for those who have

21   fines to pay them.  Again, that's all that's needed at this

22   stage.

23           Count 5, equal protection clause -- because the state

24   of Virginia is using a collection mechanism that a private

25   creditor may not use.  They say that we didn't meet the

1    allegations needed for James v. Strange; it's not about

2    exemptions.  That's not what James v. Strange is talking

3    about.  That's not what we alleged.  We alleged that the

4    Commonwealth, through the commissioner, is using a coercion

5    of automatic driver's license suspension to collect a state

6    debt.  That's what we alleged.  It's not about an exemption.

7    It's about what the state can do.  It's what the state can do

8    that a private collector can't do.  Here, the state is using

9    the technique of suspending people's license to collect a

10   debt.  Private creditors can't do that, and the concept of it

11   -- the concept of it -- to think you're going to coerce

12   somebody by taking away their license so they can't drive to

13   go to work, to make the money, to get the money to pay the

14   debt -- again, it's crazy, and it's not constitutional.

15          Back to this argument that Bearden only applies to

16   incarceration -- that's just not correct.  That's not

17   correct.  Mayer v. City of Chicago, that didn't have anything

18   to do, again, with the incarceration.  There was no jail

19   time.  It was talking about a free trial transcript.  Jail

20   time wasn't the only -- because you have the threat of

21   incarceration.  That's not what this is about.  But here, we

22   do have threats of incarceration.  People are threatened by

23   the fact that they could go to jail if they don't pay their

24   fines on time.  They are threatened because we know that

25   people have gone to jail.

1            So Your Honor, with all due respect, we are at a

2     12(b)(6), 12(b)(1), 12(b)(7) stage.  The 12(b)(1), Your Honor

3     already ruled on.  The 12(b)(7), they've put absolutely no

4     proof forward; and the 12(b)(6), we have alleged all the

5     allegations that are necessary to move this case forward and

6     we should do so expeditiously so we can deal with one of the

7     worst statutes that's in the Code of Virginia today.

8            Thank you, Your Honor.

9            THE COURT:  Go ahead.

10            MS. ECKSTEIN:  Just a couple points, Your Honor.

11            My colleague mentioned the various allegations in

12     their amended complaint, went over numerous allegations.  But

13     you have to have allegations that fit within the law.  They

14     haven't done that here.

15            I didn't hear a word about Dixon v. Love, a seminal

16     Supreme Court case that held there's no fundamental right to

17     drive, to a driver's license or to intrastate travel.  They

18     don't address the Salerno standard.  They didn't address it

19     here.  And they didn't address the fact that in

20     Tomai-Minogue, the court held that a pre-deprivation hearing

21     was not required for the loss of a driver's license.  You

22     have to have allegations that fit within the law.  They don't

23     have that here.

24            I'll make just one final point with respect to

25     fundamental fairness.  My colleague made a point that Mayer

1   -- the case in Chicago did not involve jail time but a free

2   transcript.  I also mention access to the courts haven't been

3   found as a fundamental right by the Supreme Court, and found

4   that fundamental fairness does apply to cases involving

5   access to the courts as well as to incarceration.  He also

6   mentioned that, here, in this case, we also have people who

7   are threatened with jail time and so, therefore, Bearden and

8   the other cases should apply.  That is nowhere in the

9   complaint.  Nowhere in the complaint do any of the plaintiffs

10  at issue here allege that they have been threatened with jail

11  time because of their failure to pay fines and costs.

12        Thank you.

13        THE COURT:  Let me ask you one thing.

14        Would you just sort of walk me through what would

15  happen if one was convicted of an offense who was too poor to

16  pay the cost?  Just what would take place in the court,

17  courtroom and up until the time the license was suspended,

18  what they could do to prevent that?  They can't pay, but what

19  could they do, and what notices would apply to prohibit the

20  license from being suspended?

21        MS. ECKSTEIN:  Right.

22        So upon conviction and sentencing of the underlying

23  offense, the fees and costs are assessed in open court at

24  that point, and then also with the form that the individual

25  is provided.  So the notice and an opportunity to be heard

```
 1    are provided at that point.  At sentencing, the individual

 2    can say, I cannot pay this.  And, in fact, on the suspension

 3    notice that I handed up to the Court from the general

 4    district court and the circuit court, there is a space on

 5    there for a petition to be filed requesting a payment plan,

 6    requesting even cancellation of the entire financial

 7    obligation as a result of the person's individual financial

 8    circumstance.

 9         THE COURT:  Does the judge advise them at that time?

10    I haven't been in general district court for years, but when

11    the judge finds somebody guilty, fines them $50 and imposes

12    costs, what -- who tells them what at that time?

13         MS. ECKSTEIN:  So at the time that they receive the

14    document stating the suspension, it states on there

15    explicitly that they are able to ask for the reduced

16    obligation or a payment plan.  It is right there.  Many of

17    the judges have --

18         THE COURT:  I mean, I'm just -- so they're expected

19    to read this when they're convicted.

20         MS. ECKSTEIN:  Different courts handle it

21    differently.  Every circuit court and general district court

22    can handle it in the plan they have set out, which the

23    statutes require them to set out, and the Virginia Supreme

24    Court rule has set out to make sure the individual does

25    receive notice, including all of the options that are
```

1    available to them.  So they do receive that notice at that

2    time.  They also have the opportunity to come back to the

3    clerk -- in most cases, the clerk.  In other cases, it could

4    be the judge, depending on the process set up in each court

5    -- to come back and to say, I need a payment plan; here are

6    my financial circumstances; what can we do?  Or, I would

7    prefer to do community service.

8            THE COURT:  Where does the statute give them -- some

9    courts might not -- do it differently and some might omit

10   something.  How does the statute work?

11       MS. ECKSTEIN:  So 19.2-354.1(B) specifically states

12   that, "The court shall give a defendant ordered to pay fines

13   and costs written notice of the availability of payment plans

14   and community service."  Then the Supreme Court rule, 1:24, I

15   believe it is, says the same thing and requires the courts to

16   set up processes for that.

17           Then 19.2354.1(D) specifically states that, "In

18   determining what the payment plan should be, the court shall

19   take into account the defendant's financial resources and

20   obligations."  So that's provided for in the statute.  Even

21   the length of the payment plan or the amount of the payments

22   have to be reasonable, "in light of the defendant's financial

23   resources and obligations."  So the statutes set out that the

24   courts have an obligation to provide this notice to the

25   defendants.

```
1              THE COURT:  The court gives -- I take it it's not a

2    verbal thing.  They give them the papers.

3              MS. ECKSTEIN:  I think it's different in every court,

4    but they do give them the papers.  The statute requires

5    written notice, but as to whether courts provide verbal

6    notice, I think that varies.

7              THE COURT:  So, say the person, 15 days later, runs

8    into a government shutdown and doesn't get their check.  What

9    can they do at that point?

10             MS. ECKSTEIN:  They can go back to the clerk and

11   explain the situation and ask for a changed payment plan.

12   They have that opportunity.

13             THE COURT:  How do they know to do that?

14             MS. ECKSTEIN:  The notices tell them they can ask for

15   payment plans.

16             THE COURT:  The notice they're handed at the time

17   they're convicted.

18             MS. ECKSTEIN:  Yes, sir, as well as the statutes on

19   their face.

20             THE COURT:  Are they entitled to a hearing?  What

21   says they're entitled to a hearing before --

22             MS. ECKSTEIN:  Well -- sorry.

23             THE COURT:  No.

24             MS. ECKSTEIN:  At the time they go to the clerk and

25   say, I need a new payment plan because the government is shut
```

```
1    down, or whatever has happened, the clerk is required to

2    consider their financial circumstances in setting up --

3              THE COURT:  And the clerk decides that?

4              MS. ECKSTEIN:  In some jurisdictions, it is the

5    clerk.  In other jurisdictions, I think it is the judge.

6              THE COURT:  How quickly -- what if the clerk doesn't

7    do anything before the end of the 30 days?

8              MS. ECKSTEIN:  So at this point, we're going outside

9    of the record, obviously, outside of the complaint.  My

10   understanding is that the clerks typically do it at the time

11   that the request is made, and the statutes require the clerks

12   to do it.  The statutes do not set out, as far as I can

13   recall, a time period for doing it.  I'm not aware of any

14   allegation here that any of these plaintiffs defaulted

15   because the clerk didn't make a timely decision.

16             THE COURT:  Okay.  I'll allow Mr. Blank to speak to

17   that.  I should have asked you earlier.

18             MR. BLANK:  Your Honor, you could tell I was itching

19   to get up.

20             This is what Ms. Ciolfi was talking about at the

21   preliminary injunction hearing.  This is T-1 versus T-2.  T-1

22   that they want to focus is at the time of the conviction or

23   even at the time of the payment plan.  That's not what this

24   case is about.  This T-2.  This is time of default.  This is

25   the time when commissioner checks it's suspended.  It's T-2.
```

1    There is no notice before the automatic suspension.   There is

2    no notice before the automatic suspension.   There is no

3    pre-deprivation hearing before the automatic suspension.

4    There is nothing in the Code that says, Hey, if you want to

5    take somebody's license before you automatically suspend it,

6    you have to give them notice and you have to bring them in.

7    That's the problem with the statute.   That's what makes this

8    statute unconstitutional.   The check happens; the

9    commissioner suspends.   Nobody calls these people back in.

10   Nobody gives these people notices, and it is in our

11   complaint.   It is in the complaint.

12          THE COURT:   If the defendant was knowledgeable of

13   what's contained in the form, could the defendant who's

14   unable to pay prevent --

15          MR. BLANK:   No.   Your Honor, the answer is no.   And

16   more importantly what's in the form talks about a payment

17   plan, possibly.   Again, I'm not even sure they're talking

18   about the right thing, but even if there's a notice at the

19   time of conviction --   20 days, 40 days, 60 days, 100 days,

20   120 days, 300 days beforehand -- that's not enough before you

21   automatically take it if they default and the commissioner

22   then suspends automatically because of the computer system.

23   That's not enough.   It's constitutionally deficient because

24   they do not give that person the notice.   As you said, there

25   are all these things that could happen:   Government shutdown,

1    somebody gets in an accident, somebody gets sick and is

2    infirmed -- the myriad of things we go through in everyday

3    life.  There's nothing that comes back to that person before

4    you suspend, and there is no process that the commissioner

5    has to say before you suspend, this is what we're going to

6    do, and have a pre-deprivation hearing.  That is the problem.

7    They're talking about T-1.  We are talking about T-2.  Two

8    different points in time.

9         I don't know if that answers your question.  The only

10   thing I would say about the jail time, at least one, and I

11   think, frankly, two of our plaintiffs served jail time.  So

12   it's in the complaint with the inferences most considered

13   towards us.

14        THE COURT:  I'll allow you to speak -- just comment

15   -- since you get the last word, on that point.

16        MS. ECKSTEIN:  The notice and the pre-deprivation

17   hearing are provided at the time of sentencing.  That is when

18   notice is provided that the license, in fact, is suspended --

19   already is suspended.  The suspension will go into effect

20   within 30 days or upon a default in payment.  That is when

21   the notice and opportunity to be heard are provided.

22        THE COURT:  What if the person just says, Look, I

23   have no means to pay.  There's no way that I could ever come

24   up with the money.  Does the clerk -- they can't abate the

25   fine or costs, can they?

```
1            MS. ECKSTEIN:  Yes.  The statutes explicitly allow

2    the clerk or the judge to explicitly cancel the financial

3    obligation.  I think the word that's used is remit.  They can

4    order community service instead of the fine, and the statute

5    requires --

6            THE COURT:  What about the costs?

7            MS. ECKSTEIN:  The costs and fines, yes.

8            The statute specifically states that that decision

9    has to be made based on the individual's financial

10   circumstances.

11           MR. BLANK:  Your Honor, I have to correct the record

12   on one thing, and I don't mind if Ms. Eckstein responds, but

13   the issue on whether or not -- a cancellation of debt, it's a

14   show cause hearing, and, again, it's available on motion of

15   the court or Commonwealth.  It's not correct to say that a

16   clerk can do that.

17           MS. ECKSTEIN:  The show cause hearing is provided for

18   in the statute for when the person will face jail time.

19   That's the way the statute is worded.  It specifically refers

20   to show cause for incarceration for failure to pay fines and

21   costs.

22           THE COURT:  Thank you.

23           Now we'll hear the motion to certify class.

24           MS. LANGE:  Good morning, Your Honor.

25           The plaintiffs seek to represent two classes of
```

1    individuals whose licenses have been or will be suspended

2    automatically due to the failure to pay court-related debt.

3    Defendant, Commissioner Richard D. Holcomb, carries out the

4    suspension process under Section 46.2-395 of the Code of

5    Virginia without notice, without a hearing and without

6    consideration of these persons' inability to pay.  Each of

7    these failures constitutes a violation of plaintiffs' and the

8    class members' constitutional rights.  Every class member has

9    been or will be subjected to the commissioner's uniform

10   practice.  Because of the uniform practices in implementing

11   Section 46.2-395, Plaintiffs Damian Stinnie, Brianna Morgan,

12   Melissa Adams, Adrainne Johnson, Williest Bandy, and hundreds

13   of thousands of Virginia residents like them have lost their

14   licenses.

15           Plaintiffs seek to certify two classes:  First, the

16   suspended class, which includes all persons whose driver's

17   license are currently suspended due to their failure to pay

18   court debt pursuant to Virginia Code Section 46.2-395.  In

19   addition, the future suspension class seeks to encompass all

20   persons whose driver's license will be suspended due to their

21   failure to pay cost debt, pursuant to Section 46.2-395.

22   Plaintiffs in the classes seek a declaration that Section

23   46.2-395 of the Virginia Code is unlawful and violates their

24   and their class members' rights under the Constitution and

25   the laws of the United States; an injunction to enjoin the

1   commissioner from enforcing Section 46.2-395 against

2   plaintiffs and the members of the class; to remove any

3   suspensions imposed pursuant to Section 46.2-395 and the

4   plaintiffs' suspended class members' driving records; and to

5   enjoin the commissioner from charging a fee to reinstate

6   plaintiffs' and suspended class members' licenses if there

7   are no other restrictions on their licenses.  Both proposed

8   classes meet the certification requirements under Rule 23.

9        The defendant did not appear to challenge the

10   numerosity and adequacy elements of Rule 23 so I'll touch

11   upon those briefly at the outset.

12        First, with respect to numerosity, the Commonwealth's

13   own records, their own statistics, demonstrate that at any

14   particular time, hundreds of thousands of individuals have

15   their licenses indefinitely suspended for failure to pay

16   court debt.  Almost a million people have had at least one

17   suspension for court debt as of January 2017.  Governor

18   McAuliffe stated that nearly 650,000 Virginia residents

19   currently have a suspended driver's license because they

20   cannot afford to pay their legal fees and court costs to the

21   state.

22        With respect to adequacy; the representative

23   plaintiffs do not have any conflict with the other members of

24   the class, and there has not been any showing of any conflict

25   with the other members of the class.  The named plaintiffs

1   are knowledgeable of the facts of this case and they are

2   dedicated to actively participating in this case on behalf of

3   all Virginia residents.   Therefore, we think that both the

4   numerosity and adequacy prongs of Rule 23(A) are met.

5        Now, turning to commonality.   Where, as here, the

6   plaintiffs' claims and class claims are challenging an

7   agency's uniform and generally applicable systemic practices,

8   commonality is met because the defendant's actions are the

9   focus.   They're central to the claims of all class members.

10  As this Court previously explained in an analogous situation,

11  suits seeking injunctive relief, by their very nature,

12  present common questions of law and fact.

13       The commissioner in this case has a uniform policy of

14  issuing license suspensions for nonpayment once it receives a

15  computerized transmission.   Every one of the members of the

16  proposed class is equally subject to Section 46.2-395 at the

17  time they default on payments owed to the court.   Resolving

18  the questions of whether the process violates the plaintiff'

19  constitutional rights is central to the lawsuit.   If resolved

20  for the plaintiffs, it establishes the need to cease the

21  practice and remove the unconstitutional impediments on their

22  licenses.   If resolved against the plaintiffs, it holds the

23  policy as it currently exists.   The point is, the claims all

24  derive from the same common practice.   Therefore, commonality

25  is met.

```
 1              With respect to typicality, plaintiffs in each class

 2   matter are subject to the suspension, either in the past or

 3   in the future, for nonpayment of court costs pursuant to

 4   Section 46.2-395.  Plaintiffs in each class member will

 5   benefit in the declaration that Section 46.2-395, including

 6   the commissioner's implementation of it, is unconstitutional.

 7   Plaintiffs Bandy and Johnson and each future class member

 8   will benefit from an order prohibiting further injunctions --

 9   further suspensions -- sorry -- under Section 46.2-395.

10   Plaintiffs Stinnie, Morgan and Adams, and each suspended

11   class member will benefit from an order requiring the removal

12   of any suspensions imposed pursuant to Section 46.2-395 from

13   the driver's license, and an injunction prohibiting the

14   commissioner from charging a fee to reinstate those members'

15   license if there are no other restrictions on their licenses.

16   The plaintiffs are typical of the class.

17              Turning to Rule 23(b).  Here, plaintiffs seek

18   injunctive and declaratory relief under Rule 23(b)(2).  That

19   is operative when the party opposing the class has acted or

20   refused to act on grounds that apply in general to the class,

21   so that final injunctive relief or corresponding declaratory

22   relief is appropriate, respecting the class as a whole.

23              Certification is appropriate here.  The claims rest

24   on the defendant's conduct, which is based on policies and

25   practices applicable to the entire class.  Members of the
```

1   respective proposed classes face the same risk of harm:

2   either the future or current unconstitutional deprivation of

3   their driver's licenses.  The harm results from the DMV's

4   enforcement of the same statutory tax, Section 46.2-395,

5   which equally applies to all members.

6        The relief sought will benefit all class members.  A

7   declaration that Section 46.2-395 and the commissioner's

8   associated practice of automatically issuing license

9   suspensions for nonpayment, without notice or an opportunity

10  for a hearing, is unconstitutional.  An injunction requiring

11  the commissioner to cease enforcement of Section 46.2-395 and

12  to remove the wrongful suspensions from the plaintiff's and

13  suspended class members' licenses.

14       As the Supreme Court, the Fourth Circuit, and all the

15  treatises on class actions have explained, actions brought

16  for injunctive relief alleging civil rights violations are

17  precisely the type of suit that Rule 23(b)(2) is designed

18  for.  Because the focus of this case is on the statutory

19  scheme, and the defendant's conduct and the class seeks

20  uniform injunctive and declaratory relief, class

21  certification is proper here.

22       Thank you.

23       MR. GILMAN:  Good afternoon, Your Honor.  Neil Gilman

24  for the commissioner.

25       I want to start by addressing Counts 2 to 5, which

```
 1    are plaintiffs' as-applied challenges, and then I'll turn to

 2    the facial challenge in Count 1.

 3           We demonstrate in our brief why a class that requires

 4    proof of financial circumstances for each class member can't

 5    be certified.  Plaintiffs don't really challenge that

 6    analysis in any way and, in fact, I think they probably agree

 7    with it.  Instead, what plaintiffs seem to argue is that the

 8    -- is that we misconstrue their claims.  They say at page 4

 9    of the reply brief -- and they say it in other places as

10    well, Your Honor -- but it's pretty clear there, that they're

11    claiming the statute is unconstitutional for everyone,

12    "regardless of their financial circumstances."  Again, we're

13    talking here about their as-applied claims.  So I'm going to

14    point to four pieces of evidence and after the argument this

15    morning, maybe even a fifth, that show this is incorrect and

16    the plaintiffs are trying to recast these claims because they

17    know they can't be certified -- they know the as-applied

18    claims can't be certified.

19           First, Your Honor, at the February 2, 2017, hearing

20    on the motion to dismiss, plaintiffs' counsel made perfectly

21    clear that ability to pay is crucial to their as-applied

22    claims.  At page 61 of the transcript, Ms. Kendrick says that

23    this case is an as-applied challenge, "on behalf of an

24    enormous plaintiff class as to whom the law is

25    unconstitutional."  Not as to everyone, Your Honor, just
```

1    those for whom the law is unconstitutional.  If that left any

2    doubt, Your Honor, about plaintiff's case, it then became

3    perfectly clear with the next sentence, which counsel said,

4    and I quote -- this is a direct quote.  "The law is

5    constitutional when it comes to people who are able to pay.

6    It's unconstitutional when it comes to people who are unable

7    to pay."

8         Your Honor, that's basically our entire argument

9    against class certification of Counts 2 to 5.  The plaintiffs

10   seek to include in the class people whom they admit the law

11   is constitutional for.  The Supreme Court says in Dukes and

12   Jennings, you can't do that.  You can't have a (b)(2) class

13   where the conduct isn't unlawful as to all class members.

14   It's black letter law from the Supreme Court and, again,

15   that's Dukes and Jennings.  Now, that hearing was a little

16   more than two years ago.  The other pieces of evidence are

17   much more recent.

18        The second piece is plaintiffs' amended complaint,

19   which makes it clear that Counts 2 to 5 only apply, "to those

20   who cannot pay."  We cited the paragraphs in our brief and

21   include paragraphs 338, 346, 356, 357, 359 and 363.

22        Third, the named plaintiffs themselves testified that

23   those who can pay but choose not to are not part of the class

24   they seek to represent.  We cited that testimony in our

25   brief -- I think it was four or five -- and counsel told you

 1    earlier in her argument that these plaintiffs were adequate

 2    because they were knowledgeable about the case, and engaged.

 3    Yet, they don't think they're representing people who can

 4    pay.  But yet, those people are still included in their

 5    class.

 6         Fourth, plaintiffs said it in their motion for class

 7    certification.  They say the named plaintiffs will provide

 8    evidence of four things.  This is at page 21 of their brief.

 9    They say that this evidence is "identical to what other class

10    members would proffer."  And the second bullet -- they list

11    four bullets of what they're going to prove.  The second

12    bullet, is "that she or he was unable to pay those costs."

13    In other words, they're going to come up and prove a bunch of

14    things, including inability to pay.

15         Your Honor, there simply can't be any dispute that

16    the plaintiffs consistently recognize the need to prove

17    ability to pay as part of their case, and it's really

18    obvious, and, again, I think it's really undisputed that

19    ability to pay is a highly individualized issue that can't be

20    adjudicated on a class-wide basis.  You're not going to come

21    into this court and adjudicate hundreds of thousands of --

22    make hundreds of thousands of ability to pay determinations.

23         You know, finally, there's no dispute that the class

24    definition includes people who can pay and people who can't

25    pay.  In other words, the class is way overbroad and it can't

1     be certified as to those claims.

2            Again, I don't really think that the plaintiffs

3     disagree with any of that.  So what do they do?  They try to

4     redefine their claims.  They now argue all their claims are,

5     "process claims," and, again, that's at page 4 of the reply

6     brief.  But that's not what they said.  That's not what they

7     pled.  Let's look at Count 2, for example.  If you look at

8     the complaint, Count 2, the claim is that the statute is

9     "fundamentally unfair."  It "punishes individuals solely for

10    his or her inability to pay."  It's not a process claim and I

11    think the motion to dismiss argument this morning -- earlier

12    this morning -- made that clear.

13           The other counts are similar.  It really makes very

14    little sense to argue that these as-applied claims are

15    process claims.  Count 1 is the facial challenge.  If the

16    plaintiffs can't show that the statute is facially invalid,

17    which means unconstitutional in every possible application, I

18    don't understand how they can show that it's unconstitutional

19    as applied to everyone.  If they can show facial invalidity,

20    I don't see what an as applied, "process claim" adds, in any

21    event.

22           So for those reasons, Your Honor, we think that

23    Counts 2 to 5 cannot be certified.

24           THE COURT:  Thank you.

25           MR. GILMAN:  So let me turn to Count 1.

1          Now, there are a lot of reasons certification could

2     also be denied here.  We explained in our brief, Your Honor,

3     that this case doesn't really present an appropriate facial

4     challenge for certification because of different factual

5     circumstances.  The key one is notice.  I was going to get

6     into the notice discussion a little bit, but I think that was

7     really well played out is -- how the notice -- and Your

8     Honor's questions about the notice really go to what happened

9     to this person?  What happened here?  What is the court in

10    Charlottesville to do, which they put in evidence on.  What

11    does a court somewhere else do that they don't, meaning -- I

12    think what that discussion really showed is that you can't

13    come to a single determination on what happened with notice,

14    how the notice was applied and whether it's constitutional in

15    all circumstances.  I think you really need -- I think as

16    Ms. Eckstein showed, I think the complaint should be

17    dismissed because it doesn't state a claim, but if you let

18    the complaint go forward, I think that the discussion this

19    morning showed why you can't just say, in one fell swoop,

20    yes, notice was fine, no notice was not fine, as to every

21    court, every judge, every clerk, every county, et cetera.

22          So there's that.  Then, Your Honor, there's only one

23    last thing I'd like to add.  In a case that was decided after

24    the briefing in this case closed, the district court in

25    Montana, Judge Hadden, faced a very similar issue that Your

```
 1    Honor faces, and it's the same case involving the Montana

 2    statute at issue -- the Montana version of the statute here.

 3    What that court held was to the extent that an injunction

 4    would apply to everyone, it makes no sense to certify a class

 5    because certifying a class has administrative problems and

 6    complexities that aren't needed when an injunction for one

 7    person, which would be, I guess, the case in a facial

 8    invalidity challenge, would apply more broadly.  So let me

 9    just cite that case.  It's DeFrancesco v. Fox.  It's

10    No. CV-17-66-EU-SCH, and again, that's Judge Hadden from the

11    District of Montana, and the decision was on January 9, 2019.

12            The Court denied certification because it found that,

13    "All potential class members in this case would benefit from

14    an injunction issued on behalf of the individually named

15    plaintiffs."

16            THE COURT:  Is he speaking only of a facial

17    challenge?

18            MR. GILMAN:  It's unclear from the decision, Your

19    Honor.  It's a short decision.  Actually, I have an extra

20    copy I could hand up at the conclusion of argument to make it

21    easier for the Court.  But it would have to be, I think,

22    because it would only be an as-applied -- as-applied --

23            THE COURT:  I think it would have to be only facial.

24            MR. GILMAN:  I agree with that, and that's why I'm

25    addressing that in the context of Count 1, which is
```

```
 1    plaintiffs' facial challenge.  I think Counts 2 to 5 should
 2    be denied for all the reasons I said about the ability to
 3    pay.  Count 1, to the extent the Court feels it's a true
 4    facial challenge, that should go forward, but I think that
 5    the Montana decision would apply.
 6            THE COURT:  Okay.
 7            MR. GILMAN:  Thank you, Your Honor.
 8            THE COURT:  Thank you.
 9            MS. LANGE:  Your Honor, I want to start with the last
10    point first, the Montana case, and then work my way
11    backwards.
12            First, with respect to that decision, it was clear
13    that the injunction was going to benefit -- it was going to
14    cease all operations of enforcing that statute if the Court
15    ruled in favor of the plaintiff.  But also, the treatises
16    disagree with that approach.  Newberg on Class Actions says
17    that when 23(b)(2) circumstance are present, unitary
18    adjudication is not only preferable, but it is also
19    essential.
20            We need to have this determination be applied across
21    the board.  There's no reason to limit it to just the named
22    plaintiffs in this case.  If their conduct is determined to
23    be unconstitutional, certifying a class and enforcing that as
24    to the class will provide the appropriate remedy.
25            Looking at the facial challenge itself, what they
```

```
1    refer to -- the individualized hearings they believe is going

2    to be paraded through this courthouse, that is again relying

3    on the misconstruction of our claims.  We're focusing on what

4    Mr. Blank referred to as type two, when there is no notice,

5    no hearing and no ability to pay.  The suspensions occur

6    automatically after default.  It doesn't matter what happened

7    prior to that default.  As you said earlier, maybe a person

8    was able to pay days 1 through 15, but then their job was

9    furloughed.  They were not able to get those government

10   checks or they lost their job.  Circumstances change, and

11   that is why it's important at the time of default that

12   consideration is taken into account of their ability to pay

13   and that notice is provided in a hearing at the time of

14   default, and that is the focus of our claim.  When that

15   occurs, the conduct on behalf of the commissioner is uniform.

16   They get the electronic transmission that default has

17   occurred and the license is suspended.  No notice is provided

18   to the individuals.  No hearing is provided and no ability to

19   pay is taken into consideration.

20          With respect to Counts 2 through 5, they say that

21   proof of financial circumstances is necessary.  If you look

22   at -- I will agree that for an equal protection

23   determination, which we have pled, and which our named

24   plaintiffs will be able to prove, and which Adrainne Johnson

25   has already testified to before this court of her inability
```

```
1    to pay -- that that fact will come into play.  But what you

2    look to with certification is what is the form of relief that

3    is being requested, and does that apply uniformly across the

4    board.  And it does.  Every single Virginia resident, whether

5    they're well off or not in great financial circumstances, has

6    the right to receive notice, a hearing, and an ability to pay

7    determination, because circumstances change.  We don't know

8    who is going to be able to make those payments on day 30 or

9    day 29 or day 120.  Those circumstances change, and so that's

10   why before the deprivation happens, we need to make that

11   assessment.

12        Here's the other thing.  We had Dr. Peterson testify

13   at the preliminary injunction hearing, and his expert

14   testimony showed that this statute disproportionately affects

15   poor people.  The Commonwealth -- Governor McAuliffe has

16   himself said that 650,000 individuals had their driver's

17   licenses suspended because of their inability to pay -- their

18   inability.  Yes, that is the focus, that is the reason for

19   this lawsuit to exist, is to protect -- or those counts, I

20   guess.  But everybody can fall into that bucket.  Everybody

21   can get the relief we request.  If a constitutional process

22   is put in place and an ability to pay hearing is afforded,

23   only the poor people are actually going to have that benefit

24   of the determinations.  But none of that has to happen before

25   this Court.  All that has to be determined is whether the
```

1     process in place right now is constitutional or

2     unconstitutional.  And our position is it's unconstitutional

3     and we need the relief from you to give it class-wide effect.

4          Another point is that courts are uniform that

5     individualized hearings or determination that every class

6     member is injured is not necessary for a (b)(2)

7     certification.  Again, the focus is on the remedy that the

8     class is seeking and whether that will have uniform

9     application; and here, it does.  We set that out in the

10    briefs.

11         This case reminds me of the case that was before Your

12    Honor a few years ago, Harris v. Rainey, which was dealing

13    with individuals who -- at a prison -- female prison

14    population -- who were having insufficient medical treatment.

15    Not every single person in that prison population necessarily

16    had gotten sick or injured and needed to get that medical

17    treatment, but what was important was putting in place

18    sufficient medical treatment in case those individuals do

19    become injured or sick so that they can get the appropriate

20    medical treatment.  That is exactly what's going on here.

21    Maybe right now, not every single Virginia resident will take

22    the benefit of having an inability to pay hearing, but they

23    need to be given that opportunity should their circumstances

24    change.

25         Again, the focus here -- just one point I want to

1    make about the reference to Counts 2 through 5 is if you look

2    at what the remedy is afforded in the Bearden case, it is all

3    about putting in place the process, putting in place the

4    inability to pay hearing, and you need to do that across the

5    board, and that's why our class includes everybody that can

6    face the suspension scheme under Section 46.2-395.

7            I have nothing further, Your Honor.

8            THE COURT:  Thank you.

9            If that's all then -- thank you all.

10           MR. BLANK:  Thank you, Your Honor.

11           THE COURT:  Recess.

12           Ms. Eckstein:  Your Honor, may I pass up the Montana

13    case my colleague referenced?

14           THE COURT:  Yes, please.

15           (Said document handed to the Court.)

16           (Proceedings concluded at 12:19 p.m.)

17

18    "I certify that the foregoing is a correct transcript from

19    the record of proceedings in the above-entitled matter.

20

21

22    /s/Sonia Ferris                    June 3, 2019"

23

24

25