CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
06/28/2019
JULIA C. DUDLEY, CLERK
BY: /s/ J. JONES
        DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

DAMIAN STINNIE, *ET AL.*,

          *Plaintiffs,*

v.

RICHARD D. HOLCOMB,
in his official capacity as the Commissioner of
the Virginia Department of Motor Vehicles,

          *Defendant.*

3:16-CV-00044

MEMORANDUM OPINION

JUDGE NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE

    Before the Court is Defendant Virginia Department of Motor Vehicles Commissioner Richard D. Holcomb's (the "Commissioner") motion to dismiss the case as moot or, in the alternative, to stay the case. (Dkt. 142). The underlying matter is the constitutionality of Virginia Code § 46.2-395 ("§ 46.2-395"), which requires the automatic suspension of drivers' licenses for failure to pay state court fines and costs.

    The Commissioner filed the present motion due to the enactment of Budget Amendment No. 33 (the "Budget Amendment"), which eliminates the suspension of drivers' licenses for failure to pay court fines and costs through July 1, 2020, but does not repeal § 46.2-395. The Commissioner argues that the Budget Amendment renders Plaintiffs' harm so remote as to moot the case, or, alternatively, that it represents the Virginia legislature's commitment to repeal, and thus supports a stay of the matter pending the 2020 session of Virginia's General Assembly. For the reasons discussed below, the Court finds that the Budget Amendment does not moot the case, but does render a stay appropriate.

1

I.   Background

A full recitation of the facts surrounding this case can be found in the Court's memorandum opinion granting Plaintiffs' preliminary injunction. *Stinnie v. Holcomb*, 355 F.Supp.3d 514, 520–23 (W.D. Va. 2018). Relevant here is the case's procedural history and the text and impact of the Budget Amendment.[1] This case was first filed in July 2016 and dismissed without prejudice. (Dkt. 57). The Fourth Circuit dismissed Plaintiffs' appeal for lack of appellate jurisdiction. *See Stinnie v. Holcomb*, 734 F. App'x 858, 863 (4th Cir. 2018). The Fourth Circuit explained that this Court's "grounds for dismissal [did] not clearly indicate that no amendment in the complaint could cure the defects in the plaintiff's case." *Id*. at 861 (internal quotations omitted). Accordingly, on remand, in September 2018, Plaintiffs[2] submitted an amended complaint, alleging that § 46.2-395 "as written and as implemented by the Virginia Department of Motor Vehicles ("DMV") Commissioner . . . is unconstitutional on its face" under the Fourteenth Amendment due process clause "for failing to provide sufficient notice or hearing to any driver before license suspension." (Dkt. 84 ¶ 5). Plaintiffs also allege § 46.2-395 is unconstitutional under the Fourteenth Amendment equal protection clause "as applied to people who cannot afford to pay due to their modest financial circumstances." (*Id.*).

Plaintiffs moved for a preliminary injunction to: (1) enjoin the Commissioner from enforcing § 46.2-395; (2) remove current suspensions of Plaintiffs' drivers' licenses imposed

---

[1]   Va. Legislative Information System, 2019 Session Budget Amendments-HB1700, Amendment 33, Item 3-6.03, https://budget.lis.virginia.gov/amendment/2019/1/HB1700/Enrolled/GE/.

[2]   The plaintiffs named in the amended complaint are Damian Stinnie, Melissa Adams, Adrainne Johnson, Williest Bandy, and Brianna Morgan ("Plaintiffs"). They bring this action "for themselves individually and on behalf of all others similarly situated," seeking the certification of two classes: (1) a "Suspended Class" consisting of all persons whose drivers' licenses are currently suspended due to their failure to pay court debt pursuant to § 46.2-395 and (2) a "Future Suspended Class" consisting of all persons whose drivers' licenses will be suspended due to their failure to pay court debt pursuant to § 46.2-395. (Dkt. 84 ¶¶ 296–298).

under § 46.2-395; and (3) enjoin the Commissioner from charging a fee to reinstate licenses for plaintiffs with no other restrictions on their licenses. (Dkt. 88). This Court granted Plaintiffs' preliminary injunction, finding that the Court could properly exercise jurisdiction over the case, and that Plaintiffs were likely to succeed on the merits of their procedural due process claim because the procedures provided by § 46.2-395 "are not sufficient to protect against the erroneous deprivation of the property interest involved." (Dkt. 126 at 18). Currently pending before the Court is the instant motion to dismiss, (dkt. 142), a motion to dismiss pursuant to Fed. R. Civ. P. 12, (dkt. 104), a motion to certify class, (dkt. 85), cross motions for summary judgment, (dkts. 195, 200), and a motion to exclude witnesses, (dkt. 198).

As to the Budget Amendment, Virginia Governor Ralph Northam proposed the Budget Amendment to "eliminate the suspension of driving privileges for nonpayment of court fines and costs."[3] In full, the Budget Amendment states:

> [N]otwithstanding the provisions of § 46.2-395 of the Code of Virginia, no court shall suspend any person's privilege to drive a motor vehicle solely for failure to pay any fines, court costs, forfeitures, restitution, or penalties assessed against such person. The Commissioner of the Department of Motor Vehicles shall reinstate a person's privilege to drive a motor vehicle that was suspended prior to July 1, 2019, solely pursuant to § 46.2-395 of the Code of Virginia and shall waive all fees relating to reinstating such person's driving privileges. Nothing herein shall require the Commissioner to reinstate a person's driving privileges if such privileges have been otherwise lawfully suspended or revoked or if such person is otherwise ineligible for a driver's license.

Accompanying the text of the Budget Amendment is an explanation, which provides:

---

[3] Commonwealth of Virginia Office of the Governor, *Governor Northam Announces Budget Amendment to Eliminate Driver's License Suspensions for Nonpayment of Court Fines and Costs* (Mar. 26, 2019), https://www.governor.virginia.gov/newsroom/all-releases/2019/march/headline-839710-en.html (last visited June 21, 2019)

> This amendment eliminates the driver's license reinstatement fee transfer to the Trauma Fund and eliminates the loss of driving privileges to individuals who have only failed to pay fines, court costs, forfeitures, restitution or penalties assessed against them. The Department of Motor Vehicles also shall not charge a driver's license reinstatement fee to these individuals. This initiative will help individuals that require a vehicle to gain a job, allowing them to earn money to repay any obligations they owe. This amendment has no impact to the general fund since the impact of its passage was assumed in the introduced and enrolled budgets.

The Commissioner provided the Court with a sworn declaration stating that "[p]ursuant to Budget Amendment 33, the DMV database will reflect that Va. Code § 46.2-395 suspensions that were inputted before July 1, 2019 have been complied with. Suspensions unrelated to Va. Code § 46.2-395 will remain active on the record." (Dkt. 170-4, ¶ 7). The Commissioner further states that "[d]rivers who have records of suspension relating to Va. Code § 46.2-395 and suspensions relating to other statutory provisions will have their record relating to their § 46.2-395 suspension reflect that the VA. Code § 46.2-395 suspension has been complied with, but will have to resolve the issues relating to their non-§ 46.2-395-suspensions before their privilege to drive can be reinstated." (*Id*. at ¶ 9). The Commissioner reiterated this understanding of the Budget Amendment at oral argument.

As the Commissioner notes, the General Assembly's support of both the Budget Amendment—which passed by votes of 70 to 29 in the House and 30 to 8 in the Senate—indicates political hostility towards § 46.2-395. (Dkt. 143). While Plaintiffs are correct that one "can only speculate about the possibility of legislative action," (dkt. 156), the Commissioner testified that the process of drafting legislation to codify the Budget Amendment has begun. (Dkt. 208-1 at 83).

## II. Legal Standards

"Under Article III of the Constitution, federal courts may adjudicate only actual, ongoing cases or controversies." *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990) (internal citations omitted). "This case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate." *Id.* (internal citations and quotations omitted). "A case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000). "A case is not moot . . . if a party can demonstrate that the apparent absence of a live dispute is merely a temporary abeyance of harm that is capable of repetition, yet evading review." *Brooks v. Vassar*, 462 F.3d 341, 348 (4th Cir. 2006).

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.*, 299 U.S. 248, 254 (1936). In determining whether a stay is appropriate a court should "balance the various factors relevant to the expeditious and comprehensive disposition of the causes of action on the court's docket." *Md. v. Universal Elections, Inc.*, 729 F.3d 370, 375 (4th Cir. 2013) (internal quotations omitted). These factors include "the interests of judicial economy, the hardship and inequity to the moving party in the absence of a stay, and the potential prejudice to the non-moving party in the event of a stay." *Crowell v. N.C.*, No. 1:17-cv-514, 2018 WL 6031190, at *4 (M.D.N.C. Nov. 16, 2018).

### III. Analysis

#### A. The Commissioner's Motion to Dismiss the Case as Moot

The Commissioner first argues that the Budget Amendment renders this case constitutionally moot. For a case to be constitutionally moot, the challenged conduct must cease "such that there is no reasonable expectation that the wrong will be repeated." *City of Erie*, 529

U.S. at 287. Where a lawsuit concerns the constitutionality of a statute, the amendment or repeal of a statute can moot a case "even where re-enactment of the statue at issue is within the power of the legislature." *Brooks*, 462 F.3d at 348. The Fourth Circuit has found cases moot when "there was no reasonable expectation" that a statute would be reenacted. *See, e.g., Reyes v. City of Lynchburg*, 300 F.3d 449, 453 (4th Cir. 2002). However, a case is not moot where "there is a reasonable expectation that the complaining party will be subjected to the same action again." *Mellen v. Bunting*, 327 F.3d 355, 364 (4th Cir. 2003) (citing *Spencer v. Kemna*, U.S. 1, 17 (1998)). Here, although the Budget Amendment has temporarily halted its enforcement, § 46.2-395 remains the law. The Commissioner may be correct that "resumed enforcement does not appear probable," (dkt. 143 at 9), but speculation as to legislative action in 2020 is not alone sufficiently concrete to justify labeling Plaintiffs' expectation of repeated harm unreasonable. Although the Budget Amendment may indeed reflect shifting political winds, the Court finds that future enforcement of § 46.2-395 remains reasonably possible such that this case is not moot under Article III.

The Commissioner next contends that, even if the Court finds that the case is not moot in the constitutional sense, the case is "prudentially moot," and the Court should use its "'discretionary power to withhold injunctive and declaratory relief for prudential reasons.'" (Dkt. 143 at 10 (quoting *S-1 v. Spangler*, 832 F.2d 294, 297 (4th Cir. 1987))). A case is prudentially moot, and a Court cannot offer relief, where there is "only hypothetical and speculative harm." *Catawba Riverkeeper Found. v. N.C. Dep't of Transp.*, 843 F.3d 583, 589 (4th Cir. 2016). However, a case is not moot where there is a "continuing and brooding presence" over the plaintiff. *Preiser v. Newkirk*, 422 U.S. 395 (1975). The Fourth Circuit found, in *Catawba Riverkeeper Found.*, 843 F.3d at 589, that there was only a "remote possibility" that

the harm to the plaintiff could occur where it was prevented by "multiple barriers." Here, the only barrier to Plaintiffs' harm is the Budget Amendment and the hypothetical actions of the Virginia General Assembly in 2020. The Court cannot base a finding of prudential mootness on the "hypothetical and speculative" facts the Commissioner offers. *Id*. Furthermore, as discussed above with respect to constitutional mootness, the Budget Amendment is only a temporary cessation of the allegedly unconstitutional conduct at issue in this case, and there is a real prospect of continued enforcement of the statute.

### B. The Commissioner's Motion to Stay

The Commissioner argues that, if the Court declines to dismiss the case, it "should, at a minimum, exercise its discretionary authority to stay proceedings pending the outcome of Virginia's next legislative session." (Dkt. 143 at 13). The Commissioner contends that a stay will prevent "the parties and the Court from wasting considerable time and resources," "avoid a quagmire of class certification issues," and prevent hardship to the parties. (Dkt. 170 at 3). Plaintiffs argue that a stay is not justified by the Commissioner's alleged hardship. (Dkt. 156 at 15). For the reasons discussed below, the relevant factors weigh in favor of a stay.

#### 1. Judicial Economy

In considering judicial economy, the Court considers principles of constitutional avoidance and judicial restraint, as well as the practical considerations presented by the docket. The Court is mindful of principles counseling discretion in its exercise of authority. First, "the principle of constitutional avoidance set forth in *Ashwander v. Tenn. Valley Authority* requires the federal courts to strive to avoid rendering constitutional rulings unless absolutely necessary." *Norfolk S. Ry Co. v. City of Alexandria*, 608 F.3d 150, 156 (4th Cir. 2010) (citing *Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring) ("It is not the habit of the

7

Court to decide questions of a Constitutional nature unless absolutely necessary to a decision of the case.")). Further supporting judicial restraint is the "prudential limits on [federal courts'] jurisdiction 'founded in concern about the proper—and properly limited—role of the courts in a democratic society.'" *Doe v. Va. Dept. of St. Police*, 713 F.3d 745, 753 (4th Cir. 2013) (citing *Warth v. Seldin*, 422 U.S. 490, 498 (1975)).

These principles are particularly relevant to this Court's determination regarding a stay in light of pending legislative action. Were this litigation to proceed, the Court would weigh in on sensitive constitutional questions about license suspension schemes about which other courts have disagreed,[4] as well as important case-specific issues such as class certification that are arguably complicated to a significant degree by the Budget Amendment and that could be resolved by the Virginia legislature. The Court's resolution of such issues would be rendered moot if the Virginia General Assembly repeals § 46.2-395. Thus, the Court concludes that judicial economy weighs in favor of a stay until the General Assembly either repeals § 46.2-395 or elects not to do so. *See also Crowell*, 2018 WL 6031190, at *4 (finding a stay appropriate where there was a "high likelihood of future legislative action").

### 2. Burden on the Commissioner and Harm to Plaintiffs

This litigation has been long, contentious, and no doubt costly. The Commissioner argues that the burden of litigation, including continued pre-trial motions practice as well as a trial, is too great considering the realistic possibility that his efforts will be rendered moot after the 2020 session of the Virginia General Assembly. Plaintiffs counter that their risk of harm

---

[4] *Compare Thomas v. Haslam,* 303 F.Supp.3d 585 (M.D. Tenn. 2018) (concluding that the challenged license suspension statute violated the plaintiffs' constitutional rights as established by *Griffin v. Illinois*, 351 U.S. 12, 18 (1956) and its progeny because the statute, in effect, imposed harsher consequences on defendants based on their indigence), *with Mendoza v. Garrett*, 358 F.Supp.3d 1145 (D. Or. 2018) (holding that none of the rights or issues present in the *Griffin* line of cases is present where defendants contest a license suspension scheme).

outweighs any burden on the Commissioner. The Court acknowledges the financial burden of litigation, and concludes for the following reasons that a stay will not harm Plaintiffs.

The Commissioner has provided the Court with a sworn declaration stating that, pursuant to the Budget Amendment, "the DMV database will reflect that Va. Code § 46.2-395 suspensions that were inputted before July 1, 2019 have been complied with" and that "[d]rivers who have records of suspension relating to Va. Code § 46.2-395 and suspensions relating to other statutory provisions will have their record relating to their § 46.2-395 suspension reflect that the Va. Code § 46.2-395 suspension has been complied with." (Dkt. 170-4, ¶ 7). With this interpretation of the Budget Amendment in mind, the Court finds that neither the Plaintiffs nor putative class members are in danger of losing their license pursuant to § 46.2-395 until July 1, 2020. This harm will be prevented entirely if the Virginia legislature repeals § 46.2-395. However, if the General Assembly fails to repeal § 46.2-395, the Court will have ample time to address the merits of the case, or at the very least class certification and the continued application of the preliminary injunction to class members, thus preventing further harm to Plaintiffs or the putative classes. Accordingly, both the Commissioner's burden and Plaintiffs potential harm weigh in favor of a stay.

Having concluded that all relevant factors counsel in favor of a stay, the Court will stay this matter and all other pending motions in accordance with the accompanying order.

### IV.    Conclusion

For the reasons discussed above, the Court finds that this case is not moot, and will deny the Commissioner's motion to dismiss the case as moot. However, because the relevant factors weigh in favor of a stay, the Commissioner's motion to stay the case will be granted. An

accompanying order will issue, establishing the temporal parameters of the stay and directing the parties to file status updates at specified junctures.

The Clerk of the Court is hereby directed to send a certified copy of this memorandum opinion and the accompanying order to all counsel of record.

Entered this 28th day of June, 2019.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE