**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION**

| | |
|---|---|
| DAMIAN STINNIE, MELISSA ADAMS, and ADRAINNE JOHNSON, individually, and on behalf of all others similarly situated; WILLIEST BANDY, and BRIANNA MORGAN, individually, and on behalf of all others similarly situated, <br><br>      Plaintiffs, <br><br>        v. <br><br> RICHARD D. HOLCOMB, in his official capacity as the Commissioner of the VIRGINIA DEPARTMENT OF MOTOR VEHICLES, <br><br>      Defendant. | Civ. No: 3:16-cv-00044 |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF PETITION
FOR ATTORNEYS' FEES AND LITIGATION EXPENSES**

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ............................................................................................. i

INTRODUCTION ......................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND.................................................. 2

    I.     Section 46.2-395 punished those unable to pay their court debt for their poverty without due process ......................................................................... 2

    II.    Plaintiffs sued to defend their constitutional rights, but this Court dismissed the Complaint finding a lack of subject matter jurisdiction................. 2

    III.   The case went to the Fourth Circuit, which allowed the case to go forward, remanding with instructions to permit Plaintiffs to amend their Complaint ......... 3

    IV.   On remand, Plaintiffs filed their First Amended Class Action Complaint and Motion for Preliminary Injunction on the same day ...................................... 4

    V.    This Court granted the preliminary injunction on the merits, materially altering the legal relationship among the parties .................................................... 4

    VI.   In recognition of the impact of the preliminary injunction, a bi-partisan majority in the Virginia General Assembly repealed § 46.2-395 ......................... 7

LEGAL STANDARDS ................................................................................................. 10

ARGUMENT ................................................................................................................ 11

    I.     Supreme Court precedent confirms Plaintiffs' entitlement to fees ..................... 12

          A.     *Winter* announces a new, more stringent merits-based standard for obtaining a preliminary injunction............................................................ 12

          B.     *Lefemine* clarifies and defines when a plaintiff is a prevailing party ...... 13

          C.     Reading *Winter*, *Lefemine*, and other relevant Supreme Court precedent together compels the conclusion that Plaintiffs are prevailing parties................................................................................... 14

    II.    Other precedent supports a finding that Plaintiffs are prevailing parties............. 15

          A.     Courts across the country recognize that obtaining a preliminary injunction can be sufficient to confer prevailing party status................. 15

          B.     Cases that are factually analogous support a finding that Plaintiffs are prevailing parties......................................................................... 17

          C.     Fourth Circuit precedent is consistent with the conclusion that Plaintiffs are prevailing parties ............................................................. 21

    III.   *Buckhannon*'s catalyst theory rule does not apply here....................................... 22

CONCLUSION.............................................................................................................. 25

CERTIFICATE OF SERVICE ..................................................................................... 27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Blackwelder Furniture Co. of Statesville, Inc. v. Seilig Mfg. Co.*,
    550 F.2d 189 (4th Cir. 1977) ............................................................12, 21

*Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human
    Resources*,
    532 U.S. 598 (2001) ..................................................................... *passim*

*Common Cause/Georgia v. Billups*,
    554 F.3d 1340 (11th Cir. 2009) ............................................16, 18, 19, 21

*CRST Van Expedited, Inc. v. E.E.O.C.*,
    136 S. Ct. 1642 (2016) ....................................................................11, 14

*Dearmore v. City of Garland*,
    519 F.3d 517 (5th Cir. 2008) ...........................................................16, 24

*Enovative Techs., LLC v. Leor*,
    86 F. Supp. 3d 445 (D. Md. 2015) .........................................................23

*Etheridge v. Norfolk & Western Ry. Co.*,
    9 F.3d 1087 (4th Cir. 1993) ...................................................................22

*Farrar v. Hobby*,
    506 U.S. 103 (1992) ..............................................................................11

*Haley v. Pataki*,
    106 F.3d 478 (2d Cir. 1997) ..................................................................16

*Henderson for Nat'l Labor Relations Bd. v. Bluefield Hospital Co., LLC*,
    902 F.3d 432 (4th Cir. 2018) ...........................................................12, 13

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) .........................................................................10, 11

*Higher Taste, Inc. v. City of Tacoma*,
    717 F.3d 712 (9th Cir. 2013) .................................................................16

*Kansas Judicial Watch v. Stout*,
    653 F.3d 1230 (10th Cir. 2011) .........................................................16, 24

*Lefemine v. Wideman*,
568 U.S. 1 (2012).................................................................. *passim*

*Mathews v. Eldridge*,
424 U.S. 319 (1976)........................................................................6

*Pa. v. Del. Valley Citizens' Council for Clean Air*,
478 U.S. 546 (1986)......................................................................10

*Pashby v. Delia*,
709 F.3d 307 (4th Cir. 2013) ........................................................21

*People Against Police Violence v. City of Pittsburgh*,
520 F.3d 226 (3d Cir. 2008)..........................................14, 16, 22

*Riverside v. Rivera*,
477 U.S. 561 (1986)......................................................................10

*Rogers Group, Inc. v. City of Fayetteville, Ark.*,
683 F.3d 903 (8th Cir. 2012) ........................................................16

*Rum Creek Coal Sales, Inc. v. Caperton*,
31 F.3d 169 (4th Cir. 1994) ..........................................................10

*Select Milk Producers, Inc. v. Johanns*,
400 F.3d 939 (D.C. Cir. 2005) .............................................. *passim*

*Smyth ex rel. Smyth v. Rivero*,
282 F.3d 268 (4th Cir. 2002) ........................................13, 21, 22

*Snider Int'l Corp. v. Town of Forest Heights, Md.*,
739 F.3d 140 (4th Cir. 2014) ..........................................................5

*Sole v. Wyner*,
551 U.S. 74 (2007)........................................................................24

*Stinnie v. Holcomb*,
355 F. Supp. 3d 514 (W.D. Va. 2018) ................................... *passim*

*Stinnie v. Holcomb*,
396 F. Supp. 3d 653 (W.D. Va. 2019) ............................................8

*Stinnie v. Holcomb*,
734 F. App'x 858 (4th Cir. 2018) .......................................... *passim*

*Stinnie v. Holcomb*,
Case No. 3:16-cv-00044, 2017 WL 963234 (W.D. Va. Mar. 13, 2017) ...................................3

*Swift Beef Co. v. Alex Lee, Inc.*,
   760 F. App'x 160 (4th Cir. 2019) ...............................................................................20

*Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*,
   489 U.S. 782 (1989).............................................................................................10, 11

*United States v. AMC Entertainment, Inc.*,
   549 F.3d 760 (9th Cir. 2008) ......................................................................................21

*United States v. Blackman*,
   Case No. 3:04CV00046, 2005 U.S. Dist. LEXIS 25622 (W.D. Va. Oct. 19, 2005) ..............23

*Veasey v. Wilkins*,
   158 F. Supp. 3d 466 (E.D.N.C. 2016)..................................................................... *passim*

**Statutes**

28 U.S.C. § 1292(a)(1)...................................................................................................20

42 U.S.C. § 1983 ...........................................................................................................18

42 U.S.C. § 1988 .................................................................................................... *passim*

NCGS 14-415.12(a)(1) ...................................................................................................17

Virginia Code Ann. § 46.2-395........................................................................... *passim*

**Rule**

Fed. R. Civ. P. 54(d) .....................................................................................................10

Plaintiffs move for attorneys' fees and expenses under 42 U.S.C. § 1988 and submit the following Memorandum in Support of Petition for Attorneys' Fees and Litigation Expenses:

**<u>INTRODUCTION</u>**

Plaintiffs are the prevailing parties.

Virginia Code Ann. § 46.2-395 (hereinafter "§ 46.2-395" or "Section 46.2-395") breached the promise of procedural due process made to all Americans regardless of race and poverty. A little over two years ago, Chief Judge Gregory remarked that: "By suspending the licenses of those who cannot pay for reasons outside their control, the state traps thousands of Virginians in a *nightmarish spiral for which there is no apparent exit*." *Stinnie v. Holcomb*, 734 F. App'x 858, 864 (4th Cir. 2018) (Gregory, C.J., dissenting) (emphasis added). That exit finally came when this Court granted Plaintiffs' requested preliminary injunction.

When Plaintiffs began this litigation, they had a simple goal—to stop the Commissioner of the Virginia Department of Motor Vehicles (the "Defendant") from unjustly punishing their poverty through the suspension of their driver's licenses without due process under § 46.2-395. On December 21, 2018, Plaintiffs achieved that goal when this Court ended that unjust punishment through its well-reasoned and warranted preliminary injunction. The Court's preliminary injunction changed Plaintiffs' lives. It gave them dignity, a chance to provide for themselves and their families, and a real opportunity to break the cycle of poverty. And just as importantly, it recognized the unconstitutionality of § 46.2-395. The Court determined, on the merits, that it was "likely that Plaintiffs [would] succeed in establishing that § 46.2-395 violates procedural due process." *Stinnie v. Holcomb*, 355 F. Supp. 3d 514, 532 (W.D. Va. 2018).

This Court's preliminary injunction was the defining moment of this litigation—it addressed the substantive merits of Plaintiffs' case against § 46.2-395 and granted relief. In the

months following that material alteration of the legal relationship between Plaintiffs and Defendant, a bi-partisan majority of the Virginia General Assembly joined forces to repeal the statute – even as the preliminary injunction continued to remain in effect as an independent and preexisting source of relief from § 46.2-395 to Plaintiffs. That the legislature later chose to act does not detract from Plaintiffs' entitlement to fees as prevailing parties based on the preliminary injunction. Supreme Court precedent and case law from courts around the country interpreting that precedent support Plaintiffs' entitlement to fees.

## FACTUAL AND PROCEDURAL BACKGROUND

I. **Section 46.2-395 punished those unable to pay their court debt for their poverty without due process.**

For years, the Commonwealth of Virginia denied Plaintiffs procedural due process, among other things, by automatically suspending driver's licenses for failure to pay court debt without holding a hearing or invoking any process whatsoever to determine ability to pay. *See* Va. Code Ann. § 46.2-395. Plaintiffs were unable, not unwilling, to pay their court debt. (ECF 84 ¶ 88.) Indeed, this Court found that Plaintiffs could not afford to pay. *Stinnie*, 355 F. Supp. 3d at 520–23. In doing so, the Court noted the many struggles Plaintiffs have endured that have adversely affected their ability to pay their court debt, like serious illness, unemployment, and incarceration. *See id.* Despite Plaintiffs' inability to pay, this Court found that none of them were asked about their financial circumstances prior to license suspension. *See id.*

II. **Plaintiffs sued to defend their constitutional rights, but this Court dismissed the Complaint finding a lack of subject matter jurisdiction.**

In July 2016, Plaintiffs took a stand to end the harm § 46.2-395 had been causing. (ECF 1.) They sued Defendant, claiming constitutional violations stemming from § 46.2-395. (*Id.* ¶¶

322–365.)  Plaintiffs sought certain declaratory and injunctive relief, as well as attorneys' fees and costs under 42 U.S.C. § 1988.  (*Id.* at 43–44.)

This Court dismissed the case on the grounds that it lacked jurisdiction under the *Rooker-Feldman* doctrine, Article III, and Eleventh Amendment immunity.  *See Stinnie v. Holcomb*, Case No. 3:16-cv-00044, 2017 WL 963234, at *20 (W.D. Va. Mar. 13, 2017).  Plaintiffs appealed the dismissal.  (ECF 74.)

## III.  <u>The case went to the Fourth Circuit, which allowed the case to go forward, remanding with instructions to permit Plaintiffs to amend their Complaint.</u>

On appeal, the United States Court of Appeals for the Fourth Circuit (the "Fourth Circuit") determined that it "lack[ed] jurisdiction to consider Plaintiffs' appeal because the district court's dismissal without prejudice was not a final order."  *Stinnie*, 734 F. App'x at 861.  The Fourth Circuit "remand[ed] the case to the district court with instructions to allow Plaintiffs to amend their complaint" because it concluded Plaintiffs could cure any deficiencies that had been identified by the Court in its dismissal order.  *See id.* at 860–63.

Chief Judge Gregory dissented because he concluded "the district court's dismissal of Plaintiffs' case for lack of jurisdiction [was] an appealable final order."  *Id.* at 863 (Gregory, C.J., dissenting).  He would have reached the merits and determined that this Court improperly dismissed the action on jurisdictional grounds.  *See id.*  Chief Judge Gregory's well-reasoned and thoughtful opinion strongly hinted at the eventual resolution of this case in Plaintiffs' favor.  (*See id.* at 863–64 (detailing Virginia's driver's license scheme which did "not differentiate between those *unable* to pay from those *unwilling* to pay"); *id.* at 864–65 (noting the disastrous impact the statute had on Virginians).

Chief Judge Gregory hit the nail on the head characterizing § 46.2-395 as Defendant's "license-for-payment scheme."  *See id.* at 863–64.  Virginia was charging people about a *half-*

*billion* dollars in court fines and fees and was using the money to fund the government. *See id.* Then Defendant was automatically suspending licenses for nonpayment without considering ability to pay. *See id.* The system was wrong, the harm caused by the inequitable treatment under the statute was severe, and Plaintiffs would win relief from that practice.

**IV.**     **On remand, Plaintiffs filed their First Amended Class Action Complaint and Motion for Preliminary Injunction on the same day.**

In September 2018, Plaintiffs filed their First Amended Class Action Complaint in this Court, alleging, like the first Complaint, that § 46.2-395 was unconstitutional. (ECF 84 at 37–43.) As they had in their initial Complaint, Plaintiffs sought declaratory and injunctive relief, as well as attorneys' fees and costs under 42 U.S.C. § 1988. (*Id.* at 43–44.) At the same time, Plaintiffs filed a Motion for Preliminary Injunction, asking this Court to: (1) enjoin Defendant from enforcing § 46.2-395 against Plaintiffs without notice and a determination of ability to pay; (2) remove any current suspensions of Plaintiffs' driver's licenses imposed under § 46.2-395; and (3) enjoin Defendant from charging a fee to reinstate Plaintiffs' licenses if no other restrictions on their licenses existed. (ECF 88 at 1.)

In November 2018, Defendant once again moved to dismiss the First Amended Class Action Complaint based on the *Rooker-Feldman* doctrine, Article III standing, immunity, and failure to state a claim on which this Court could grant relief. (ECF 104; ECF 105.) As further discussed below, after this Court granted the preliminary injunction, Defendant moved for a stay, which this Court granted. (ECF 215.)

**V.**     **This Court granted the preliminary injunction on the merits, materially altering the legal relationship among the parties.**

Following briefing by the parties and a hearing involving several hours of testimony, including expert evidence, this Court granted Plaintiffs' Motion for Preliminary Injunction on

December 21, 2018, relieving Plaintiffs from the scourge of § 46.2-395 and signaling that it likely failed to accord with constitutional guarantees of due process. *Stinnie*, 355 F. Supp. 3d at 527–32; (ECF 127).

In its opinion, this Court made it clear that it was "turn[ing] to the merits of the preliminary injunction." 355 F. Supp. 3d at 527. This preliminary injunction did not maintain the status quo, it *upended* it. In deciding the merits of the preliminary injunction, this Court turned, as it should, to the "govern[ing]" test from *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008). 355 F. Supp. 3d at 527. It specifically noted that "[t]o obtain a preliminary injunction, the moving party must establish 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Id.*

This Court then concluded that Plaintiffs showed they were likely to succeed, at the very least, on their procedural due process claim. *See id.* In so ruling, the Court carefully examined the notice and hearing components of procedural due process. *See id.* at 528–31. The Court determined that "Plaintiffs . . . made a clear showing that they are likely to establish that they are not provided an opportunity to be heard." *Id.* at 529. And, of course, having an opportunity to be heard is crucial to procedural due process. *See Snider Int'l Corp. v. Town of Forest Heights, Md.*, 739 F.3d 140, 146 (4th Cir. 2014).

This Court recognized that § 46.2-395 failed the hearing requirement of procedural due process. *Stinnie*, 355 F. Supp. 3d at 529 ("Plaintiffs are likely to show § 46.2-395 does not provide *any* hearing, much less one that satisfies due process.") (emphasis in original); *id.* at 529–530 ("The Court determines that Plaintiffs are likely to succeed because the procedures in place are not sufficient to protect against the erroneous deprivation of the property interest

involved. Indeed, § 46.2-395, on its face, provides no procedural hearing at all."). That was precisely what Plaintiffs had been arguing all along. (ECF 1 ¶¶ 410-18; ECF 84 ¶¶ 323-31 ("In the absence of notice and hearing, which do not presently exist under Virginia law in relation to driver's license suspensions for unpaid court debt, the risk is very high that a debtor will be deprived of his or her driver's license for reasons attributable to his or her poverty.").)

The preliminary injunction opinion marched through the *Mathews* factors for procedural due process. *See id.* at 529–31 (citing *Mathews v. Eldridge*, 424 U.S. 319 (1976)). In doing so, it considered the parties' arguments on the merits. *Id.* This Court also determined that the rest of the *Winter* factors, "irreparable harm, the balance of equities, and the public interest," all counseled in Plaintiffs' favor. *Id.* at 532. First, "[i]rreparable harm [was] clearly demonstrated through the facts surrounding Plaintiff Stinnie." *Id.* Regarding the balance of equities, and the public interest, the Court noted that it would actually help Virginia for the Court to enjoin unconstitutional activity. *See id.* And no interest Virginia might have had was "furthered by a license suspension scheme that neither consider[ed] an individual's ability to pay nor provide[d] him with an opportunity to be heard on the matter." *See id.* Thus, the harm to Plaintiffs stemming from § 46.2-395 "outweigh[ed] any harm the issuance of a preliminary injunction would cause others." *Id.*

In granting the injunction, this Court ordered that: 1) Defendant was "preliminarily enjoined from enforcing . . . § 46.2-395 against Plaintiffs unless or until [Defendant] or another entity provide[d] a hearing regarding license suspension and provide[d] adequate notice thereof;" 2) Defendant must "remove any current suspensions of Plaintiffs' driver's licenses imposed under . . . § 46.2-395;" and 3) Defendant was "enjoined from charging a fee to reinstate Plaintiffs' driver's licenses if there [were] no other restrictions on their licenses." (ECF 127 at

1.)  Defendant did not appeal the preliminary injunction, and, consistent with the preliminary injunction, provided the relief the Plaintiffs had fought for and prevailed upon via the preliminary injunction.

## VI.    In recognition of the impact of the preliminary injunction, a bi-partisan majority in the Virginia General Assembly repealed § 46.2-395.

The preliminary injunction was a critical event that raised the profile of this litigation in the General Assembly.  For example, less than a month after the preliminary injunction, Senator William M. Stanley, who sponsored the legislation repealing § 46.2-395, remarked, "Hopefully with the preliminary injunction being granted, anybody who has doubts about [the bill to end the required license suspensions for nonpayment of court debt] will remove them.  I hope the House of Delegates will join the Senate in fixing this problem."  Matthew Chaney, *Va. License Suspension Law Faces New Challenges*, VA. LAWYERS WEEKLY (Jan. 9, 2019), *available at*, https://valawyersweekly.com/2019/01/09/va-license-suspension-law-faces-new-challenges/.

After the preliminary injunction hearing and the blockage of repeal by the House of Delegates, Governor Northam proposed budget amendment number 33 (the "Budget Amendment") to provide temporary relief to individuals whose driver's licenses had been automatically suspended for failure to pay court debt.  *Gov. Northam Announces Budget Amendment to Eliminate Driver's License Suspensions for Nonpayment of Court Fines and Costs*, OFFICE OF GOVERNOR (Mar. 26, 2019), http://bit.ly/GovNorthamBudget.  The General Assembly passed the Budget Amendment in the House of Delegates by a vote of seventy to twenty-nine, and in the Senate by a vote of thirty to eight.  *See 2019 Session HB 1700 Budget Bill*, VA. LIS, http://lis.virginia.gov/cgi-bin/legp604.exe?191+sum+HB1700.  The Budget Amendment suspended the operation of § 46.2-395 from July 1, 2019 to June 30, 2020 (one budget cycle).  *See 2019 Session HB 1700 Governor's Recommendation*, VA. LIS,

http://lis.virginia.gov/cgi-bin/legp604.exe?191+amd+HB1700AG. It also waived associated

reinstatement fees for driver's licenses otherwise eligible for reinstatement. *See id.* The General

Assembly's passage of the Budget Amendment was undoubtedly influenced by this litigation.

*See* Mel Leonor, *Northam seeks to halt license suspensions for unpaid court fees*, RICHMOND

TIMES-DISPATCH (Mar. 26, 2019), *available at*, https://www.richmond.com/news/local/

government-politics/northam-seeks-to-halt-license-suspensions-for-unpaid-court-

fees/article_8ed0c8dd-9445-5f7e-bbb4-f7fe0c7169f7.html (quoting Delegate Chris Jones as

saying, "We took what I thought was a conservative approach by leaving the money in to

respond to any potential judicial action that would invalidate the existing statute").

Twenty days after the General Assembly passed the Budget Amendment, Defendant

again moved to dismiss the case as moot or, alternatively, to stay the case to allow the General

Assembly an additional chance to pass a permanent repeal. (ECF 142; ECF 143.) Plaintiffs

vigorously opposed this motion. (ECF 156.) Plaintiffs noted that the General Assembly might

not repeal § 46.2-395, noting that it had failed to do so for years, and that staying the action

would waste time. (*Id.* at 14–16.) Plaintiffs wanted "their day in court" without delay. (*Id.* at

16.) On June 28, 2019, the Court denied the motion to dismiss but granted the motion to stay

pending the General Assembly's 2020 session. *Stinnie v. Holcomb*, 396 F. Supp. 3d 653, 661

(W.D. Va. 2019); (ECF 215). The same day, the Court canceled the bench trial that had been

scheduled for August. (ECF 216.)

During its 2020 regular session, the General Assembly considered proposed legislation to

permanently eliminate § 46.2-395's unconstitutional mandate. *See 2020 Session SB1*, VA. LIS,

https://lis.virginia.gov/cgi-bin/legp604.exe?ses=201&typ=bil&val=sb1. One of those bills was

SB1 introduced by Senator Stanley on November 18, 2019. *See id.* On January 10, 2020,

Defendant sent a letter to Senator Stanley regarding the legislation. (Exhibit A.) In the letter, Defendant gave advice about how to repeal § 46.2-395 effectively. (*Id.*) Defendant also recognized the direct impact this case was having on the legislative process:

> As you are aware DMV is currently a party to the *Stinnie v. Holcomb* case, in which the issue under consideration is driver's license suspensions for failure to pay court fines and costs pursuant to § 46.2-395. On June 28, 2019, ***the Court stayed the litigation until after the close of the 2020 General Assembly Session to allow the legislature to repeal § 46.2-395***. An emergency enactment clause is needed to demonstrate to the Court that matters at issue in *Stinnie v. Holcomb* litigation have been addressed by the General Assembly. ***This should result in the pending litigation being dismissed***, relieving the Department from continuing to incur costly legal fees.

(*Id.* at 2 (emphasis added).) Defendant even went so far as to "offer a substitute" bill that had all of his recommended changes. (*Id.*) In other words, Defendant was actively calling for a repeal in order to stem his losses in this litigation from continuing to defend a law this Court had already concluded likely violated procedural due process.

The General Assembly passed SB1ER on February 26, 2020, with an overwhelming majority in both the House and Senate. *See 2020 Session SB1*, Va. LIS, https://lis.virginia.gov/ cgi-bin/legp604.exe?ses=201&typ=bil&val=sb1 (showing SB1ER passed both chambers with the support of at least three-quarters of each chamber's members). Governor Northam signed SB1ER in April, and it took effect on July 1, 2020. *See id.*

SB1ER repeals § 46.2-395. *2020 Session SB1ER*, Va. LIS, http://lis.virginia.gov/cgi-bin/legp604.exe?201+ful+SB1ER+pdf, at lines 1244–45. It also requires Defendant to reinstate driving privileges suspended solely because of § 46.2-395:

> [T]he Commissioner of the Department of Motor Vehicles shall reinstate a person's privilege to drive a motor vehicle that was suspended prior to July 1, 2019, solely pursuant to § 46.2-395 of the Code of Virginia and shall waive all fees relating to reinstating such person's driving privileges. Nothing in this act shall require the Commissioner to reinstate a person's driving privileges if such

privileges have been otherwise lawfully suspended or revoked or if such person is otherwise ineligible for a driver's license.

*Id.* at lines 1246–51.

On May 7, 2020, the parties stipulated that this action is moot. The parties asked this Court to retain jurisdiction to determine Plaintiffs' entitlement to attorneys' fees, and agreed to brief fees in a bifurcated format. (ECF 231; ECF 232.) First, the parties are briefing Plaintiffs' entitlement to recover attorneys' fees as prevailing parties. (ECF 232.) Second, the parties will brief the amount and reasonableness of the fees to be awarded. (*Id.*)

## **LEGAL STANDARDS**

Section 1988 incentivizes private attorneys to take on civil rights litigation to protect the voices of the unheard, litigate the causes of the ignored, and guarantee the liberties promised to all. *Cf. Pa. v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 559 (1986) ("Section 1988 was enacted to insure that private citizens have a meaningful opportunity to vindicate their rights protected by the Civil Rights Acts."); *Riverside v. Rivera*, 477 U.S. 561, 576 (1986) ("Congress enacted § 1988 specifically because it found that the private market for legal services failed to provide many victims of civil rights violations with effective access to the judicial process."). Just as Congress intended, section 1988 makes a plaintiff into a "private attorney general." *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 793 (1989). It does so by allowing prevailing parties to recover fees. 42 U.S.C. § 1988.

"Title 42 U.S.C. § 1988 provides that in federal civil rights actions 'the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.'" *Hensley v. Eckerhart*, 461 U.S. 424, 426 (1983); *see also Lefemine v. Wideman*, 568 U.S. 1, 4 (2012); *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 174 (4th Cir. 1994); Fed. R. Civ. P. 54(d). "The purpose of § 1988 is to ensure 'effective access to the

judicial process' for persons with civil rights grievances." *Hensley*, 461 U.S. at 429.  Therefore, "a prevailing plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Id.* (internal quotations omitted).

"The touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." *Texas State Teachers Ass'n*, 489 U.S. at 792–93.  And "[t]his change must be marked by 'judicial imprimatur.'" *CRST Van Expedited, Inc. v. E.E.O.C.*, 136 S. Ct. 1642, 1646 (2016). In other words, "[a] plaintiff 'prevails,' . . . 'when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff.'" *Lefemine*, 568 U.S. at 4.  "[A]n injunction or declaratory judgment, like a damages award, will usually satisfy that test." *Id.*

And "the prevailing party inquiry does not turn on the magnitude of the relief obtained." *Farrar v. Hobby*, 506 U.S. 103, 114 (1992); *Texas State Teachers Ass'n*, 489 U.S. at 791–92 ("If the plaintiff has succeeded on '*any significant issue* in litigation which achieve[d] *some of the benefit* the parties sought in bringing suit,' the plaintiff has crossed the threshold to a fee award of some kind.") (emphasis added).

## ARGUMENT

Plaintiffs meet the standard for qualifying as prevailing parties for a simple reason—this Court's judicial imprimatur (in the form of a merits-based preliminary injunction) materially altered the relationship among the parties in a way that directly benefited Plaintiffs.  Before the preliminary injunction, Plaintiffs suffered ongoing unconstitutional deprivations of their driver's licenses.  After the preliminary injunction, Plaintiffs did not.  This Court's preliminary injunction made that happen.  Then this Court paused the litigation, over Plaintiffs' objections, to give the

General Assembly an additional chance to repeal § 46.2-395. (ECF 215.) It did. But those subsequent events do not detract from the legal significance of this Court's preliminary injunction (which provided full and continuing relief to Plaintiffs, such that the repeal did not provide them additional material relief) and Plaintiffs' entitlement to fees as prevailing parties.

To the contrary, binding and persuasive authorities establish Plaintiffs' entitlement to fees as prevailing parties because of this Court's preliminary injunction. The Supreme Court precedent discussed below compels this Court to designate Plaintiffs as prevailing parties. Circuit courts from around the country would agree. Finally, contrary to Defendant's anticipated arguments, *Buckhannon* does not apply here to block Plaintiffs' entitlement to fees.

I.      **Supreme Court precedent confirms Plaintiffs' entitlement to fees.**

      A.      ***Winter* announces a new, more stringent merits-based standard for obtaining a preliminary injunction.**

In *Winter*, the Court recited the general rule that "[a] plaintiff seeking a preliminary injunction must establish that he is *likely to succeed on the merits*, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20 (emphasis added). The Court also considered whether there must be a possibility or likelihood of irreparable harm to issue a preliminary injunction. *Id.* at 21. The Court determined that "plaintiffs seeking preliminary relief [must] demonstrate that irreparable injury is *likely* in the absence of an injunction." *Id.* at 22 (emphasis in original).

The *Winter* standard is more stringent than previous standards used in the Fourth Circuit. For example, the Fourth Circuit in *Henderson* noted how "*Winter* requires a likelihood of irreparable injury, a higher standard" than the pre-*Winter* test embodied by the Fourth Circuit's prior holdings in *Blackwelder Furniture Co. of Statesville, Inc. v. Seilig Mfg. Co.*, 550 F.2d 189

12

(4th Cir. 1977). *Henderson for Nat'l Labor Relations Bd. v. Bluefield Hospital Co., LLC*, 902

F.3d 432, 438 n.* (4th Cir. 2018); *see also Veasey v. Wilkins*, 158 F. Supp. 3d 466, 469

(E.D.N.C. 2016) (noting the preliminary injunction standard "has changed significantly" after

*Winter*).  Importantly, *Winter* requires that a plaintiff must "clearly demonstrate that [she] will

*likely succeed* on the merits."  *Veasey*, 158 F. Supp. 3d at 469 (emphasis added).  This is in stark

contrast to the prior standard, which permitted a plaintiff to obtain a preliminary injunction based

only on establishing that the "case presents a 'substantial question'" on the merits.  *Compare*

*Smyth ex rel. Smyth v. Rivero*, 282 F.3d 268, 276 (4th Cir. 2002), *with Winter*, 555 U.S. at 20.

This Court, correctly, used the *Winter* standard when deciding Plaintiffs' Motion for Preliminary

Injunction.  *Stinnie*, 355 F. Supp. 3d at 527–32.

      **B.**     ***Lefemine* clarifies and defines when a plaintiff is a prevailing party.**

      Under *Lefemine*, "[a] plaintiff prevails . . . when actual relief on the merits of his claim

materially alters the legal relationship between the parties by modifying the defendant's behavior

in a way that directly benefits the plaintiff."  *See Lefemine*, 568 U.S. at 4 (internal quotations

omitted).  In making this inquiry, monetary relief is not required; injunctive relief standing alone

can be sufficient.  *See id.*

      *Lefemine* is illustrative of the reasons why Plaintiffs in this case are prevailing parties.  In

that case, the plaintiff filed a complaint alleging that county police officers had violated his First

Amendment rights.  *See id.* at 3.  The police had been threatening to charge him with breaching

the peace for holding graphic signs during an anti-abortion protest.  *See id.* at 2–3.  The district

court, after considering "dueling motions for summary judgment . . . . permanently enjoined the

defendants from engaging in content-based restrictions on [plaintiff's] display of graphic signs

under similar circumstances."  *Id.* at 3 (internal quotations omitted).  The district court, however,

denied plaintiff damages and attorneys' fees. *Id.* at 3–4. The Fourth Circuit affirmed, but the Supreme Court vacated the Fourth Circuit's decision. *Id.* at 4–5.

The Court noted that "[it has] repeatedly held that an injunction or declaratory judgment, like a damages award, will usually satisfy [the prevailing party] test." *Id.* at 4. The Court noted that "[plaintiff] brought [the] suit in part to secure an injunction to protect himself from the defendants' standing threat of sanctions. And he succeeded in removing that threat." *Id.* at 4–5. As a result, the district court's injunction "worked the requisite material alteration in the parties' relationship." *Id.* at 5.

At bottom, under *Lefemine*, the focal point of the Court's analysis on a fee petition is the before-and-after situation of the parties. *See id.* at 5 ("Before the ruling, the police intended to stop Lefemine from protesting with his signs; after the ruling, the police could not prevent him from demonstrating in that manner."). And, as described below, a before-and-after analysis of this Court's preliminary injunction shows that Plaintiffs prevailed in this case.

### C. Reading *Winter*, *Lefemine*, and other relevant Supreme Court precedent together compels the conclusion that Plaintiffs are prevailing parties.

The above-cited Supreme Court case law compels the conclusion that Plaintiffs are prevailing parties entitled to attorneys' fees.

First, this Court's preliminary injunction met the newer, more stringent preliminary injunction standard announced in *Winter*. *See generally Stinnie*, 355 F. Supp. 3d 514. It was a merits-based preliminary injunction based on Plaintiffs' likelihood of success. *See id.* at 532.

Second, this Court's preliminary injunction provided the requisite judicial imprimatur. *See CRST Van Expedited*, 136 S. Ct. at 1646 (recognizing *Buckhannon*'s requirement that the change achieved by a prevailing party must have judicial imprimatur); *Lefemine*, 568 U.S. at 4 (recognizing injunctive relief can be sufficient for prevailing party status); *see also People*

14

*Against Police Violence v. City of Pittsburgh*, 520 F.3d 226, 233 (3d Cir. 2008) (reciting that "[a] preliminary injunction issued by a judge carries all of the judicial imprimatur necessary to satisfy *Buckhannon*") (internal quotations omitted).

Third, this Court's preliminary injunction materially altered Defendant's behavior. *See Lefemine*, 568 U.S. at 4. The preliminary injunction enjoined the unconstitutional application of § 46.2-395 against Plaintiffs. (*See* ECF 127 at 1.) Stopping the harm caused by the unconstitutional application of § 46.2-395 was the heart of the litigation, and Plaintiffs won on it. (*Compare* ECF 84 (relief requested in the amended complaint), *with* ECF 127 at 2 (relief granted in the preliminary injunction).)

Fourth, that material alteration directly benefitted Plaintiffs, *see Lefemine*, 568 U.S. at 4, by halting the unconstitutional operation of § 46.2-395. (ECF 127.) Before the preliminary injunction, § 46.2-395 harmed Plaintiffs by depriving them of their driver's licenses for failure to pay court debt with no process to determine their ability to pay. As a direct result of the preliminary injunction, Defendant could no longer unconstitutionally enforce § 46.2-395 against Plaintiffs, Defendant had to lift Plaintiffs' suspensions under § 46.2-395, and, if any Plaintiff had a driver's license suspended solely under § 46.2-395, Defendant was required to reinstate that driver's license without requiring the payment of any statutorily mandated reinstatement fees. This is precisely the sort of legal change the above authorities contemplate.

## II.    Other precedent supports a finding that Plaintiffs are prevailing parties.

### A.    Courts across the country recognize that obtaining a preliminary injunction can be sufficient to confer prevailing party status.

Circuits across the country recognize that obtaining a preliminary injunction can be sufficient to confer prevailing party status, especially when, like here, the preliminary injunction is grounded in a merits-based determination.

| Circuit | Relevant Language |
|---|---|
| *Haley v. Pataki*, 106 F.3d 478 (2d Cir. 1997). | The second circuit recognized that: "When a party receives a stay or preliminary injunction but never obtains a final judgment, attorney's fees are proper if the court's action in granting the preliminary injunction is governed by its assessment of the merits." *Id.* at 483. In this case, the second circuit affirmed the district court's decision to find plaintiffs to be prevailing parties when they prevailed on a preliminary injunction, the defendant then started "complying with the preliminary injunction order" by giving plaintiffs the relief sought, and even though the action never proceeded to a final judgment. *See id.* at 480–81, 484. |
| *People Against Police Violence v. City of Pittsburgh*, 520 F.3d 226 (3d Cir. 2008). | The third circuit agreed that "relief obtained via a preliminary injunction can, under appropriate circumstances, render a party 'prevailing.'" *Id.* at 232. In that case, the third circuit affirmed the trial court's determination that plaintiffs were prevailing parties when plaintiffs received a preliminary injunction on the merits, the defendant did not appeal the preliminary injunction and was bound by it for a period of time, and defendant avoided a final judgment by changing the law in such a way that gave plaintiffs the requested relief. *See id.* at 233–34. |
| *Dearmore v. City of Garland*, 519 F.3d 517 (5th Cir. 2008). | The fifth circuit concluded a plaintiff was a prevailing party when plaintiff obtained a preliminary injunction but the case was mooted before the final judgment when the defendant amended the law at issue. *Id.* at 526. |
| *Rogers Group, Inc. v. City of Fayetteville, Ark.*, 683 F.3d 903 (8th Cir. 2012). | The eighth circuit held a plaintiff was a prevailing party when a preliminary injunction on the merits blocked defendant from enforcing a law, and the defendant later repealed the ordinance. *See id.* at 910–11. Plaintiff was still a prevailing party, even though defendant mooted the case through the repeal. *See id.* at 904–07. |
| *Higher Taste, Inc. v. City of Tacoma*, 717 F.3d 712 (9th Cir. 2013). | The ninth circuit recognized that parties who obtain a preliminary injunction can be prevailing parties for fees purposes. *Id.* at 716. In that case, the ninth circuit determined that plaintiff was a prevailing party when it won a preliminary injunction that remained in effect until the parties settled the case. *See id.* at 714–15, 718–19. |
| *Kansas Judicial Watch v. Stout*, 653 F.3d 1230 (10th Cir. 2011). | The tenth circuit determined that plaintiffs were prevailing parties when they received a preliminary injunction on the merits that provided some of the complaint's requested relief, where the preliminary injunction persisted until "the actions of third parties mooted the case." *See id.* at 1240. |
| *Common Cause/Georgia v. Billups*, 554 F.3d 1340 (11th Cir. 2009). | The eleventh circuit held that plaintiffs were prevailing parties when they prevailed on a preliminary injunction that stayed in place "until Georgia repealed the law at issue." *Id.* at 1355–56. |

| Circuit | Relevant Language |
|---------|-------------------|
| *Select Milk Producers, Inc. v. Johanns*, 400 F.3d 939 (D.C. Cir. 2005). | As further described below, the D.C. circuit held that a party was a prevailing party when "the preliminary injunction at issue . . . was a judgment that resulted in a court-ordered change in the legal relationship between the parties and gave [plaintiffs] the concrete and irreversible redress that they sought." *Id.* at 942. |

**B.** **Cases that are factually analogous support a finding that Plaintiffs are prevailing parties.**

*Veasey*'s prevailing party analysis is instructive in deciding this Petition. *See Veasey v. Wilkins*, 158 F. Supp. 3d 466 (E.D.N.C. 2016). Veasey wanted to receive a concealed carry permit. *See id.* at 468. But, at the time, a North Carolina statute, N.C. Gen. Stat. § 14-415-12, "required a person to demonstrate American citizenship prior to obtaining a concealed carry permit." *Id.* at 468. Veasey moved for a preliminary injunction to prevent defendants from "enforcing the citizenship requirement of NCGS 14-415.12(a)(1) against lawful permanent residents." *See id.* The Court granted the motion. *Id.*

After entry of the preliminary injunction, Veasey applied for her permit, and the defendant sheriff granted it. *See id.* About two months later, "Governor McCrory signed House Bill 562, which amended [§ 14.415-12] to eliminate its citizenship requirement, into law." *Id.* The district court granted the defendant's motion to dismiss the case as moot but "retained jurisdiction to decide the issue of attorney's fees." *Id.*

The district court noted how *Lefemine*'s "facts strongly parallel[ed]" the facts of its case. *See id.* at 470. It further stated that "the reasoning in *Lefemine* counsels that the key question is whether a plaintiff succeeded in obtaining a judicially-sanctioned benefit." *Id.* The district court completed the required before-and-after comparison and awarded attorney's fees. *Compare Lefemine*, 568 U.S. at 5, *with Veasey*, 158 F. Supp. 3d at 470, 473 ("*Before* the preliminary injunction ruling, defendants intended not to give Ms. Veasey a concealed carry permit; *after* the

17

ruling, Sheriff Wilkins issued her a concealed permit.") (emphasis added).  Moreover, *Veasey*

noted that a post-*Winter* preliminary injunction was necessarily an imprimatur that the plaintiff

had "clearly demonstrate[d] that [he] will *likely succeed* on the merits."  158 F. Supp. 3d at 469

(quoting *Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 346–47 (4th

Cir. 2009), *vacated on other grounds,* 559 U.S. 1089 (2010)).

 *Veasey*'s prevailing party analysis should apply here.  Plaintiffs received a preliminary

injunction, on the merits, in a 42 U.S.C. § 1983 action.  (ECF 127 at 1.)  That preliminary

injunction awarded relief requested, leading to a material change in the legal relationship

between Plaintiffs and Defendant.  (*Id.*)  For example, this Court ordered Plaintiffs' suspensions

lifted and driver's licenses reinstated without payment of reinstatement fees, unless there was

another suspension not imposed under § 46.2-395.  (*Id.*)  And before Plaintiffs could have their

day in court, this Court stayed the case to give the General Assembly an additional chance to

repeal § 46.2-395, which ultimately mooted the case.  (ECF 215.)  These facts largely track those

in *Veasey*.  There is no principled reason why this Court should come to a different outcome.

 The eleventh circuit's prevailing party analysis in *Common Cause/Georgia v. Billups* is

also instructive.  *See generally* 554 F.3d 1340.  There, plaintiffs challenged the constitutionality

of a voter ID statute.  *See id.* at 1346.  The district court granted a preliminary injunction,

preventing the statute's enforcement.  *See id.*  The district court decided plaintiffs "had proved a

substantial likelihood of success on the merits of their claims[.]"  *Id.*  The defendant appealed the

preliminary injunction, but while the appeal was pending, the legislature repealed the statute and

replaced it with a new one.  *See id.*  Litigation continued regarding the new statute, and plaintiffs

sought fees regarding the challenge to the earlier statute.  *See id.* at 1346–49.

 The eleventh circuit determined that plaintiffs were "prevailing parties because the

preliminary injunction they obtained materially altered their legal relationship with the election officials." *Id.* at 1356. And the "injunction remained effective until Georgia repealed the law at issue." *Id.* At bottom, Georgia repealed its statute, and Virginia repealed § 46.2-395. But that fact does not detract from the parties' prevailing party status when the preliminary injunction granted relief on the merits and remained in effect until the case was dismissed after being mooted by a legislative fix, as happened in both cases.

The D.C. circuit's decision in *Select Milk Producers* also provides guidance. *See Select Milk Producers*, 400 F.3d 939. In that case, the plaintiffs challenged the Secretary of Agriculture's proposed rule that would have raised the price of Class III butterfat. *See id.* at 941. Had the new rule gone into effect, plaintiffs would have lost millions of dollars. *See id.* But "the [d]istrict [c]ourt granted Milk Producers' motion for a preliminary injunction enjoining the Secretary from imposing a separate price for Class III butterfat. The Government did not appeal the preliminary injunction or otherwise seek to defend its position. Instead, the Secretary of Agriculture issued a new rule that did not include a separate price for Class III butterfat." *Id.* Then both parties "stipulated to dismissal of the case as moot." *Id.*

The D.C. circuit concluded that under these facts Milk Producers were prevailing parties. *See id.* at 950. The court first noted that "there was a court-ordered change in the legal relationship between Milk Producers and the Secretary." *Id.* at 947. Specifically, the preliminary injunction stopped the new regulation's enforcement. *See id.* This relief was "concrete and irreversible" because of the money Milk Producers avoided losing. *See id.* Second, the court determined the "preliminary injunction was a judgment rendered in favor of Milk Producers[.]" *Id.* at 948. Third, the preliminary injunction gave Milk Producers judicial relief. *See id.* Before the preliminary injunction Milk Producers faced the specter of the new

regulation; after the injunction, they did not. *Compare Lefemine*, 568 U.S. at 5, *with Select Milk*, 400 F.3d at 948–49.

Like in *Select Milk*, this Court ordered the change in relationship among the parties. (ECF 126; ECF 127.) Defendant could have appealed from this Court's preliminary injunction, but did not do so. 28 U.S.C. § 1292(a)(1) (granting the courts of appeals jurisdiction over "[i]nterlocutory orders . . . granting . . . injunctions"); *see also Select Milk*, 400 F.3d at 948 (noting how "it is well established that preliminary injunctions are appealable orders"); *Swift Beef Co. v. Alex Lee, Inc.*, 760 F. App'x 160, 163 (4th Cir. 2019) (same). This Court's preliminary injunction granted Plaintiffs' requested relief and protected them from the unconstitutional deprivation of their licenses under § 46.2-395. The relief granted safeguarded Plaintiffs' rights and shielded them from additional financial harm. (ECF 127.) For example, Defendant had to remove § 46.2-395 suspensions from Plaintiffs' driver's licenses, and Defendant could not charge a fee to reinstate those licenses suspended due to § 46.2-395. (*Id.* at 1.) The relief granted also made it so that Defendant could not enforce § 46.2-395 against Plaintiffs without notice and a hearing. (*Id.*) In doing so, the Court gave Plaintiffs new opportunities to seek and maintain stable employment, access to medical care, access to opportunities for their children, access to religious worship, and the like. *See, e.g., Stinnie*, 355 F. Supp. 3d at 521 (finding that that "[l]oss of a driver's license adversely affects people's ability to gain and maintain employment, often leading to a reduction in income"); *id.* at 531 n.8 ("Not only does Plaintiffs' testimony emphasize their need for a driver's license to meet non-economic needs, such as medical care for themselves and their families, but evidence also shows that the majority of Virginians rely on cars to travel to work, and that the lack of a license reduces job opportunities.") (internal citations omitted); *id.* at 532 (determining that "[m]oney alone would

20

not alleviate Plaintiffs' harms or release Plaintiffs from the cycle of hardships caused by § 46.2-395" but the relief granted could).  Plaintiffs received a judgment in their favor that gave them tangible, judicial relief.

*Veasey*, *Common Cause/Georgia*, and *Select Milk* are three factually analogous cases that meaningfully considered how a preliminary injunction was sufficient to confer prevailing party status on those plaintiffs.  Those courts would find Plaintiffs here to be entitled to fees, and this Court should as well.

### C.    Fourth Circuit precedent is consistent with the conclusion that Plaintiffs are prevailing parties.

"Our federal judicial system requires that when the Supreme Court issues an opinion, its pronouncements become law of the land."  *United States v. AMC Entertainment, Inc.*, 549 F.3d 760, 771 (9th Cir. 2008).  As stated in Part I, recent Supreme Court precedent compels this Court to find Plaintiffs are prevailing parties.  Nevertheless, there is an old opinion in the Fourth Circuit, *Smyth ex rel. Smyth v. Rivero,* 282 F.3d 268 (4th Cir. 2002), that may be read by Defendant to suggest a different result than the one now compelled.  But even if *Smyth* at one point would have suggested Plaintiffs were not prevailing parties, that case no longer holds any weight here.  It has been rendered obsolete by more recent Supreme Court cases, and courts from around the country and even within the Fourth Circuit recognize its irrelevance.  The Fourth Circuit would not expand *Smyth* to apply here, and this Court should not presume it would.

First, *Smyth* was decided under a different, and since discarded, standard for granting a preliminary injunction.  *Compare Smyth*, 282 F.3d at 276 (using the since abandoned test for a preliminary injunction under *Blackwelder Furniture Co.*, 550 F.2d 189), *with Winter*, 555 U.S. at 20 (focusing the preliminary injunction standard on the plaintiff's likelihood of success on the merits); *see also Pashby v. Delia*, 709 F.3d 307, 320–21 (4th Cir. 2013) (noting how after *Winter*

the Fourth Circuit "recalibrated" its preliminary injunction test that had been embodied in *Blackwelder*). This matters because the very core of *Smyth* revolved around concerns regarding the "necessarily abbreviated" nature of preliminary injunctions at the time. *See Smyth*, 282 F.3d at 276. So when the Supreme Court issued *Winter*, which changed the preliminary injunction analysis, it pulled the chair out from under *Smyth*.

Second, if the Fourth Circuit faced this question today, it would rule in a manner consistent with the other circuits in light of recent Supreme Court precedent; therefore, this Court should do so as well. (*See* Section II.A, *supra*.) Indeed, other courts have recognized *Smyth*'s obsolescence and outlier status. *See*, *e.g.*, *Veasey*, 158 F. Supp. 3d at 470 ("The Court concludes that the Fourth Circuit's holding in *Smyth* that a plaintiff who is awarded a preliminary injunction cannot constitute a prevailing party under § 1988 is untenable in light of *Lefemine*, the changed merits standard following *Winter*, and the facts of this case."); *Select Milk Producers*, 400 F.3d at 946 (disagreeing with *Smyth*'s unsupportable per se rule); *People Against Police Violence*, 520 F.3d at 233 n.4 (specifically declining to follow *Smyth*).

Third, *Smyth* predates nearly all of the most relevant Supreme Court precedent, including *Lefemine* and *Winter*. The Fourth Circuit would not follow abandoned circuit case law, and, in fact, has a duty to follow the later-decided Supreme Court precedent. *See Etheridge v. Norfolk & Western Ry. Co.*, 9 F.3d 1087, 1090–91 (4th Cir. 1993) (determining that later-decided Supreme Court precedent "rejected the reasoning" a prior Fourth Circuit precedent was based on, and, as a result, the prior Fourth Circuit precedent was no longer correctly reciting the law).

## III. ***Buckhannon*'s catalyst theory rule does not apply here.**

Plaintiffs' theory for entitlement to attorneys' fees is not the catalyst theory. So, *Buckhannon*'s anti-catalyst theory rule has no applicability here. Any attempt by Defendant to

ask this Court to apply *Buckhannon*'s anti-catalyst theory rule is misguided for at least four reasons.

First, *Buckhannon* disavowed "catalyst theory," which is not the theory Plaintiffs advance here. *See Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Resources*, 532 U.S. 598, 603–10 (2001). The "'catalyst theory' . . . posits that a plaintiff is a 'prevailing party' if it achieves the desired result because the lawsuit brought about a *voluntary change* in the defendant's conduct." *Id.* at 601 (emphasis added). But Plaintiffs did not obtain their requested relief because Defendant had a change of heart.

Plaintiffs obtained their relief because this Court enjoined Defendant through its judicial imprimatur in the form of a preliminary injunction. *Stinnie*, 355 F. Supp. 3d at 532 (finding it likely that § 46.2-395 was unconstitutional); (ECF 127). This Court's preliminary injunction was not "voluntary." *E.g.*, *United States v. Blackman*, Case No. 3:04CV00046, 2005 U.S. Dist. LEXIS 25622, at *16 (W.D. Va. Oct. 19, 2005) (Moon, J.) (finding the defendant to be in criminal contempt for violating an injunction), *affirmed by* No. 06-4167 (4th Cir. May 31, 2007); *Enovative Techs., LLC v. Leor*, 86 F. Supp. 3d 445, 446 (D. Md. 2015) (finding that the "Defendant [was] in civil contempt for violating the [district court's] Preliminary Injunction"); *see also Select Milk*, 400 F.3d at 949 (noting the "injunction, not the Secretary's voluntary change in conduct, afforded Milk Producers the relief they sought"). And, as recited above, after this Court entered its preliminary injunction, the General Assembly took action. *See* Leonor, *supra* (detailing Delegate Jones' actions taken after the preliminary injunction with the money in the budget).

To the contrary, Plaintiffs' Petition asks this Court to determine whether Plaintiffs' success in obtaining the preliminary injunction, which granted them the relief they requested,

makes them prevailing parties. The answer is already clear because of the Supreme Court's

analysis in *Lefemine*, detailed above. Under *Lefemine*, when a plaintiff achieves "actual relief on

the merits of his claim" that "materially alters the legal relationship between the parties by

modifying the defendant's behavior in a way that directly benefits the plaintiff," that plaintiff is a

prevailing party. *Lefemine*, 568 U.S. at 4. In *Lefemine*, like here, that relief came in the form of

an injunction. *See id.* at 4–5.

Second, *Buckhannon* does not bar Plaintiffs who obtain preliminary injunctions from

prevailing party status. *See, e.g.*, *Dearmore v. City of Garland*, 519 F.3d 517, 524 (5th Cir.

2008) ("*Buckhannon* does not stand for the proposition that a defendant should be allowed to

moot an action to avoid the payment of the plaintiff's attorney's fees when a district court grants

a preliminary injunction based upon an unambiguous indication of probable success on the

merits."); *Select Milk*, 400 F.3d at 946 ("We are not alone in the view that *Buckhannon* does not

reject the possibility that preliminary injunctions may be sufficient in some certain circumstances

to render plaintiffs 'prevailing parties' under federal fee-shifting statutes."); *Kansas Judicial

Watch*, 653 F.3d at 1237–38 (recognizing that *Buckhannon* does not bar a party who obtained a

preliminary injunction from being deemed a prevailing party).

That much is clear because, six years after *Buckhannon*, the Supreme Court in *Sole* noted

it was still an open question. *See Sole v. Wyner*, 551 U.S. 74, 86 (2007) ("We express no view

on whether, in the absence of a final decision on the merits of a claim for permanent injunctive

relief, success in gaining a preliminary injunction may sometimes warrant an award of counsel

fees.").

Third, *Buckhannon* is a pre-*Winter* case. Since *Buckhannon* came down, the standard for

granting a preliminary injunction has changed meaningfully. *See Winter*, 555 U.S. at 22. The

newer *Winter* standard focuses on likelihood of success on the merits and irreparable harm. *See id.* at 20. Accordingly, preliminary injunctions now focus on merits-based determinations.

Fourth, even *Buckhannon* itself indicated a final judgment on the merits was not an absolute requirement. *Buckhannon*, 532 U.S. at 604 (noting it has "held that settlement agreements enforced through a consent decree may serve as the basis for an award of attorney's fees"); *see also Select Milk Producers*, 400 F.3d at 946 (noting the Supreme Court showed in *Buckhannon* "that a plaintiff need not obtain a final judicial determination on the merits in order to be considered a 'prevailing party'").

## <u>CONCLUSION</u>

Section 46.2-395 trampled upon Plaintiffs' constitutional rights. This Court rightly enjoined its enforcement, ending the "nightmarish spiral" that trapped Plaintiffs. Plaintiffs are prevailing parties under Supreme Court precedent. And courts around the country are reaching that conclusion in factually analogous cases. This Court should do the same. For these reasons, Plaintiffs ask this Court to (1) grant their Petition for Attorneys' Fees and Litigation Expenses, (2) hold that they are prevailing parties and their attorneys are entitled to fees and other costs and expenses under 42 U.S.C. § 1988, (3) enter the Proposed Order attached as Exhibit A to the Petition filed contemporaneously herewith, and (4) invite the parties to submit briefing on the reasonableness and amount of fees to be awarded on a schedule consistent with this Court's Order dated May 7, 2020.

Respectfully submitted,

By: */s/ Jonathan T. Blank*
Jonathan T. Blank (VSB No.: 38487)
Benjamin P. Abel (VSB No.: 88961)
MCGUIREWOODS LLP
652 Peter Jefferson Parkway
Suite 350

Charlottesville, VA 22911
T: (434) 977-2509
F: (434) 980-2258
jblank@mcguirewoods.com
babel@mcguirewoods.com

Angela A. Ciolfi (VSB No.: 65337)
Pat Levy-Lavelle (VSB No.: 71190)
LEGAL AID JUSTICE CENTER
1000 Preston Avenue, Suite A
Charlottesville, Virginia 22903
T: (434) 529-1810
angela@justice4all.org
pat@justice4all.org

Leslie Kendrick (VSB No.: 90104)
580 Massie Rd.
Charlottesville, Virginia 22903
T: (434) 243-8633
kendrick@law.virginia.edu

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on July 2, 2020, I electronically filed the foregoing Plaintiffs'

Memorandum in Support of Petition for Attorneys' Fees and Litigation Expenses with the Clerk

of Court using the CM/ECF System, which will send a notification of such filing to all CM/ECF

participants, including counsel for the Defendant.

By: */s/ Jonathan T. Blank*
Jonathan T. Blank (VSB No.: 38487)
McGuireWoods LLP
652 Peter Jefferson Parkway
Suite 350
Charlottesville, VA 22911
T: (434) 977-2509
F: (434) 980-2258
jblank@mcguirewoods.com