**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION**

| | |
|---|---|
| DAMIAN STINNIE, MELISSA ADAMS, and ADRAINNE JOHNSON, individually, and on behalf of all others similarly situated; WILLIEST BANDY, and BRIANNA MORGAN, individually, and on behalf of all others similarly situated, <br><br>     Plaintiffs, <br><br>       v. <br><br> RICHARD D. HOLCOMB, in his official capacity as the Commissioner of the VIRGINIA DEPARTMENT OF MOTOR VEHICLES, <br><br>     Defendant. | Civ. No: 3:16-cv-00044 |

**PLAINTIFFS' REPLY IN SUPPORT OF PETITION FOR FEES**

## TABLE OF CONTENTS

Page

INTRODUCTION ....................................................................................................... 1

ARGUMENT ............................................................................................................... 1

I.      Later-decided Supreme Court precedent has rendered *Smyth*
        obsolete. .......................................................................................................... 1

        A.      Defendant misunderstands the relevant timeline. ...................................... 1

        B.      *Winter* makes a significant difference in the preliminary
                injunction analysis. .................................................................................... 2

        C.      *Lefemine*'s analysis is instructive. ............................................................ 3

        D.      Neither *Smyth*, nor *Robinson v. Bartlow,* is binding or even
                instructive. .................................................................................................. 4

II.     The overwhelming mass of federal circuits reject Defendant's
        unsupportable bright-line rule. ........................................................................ 6

        A.      Defendant attempts to sow confusion where there
                should be none. ........................................................................................... 6

        B.      The Court should take particular notice of the Sixth Circuit's
                opinion in *Planned Parenthood*, where the Supreme Court
                recently denied certiorari. .......................................................................... 8

III.    Strong public policy reasons support granting the fee petition here................ 11

        A.      Defendant's policy arguments are misguided at best. ............................... 11

        B.      Awarding fees to civil rights litigators, who take on cases of
                important constitutional concern because it is the right thing
                to do, comports with important policy considerations............................. 14

        C.      The Court should pay no attention to Defendant's attempt to
                re-litigate his loss on the preliminary injunction. ................................... 15

        D.      Courts should neither countenance nor condone a Defendant
                seeking to rewrite history based on political musings instead
                of the history of the case. .......................................................................... 16

                1.      Defendant's version of the political events taking
                        place outside this litigation is irrelevant and misses
                        the point. .......................................................................................... 16

                2.      Defendant seemingly fails to appreciate the
                        importance of the fourth circuit appeal........................................... 18

CONCLUSION............................................................................................................ 20

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Camreta v. Greene*,
  563 U.S. 692 (2011).......................................................................................................5

*City of Riverside v. Rivera*,
  477 U.S. 561 (1986) ....................................................................................................14

*Common Cause/Georgia v. Billups*,
  554 F.3d 1340 (11th Cir. 2009) .......................................................................... 7-8, 17

*Dearmore v. City of Garland*,
  519 F.3d 517 (5th Cir. 2008) ............................................................................... 6-7

*Dupuy v. Samuels*,
  423 F.3d 714 (7th Cir. 2005) .......................................................................................7

*Faust v. South Carolina State Highway Dep't*,
  721 F.2d 934 (4th Cir. 1983) ...................................................................................4

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) ............................................................................................ 14-16

*Katz v. United States*,
  389 U.S. 347 (1967) (Harlan, J., concurring) ........................................................19

*Lefemine v. Wideman*,
  568 U.S. 1 (2012)..................................................................................................... 2-4

*Planned Parenthood S.W. Ohio Region v. Dewine*,
  931 F.3d 530 (6th Cir. 2019) ................................................................... 4, 9-11, 13

*Robinson v. Bartlow*,
  No. 3:12-cv-00024, 2014 WL 2468817 (W.D. Va. June 3, 2014)........................ 4-5

*Select Milk Producers, Inc. v. Johanns*,
  400 F.3d 939 (D.C. Cir. 2005) ............................................................................. 7-8

*Smyth ex rel. Smyth v. Rivero*,
  282 F.3d 268 (4th Cir. 2002) ...................................................................... 1-4, 11

*Sole v. Wyner*,
  551 U.S. 74 (2007)..............................................................................................1-2, 4, 9-10

*Stinnie v. Holcomb*,
  355 F. Supp. 3d 514 (W.D. Va. 2018) ......................................................... 3-5, 8, 10, 13, 19

*Stinnie v. Holcomb*,
   734 F. App'x 858 (4th Cir. 2018) ................................................................ 12, 17-19

*Teague v. Lane*,
   489 U.S. 288 (1989) ........................................................................................ 10-11

*Veasey v. Wilkins*,
   158 F. Supp. 3d 466 (E.D.N.C. 2016) ......................................................... 2-3, 7-8

*Winter v. Natural Resources Defense Council, Inc.*,
   555 U.S. 7 (2008) ................................................................................................ 2-3

**Statutes**

35 U.S.C. § 285 ........................................................................................................... 5

42 U.S.C.

   § 1983 ................................................................................................................ 3, 15

   § 1988 ................................................................................................ 9, 13-15, 20

Va. Code Ann.

   § 46.2-395 .................................................................................... 4, 10, 15-19

   § 49-1 ................................................................................................................... 12

**Rules**

U.S. SUP. CT. R. 10 .................................................................................................... 11

**Constitutional Provisions**

VA. CONST. Article I, § 3 ........................................................................................ 12

**Other Authorities**

18 J. Moore et al., Moore's Federal Practice § 134.02(1)(d) (3d ed. 2011) ................... 5

Markus Schmidt, *Refusing to defend state law a rarity, Herring says*, RICHMOND
   TIMES-DISPATCH (March 31, 2014),
   https://richmond.com/news/local/government-politics/refusing-to-defend-
   state-law-a-rarity-herring-says/article_7c9ba1a8-b887-11e3-898c-
   001a4bcf6878.html ........................................................................................ 15-16

Martin Luther King, Jr., *Letter from a Birmingham Jail* (April 16, 1963) ................... 18

Order Denying Petition for Writ of Certiorari, *Yost v. Planned Parenthood S.W.
   Ohio Region*, No. 19-677 (U.S. July 2, 2020) ............................................... 8-9

Press Release, *Attorney General Herring Changes Virginia's Legal Position in Marriage Equality Case*, OFFICE OF THE ATTORNEY GENERAL, https://www.oag.state.va.us/media-center/news-releases/96-attorney-general-herring-changes-virginia-s-legal-position-in-marriage-equality-case ....................................16

S. REP. 94-1011, at 2 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5908 ...................................... 14-15

Wright and Miller, 11A Fed. Prac. & Proc. Civ. § 2948.3 (3d ed.)..................................................6

## INTRODUCTION

This Court should reject the arguments in Defendant's brief in response, and grant Plaintiffs' motion for three reasons. *First*, Supreme Court precedent confirms Plaintiffs' entitlement to fees, and *Smyth* is not prevailing law. *Second*, other courts around the country are overwhelmingly in agreement on this question, including the recent *Planned Parenthood* case from the United States Court of Appeals for the Sixth Circuit ("Sixth Circuit"), where the Supreme Court denied review. *Third*, pertinent policy considerations favor Plaintiffs, not Defendant. And Defendant's response fails to refute any of these points.

In short, Defendant's brief misses the point. Plaintiffs meet the standard for a prevailing party because they prevailed on a preliminary injunction, on the merits, and that preliminary injunction was never subjected to an active, merits-based undoing in this litigation. Courts from around the country, including in this very circuit, are awarding fees in analogous cases. Instead of acknowledging that mass of authority, Defendant maintains that this Court should proceed to adhere to old, and since abandoned, precedent. The fourth circuit would not do so, and does not have to do so. Later-decided Supreme Court precedent answers the question here. And because the fourth circuit would not double-down on the now-defunct rule announced in *Smyth ex rel. Smyth v. Rivero*, 282 F.3d 268 (4th Cir. 2002), neither should this Court.

## ARGUMENT

### I.   Later-decided Supreme Court precedent has rendered *Smyth* obsolete.

#### A.   Defendant misunderstands the relevant timeline.

Defendant mistakenly cites *Sole v. Wyner*, 551 U.S. 74 (2007), as showing that the Supreme Court has left the current question presented open. (*See* ECF 237 at 24, 29.) And Defendant would be right, if the parties were arguing this question thirteen years ago. But

1

Defendant has overlooked the relevant timeline.  Decided in 2007, *Sole* predates both *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008), and *Lefemine v. Wideman*, 568 U.S. 1 (2012).  So when Plaintiffs contend that other, later-decided Supreme Court precedent compels a prevailing party determination, that is because case law **after** *Smyth* and **after** *Sole* shows the right answer here.  *Winter* and *Lefemine* matter a great deal.

> **B.** ***Winter* makes a significant difference in the preliminary injunction analysis.**

*Winter* undercuts *Smyth*.  *Smyth* was decided in a different time, under a different standard for evaluating preliminary injunctions.  *Compare Smyth*, 282 F.3d at 277 (adhering to the long-gone *Blackwelder* standard), *with Veasey v. Wilkins*, 158 F. Supp. 3d 466, 469–70 (E.D.N.C. 2016) (recognizing that *Smyth* did not have the benefit of later-decided Supreme Court precedent in *Winter* and *Lefemine*).  After *Winter*, "to succeed on a preliminary injunction, a plaintiff must 'clearly demonstrate that [he] will likely succeed on the merits,' regardless of the harm he is likely to suffer absent an injunction."  *Veasey*, 158 F. Supp. 3d at 469.

Even still, Defendant argues that the *Smyth* opinion took the "higher standard into account[.]"  (*See* ECF 237 at 31 (emphasis omitted).)  This argument is misplaced.  Read in context, Defendant's cited passage from *Smyth* shows only how imprecise the former *Blackwelder* standard was.  The *Smyth* court recognized that *sometimes* a plaintiff only had to show a "'substantial question' to obtain preliminary injunctive relief" and "*[a]t the most . . . a strong showing of likelihood of success[.]*"  *Smyth*, 282 F.3d at 276 (emphasis added, internal quotations omitted).

Defendant is attempting to slice up the preliminary injunction analysis without recognizing that unlike in *Smyth* (relying on the long-gone *Blackwelder* standard), today a plaintiff must meet the vigorous *Winter* test to obtain a preliminary injunction.  *See Winter*, 555

U.S. at 20–22.  The old *Blackwelder* test, which *Smyth* uses, allows for parties to compensate for a weak showing on one factor with a strong showing on another.  *See Smyth*, 282 F.3d at 277 ("A plaintiff's burden to show a likelihood of success on the merits, in other words, varies according to the harm the plaintiff would be likely to suffer absent an injunction.").  And *Smyth* recognized that the *Blackwelder* test for preliminary injunctions was "an unhelpful guide to the legal determination of whether a party has prevailed."  *See id.*; *see also Veasey*, 158 F. Supp. 3d at 469.

But *Blackwelder* is gone.  *Winter* reigns.  And the fourth circuit need not, and should not, be bound by *Smyth*'s outdated analysis now.  This Court correctly applied the new *Winter* standard in granting Plaintiffs the preliminary injunction.  *See Stinnie v. Holcomb*, 355 F. Supp. 3d 514, 532 (W.D. Va. 2018).  There is no principled reason to regress to a standard set out in a case decided under the outdated *Blackwelder* standard.

## C.    *Lefemine*'s analysis is instructive.

This Court should not ignore the Supreme Court's decision in *Lefemine*.  Reading Defendant's brief, one would believe the Supreme Court was wasting its time deciding *Lefemine*.  (*See* ECF 237 at 31–32 (claiming "nothing remarkable" about one of *Lefemine*'s conclusions and "no new standard" about another).)  But the Supreme Court did speak—without dissent—in *Lefemine*, and the facts there closely mirror those here.  Despite Defendant's nothing-to-see-here approach, *Lefemine* counsels in Plaintiffs' favor.

In *Lefemine*, the Court concluded that a permanent injunction granted in favor of the plaintiff was sufficient to make that plaintiff a prevailing party.  *See Lefemine*, 568 U.S. at 4–5.  There, like here, plaintiff brought an action under 42 U.S.C. § 1983 to enforce relevant constitutional provisions.  *See id.* at 3–4.  In *Lefemine*, plaintiff was filing suit to remove the

3

"threat of sanctions" related to his constitutionally protected demonstrations.  *See id.* at 4–5.  In

*Stinnie*, Plaintiffs filed suit to challenge the unconstitutional § 46.2-395.  *See Stinnie*, 355 F.

Supp. 3d at 520.  After the district court ruled in *Lefemine*, the government could not continue to

trample on plaintiff's First Amendment rights.  *See Lefemine*, 568 U.S. at 5.  After this Court

ruled in *Stinnie*, Defendant could not continue to trample on Plaintiffs' Fourteenth Amendment

rights.  (*See* ECF 127 at 1.)  Neither the relief granted in *Lefemine* nor that granted in *Stinnie* was

ever "reversed, dissolved, or otherwise undone by the final decision in the same case."  *See*

*Planned Parenthood S.W. Ohio Region v. Dewine*, 931 F.3d 530, 538 (6th Cir. 2019) (quoting

*Sole*, 551 U.S. at 83, and recognizing that vacatur for mootness does not deprive plaintiffs who

secure a preliminary injunction of "prevailing party" status, as would "an active, merits-based

undoing" like in *Sole*).  Therefore, *Lefemine* counsels heavily in Plaintiffs' favor.

>        **D.      Neither *Smyth*, nor *Robinson v. Bartlow,* is binding or even instructive.**

Unsurprisingly, the best authority Defendant presents is a case that is almost two-decades

old.  (*See* ECF 237 at 25–29 (discussing *Smyth*, 282 F.3d 268).)  In doing so, Defendant clings to

the hope that this Court will adhere to that decision, even when later decided Supreme Court

precedent renders *Smyth* obsolete.  In light of this subsequent Supreme Court precedent, neither

this Court nor any fourth circuit panel is required to follow *Smyth*.  *See Faust v. S.C. State*

*Highway Dep't*, 721 F.2d 934, 940 (4th Cir. 1983) (noting, in a three-judge panel decision, that

past fourth circuit authority was "not a viable authority and should no longer be followed" in

light of later-decided Supreme Court decisions).  The errors in Defendant's arguments are legion.

Defendant cites this Court's decision in *Robinson v. Bartlow*, No. 3:12-cv-00024, 2014

WL 2468817 (W.D. Va. June 3, 2014), in an attempt to show that this Court has continued to

adhere to *Smyth*.  (*See* ECF 237 at 31.)  To start, it goes without saying that this Court is not

bound by its prior decisions.  *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or *even upon the same judge in a different case*.") (emphasis added) (quoting 18 J. Moore et al., Moore's Federal Practice § 134.02(1)(d), pp. 134–26 (3d ed. 2011)).

In *Robinson*, a patent case under 35 U.S.C. § 285,[1] this Court *denied* a preliminary injunction, and it was the defendants who moved for fees.  *See* 2014 WL 2468817, at *1.  This Court rejected all of defendants' grounds for seeking fees.  *See id.* at *4–5.  Two of those three grounds related to winning dismissals relating to failures to prosecute and as to individual defendants.  *See id.*  Only defendants' argument that they prevailed by having the court deny the preliminary injunction is even tangentially relevant here.  *See id.*

In considering whether a denial of a preliminary injunction, in a patent case, was sufficient to convey prevailing party status, this Court noted that its "denial of the preliminary injunction did not grant judicial relief on the merits."  *See id.* at *4.  That is different than the situation here where it was the Plaintiffs that *won* a preliminary injunction on the merits.  *See Stinnie*, 355 F. Supp. 3d at 520 ("Based on the current record, the Court concludes that *Plaintiffs are likely to succeed on the merits* of their procedural due process claim because the Commissioner suspends licenses without an opportunity to be heard.  The motion for a preliminary injunction will therefore be granted.") (emphasis added).  To compare this case to *Robinson* is like apples and oranges—and that is being generous.

---

[1] Assuming *arguendo* the prevailing party inquiry is the same in a patent case as a civil rights case, one cannot ignore that in a 35 U.S.C. § 285 proceeding, the court only grants fees in "exceptional" circumstances.  That exceedingly high bar in patent cases, which is not applicable here, likely colors the analysis for the rest of the fee inquiry.

## II.    The overwhelming mass of federal circuits reject Defendant's unsupportable bright-line rule.

### A.    Defendant attempts to sow confusion where there should be none.

In their opening brief, Plaintiffs pointed the Court to the overwhelming weight of authority from around the country supporting Plaintiffs' entitlement to fees. (*See* ECF 235 at 20–26.)  Those cases speak for themselves and show widespread rejection of the bright-line rule Defendant advocates here. (*See id.*)  In attempting to address that mass of authority, Defendant tries to sow confusion where there is none by pulling one-liners from various circuits to support assorted "compare" citations. (*See* ECF 237 at 33–35.)   For example, Defendant contends the ninth circuit requires "enduring rather than ephemeral" relief, while the D.C. circuit requires "concrete and irreversible" relief, as if there is a meaningful difference between the two. (*See id.*)  Any semantic difference between those two circuits, which Plaintiffs originally cited (*see* ECF 235 at 21), does not foreclose Plaintiffs' entitlement to fees here.  The same is true of Defendant's purported distinction between the eighth circuit's "thorough analysis" versus the tenth circuit's "unambiguous indication of probable success on the merits[.]" (*See* ECF 237 at 34.)  Defendant quotes a section from Wright and Miller on the *preliminary injunction* standard to argue that "courts use a bewildering variety of formulations of the need for showing some likelihood of success" (ECF 237 at 34) but neglects to mention the next sentence in the same Wright and Miller entry which states:  "But the verbal differences do not seem to reflect substantive disagreement."  11A Fed. Prac. & Proc. Civ. § 2948.3 (3d ed.).

Defendant tries to instill doubt by arguing that Plaintiffs would not have been prevailing parties in every circuit. (*See* ECF 237 at 34–35.)  Defendant's citation to the fifth circuit in *Dearmore* fails because the defendant in *Dearmore* was the entity with the power to overturn a legislative enactment, unlike here.  *See Dearmore v. City of Garland*, 519 F.3d 517, 519–20 (5th

Cir. 2008).  And even still, Defendant cannot ignore the letter he sent to Senator Stanley where he discussed amending the repeal legislation's language to avoid "costly legal fees."  (*See* ECF 235 at 13–14.)  Defendant cites the third circuit to argue that fees for prevailing at a preliminary injunction are rare (ECF 237 at 34–35), but that argument is inadequate because Plaintiffs already have shown that courts around the country grant fees for winning preliminary injunctions (ECF 235 at 21–22).  Defendant cites the seventh circuit in *Dupuy v. Samuels*, 423 F.3d 714 (7th Cir. 2005), to argue that because there were additional proceedings contemplated in this case, Plaintiffs cannot be entitled to fees because of the preliminary injunction.  (*See* ECF 237 at 35.)  But the court in *Dupuy* discussed awarding fees "on an interim basis" in the middle of the case.  *See Dupuy*, 423 F.3d at 723.  In fact, the *Dupuy* court drew a comparison between an interim award, and the kind of award Plaintiffs seek here:

> Indeed, in *Young,* we upheld an award granted to a party that had obtained only a preliminary injunction.  That case, however, was significantly different from this case.  In *Young,* the plaintiffs had obtained a preliminary injunction, and the case was mooted *before* they sought attorneys' fees.  ***The relief the plaintiffs had obtained through the preliminary injunction therefore was not defeasible for the same reason that the case was moot***: The sole event covered by the injunction, the 1996 Democratic National Convention, had ended.  In the present case, by contrast, at the time the district court issued the fee order, it explicitly contemplated further proceedings on the merits of the plaintiffs' claims.

*Id.* (emphasis added).  Here, Plaintiffs' relief was not defeasible because the action was mooted and the Court never undid the preliminary injunction through a merits-based determination.  Therefore, Plaintiffs are entitled to fees.  In sum, Defendant's cites are without merit.

Plaintiffs also provided an in-depth discussion on the thoughtful opinions in *Select Milk Producers, Inc. v. Johanns*, 400 F.3d 939 (D.C. Cir. 2005), *Common Cause/Georgia v. Billups*, 554 F.3d 1340 (11th Cir. 2009), and *Veasey*, 158 F. Supp. 3d 466.  (*See* ECF 235 at 22–26.)  Defendant's attempted rebuttal to these opinions is unsatisfactory.  Defendant never addresses

the eleventh circuit's insightful opinion in *Common Cause*.  (*See* ECF 237 at iv–viii.)  And

Defendant relegates the D.C. circuit's opinion in *Select Milk* to a lonely "compare" cite, as

described above.  Defendant pays the most attention to the *Veasey* opinion.  (*See* ECF 237 at 32

n.29.)  But even that in-circuit opinion is confined to a footnote.  (*Id.*)  The reason why is simple.

The *Veasey* court's thoughtful, and correct, analysis of the state of the law in the fourth circuit

dooms Defendant's argument.  *Veasey*, 158 F. Supp. 3d 466; (*see also* ECF 235 at 22–23).

Defendant argues that *Veasey* does not apply here because, there, "the defendant sheriff

'conceded that plaintiffs were likely to succeed' . . .  and 'admitted that the law at issue in th[e]

case was unconstitutional'" at the preliminary injunction hearing.  (*See* ECF 237 at 33 n.29.)  But

if the plaintiffs in *Veasey* deserved fees facing little opposition, then Plaintiffs certainly deserve

fees having endured and prevailed over vigorous opposition from the Defendant.  As described

above, Plaintiffs had to fight a spirited case because of Defendant's actions to obtain their merits-

based relief.  Ultimately, the correct focus at this stage is whether Plaintiffs, here, received

merits-based relief that materially altered the legal relationship between Plaintiffs and Defendant.

(*See*, *e.g.*, ECF 235 at 16–17.)  They unequivocally did.  *See generally Stinnie*, 355 F. Supp. 3d

514.

   **B.      The Court should take particular notice of the Sixth Circuit's opinion in**
            ***Planned Parenthood*, where the Supreme Court recently denied certiorari.**

Defendant criticizes Plaintiffs for not including the Sixth Circuit in their opening brief.

(*See* ECF 237 at 35.)  Now is the appropriate time to do so—the Supreme Court of the United

States having just denied certiorari review of an on-point Sixth Circuit opinion.  Order Denying

Petition for Writ of Certiorari, *Yost v. Planned Parenthood S.W. Ohio Region*, No. 19-677 (U.S. July 2, 2020).

In *Planned Parenthood Southwest Ohio Region v. Dewine*, the Sixth Circuit considered whether Planned Parenthood was a prevailing party for purposes of fees under 42 U.S.C. § 1988. 931 F.3d at 538–42. There, the parties did "not dispute that the preliminary injunction Planned Parenthood obtained qualifies as a decision on the merits [that bore] the necessary judicial *imprimatur*." *Id.* at 539. So to the extent Defendant here tries to argue Plaintiffs' preliminary injunction does not have the necessary judicial imprimatur, it is telling that the defendant in *Planned Parenthood* did not even find that argument worth making anymore. *See id.* Further, the Sixth Circuit recognized that the preliminary injunction was a merits-based determination, and Planned Parenthood was not trying to make a *Buckhannon*-foreclosed "catalyst theory" argument. *See id.* Instead, the defendant argued that "Planned Parenthood's preliminary injunction [did] not meet the standard of 'material alteration.'" *Id.*

The Sixth Circuit determined that Planned Parenthood's preliminary injunction win resulted in a material alteration. *Id.* Planned Parenthood's relief "was not 'reversed, dissolved, or otherwise undone by the final decision in the same case,'" because the case was dismissed as moot rather resolved by an "active, merits-based undoing" of the preliminary injunction. *Id.* at 539-40 (citing, among other cases, *Sole*, 551 U.S. at 83). Therefore, Planned Parenthood was a prevailing party. *Id.* at 542. In coming to that conclusion, the Sixth Circuit rejected the application of a *per se* rule, describing the "necessary inquiry [as] 'contextual and case-specific[.]'" *Id.* at 541. The Sixth Circuit also rejected the defendant's attempt to minimize Planned Parenthood's win as "miniscule" with relief that was "possibly zero." *Id.* ("Despite not having obtained the 'primary relief' it sought, Planned Parenthood's success on this single claim,

9

and the narrowed preliminary relief it obtained as a result, suffices to render it a 'prevailing party.'"). And the Sixth Circuit dismissed the defendant's attempt to argue that Planned Parenthood did not obtain any benefit or change in the "legal relationship between the parties[.]" *Id.* at 541–42. Instead, the Sixth Circuit concluded that "the preliminary injunction altered the relationship between Planned Parenthood and the state during the concrete period of time that the plaintiffs required the benefit of that alteration." *Id.* at 542.

Planned Parenthood prevailed. So did Plaintiffs here. Here, Plaintiffs won a preliminary injunction. *See Stinnie*, 355 F. Supp. 3d at 532–33. That preliminary injunction was on the merits. *See id.* at 527–31. That preliminary injunction conveyed the appropriate judicial imprimatur. Plaintiffs are not advancing a *Buckhannon*-foreclosed "catalyst theory" argument. (*See* ECF 235 at 27–30.) Plaintiffs' win resulted in a material alteration in the legal relationship between the parties. (*See* ECF 127) (order granting the preliminary injunction). Before the preliminary injunction, Plaintiffs were harmed by the unconstitutional application of § 46.2-395; after the preliminary injunction they could not be. (*See id.*) The relief Plaintiffs obtained "altered the relationship between [Plaintiffs] and the [Commonwealth] during the concrete period of time that the plaintiffs required the benefit of that alteration." *Planned Parenthood*, 931 F.3d at 542; (*see also* ECF 127). In both *Planned Parenthood* and *Stinnie*, the preliminary injunction restrained enforcement of the challenged law until actions by non-parties mooted each case. Plaintiffs' relief was never "'reversed, dissolved, or otherwise undone by the final decision in the same case.'" *Planned Parenthood*, 931 F.3d at 539 (citing *Sole*, 551 U.S. at 83). Plaintiffs are prevailing parties.

Of course there is technically no precedential value to a denial of certiorari. *Teague v. Lane*, 489 U.S. 288, 296 (1989) ("The 'variety of considerations [that] underlie denials of the

10

writ' . . . counsels against according denials of certiorari any precedential value.").  But it is generally accepted that the Supreme Court grants certiorari in instances where there is a distinct circuit split and lower courts are getting the legal question wrong.  *See* U.S. Sup. Ct. R. 10. *Planned Parenthood*, a case where the Sixth Circuit joined the other mass of circuits rejecting Defendant's bright-line rule, did not meet that standard.  On the other hand, should this Court adopt Defendant's bright-line rule, and the fourth circuit reaffirm application of the rule in *Smyth*, the present case would be a prime candidate for the Supreme Court to grant certiorari.  At that point, there would be a true circuit split presenting an interesting question, the fourth circuit would have gotten the answer wrong, and this case would present the appropriate vehicle to correct the mistake.

III.    **<u>Strong public policy reasons support granting the fee petition here.</u>**

A.    **Defendant's policy arguments are misguided at best.**

Defendant writes about "sound policy" considerations, but none of these arguments have any merit.  (ECF 237 at 10, 35–37.)  Plaintiffs will take them in turn.

*First*, Defendant argues its bright-line rule provides "clarity" to "courts and litigants." (*See* ECF 237 at 35.)  This argument fails in at least two ways.  To start, this Court should reject the idea that the approach taken by other circuits and courts is simply too complicated to be workable.  Courts and litigants in the fourth circuit are just as capable as those in other circuits. Further, although Defendant's bright-line rule might be clear, that does not make it right or just. As outlined above, Plaintiffs' reading of the relevant cases is correct and, as described below, comports with important public policy concerns.

*Second*, Defendant argues its bright line rule helps the government decide "how to respond" when challenged by constitutional litigation.  (*See* ECF 237 at 36.)  But, of course, one

would hope the relevant, and overriding, consideration for the government would be doing the right thing.  *See* VA. CONST. art. I, § 3 ("That government is, or ought to be, instituted for the common benefit, protection, and security of the people, nation, or community[.]"); Va. Code Ann. § 49-1 (requiring all officers in the Commonwealth to swear they will "support the Constitution of the United States, and the Constitution of the Commonwealth of Virginia").  And the right thing should not include defending an unconstitutional statute by applying scorched-earth litigation tactics in an attempt to wear down indigent Plaintiffs.

Defendant talks about "the costs and benefits of amending a law or changing a policy" as if the value of the Commonwealth's laws can be reduced to a spreadsheet.  (*See* ECF 237 at 36.)  But for years Defendant turned a blind eye, infamously so, to Plaintiffs' household budgets.  For years, Defendant let this unconstitutional regime continue to deprive thousands of Virginians of their dignity and the chance to raise themselves up from the vicious cycle of poverty.  (*See generally* ECF 1 (complaint); ECF 84 (first amended complaint).)  For years, Defendant imposed a "nightmarish spiral" that trapped Plaintiffs.  *See Stinnie*, 734 F. App'x 858, 864 (4th Cir. 2018) (Gregory, C.J., dissenting).

It is not a legitimate consideration for the government to want additional clarity concerning how to respond regarding its *unconstitutional* laws because it might have to pay the litigation expenses of those that dare to stand up and challenge them.  When the DMV decides to defend an unconstitutional law with the best lawyers it can muster and fights at every corner, it has to live with that decision when it loses on a merits-based preliminary injunction, even if the legislature later moots the law in an apparent attempt to stop the DMV "from continuing to incur costly legal fees."  (*See* ECF 235 at 13–14 (quoting Defendant).)  This Court should deny the

invitation to adopt Defendant's bright-line rule because it is both legally wrong and morally unsupportable.

*Third*, Defendant misunderstands Plaintiffs' position.  (*See* ECF 237 at 36.)  Plaintiffs are not asserting a rule "that always locked in a fee award for plaintiffs who obtain a preliminary injunction" as Defendant claims.  (*See id.*)  Of course, if Plaintiffs *won* the preliminary injunction but then *lost* at trial, they would not be a prevailing party.  *See Planned Parenthood*, 931 F.3d at 538.  But that is not what happened here.  Here, Plaintiffs won a merits-based preliminary injunction that granted relief and was never superseded by any merits-based undoing by the Court.  *Stinnie*, 355 F. Supp. 3d 514.  Plaintiffs' opening brief rightly focused on case law where the prevailing parties won a preliminary injunction and then their case was mooted in some way.  (*See*, *e.g.*, ECF 235 at 22–26.)  To argue that Plaintiffs contend for such an extreme rule is the implementation of a straw man argument at its finest.

*Finally*, Defendant argues that this is an "unnecessary proceeding[ .]"  (*See* ECF 237 at 36.)  Make no mistake, nothing about this years-long litigation to fight for the vindication of the constitutional rights of Virginians has been unnecessary because of the actions of Plaintiffs.  To the contrary, the fact that Plaintiffs had to sue to realize the Constitution's promise of due process speaks to the sad and dilatory nature of an unresponsive Virginia state government.  Because Plaintiffs won relief—in the form of this Court's preliminary injunction—from enforcement of the unconstitutional scourge of court debt driver's license suspension, long-standing federal legislation grants Plaintiffs litigation expenses incurred from this years-long struggle.  42 U.S.C. § 1988.  Plaintiffs agree this fee petition should not turn into a second major

litigation, but that does not mean Plaintiffs will stop advocating because Defendant—yet again—is opposing them.

In sum, none of Defendant's policy arguments have any merit. Indeed, some of them are just simply wrong. The Court should reject them and grant Plaintiffs' Petition.

> **B.     Awarding fees to civil rights litigators, who take on cases of important constitutional concern because it is the right thing to do, comports with important policy considerations.**

Plaintiffs did important work here. Not only does the law compel a finding that Plaintiffs are the prevailing parties, but also strong public policy concerns counsel against Defendant's attempt to thwart Plaintiffs from recovering their litigation expenses.

Taking on the Commonwealth of Virginia in this litigation was a huge commitment both in time and money on the part of Plaintiffs and their attorneys. 42 U.S.C. § 1988 stands to incentivize counsel to devote the energy needed to do important civil rights work. Plaintiffs in this case, and indeed other Plaintiffs with meritorious civil rights actions, deserve to have sophisticated legal representation, even if they cannot afford it. Congress provided for just that:

> In many cases arising under our civil rights laws, the citizen who must sue to enforce the law has little or no money with which to hire a lawyer. If private citizens are to be able to assert their civil rights, and if those who violate the Nations's fundamental laws are not to proceed with impunity, then citizens must have the opportunity to recover what it costs them to vindicate these rights in court.

S. REP. 94-1011, at 2 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5908, 5910. Time and time again, the Supreme Court has recognized the important underpinnings of § 1988. *See City of Riverside v. Rivera*, 477 U.S. 561, 576 (1986) ("Congress enacted § 1988 specifically because it found that the private market for legal services failed to provide many victims of civil rights violations with effective access to the judicial process."); *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) ("The

purpose of § 1988 is to ensure 'effective access to the judicial process' for persons with civil rights grievances.").

The future of meaningful civil rights enforcement depends on awarding fees and expenses in civil right actions. *See* S. REP. 94-1011, at 2 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5908, 5910 ("All of these civil rights laws depend heavily upon private enforcement, and fee awards have proved an essential remedy if private citizens are to have a meaningful opportunity to vindicate the important Congressional policies which these laws contain."); *id.* at 5 ("We find that the effects of such fee awards are ancillary and incident to securing compliance with these laws, and that fee awards are an integral part of the remedies necessary to obtain such compliance"). Further, "[t]he remedy of attorneys' fees has always been recognized as particularly appropriate in the civil rights area, and civil rights and attorneys' fees have always been closely interwoven." *Id.* at 3. Failing to award litigation expenses to parties like Plaintiffs here would seriously hinder 42 U.S.C. § 1983 litigation and the constitutional guarantees promised to all regardless of race or poverty. *See id.* For these reasons, this Court should reject Defendant's attempt to frustrate the way in which meritorious civil rights litigation is encouraged.

**C.      The Court should pay no attention to Defendant's attempt to re-litigate his loss on the preliminary injunction.**

Defendant ends his brief in the most spectacular way. Now, after § 46.2-395 is no longer on the books and neither Defendant, nor the Virginia Attorney General, has *any* obligation to contend for its constitutionality (to the extent that obligation even existed in the first place),[2]

---

[2] It is worth noting that at least in 2014, Attorney General Herring refused to defend a state constitutional provision he found unconstitutional. *See* Markus Schmidt, *Refusing to defend state law a rarity, Herring says*, RICHMOND TIMES-DISPATCH (March 31, 2014), https://richmond.com/news/local/government-politics/refusing-to-defend-state-law-a-rarity-

Defendant argues that this Court got it wrong in its preliminary injunction.  (*See* ECF 237 at 39.)

Now is not the time for Defendant to re-litigate his past losses.  (*See id.*)  Now is not the time for

a "second major litigation."  *See Hensley*, 461 U.S. at 437.

And now is certainly not the time to belittle Plaintiffs' win after showing they were likely

to succeed on the merits.  Defendant describes Plaintiffs' win "solely" on the procedural due

process claim as if it is not significant to show a likely violation of the Fourteenth Amendment to

the United States Constitution.  (*See* ECF 237 at 37.)  Even if Defendant saw Plaintiffs' win as

insignificant, it certainly was not insignificant to Plaintiffs.  Under Defendant's formulation, it is

unclear how many Constitutional provisions need be violated until Defendant deems it

significant.  Perhaps that exact logic is what kept § 46.2-395 on the books as long as it was.

Defendant already had his full opportunity to litigate the merits-based preliminary

injunction before this Court.  He lost and declined to appeal.

> **D.    Courts should neither countenance nor condone a Defendant seeking to rewrite history based on political musings instead of the history of the case.**

>> 1.    <u>Defendant's version of the political events taking place outside this litigation is irrelevant and misses the point.</u>

Defendant devotes an inordinate amount of time in his brief to belittling Plaintiffs'

merits-based win on an important federal constitutional question.  (*See*, *e.g.*, ECF 237 at 9–10.)

---

herring-says/article_7c9ba1a8-b887-11e3-898c-001a4bcf6878.html.  At the time, he seemed to
take the position that he would approach laws on a "case-by-case basis."  *See id.*  Attorney
General Herring cited other authority stating that "when the Attorney General believes a state
law 'violates the constitution, he has a paramount obligation to defend the constitution he is
sworn to uphold.'"  Press Release, *Attorney General Herring Changes Virginia's Legal Position
in Marriage Equality Case*, OFFICE OF THE ATTORNEY GENERAL,
https://www.oag.state.va.us/media-center/news-releases/96-attorney-general-herring-changes-
virginia-s-legal-position-in-marriage-equality-case.  Attorney General Herring's office chose to
defend—both vigorously and unsuccessfully—§ 46.2-395 in this litigation.

Defendant even goes so far as to claim this Court erred in granting the preliminary injunction. (*Id.* at 39.)  Instead of focusing on the preliminary injunction, Defendant heaps praise on political actors, describing political machinations in Richmond at length.  (*See id*. at 16–22.)[3]  Defendant even tries to argue that this litigation was unnecessary because there was a separate groundswell of support brewing for changing the statute.  (*See*, *e.g.*, ECF 237 at 16.)

As an initial matter, Defendant's political argument is irrelevant.  Section 46.2-395 remained on the books when Plaintiffs filed their initial complaint and throughout the pendency of the litigation, including at the time Plaintiffs obtained a preliminary injunction granting their requested relief.  Events occurring on a parallel timeline in the political sphere are of no matter; Plaintiffs prevailed in this Court.  *See*, *e.g.*, *Common Cause/Georgia*, 554 F.3d at 1355–56 (determining that the plaintiffs were a prevailing party even though events in the political sphere occurred during the pendency of their litigation).

Section 46.2-395 had "trap[ped] thousands of Virginians in a nightmarish spiral for which there [was] no apparent exit."  *Stinnie*, 734 F. App'x at 864 (Gregory, C.J., dissenting). How long should Plaintiffs have waited to vindicate their rights in court?  For how many more years would Defendant have continued to unjustly punish poverty through the suspension of driver's licenses without due process under § 46.2-395?

Defendant proudly extols the new political "momentum" and the actions of political majorities in repealing the statute, but Defendant fought Plaintiffs every step of the way in this litigation.  *See*, *e.g.*, (ECF 9 (moving to dismiss Plaintiffs' case)); *Stinnie*, 734 F. App'x 858

---

[3] Defendant's brief attempts to re-direct the Court's attention to irrelevant political intrigue. (*See*, *e.g.*, ECF 237 at 11–13, 16–17, 19–22.)  But Plaintiffs are not arguing under the "catalyst theory" and never have.  (*See* ECF 235 at 27–30 ("Plaintiffs' theory for entitlement to attorneys' fees is not the catalyst theory.").)

(arguing before the fourth circuit in favor of affirming the dismissal of Plaintiffs' case); (ECF 99 (opposing Plaintiffs' motion for a preliminary injunction)); (ECF 104 (again moving to dismiss Plaintiffs' case)); (ECF 142 (yet another motion to dismiss or, alternatively moving to stay the proceedings so that Plaintiffs could not get their final day in this Court)); (ECF 195 (moving for summary judgment to dispose of Plaintiffs' case)).  That § 46.2-395 ceased to unconstitutionally harm Plaintiffs as of this Court's preliminary injunction ruling, and is no longer on the books in Virginia now, is in spite of Defendant's most zealous efforts in this Court.

Plaintiffs had to bring this lawsuit because enough was enough.  *See* Martin Luther King, Jr., *Letter from a Birmingham Jail* (April 16, 1963) ("We must come to see, with one of our distinguished jurists, that 'justice too long delayed is justice denied.'").  No one could see into the future.  And even with the benefit of hindsight, it is clear that the repeal of § 46.2-395 was never a certain outcome until it had occurred.  Defendant's own brief mentions that efforts to repeal § 46.2-395 failed at least once during the pendency of this litigation.  (*See* ECF 237 at 17.) Plaintiffs chose to do something, instead of sitting idly by.  This Court's preliminary injunction struck a decisive blow towards ending the "nightmarish spiral" caused by the statute, granting Plaintiffs relief from existing suspensions and from any future unconstitutional enforcement of the statute against them.

2.  <u>Defendant seemingly fails to appreciate the importance of the fourth circuit appeal.</u>

Defendant goes so far as describing Plaintiffs' efforts at the fourth circuit as "unsuccessful."  (*See* ECF 237 at 15.)  But that is not accurate.  At the fourth circuit, Plaintiffs won:  (1) the opportunity to keep litigating before this Court, and (2) an insightful opinion from a

respected jurist who saw right to the heart of this case.[4]  Indeed, soon after the fourth circuit's opinion came this Court's ruling on the preliminary injunction, the defining merits-based win for Plaintiffs.  *See generally Stinnie*, 355 F. Supp. 3d 514.  The fourth circuit's opinion brought the parties to that preliminary injunction.

Defendant even downplays the importance of Chief Judge Gregory's dissent on appeal. (*See* ECF 237 at 15.)  Defendant describes a sitting appellate judge's written opinion as mere "musings" as if Chief Judge Gregory's opinion was an unimportant academic exercise.  (*See id.* at 15 n.4.)  It was not.  Chief Judge Gregory's dissent offered a thoughtful and insightful view into the real heart of this litigation.  *Stinnie*, 734 F. App'x at 863–65 (Gregory, C.J., dissenting). While the appeal was decided on procedural grounds, Chief Judge Gregory addressed the merits in a detailed manner that served as a guidepost for the litigation going forward.[5]  His opinion exposed the ugly workings of Virginia's "license-for-payment scheme," *id.*, perpetuated by Defendant and a political establishment either, at the time, unwilling or unable to fix it.  Indeed, Chief Judge Gregory's dissent marked a real turning point in this litigation.  After obtaining the opportunity to continue to seek justice following the fourth circuit's ruling, Plaintiffs won their merits-based preliminary injunction in a reported opinion from this Court.  *Stinnie*, 355 F. Supp. 3d at 532 (determining on the merits that it was "likely that Plaintiffs [would] succeed in establishing that § 46.2-395 violates procedural due process").

---

[4] Even assuming Defendant won at the fourth circuit, which is wrong for the reasons stated in the text, that victory was a pyrrhic one.  Plaintiffs got far more from the fourth circuit in being able to continue litigating (and Chief Judge Gregory's dissent) than Defendant did from a nuanced procedural point.
[5] Sometimes non-majority opinions become even more important that the majority opinion itself, even if not technically binding.  *See*, *e.g.*, *Katz v. United States*, 389 U.S. 347 (1967) (Harlan, J., concurring) (describing an influential two-part test under the Fourth Amendment even though it was a concurring opinion).

## CONCLUSION

Defendant's opposition does not change anything about Plaintiffs' entitlement to litigation expenses as a prevailing party.  To the contrary, it only exposes the disappointing real reasons behind Defendant's staunch opposition.  The Court should decline Defendant's invitation to apply an outdated and insupportable bright-line rule.  Courts across the country are taking the legally correct, nuanced view of prevailing party status.  There is no principled reason why this Court should not do the same.

In conclusion, Plaintiffs ask this Court to (1) grant their Petition for Attorneys' Fees and Litigation Expenses, (2) hold that they are prevailing parties and their attorneys are entitled to fees and other costs and expenses under 42 U.S.C. § 1988, (3) enter the Proposed Order attached as Exhibit A to the Petition, and (4) invite the parties to submit briefing on the reasonableness and amount of fees to be awarded on a schedule consistent with this Court's Order dated May 7, 2020.

Respectfully submitted,

By: */s/ Jonathan T. Blank*
Jonathan T. Blank (VSB No.: 38487)
Benjamin P. Abel (VSB No.: 88961)
MCGUIREWOODS LLP
652 Peter Jefferson Parkway
Suite 350
Charlottesville, VA 22911
T: (434) 977-2509
F: (434) 980-2258
jblank@mcguirewoods.com
babel@mcguirewoods.com

Angela A. Ciolfi (VSB No.: 65337)
Pat Levy-Lavelle (VSB No.: 71190)
LEGAL AID JUSTICE CENTER
1000 Preston Avenue, Suite A
Charlottesville, Virginia 22903
T: (434) 529-1810

angela@justice4all.org
pat@justice4all.org

Leslie Kendrick (VSB No.: 90104)
580 Massie Rd.
Charlottesville, Virginia 22903
T: (434) 243-8633
kendrick@law.virginia.edu

*Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 29, 2020, I electronically filed the foregoing with the

Clerk of Court using the CM/ECF System, which will send a notification of such filing to all

CM/ECF participants, including counsel for the Defendant.

<div style="margin-left: 50%;">

By: <u>*/s/ Jonathan T. Blank*</u>
Jonathan T. Blank (VSB No.: 38487)
McGuireWoods LLP
652 Peter Jefferson Parkway
Suite 350
Charlottesville, VA 22911
T: (434) 977-2509
F: (434) 980-2258
jblank@mcguirewoods.com

</div>

22