IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | | |
|---|---|---|
| DAMIAN STINNIE, et al., | ) | |
| Plaintiffs, | ) | Civil Action No. 3:16-cv-00044 |
| | ) | |
| v. | ) | REPORT & RECOMMENDATION |
| | ) | |
| RICHARD D. HOLCOMB, in his official | ) | |
| capacity as the Commissioner of the | ) | By:   Joel C. Hoppe |
| VIRGINIA DEPARTMENT OF MOTOR | ) | United States Magistrate Judge |
| VEHICLES, | ) | |
| Defendant. | ) | |

This matter is before the Court for a Report and Recommendation on Plaintiffs' Petition for Attorneys' Fees and Litigation Expenses. ECF No. 234; *see* ECF No. 236. The petition has been fully briefed and argued, *see* ECF Nos. 235, 237, 238, 242, and is ripe for review. This case was dismissed as moot in May 2020, but the Court retained jurisdiction to decide the issue of attorneys' fees. *See* ECF No. 232. The sole issue now before the Court is whether a plaintiff who won a preliminary injunction that was not reversed or otherwise modified, but whose case was later dismissed as moot, is a "prevailing party" who may be entitled to attorneys' fees under 42 U.S.C. § 1988. *See* ECF No. 232. For the reasons stated below, I conclude that a plaintiff is not a "prevailing party" under such circumstances. *Smyth ex rel. Smyth v. Rivero*, 282 F.3d 268 (4th Cir. 2002). Accordingly, I respectfully recommend that the presiding District Judge deny Plaintiffs' petition for attorneys' fees.

I. Background

Plaintiffs filed this civil action in 2016, challenging the constitutionality of Virginia Code § 46.2-395. *See* Compl. ¶¶ 1–6, ECF No. 1 (July 6, 2016). At the time, § 46.2-395 required automatic suspension of a person's driver's license whenever the person, having been convicted of a crime, failed to "pay all lawful fines, court costs, forfeitures, restitution, and penalties

1

assessed against him" for that conviction. *See* Va. Code § 46.2-395(A)–(B) (eff. July 1, 2016 to June 30, 2017); *accord id.* § 46.2-395(A)–(B) (eff. July 1, 2017 to June 30, 2020) (repealed July 1, 2020). Pursuant to that requirement, Plaintiffs' drivers' licenses were automatically suspended even though they were "unable, not unwilling, to pay their court debt." Pls.' Br. 2, ECF No. 235. This trapped Plaintiffs and "hundreds of thousands of Virginians" like them "in a vicious cycle of debt, unemployment, and incarceration." Am. Compl. ¶¶ 4, 6, ECF No. 84 (Sept. 11, 2018). Without money to pay their court debts, Plaintiffs' drivers' licenses were suspended. *Id.* ¶ 1. But without licenses, Plaintiffs were then unable to drive anywhere, including to work, without risking criminal penalties. Thus, they could not maintain steady employment, earn money to pay back their court debt, and have their licenses reinstated. *Id.* ¶ 2. Plaintiffs alleged that this automatic suspension—without sufficient notice or hearing—violated their Fourteenth Amendment right not to be deprived of a protected interest without due process of law. *Id.* ¶ 5.

## II. Procedural History

In September 2018, Plaintiffs moved for a preliminary injunction. Mot. Prelim. Inj., ECF No. 88. Arguing that automatic license suspension impacted, at the time, "[n]early a million Virginians," Pls.' Mem. in Supp. Mot. Prelim. Inj. 1, ECF No. 90, forcing Plaintiffs and others similarly situated to confront "the impossible choice of driving illegally to meet their basic needs, or failing to provide for themselves and their families," *id.* at 2, Plaintiffs asked the Court to: (1) enjoin future enforcement of § 46.2-395, (2) remove any current suspensions of Plaintiffs' drivers' licenses imposed under § 46.2-395, and (3) enjoin Defendant from imposing any fees to reinstate Plaintiffs' licenses if there were no other restrictions on their licenses, *id.*

Senior United States District Judge Norman K. Moon, presiding, granted the preliminary injunction in December 2018. *See Stinnie v. Holcomb*, 355 F. Supp. 3d 514 (W.D. Va. 2018).

Applying the four-part standard articulated in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008), Judge Moon considered whether Plaintiffs had shown (1) that they were likely to succeed on the merits, (2) that they were likely to suffer irreparable harm in the absence of preliminary injunctive relief, (3) that the balance of equities tipped in their favor, and (4) that an injunction was in the public interest. *Stinnie*, 355 F. Supp. 3d at 527 (citing *Winter*, 555 U.S. at 20).

Judge Moon first analyzed, in detail, Plaintiffs' likelihood of success on the merits of their procedural due process claim. *See generally id.* at 527–31. To meet this burden, he explained, Plaintiffs had to demonstrate that they were "likely to show (1) they ha[d] been deprived of life, liberty or property, and (2) that such deprivation occurred without the due process of law." *Id.* at 528 (citing *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976)). Plaintiffs established *Mathews*'s first prong, Judge Moon found, because Fourth Circuit precedent clearly held "[a] 'driver's license is a property interest protected by the Fourteenth Amendment[.]'" *Id.* (quoting *Scott v. Williams*, 924 F.2d 56, 58 (4th Cir. 1991)). Thus, "once issued, a driver's license may not be taken away without affording a licensee procedural due process" appropriate to the circumstances. *Id.* (quoting *Scott*, 924 F.2d at 58).

Plaintiffs also established *Mathews*'s second prong. Procedural due process requires (1) "fair notice of [the] impending" deprivation and (2) an adequate opportunity to be heard. *Id.* (citing *Snider Int'l Corp. v. Town of Forest Heights, Md.*, 739 F.3d 140, 146 (4th Cir. 2014)). "Notice and hearing are two distinct features of due process, and thus governed by different standards." *Id.* (citing *Snider Int'l Corp.*, 739 F.3d at 146). Notice must be "reasonably calculated, under all the circumstances, to apprise interested parties" of the impending deprivation "and afford them an opportunity to present their objections." *Id.* at 529 (emphasis

omitted) (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)).

Determining "the adequacy of the opportunity to be heard," *id.*, requires the court to balance

"three factors: (1) the private interest involved; (2) the risk of erroneous deprivation through the

procedures used; and (3) the government's interest," including the fiscal and administrative

burdens that providing additional or substitute procedural safeguards would impose, *see id.* at

530 (citing *Mathews*, 434 U.S. at 335).

   Based on the evidence before him, Judge Moon concluded that Plaintiffs had shown they

"may" be able to prove that § 46.2-395's pre-deprivation notice provisions were inadequate. *Id.*

at 529. Section 46.2-395(C) did "provide[] that written notice regarding license suspension upon

failure to pay court costs 'shall be provided to the person at the time of trial or shall be mailed by

first-class mail' to the person's current mailing address." *Id.* at 528 (quoting Va. Code § 46.2-

395(C)). But Judge Moon expressed doubt that this notice was sufficient to satisfy due process.

*Id.* at 529. First, the notices were provided at the time of trial on unrelated criminal conduct,

rather than at the time the licensee defaulted on payment of court costs imposed after conviction

and sentencing. *Id.* (explaining that "license suspension is merely a possibility at the time notice

is given" to a criminal defendant and that the actual suspension "may occur many years after the

state court's assessment of fines and costs" on an underlying conviction). "This temporal

disconnect ma[de] it at least questionable whether the means of notice employed here [were]

more than a 'mere gesture.'" *Id.* (quoting *Mullane*, 339 U.S. at 314). Moreover, the notices

provided no avenue for objecting to the suspension of one's driver's license. *Id.* (citing *Mullane*,

339 U.S. at 314).

   But "[e]ven if the notice provided here was more than a mere gesture," *id.*, Judge Moon

determined that Plaintiffs were likely to succeed on their procedural due process claim because §

46.2-395 did not provide licensees a  "meaningful" opportunity to be heard in a manner "sufficient to protect against the erroneous deprivation of the property interest involved," *see id.* ("The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." (quoting *Mathews*, 424 U.S. at 333)). Indeed, Judge Moon found that Plaintiffs were "likely to show § 46.2-395 [did] not provide *any* hearing, much less one that satisfies due process." *Id.*; *see also id.* at 530 ("[Section] 46.2-395, on its face, provides no procedural hearing at all."). Defendant urged the Court to find otherwise, arguing that licensees had three chances to be heard: "[f]irst, at the time of sentencing or through a petition contesting the assessment of court costs; second, upon an appeal of defendant's criminal conviction; and finally, through the statutory mechanism that allows the sentencing court to reduce or forgive court debt." *Id.* at 530 (internal quotation marks omitted). None of these options, Judge Moon concluded, provided a meaningful opportunity for hearing on the license suspension issue. *Id.* The first two were available only at the time of sentencing on an underlying criminal conviction "when the licensee may, in good faith, believe he has the ability to pay." *Id.* And although the third permitted a licensee to petition the sentencing court for a reduction or waiver of his court debt, it did not provide "an opportunity to be heard on the fact of license suspension" or an opportunity to seek a waiver of the Department of Motor Vehicles' $145 license reinstatement fee. *Id.* (citing Va. Code § 19.2-354.1). Thus, Judge Moon concluded that the available procedures did not provide licensees an opportunity to contest "their alleged default and later suspension." *Id.* at 530–31. Accordingly, Plaintiffs were likely to show that *Mathews*'s second prong weighed in their favor. *Id.* at 531.

Concluding his detailed assessment of Plaintiffs' likelihood of success on the merits, Judge Moon balanced the government's interest in enforcing payment of court fines and costs

with the private interest in retaining one's driver's license, and he found that this part of the *Mathews* balancing test also weighed in Plaintiffs' favor. *Id.* at 531. While the Commonwealth had an interest in the payment of court fines, the threat of license suspension would not incentivize payment by those who "simply cannot afford to pay." *Id.*; *see also id.* at 532. In fact, the suspension of licenses only further hindered individuals' ability to pay their court debt by leaving them unable to "gain and maintain employment." *Id.* at 531. Thus, Judge Moon determined "Plaintiffs demonstrate[d] a likelihood of success on their claim that § 46.2-395 violates procedural due process." *Id.*

Finally, Judge Moon considered the three remaining preliminary injunction factors. *Id.* at 532; *see Winter*, 555 U.S. at 20. Plaintiffs satisfied the second *Winter* factor, showing that without preliminary injunctive relief, they were likely to suffer irreparable harm. *Stinnie*, 355 F. Supp. 3d at 532. "[W]here Plaintiffs' constitutional rights are being violated, there is a presumption of irreparable harm." *Id.* (citing *Davis v. Dist. of Columbia*, 158 F.3d 1342, 1343 (D.C. Cir. 1998)). This harm, Judge Moon determined, could be remedied only through "the restoration of their licenses and the prevention of further suspensions under § 46.2-395." *Id.* ("Money alone would not alleviate Plaintiffs' harms or release Plaintiffs from the cycle of hardships caused by § 46.2-395."). Similarly, the third and fourth *Winter* factors—the balancing of the equities and the public interest—weighed in Plaintiffs' favor. *Id.* Judge Moon explained that "Fourth Circuit precedent 'counsels that a state is in no way harmed by issuance of a preliminary injunction which prevents the state from enforcing restrictions likely to be found unconstitutional. If anything, the system is improved by such an injunction.'" *Id.* (quoting *Centro Tepeyac v. Montgomery Cty.*, 722 F.3d 184, 191 (4th Cir. 2013) (other quotation marks omitted)).

6

Accordingly, Judge Moon granted the preliminary injunction. *Id.* at 532–33. His order (1) enjoined Defendant from enforcing § 46.2-395 against Plaintiffs, (2) directed Defendant to remove any suspensions of Plaintiffs' drivers' licenses imposed under § 46.2-395, and (3) enjoined Defendant from charging a fee to reinstate Plaintiffs' drivers' licenses if there were no other restrictions on their licenses. *See* Order of Dec. 21, 2018, ECF No. 127. The preliminary injunction applied only to the named Plaintiffs in this action. *Id.* at 1 n.1. Although Plaintiffs had filed for class certification, *id.* (citing Pls.' Mot. to Certify Class, ECF No. 85), the Court had not yet ruled on their motion and thus limited the preliminary injunction to the named Plaintiffs, *id.* Defendant did not appeal the preliminary injunction order. Pls.' Reply 16, ECF No. 238.

Shortly thereafter, Virginia Governor Ralph Northam proposed a budget amendment to suspend enforcement of § 46.2-395. Pls.' Br. 7 (citing *Governor Northam Announces Budget Amendment to Eliminate Driver's License Suspensions for Nonpayment of Court Fines and Costs*, Office of the Governor (Mar. 26, 2019), http://bit.ly/GovNorthamBudget). The amendment passed, and § 46.2-395's enforcement was suspended from July 1, 2019, through June 30, 2020. *Id.* Anticipating the possibility of further legislative changes, the Court stayed this case pending the Virginia General Assembly's 2020 legislative session. *See* Mem. Op. 8, ECF No. 214; Order of June 28, 2019, ECF No. 215. Subsequently, the Virginia General Assembly repealed § 46.2-395. Pls.' Br. 9 (citing *2020 Session SB1ER*, Va. LIS, http://lis.virginia.gov/cgi-bin/legp604.exe?201+ful+SB1ER+pdf, at lines 1244–45). As of July 1, 2020, Virginia drivers' licenses could no longer be automatically suspended for mere failure to pay court fees, and the Department of Motor Vehicles was directed to reinstate, without cost, all drivers' licenses suspended solely for failure to pay court fees. *Id.* Shortly thereafter, the Court adopted the parties' joint stipulation of dismissal and dismissed this action as moot. *See* Order of May 7,

2020, ECF No. 232. The Court retained jurisdiction to determine whether Plaintiffs were entitled to attorneys' fees and, if so, in what amount. *See id.*

III. The Legal Framework

By default, civil litigants bear their own attorneys' fees. *Peter v. Nantkwest, Inc.*, 140 S. Ct. 365, 370–71 (2019). "[T]he prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser." *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975). Known as the "American Rule," this presumption against fee-shifting makes winners and losers responsible for funding their own legal representation. *Id.* Departures from the rule are permitted only when fee-shifting is authorized by a "specific and explicit" statutory provision. *Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. 121, 126 (2015); *see also Shammas v. Focarino*, 784 F.3d 219, 223 (4th Cir. 2015) ("[W]here the American Rule applies, Congress may displace it only by expressing its intent to do so 'clearly and directly.'") (quoting *In re Crescent City Estates, LLC*, 588 F.3d 822, 825 (4th Cir. 2009)).

The Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, provides one such exception. Pursuant to § 1988, district courts may award "a reasonable attorney's fee" to the "prevailing party," other than the United States, in certain civil rights actions, 42 U.S.C. § 1988(b). Enacted to ensure "'effective access to the judicial process' for persons with civil rights grievances," *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (quoting H.R. Rep. No. 94-1558, at 1 (1976)), § 1988 provides compensation to "civil rights attorneys who bring civil rights cases and win them," *Brandon v. Guilford Cty. Bd. of Elections*, 921 F.3d 194, 196 (4th Cir. 2019). Thus, under § 1988, the prevailing party "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Hensley*, 461 U.S. at 430 (quoting S. Rep. No. 94-1011, at 4 (1976)).

To be a "prevailing party,"[1] a party need not receive a full merits-based adjudication of its claim. It must, however, "receive at least some relief on the merits," *Hewitt v. Helms*, 482 U.S. 755, 760 (1987), that "materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Lefemine v. Wideman*, 568 U.S. 1, 4 (2012) (per curiam) (quoting *Farrar v. Hobby*, 506 U.S. 103, 111–12 (1992)). Thus, various types of limited, merits-based relief have been found to confer "prevailing party" status on a plaintiff. *See, e.g., id.* at 3–5 (permanent injunction); *Rhodes v. Stewart*, 488 U.S. 1, 4 (1988) (declaratory judgment); *Buckhannon*, 532 U.S. at 604 (settlement agreement enforced by court-ordered consent decree). Importantly, the relief must be "marked by 'judicial imprimatur.'" *CRST Van Expedited*, 136 S. Ct. at 1646 (quoting *Buckhannon*, 532 U.S. at 605). An enforceable court order provides the judicial imprimatur, *Buckhannon*, 532 U.S. at 604, but that alone is not sufficient to confer prevailing party status, *see Smyth*, 282 F.3d at 276 (noting that a preliminary injunction "is, like any court order, 'enforceable'"). A defendant's mere voluntary change in conduct that moots a case, by contrast, is not "marked by judicial imprimatur," even when plaintiff's lawsuit was the "catalyst" for the change. *See Buckhannon*, 532 U.S. at 600, 605 (rejecting the so-called "catalyst theory," whereby plaintiff argued it was the prevailing party because its lawsuit prompted defendant to voluntarily change its conduct, mooting the action before plaintiff obtained any merits-based relief).

## IV. Discussion

Plaintiffs argue that they are entitled to attorneys' fees under § 1988 because they are the "prevailing party" in this case. Plaintiffs' case was dismissed as moot prior to a full adjudication

---

[1] "The term 'prevailing party,' as used in § 1988(b) and other fee-shifting provisions, is a 'legal term of art,'" *Smyth*, 282 F.3d at 474 (quoting *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 603 (2001)), that has been interpreted in a "consistent manner" across statutes that do not otherwise define the term, *see CRST Van Expedited, Inc. v. E.E.O.C.*, 136 S. Ct. 1642, 1646 (2016).

of their claims on the merits. *See* Order of May 7, 2020. But Plaintiffs argue that their success in obtaining a merits-based preliminary injunction in their favor qualifies them for prevailing party status. Pls.' Br. 11–12. The preliminary injunction, they contend, materially altered their relationship with Defendant: "[b]efore the preliminary injunction, Plaintiffs were harmed by the unconstitutional application of § 46.2-395; after the preliminary injunction they could not be." Pls.' Reply 10. And, Plaintiffs note that the preliminary injunctive relief they obtained was not revoked or otherwise altered by this Court during the pendency of the litigation. *Id.* at 1.

Plaintiffs' position faces one major obstacle. The Fourth Circuit has held in a published panel decision that a preliminary injunction does *not* confer "prevailing party" status under § 1988(b), because a court order granting such interim relief "is best understood as a prediction of a probable, but necessarily uncertain," outcome based on a "necessarily abbreviated" inquiry into the merits of the plaintiff's claim. *Smyth*, 282 F.3d at 276. Plaintiffs acknowledge this obstacle, but ask the Court to disregard *Smyth*'s holding. Pls.' Br. 21; *see Warfaa v. Ali*, 811 F.3d 653, 661 (4th Cir. 2016) ("One panel's decision is binding, not only upon the district court, but also upon another panel of this court—unless and until it is reconsidered *en banc*." (quotation marks omitted)); *Francis v. Am. Tel. & Tel. Co.*, No. 2:92cv293, 1993 WL 741853, at *2 (M.D.N.C. Aug. 9, 1993) ("It goes without saying that any published decision of the Fourth Circuit Court of Appeals is binding upon this Court . . . unless or until the decision is reconsidered en banc or is overturned by the United States Supreme Court."). *Smyth*, they contend, was decided almost twenty years ago using "a different, and since discarded, standard for granting a preliminary injunction." Pl.'s Br. 21; *see Smyth*, 282 F.3d at 276–77 ("[I]n granting a preliminary injunction a court is guided not only by its assessment of the likely success of the plaintiff's claims, but also by other considerations, notably a balancing of likely harms. . . . [A] high likelihood of harm to

10

the plaintiff may reduce the extent to which that plaintiff must demonstrate a likelihood of success on the merits."). Intervening Supreme Court precedent, they argue, has undermined *Smyth*'s rationale to such an extent that *Smyth* is no longer controlling here. Pl.'s Br. 12–15 (citing *Winter*, 555 U.S. at 20–22; *Lefemine*, 568 U.S. at 2–5). Plaintiffs also point to one district court case that has accepted the same argument. *See* Pls.' Br. 22 (citing *Veasey v. Wilkins*, 158 F. Supp. 3d 466, 470 (E.D.N.C. 2016)). In *Veasey*, the district court found that the facts of the case before it "strongly parallel[ed]" those addressed by the Supreme Court in *Lefemine* and noted that the preliminary injunction standard had changed since *Smyth* was decided. *Veasey*, 158 F. Supp. 3d at 469–70 (explaining that, under the Supreme Court's decision in *Winter*, 555 U.S. 7, a plaintiff seeking a preliminary injunction now "must clearly demonstrate that he will likely succeeded on the merits, regardless of the harm he is likely to suffer absent an injunction" (cleaned up)). Accordingly, the district court concluded that the Fourth Circuit's holding in *Smyth* was "untenable," and found the plaintiff who secured a preliminary injunction before her case was dismissed as moot was a "prevailing party" under § 1988. *Id.* at 470. Plaintiffs argue that *Veasey* provided a "thoughtful, and correct, analysis of the state of the law in the [F]ourth [C]ircuit," and urge this Court to follow the same approach in their case.  Pls.' Reply 8. They further contend that several decisions from other circuit courts of appeal support their position, Pls.' Br. 15–21 (collecting cases), that the Fourth Circuit's decision in *Smyth* "no longer holds any weight here[,]" *id.* at 21, and that the Fourth Circuit itself would no longer adhere to its prior holding if presented with this question, *id.* at 22.

Defendant disagrees. He argues that Plaintiffs have not achieved prevailing party status because they obtained a "narrow preliminary injunction" that addressed only "one of their five claims" and did not provide all of the relief Plaintiffs sought. Def.'s Br. 1, ECF No. 237.

Defendant notes that Plaintiffs sought declaratory judgment that § 46.2-395 was unconstitutional, class certification, a preliminary and permanent injunction against the statute's enforcement as to *all* Virginia drivers with licenses suspended under § 46.2-395, and reinstatement of all of those drivers' licenses without fee. *Id.* Instead, the Court ordered a "limited injunction" that applied only to the named Plaintiffs in this case and provided only a small portion of the relief sought. *Id.* Defendant also argues that *Smyth* remains binding Fourth Circuit precedent and therefore requires this Court to find that a preliminary injunction cannot confer prevailing party status. *Id.* at 1–2 (citing *Smyth*, 282 F.3d at 277 n.8). He adds that "sound policy reasons" support the result the Fourth Circuit reached in *Smyth*, *id.* at 2, and that Defendant ultimately would have won on the merits had the case not been dismissed as moot, *id.*

A.    *The Fourth Circuit's decision in* Smyth *held that a preliminary injunction is not sufficiently merits-based to confer prevailing party status*

*Smyth* held that the grant of a preliminary injunction does not give rise to prevailing party status for an attorneys' fees petition. 282 F.3d at 277 & n.9 (rejecting plaintiffs' argument "that a preliminary injunction is in some cases a proper basis for prevailing party status"). There, plaintiff welfare recipients brought a civil rights action pursuant to 42 U.S.C. § 1983, "claiming that a new paternity identification policy for welfare applicants," instituted by the Virginia Department of Social Services, violated federal law. *Id.* at 271. The district court entered a preliminary injunction preventing enforcement of the policy against the named plaintiffs. *Id.* at 272. In so doing,

> the district court found that the balancing of likely harms in considering the plaintiffs' motion for a preliminary injunction clearly favored the plaintiffs, that the denial of benefits for noncooperation because of a claimant's inability to identify the father of her children contradicted the plain language of then-applicable federal regulations, and that plaintiffs were thus likely to succeed on the merits.

12

*Id.* (footnote omitted). Before the plaintiffs obtained a final judgment on the merits, however, the Virginia Department of Social Services revised the policy at issue and the district court dismissed the plaintiffs' claims as moot. *Id.* at 273. The district court subsequently awarded plaintiffs attorneys' fees under 42 U.S.C. § 1988(b),[2] and the defendant appealed. *Id.* at 273–74.

On appeal, the Fourth Circuit rejected the contention that a preliminary injunction is sufficient to confer prevailing party status. *Id.* at 274–77. The panel noted that the Supreme Court had recently decided *Buckhannon*, where it had rejected the "catalyst theory" and suggested that prevailing party status should not attend limited, non-merits-based relief. *Id.* at 275–76 (citing *Buckhannon*, 532 U.S. at 604–05) (noting that the *Buckhannon* Court found "the catalyst theory problematic in part because" it could permit plaintiffs to obtain prevailing party status for merely withstanding a motion to dismiss for failure to state a claim before the defendant voluntary changes the challenged policy or action).

A preliminary injunction, the *Smyth* Court concluded, was "closely analogous, for [fee-shifting] purposes, to the examples of judicial relief deemed insufficient in *Buckhannon*." *Id.* at 276. It reasoned that "[w]hile granting such an injunction does involve an inquiry into the merits of a party's claim, . . . the merits inquiry . . . is necessarily abbreviated," *id.* (citing *Blackwelder Furniture Co. of Statesville v. Seilig Mfg. Co.*, 550 F.2d 189, 195 (4th Cir. 1977)), and is "guided not only by [the court's] assessment of the likely success of the plaintiff's claims, but also by other considerations, notably a balancing of likely harms," *id.* (citing *Safety-Kleen, Inc.*

---

[2] In *Smyth*, the parties "had come to an 'agreement' wherein the [Defendant] waived her right to seek repayment of certain [welfare] benefits from the plaintiffs in return for the plaintiffs' agreement not to contest continuance of the hearing on [Defendant's] motion for summary judgment." *Id.* at 273. Although the agreement is not relevant here, it warrants noting that the district court's decision to award attorneys' fees in *Smyth* was based both on the fact that the plaintiffs had obtained a preliminary injunction *and* on the fact that the parties had entered into a "partial settlement." *Id.* at 273–74.

*(Pinewood) v. Wyche*, 274 F.2d 846, 859 (4th Cir. 2001)). Under then-existing Fourth Circuit law, a court weighing these considerations

> should bear in mind that the factors must work in conjunction, and a high likelihood of harm to the plaintiff may reduce the extent to which that plaintiff must demonstrate a likelihood of success on the merits. A plaintiff's burden to show a likelihood of success on the merits, in other words, varie[d] according to the harm the plaintiff would be likely to suffer absent an injunction.

*Id.* (cleaned up). "While this frame-work may [have been] well suited to reconciling the practical, equitable, and legal concerns that face a court determining whether to grant a party interim relief" by a preliminary injunction, the *Smyth* Court concluded that "it render[ed] such relief an unhelpful guide to the legal determination of whether a party has prevailed" for purposes of awarding attorneys' fees. *Id.*; *see id.* at n.8 (explaining that it was the "preliminary, incomplete examination of the merits involved and the incorporation (if not predominance) of equitable factors" under then-existing Fourth Circuit law that made the "preliminary injunction inquiry . . . [so] ill-suited to guide the prevailing party inquiry").

In reaching this conclusion, however, the panel relied on the now-outdated formulation of the preliminary injunction standard articulated in *Blackwelder Furniture Co. of Statesville, Inc. v. Seilig Manufacturing Company, Inc.*, 550 F.2d 189, 195 (4th Cir. 1977). *See infra* Sec. IV.B.; *see also Veasey*, 158 F. Supp. 3d at 469–70 (citing *Smyth*, 282 F.3d at 276–77). Importantly, the *Smyth* Court recognized that the *Blackwelder* standard had been criticized as being inconsistent with Supreme Court precedent. *Smyth*, 282 F.3d at 277 n.8 (citing *Safety-Kleen* 274 F.3d at 868–70 (Luttig, J., concurring)). In *Safety-Kleen*, Judge Luttig issued a strong critique of *Blackwelder*. He explained, "[t]he Supreme Court has consistently applied the four-part test governing the decision on an injunction (the plaintiff's likelihood of success on the merits, the harm to the plaintiff in the absence of the injunction, the harm to the defendant upon grant of the injunction, and public interest) without ever distinguishing among the four parts as to analytical order,

14

priority, or weight." *Id.* at 868. Judge Luttig went on to explain that hallmarks of the *Blackwelder* test—the interrelatedness of the factors and the primacy of the relative hardship evaluation—were unsupported by and inconsistent with Supreme Court law. *Id.* at 868–69. The *Smyth* Court acknowledged this critique, but it nonetheless adhered to the *Blackwelder* test in analyzing whether a preliminary injunction confers prevailing party status. *Id.* at 277 n.8.

To evaluate a motion for preliminary injunction under *Blackwelder*, a district court must first "balance the 'likelihood' of irreparable harm to the plaintiff against the 'likelihood' of harm to the defendant." *Blackwelder*, 550 F.2d at 195. If the "imbalance of hardship should appear in plaintiff's favor," *id.*, the district court assesses the likelihood of success on the merits, which ordinarily will be satisfied if the plaintiff "raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation," *id.* (quoting *Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738, 740, 743 (2d Cir. 1953)). And, under *Blackwelder*, a weak showing on one factor could be resolved by a strong showing on another factor. *Id.* ("The importance of probability of success increases as the probability of irreparable injury diminishes[.]").

The *Smyth* Court focused on the fact that the *Blackwelder* test worked like a sliding scale. It "d[id] involve an inquiry into the merits of a party's claim." *Smyth*, 282 F.3d at 276. But that inquiry was "necessarily abbreviated." *Id.* The degree to which the *Blackwelder* test probed the merits of a plaintiff's claim "depend[ed] on the circumstances." *Id.* In some cases, "a plaintiff may . . . need only to establish that his case presents a 'substantial question' to obtain preliminary injunctive relief." *Id.* In others, "[a]t the most," a party "may have to demonstrate 'a strong showing of likelihood of success or a substantial likelihood of success by clear and convincing evidence in order to obtain relief." *Id.* (internal quotation marks omitted). And, the

fact that *Blackwelder* permitted strength in one factor to make up for weakness in another further weakened the merits inquiry. *Id.* ("A plaintiff's burden to show a likelihood of success on the merits, in other words, varies according to the harm the plaintiff would be likely to suffer absent an injunction."). Overall, the inconsistent and abbreviated nature of the merits inquiry, the flexible "interplay" of the *Blackwelder* factors, and the "incorporation (if not the predominance) of equitable factors," *id.* at 277 n.8, led the Fourth Circuit to conclude that a preliminary injunction award did not give rise to prevailing party status under § 1988, *id.* at 277; *see also id.* at 277 n.9 (creating a bright-line rule and rejecting plaintiffs' argument that "*some* preliminary injunctions are sufficiently based on the merits to serve as a basis for an award of attorneys' fees" (emphasis added)).

B.    *The preliminary injunction standard in the Fourth Circuit has changed since* Smyth *was decided and now requires a more robust merits-based showing*

Six years after *Smyth*, the Supreme Court clearly articulated the current preliminary injunction standard. *See Winter*, 555 U.S. at 20. Under *Winter*, a party seeking a preliminary injunction must satisfy a four-part test, showing "[(1)] that he is likely to succeed on the merits, [(2)] that he is likely to suffer irreparable harm in the absence of preliminary relief, [(3)] that the balance of equities tips in his favor, and [(4)] that an injunction is in the public interest." *Id.*

Shortly thereafter, the Fourth Circuit recognized that its preliminary injunction standard under *Blackwelder* stood "in fatal tension" with the Supreme Court's articulation of the standard in *Winter*. *See The Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 345–47 (4th Cir. 2009), *vacated on other grounds*, , 559 U.S. 1089 (2010), *and aff'd in relevant part*, 607 F.3d 355 (4th Cir. 2010) (per curiam). Notably, the *Real Truth* Court explained, "[t]he *Winter* requirement that the plaintiff clearly demonstrate that it will *likely succeed* on the merits is far stricter than the *Blackwelder* requirement that the plaintiff demonstrate only a grave or

16

serious *question* for litigation." *Real Truth*, 575 F.3d at 346–37. The *Winter* standard also

required a clear showing of the plaintiff's likelihood of irreparable harm, *id.* at 347, required

consideration of the public interest, *id.*, and, most importantly, did not permit a relative strength

in one factor to make up for a relative deficiency in another, *id. See Veasey*, 158 F. Supp. 3d at

469–70 (explaining that, under the Supreme Court's decision in *Winter*, 555 U.S. 7, a plaintiff

seeking a preliminary injunction now "must clearly demonstrate that he will likely succeeded on

the merits, regardless of the harm he is likely to suffer absent an injunction" (cleaned up)).

Rather, to obtain a preliminary injunction under *Winter*, a plaintiff had to clearly satisfy each of

*Winter*'s four factors. *Real Truth*, 575 F.3d at 346–37. Given the differences between the two

preliminary injunction standards, the Fourth Circuit formally abandoned the standard it had

articulated in *Blackwelder* and embraced *Winter*'s four-part standard. *Id.*; *see also Pashby v.*

*Delia*, 709 F.3d 307, 320–21 (4th Cir. 2013) (noting that the Fourth Circuit "recalibrated" its

preliminary injunction test after *Winter*, rejecting the *Blackwelder* standard).

C.    *The Supreme Court has not yet squarely decided whether a merits-based preliminary*
      *injunction that is not reversed by any later court order confers prevailing party status*

         The Supreme Court has not squarely decided the question that is now before this Court,

but it has come close. First, the Supreme Court has held that a preliminary injunction that is later

"reversed, dissolved, or otherwise undone by the final decision in the same case" does not give

rise to prevailing party status under § 1988(b). *See Sole v. Wyner*, 551 U.S. 74, 83 (2007). "A

plaintiff who achieves a transient victory at the threshold of an action can gain no award under

that fee-shifting provision if, at the end of the litigation, her initial success is undone and she

leaves the courthouse emptyhanded." *Id.* at 78. The *Sole* Court declined, however, to express a

view on whether a preliminary injunction that is *not* undone by subsequent order "may

sometimes warrant an award of counsel fees." *Id.* at 86. Second, the Supreme Court has held that

17

a *permanent* injunction does warrant prevailing party status. *See Lefemine*, 568 U.S. at 3–5. In *Lefemine*, the plaintiff obtained a permanent injunction enjoining the police from preventing him from publicly displaying anti-abortion signs. *Id.* at 2–3. In finding that the plaintiff had achieved prevailing party status and was thus entitled to reasonable attorney's fees under 42 U.S.C. § 1988, the Court focused on whether the plaintiff had received "actual relief on the merits of his claim" that "materially alter[ed] the legal relationship between the parties." *Id.* at 4. The Court determined that he had: Before the district court entered the permanent "injunction order[ing] the defendant officials to change their behavior," *id.* at *2, "the police intended to stop [the plaintiff] from protesting with his signs; after the ruling, the police could not prevent him from demonstrating in that manner." *Id.* at 5. The district court's "ruling worked the requisite material alteration in the parties' relationship." *Id.*

*Lefemine* suggests that the same result may attend a merits-based preliminary injunction. *Cf. Winter*, 555 U.S. at 32 ("The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success."). The Court's analysis appears to have turned only on whether the relief the plaintiff obtained was merits-based and materially altered the relationship of the parties "in a way that directly benefited the plaintiff." *Lefemine*, 568 U.S. at 2; *see also id.* at 4–5. The Court did not discuss or emphasize the fact that the injunctive relief obtained was permanent, rather than preliminary. *See id.* Nonetheless, *Lefemine* was a brief per curiam opinion, and it made no explicit mention of or holding regarding preliminary injunctions.

D.   *Several other circuit courts of appeals have concluded that a merits-based preliminary injunction confers prevailing party status*

Plaintiffs argue that the Fourth Circuit's decision in *Smyth* stands alone. They note that several other circuit courts of appeals have determined that a merits-based preliminary injunction

may confer prevailing party status. *See* Pls.' Br. 15–17. Defendant disagrees, noting that there are inconsistencies between the various circuits' approaches and contending that Plaintiffs would not qualify as prevailing parties under every approach. Def.'s Br. 25–27.

Each circuit has articulated a standard for determining whether a preliminary injunction may give rise to prevailing party status, and there is some minor variation between them.[3] But almost every circuit agrees that a merits-based preliminary injunction that is not undone or otherwise modified by a later court order may confer prevailing party status entitling the plaintiff to an award of attorneys' fees. *See Planned Parenthood Sw. Ohio Region v. Dewine*, 931 F.3d 530, 542 (6th Cir. 2019) (preliminary injunction conferred prevailing party status because it "materially changed the relationship between the parties . . . [and] turned at least in part on the district court's assessment of the merits"), *cert. denied sub nom.*, *Yost v. Planned Parenthood Sw. Ohio Region*, 141 S. Ct. 189 (2020); *Doe v. Nixon*, 716 F.3d 1041, 1048 (8th Cir. 2013) (to confer prevailing party status, a preliminary injunction must be accompanied by judicial relief that changes the legal relationship between the parties); *Higher Taste, Inc. v. City of Tacoma*, 717 F.3d 712, 716 (9th Cir. 2013) ("Several circuits, including ours, have held that a preliminary injunction satisfies the judicial imprimatur requirement if it is based on a finding that the plaintiff has shown a likelihood of success on the merits."); *Stout*, 653 F.3d at 1239 (to confer prevailing

---

[3] Some circuits' tests are more demanding than others. The Fifth Circuit's approach, for example, dictates that a party who obtains a merits-based preliminary injunction achieves prevailing party status only if it can show that the preliminary injunction caused the defendant to moot the action. *Dearmore v. City of Garland*, 519 F.3d 517, 524–26 (5th Cir. 2008). Other circuits differentiate between merits-based and non-merits-based preliminary injunctions, finding the latter insufficient for prevailing party status. *See, e.g.*, *Dupuy v. Samuels*, 423 F.3d 714, 722 (7th Cir. 2005) (finding prevailing party status unwarranted where it was not clear that the district court "had resolved any aspect of the case in a sufficiently 'concrete and irreversible way'" and where district court "made it clear that there was still work to be done"); *N. Cheyenne Tribe v. Jackson*, 433 F.3d 1083, 1086–87 (8th Cir. 2006) (where preliminary injunction paused federal funding for a construction project, the injunction merely "preserved the status quo until [the court] could resolve" plaintiffs' claims on the merits and thus did not materially alter the relationship between the parties); *Kan. Jud. Watch v. Stout*, 653 F.3d 1230, 1238 (10th Cir. 2011) (preliminary injunctions do not give rise to prevailing party status when granted "to preserve the status quo because the balance of equities favors the plaintiff").

party status, a preliminary injunction must "provide at least some relief on the merits," meaning that it "(a) affords relief sought in the plaintiff's complaint and (b) represents an unambiguous indication of probable success on the merits"); *Common Cause/Ga. v. Billups*, 554 F.3d 1340, 1356 (11th Cir. 2009) (finding preliminary injunction conferred prevailing party status because it "materially altered" the relationship between the parties and remained in force until Georgia repealed the challenged statute); *People Against Police Violence v. City of Pittsburgh*, 520 F.3d 226, 233 (3d Cir. 2008) (finding plaintiffs to be prevailing parties where they obtained enduring preliminary injunctive relief based on district court's assessment of the merits that materially altered the legal relationship between the parties);[4] *Dearmore*, 519 F.3d at 524 (a preliminary injunction confers prevailing party status when it is "based upon an unambiguous indication of probable success on the merits . . . as opposed to a mere balancing of the equities" and it "causes the defendant to moot the action . . . prevent[ing] the plaintiff from obtaining final relief on the merits"); *Dupuy*, 423 F.3d at 723 n.4 (rejecting *Smyth*'s approach and noting that prevailing party status may attend a plaintiff who obtains a preliminary injunction that is not defeasible and the case is subsequently mooted); *Select Milk Producers, Inc. v. Johanns*, 400 F.3d 939, 948 (D.C. Cir. 2005) (plaintiffs were the prevailing parties where preliminary injunction "provided concrete and irreversible judicial relief . . . based on the District Court's conclusion that

---

[4] Defendant argues that the Third Circuit's decision in *Singer Management Consultants, Inc. v. Milgram*, 650 F.3d 223, 229 (3d Cir. 2011) (en banc), more accurately reflects the Third Circuit's approach. *See* Def.'s Br. 27 n.30. Indeed, *Singer* concluded that a district court's determination of a party's "likelihood of success on the merits" is not always sufficiently merits-based to give rise to prevailing party status. 650 F.3d at 229 ("[T]he 'merits' requirement is difficult to meet in the context of TROs and preliminary injunctions, as the plaintiff in those instances needs only to show a *likelihood* of success on the merits (that is, a reasonable chance, or probability, of winning) to be granted relief. A 'likelihood' does not mean more likely than not."). Thus, in *Singer*, a temporary restraining order did not confer prevailing party status where the district court recognized a "significant risk there may be substantial federal rights being impaired," *id.* at 230 n.3, but did not find "that the challenged law (or application of the law) was unconstitutional," *id.* at 230. Nonetheless, the *Singer* Court reaffirmed *People Against Police Violence*, reiterating that prevailing party status is appropriate when a district court makes a more robust merits-based determination. *Id.* at 229–30.

[plaintiffs] were likely to prevail on the merits"); *Haley v. Pataki*, 106 F.3d 478, 483 (2d Cir. 1997) ("When a party receives a stay or preliminary injunction but never obtains a final judgment, attorney's fees are proper if the court's action in granting the preliminary injunction is governed by its assessment of the merits.").

Some circuits have observed that the Fourth Circuit stands alone, noting that *Smyth* diverges from the popular consensus. *See, e.g.*, *Select Milk Producers*, 400 F.3d at 946 (noting that *Smyth*'s interpretation of *Buckhannon* was inconsistent with other circuits' approaches); *Dupuy*, 423 F.3d at 723 n.4 (noting its "respectful disagreement" with *Smyth*'s rationale); *Davis v. Abbott*, 781 F.3d 207, 217 n.10 (5th Cir. 2015) (noting that the Fourth Circuit was alone in "categorically" holding that preliminary injunctions do not confer preliminary party status); *People Against Police Violence*, 520 F.3d at 233 n.4 (identifying the Fourth Circuit as the only "arguably dissenting Court of Appeals"). But notably, none of the decisions discuss *Smyth* in detail or address the argument Plaintiffs make here—that *Smyth* has been materially undermined by later Supreme Court precedent.

Plaintiffs urge this Court to rely on the broad consensus that has developed among the other circuits. But out-of-circuit precedent is not binding upon this court. *United States v. Holmes*, No. 3:10cr102, 2012 WL 2326003, at *3 (W.D.N.C. June 9, 2012) (noting that district courts within this circuit are not bound by "decisions of appellate courts outside the Fourth Circuit"). And although a broad consensus among other circuits could be "highly persuasive" in the absence of binding precedent, *id.*, this Court is required to follow controlling Fourth Circuit law. *Francis*, 1993 WL 741853, at *2.

E.     *The preliminary injunction granted in this case constituted merits-based relief that materially altered the relationship between the parties*

First, Plaintiffs obtained a preliminary injunction that was thoroughly merits-based. *See Hewitt*, 482 U.S. at 760 (to achieve prevailing party status, a party must obtain "at least some relief on the merits"). Judge Moon's evaluation of Plaintiffs' likelihood of success was anything but "abbreviated." *Smyth*, 282 F.3d at 276. He engaged in a thorough assessment of Virginia's statutory license suspension scheme, outlined the elements Plaintiffs would need to prove to succeed on a procedural due process claim, and carefully evaluated whether Plaintiffs were likely able do so. *See Stinnie generally*, 355 F. Supp. 3d at 527–531. His conclusion was that § 46.2-395 almost certainly did not meet the requirements of procedural due process. *Id.* at 529–30. Section 46.2-395 did not appear to provide adequate notice of license suspension, and it undoubtedly did not provide for a hearing on that issue. *Id.* "[T]he procedures in place [were] not sufficient to protect against the erroneous deprivation of the property interest involved. Indeed, § 46.2-395, on its face, provide[d] no procedural hearing at all." *Id.*

Second, the preliminary injunction was an enforceable court order, carrying all the necessary judicial imprimatur, *Buckhannon*, 532 U.S. at 604, that "materially alter[ed] the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefit[ed]" Plaintiffs, *Lefemine*, 568 U.S. at 4. The preliminary injunction did far more than merely "preserve the status quo" between the parties. *Stout*, 653 F.3d at 1238. It prevented Defendant from enforcing § 46.2-395 against Plaintiffs and provided affirmative relief by directing Defendant to reinstate their drivers' licenses. Before it was entered, Plaintiffs' licenses were suspended, causing significant hardships. *See, e.g.*, *Stinnie*, 355 F. Supp. 3d at 532 ("Plaintiff Johnson testified that she is unable to take her daughter to necessary medical appointments, or attend her son's athletic events, causing stress for both her and her children. . . . Plaintiff Adams could not travel to and from work, her chemotherapy appointments, or her son's

medical specialist."). After it was entered, Defendant was obliged to restore their licenses without fee. Thus, the preliminary injunction "release[d] Plaintiffs from the cycle of hardships caused by § 46.2-395" and provided tangible, meaningful relief. *Id.* The preliminary injunction was still in place when the parties stipulated that the case had become moot, Stipulation of Dismissal, ECF No. 231, and the Court dismissed the case, Order of May 7, 2020, ECF No. 232.

Defendant downplays the significance of the relief Plaintiffs obtained. He urges that Judge Moon granted only a "narrow preliminary injunction" that gave Plaintiffs only a small portion of the relief they requested. Def.'s Br. 1. But this argument is misplaced. To achieve prevailing party status, a party need only obtain "at least *some* relief on the merits." *Hewitt*, 482 U.S. at 760 (emphasis added); *see also Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791–92 (1989) ("If the plaintiff has succeeded on any significant issue in litigation which achieve[d] some of the benefit the parties sought in bringing suit, the plaintiff has crossed the threshold to a fee award of some kind." (alteration in original) (internal quotation marks omitted)). Plaintiffs did that here. It is of no moment that they did not obtain all the relief they sought. When a prevailing party has achieved only partial success, the limited nature of the relief granted is accounted for not by denying a fee award altogether, but rather by adjusting the amount of fees awarded. *Tex. State Teachers Ass'n*, 489 U.S. at 789–90 ("[D]istrict courts should exercise their equitable discretion in such cases to arrive at a reasonable fee award, either by attempting to identify specific hours that should be eliminated or by simply reducing the award to account for the limited success of the plaintiff.").

Defendant also argues that Plaintiffs "likely would *not* have ultimately succeeded on the merits" had the case not been mooted by legislation repealing § 46.2-395. Def.'s Br. 29. Defendant contends, essentially, that a preliminary injunction should never confer prevailing

party status because it could always be reversed by a later court order. *Id.* at 29–30 (citing *Fowler v. Johnson*, No. CV 17-11441, 2017 WL 6379676, at *12 (E.D. Mich. Dec. 14, 2017)) (arguing that *Fowler* was factually-analogous to this case and that a preliminary injunction entered in that case was later reversed by the Sixth Circuit, demonstrating that the district court's preliminary injunction award was error). I decline Defendant's invitation to relitigate a closed case. A preliminary injunction that is later "reversed, dissolved, or otherwise undone by the final decision in the same case" does not give rise to prevailing party status. *See Sole*, 551 U.S. at 83. But Plaintiffs did not "leave[] the courthouse emptyhanded." *Id.* at 78. Judge Moon's merits-based preliminary injunction remained in effect, unaltered, until the case was dismissed as moot. Defendant could have appealed the preliminary injunction itself, and he declined to do so. Pls.' Reply 16.

F.      Smyth *is controlling and compels this Court to find that Plaintiffs have not achieved prevailing party status here*

Plaintiffs present a strong argument that the rationale supporting the Fourth Circuit's decision in *Smyth* has been materially undermined by the Supreme Court's later decisions in *Winter* and *Lefemine* and that they would be considered prevailing parties under several other circuits' tests. *Smyth* focused heavily on the flexibility and indeterminacy of the *Blackwelder* preliminary injunction standard. *Winter* then changed that standard significantly. *See Winter*, 555 U.S. at 20. As the Fourth Circuit has since recognized, "the *Winter* requirement that the plaintiff clearly demonstrate that it will *likely succeed* on the merits is far stricter than the *Blackwelder* requirement that the plaintiff demonstrate only a grave or serious *question* for litigation." *Real Truth*, 575 F.3d at 346–47. *Lefemine*, moreover, seems to suggest that *any* injunction—preliminary or permanent—could confer prevailing party status if it is merits-based and works

24

the requisite material alteration of the relationship between the parties in a way that benefits the plaintiff. *See Lefemine*, 568 U.S. at 3–5.

Nonetheless, *Smyth* has not been explicitly overruled by either the Fourth Circuit or by the Supreme Court. Accordingly, it remains controlling law in this Circuit, and this Court is bound to follow it. "It is axiomatic that in our judicial hierarchy, the decisions of the circuit courts of appeals bind the district courts[.]" *Doe v. Chao*, 511 F.3d 461, 465 (4th Cir. 2007); *see also* 18 James Wm. Moore et al., Moore's Fed. Practice § 134.02[2] (3d ed. 2020) ("[T]he district courts in a circuit owe obedience to a decision of the court of appeals in that circuit and ordinarily must follow it until the court of appeals overrules it."). Even where, as here, circuit court precedent appears to have been materially undermined by later Supreme Court precedent, it is not the province of a district court to decide whether the circuit in which it sits should now revisit its prior holding. *Cf. Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 484 (1988) ("If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions."); *United States v. Umana*, 762 F.3d 413, 414 (4th Cir. 2014) (Wilkinson, J., concurring in denial of reh'g en banc) (explaining that even where the "'tea leaves' for overruling" are clear, "the practice of circuit courts trying to anticipate, based on 'trends,' what the Supreme Court would do" is disfavored).

The Fourth Circuit has long held that even its own three-judge panels are bound by published decisions of earlier three-judge panels. "A decision of a panel of this court becomes the law of the circuit and is binding on other panels unless it is overruled by a subsequent en banc opinion of this court or a superseding contrary decision of the Supreme Court." *United*

*States v. Dodge*, 963 F.3d 379, 383 (4th Cir. 2020). In *Dodge*, the Fourth Circuit determined that a prior panel decision was "in tension with intervening Supreme Court reasoning." *Id.* at 384. Nonetheless, because "no directly applicable Supreme Court holding" had yet overruled the prior panel decision, the *Dodge* Court was bound by it. *Id.* Moreover, even where Supreme Court precedent reverses one portion of a Fourth Circuit decision, future Fourth Circuit panels must continue to adhere to the portion that remains good law. *Taylor v. Grubbs*, 930 F.3d 611, 619 (4th Cir. 2019) (explaining that although the Supreme Court "rejected a portion of [its] analysis" from a prior panel decision, "much of [the prior panel's] reasoning was left untouched" and thus remained binding).

In some instances, Fourth Circuit panels have departed from prior circuit precedent that had been undermined by later Supreme Court precedent. *See Faust v. S.C. State Highway Dep't*, 721 F.2d 934, 940 (4th Cir. 1983) (declining to follow prior Fourth Circuit precedent because it interpreted a Supreme Court decision in a way that "later Supreme Court decisions have shown is untenable"); *United States v. Williams*, 155 F.3d 418, 421 (4th Cir. 1998) (concluding that the panel was "not bound" by a prior Fourth Circuit decision because "its holding [was] clearly undermined" by more recent Supreme Court precedent). Relying on *Faust*, Plaintiffs urge that "neither this Court nor any [F]ourth [C]ircuit panel is required to follow *Smyth*." Pls.' Reply 4. Not so. *Faust* does not hold, or even suggest, that district courts may depart from circuit precedent that has not been explicitly overruled by either the Fourth Circuit or the Supreme Court.

Thus, even if a Fourth Circuit panel may depart from prior precedent under narrow circumstances, district courts have no authority to do the same. Although the district court did so in *Veasey*, 158 F. Supp. 3d at 469–70, accepting the rationale Plaintiffs advance here, the district

26

court cited no authority permitting it to do so, *id.* Other courts in similar situations have determined that they are constrained by circuit precedent that had not been explicitly overruled. *See, e.g.*, *United States v. Brown*, 74 F. Supp. 2d 648, 652 (N.D. W.Va. 1998) ("[A] district court is bound by the precedent set by its Circuit Court of Appeals, until such precedent is overruled by the appellate court or the United States Supreme Court."); *Fisher-Borne v. Smith*, 14 F. Supp. 3d 695, 697–98 (M.D.N.C. 2014) (refusing to entertain plaintiff's argument that Fourth Circuit decision was wrongly decided and should not be followed). The hierarchy of the federal courts encourages "[c]oherent and consistent adjudication" and demands respect for higher court decisions. *Condon v. Haley*, 21 F. Supp. 3d 572, 587 (D.S.C. 2014) ("[L]ower federal courts are not free to disregard clear holdings of the circuit courts of appeal simply because a party believes them poorly reasoned or inappropriately inattentive to alternative legal arguments.").

    In line with these cases, I conclude that this Court is bound to follow *Smyth*. Plaintiffs have advanced a thoughtful and compelling argument urging the Court to find otherwise. But given the Fourth Circuit's holding in *Smyth*, which has not been overruled by either the Fourth Circuit or the Supreme Court, I conclude that Plaintiffs have not achieved prevailing party status entitling them to attorneys' fees under 42 U.S.C. § 1988.

V. Conclusion

    For the foregoing reasons, I respectfully recommend that the presiding District Judge DENY Plaintiffs' Petition for Attorneys' Fees and Litigation Expenses, ECF No. 234.

**Notice to Parties**

    Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

    Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or

specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14 day period, the Clerk is directed to transmit the record in this matter to the presiding District Judge.

The Clerk shall send certified copies of this Report and Recommendation to all counsel of record.

ENTER: February 16, 2021

Joel C. Hoppe
United States Magistrate Judge

28