## ON REHEARING EN BANC

### PUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────────

### No. 21-1756

───────────────

DAMIAN STINNIE; MELISSA ADAMS; ADRAINNE JOHNSON; WILLIEST
BANDY; BRIANNA MORGAN, individually, and on behalf of all others similarly
situated,

Plaintiffs - Appellants,

v.

RICHARD D. HOLCOMB, in his official capacity as the Commissioner of the
Virginia Department of Motor Vehicles,

Defendant - Appellee.

-------------------------------

AMERICAN CIVIL LIBERTIES UNION OF VIRGINIA, ET AL,

Amicus Supporting Appellant,

INSTITUTE FOR JUSTICE,

Amicus Supporting Rehearing Petition.

───────────────

Appeal from the United States District Court for the Western District of Virginia, at
Charlottesville.  Norman K. Moon, Senior District Judge.  (3:16-cv-00044-NKM-JCH)

───────────────

Argued:  January 25, 2023                    Decided:  August 7, 2023

───────────────

Before DIAZ, Chief Judge, and NIEMEYER, KING, GREGORY, AGEE, WYNN, THACKER, HARRIS, RICHARDSON, QUATTLEBAUM, and RUSHING, Circuit Judges.

———————————

Vacated and remanded by published opinion. Judge Harris wrote the majority opinion, in which Chief Judge Diaz and Judges Niemeyer, King, Gregory, Wynn, and Thacker joined. Judge Quattlebaum wrote a dissenting opinion, in which Judges Agee, Richardson, and Rushing joined.

———————————

**ARGUED:** Tennille Jo Checkovich, SMITHFIELD FOODS, INC., Smithfield, Virginia, for Appellants.  Trevor Stephen Cox, HUNTON ANDREWS KURTH LLP, Richmond, Virginia, for Appellee.  **ON BRIEF:**    Jonathan T. Blank, Benjamin P. Abel, Charlottesville, Virginia, John J. Woolard, MCGUIREWOODS LLP, Richmond, Virginia; Angela A. Ciolfi, Charlottesville, Virginia, Patrick Levy-Lavelle, LEGAL AID JUSTICE CENTER, Richmond, Virginia; Leslie Kendrick, Charlottesville, Virginia; Michael Stark, Smithfield, Virginia, for Appellants.  Mark R. Herring, Attorney General, Jason S. Miyares, Attorney General, Andrew N. Ferguson, Solicitor General, Donald D. Anderson, Deputy Attorney General, Leslie A.T. Haley, Deputy Attorney General, Chandra D. Lantz, Senior Assistant Attorney General, Julie M. Whitlock, Senior Assistant Attorney General, Janet W. Baugh, Senior Assistant Attorney General, Christian A. Parrish, Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia; Maya M. Eckstein, David M. Parker, HUNTON ANDREWS KURTH LLP, Richmond, Virginia, for Appellee.    Theodore A. Howard, WILEY REIN LLP, Washington, D.C., for Amici American Civil Liberties Union of Virginia, et al.  William R. Maurer, INSTITUTE FOR JUSTICE, Seattle, Washington, for Amicus Institute for Justice.

———————————

PAMELA HARRIS, Circuit Judge:

Under 42 U.S.C. § 1988(b), the "prevailing party" in certain civil rights actions is eligible to recover reasonable attorney's fees.  Two decades ago, we held that a plaintiff who wins a preliminary injunction but – for whatever reason – does not secure a final judgment may never qualify as a prevailing party.  *Smyth ex rel. Smyth v. Rivero*, 282 F.3d 268 (4th Cir. 2002).  In the years since, this categorical rule has become a complete outlier: Every other circuit to consider the issue has held that a preliminary injunction may confer prevailing party status in appropriate circumstances.

We granted rehearing en banc to reassess our bright-line approach, and we now conclude that it is too stringent.  Although many preliminary injunctions represent only "a transient victory at the threshold of an action," *Sole v. Wyner*, 551 U.S. 74, 78 (2007), some provide enduring, merits-based relief that satisfies all the requisites of the prevailing party standard.  Because the plaintiffs here "prevailed" in every sense needed to make them eligible for a fee award, we vacate the district court's denial of attorney's fees and remand for further proceedings.

## I.

### A.

This fee dispute turns on a single question of law – whether a preliminary injunction may ever confer "prevailing party" status under 42 U.S.C. § 1988(b) – so we review the facts only as they bear on that inquiry.  Prior to this litigation, a Virginia statute required the automatic suspension of residents' driver's licenses if they failed to pay certain court

fines and fees.  *See* Va. Code § 46.2-395 (repealed 2020).  Then, in 2016, a group of indigent Virginians who lost their licenses when they were unable to pay court debts initiated a putative class action against the Commissioner of the Virginia Department of Motor Vehicles ("Commissioner"), alleging that the Commonwealth's license-suspension scheme was unconstitutional.  The plaintiffs raised several claims under the Fourteenth Amendment:  that the statute's requirement of automatic suspension without notice or a hearing violated their procedural due process rights; and that the statute's enforcement against those who were unable, not unwilling, to pay violated both their substantive due process rights and their equal protection rights.  As relief, the plaintiffs sought preliminary and permanent injunctions preventing the statute's enforcement and requiring license reinstatement as to the "hundreds of thousands of Virginians" with suspended licenses. J.A. 227.

In December 2018,[1] following extensive briefing and argument, the district court granted the plaintiffs' request for a preliminary injunction.  In a comprehensive opinion, the court made detailed findings of fact and conducted a robust assessment of the plaintiffs' procedural due process claim before concluding that it was likely to succeed on the merits.

---

[1] The district court initially granted the Commissioner's motion to dismiss for lack of subject matter jurisdiction.  On appeal, we remanded with instructions to allow the plaintiffs to amend their complaint.  *See Stinnie v. Holcomb*, 734 F. App'x 858, 863 (4th Cir. 2018).

*See Stinnie v. Holcomb*, 355 F. Supp. 3d 514, 531 (W.D. Va. 2018).[2]  And after determining that the plaintiffs satisfied the remaining injunction factors set forth in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008), the court deemed interim relief appropriate.  *Stinnie*, 355 F. Supp. 3d at 532 (concluding that "irreparable harm, the balance of equities, and the public interest . . . weigh in favor of" the plaintiffs).  The court then preliminarily enjoined the statute's enforcement as to the named plaintiffs and ordered the Commissioner to "remove any current suspensions of the Plaintiffs' driver's licenses imposed under Va. Code § 46.2-395."  J.A. 843.[3]  The Commissioner did not appeal the injunction, and the plaintiffs were once again free to drive to their jobs, medical appointments, and personal engagements.  *See Stinnie*, 355 F. Supp. 3d at 520–22.

The case was set for a bench trial in August 2019.  But soon before trial – and with cross-motions for summary judgment pending – the Virginia General Assembly passed a Budget Amendment suspending the enforcement of the challenged statute for one year.  *See Stinnie v. Holcomb*, 396 F. Supp. 3d 653, 658 (W.D. Va. 2019).  At the Commissioner's request and over the plaintiffs' strenuous objections, the court then stayed the case pending the next legislative session, during which the Commissioner represented a full repeal was likely.  *See id.*  And at this session, the General Assembly voted to eliminate § 46.2-395

---

[2] Because the court found the plaintiffs likely to succeed on the merits of their procedural due process claim, it declined to reach their remaining constitutional arguments. *Stinnie*, 355 F. Supp. 3d at 531 n.9.

[3] The court had not yet ruled on the plaintiffs' motion for class certification, so it made clear that its injunction "applie[d] only to the named Plaintiffs" and not to any broader putative class.  J.A. 843 n.1.

USCA4 Appeal: 21-1756   Doc: 86   Filed: 08/07/2023   Pg: 6 of 58

from the Virginia Code.  *See* 2020 Va. Acts ch. 965.  With the challenged statute repealed – and the plaintiffs no longer in need of court-ordered relief – the court dismissed the action as moot.

## B.

The plaintiffs then petitioned for attorney's fees under 42 U.S.C. § 1988(b), which provides that the district court, "in its discretion, may allow the prevailing party" in § 1983 actions "a reasonable attorney's fee as part of the costs."  The court first requested briefing on whether the plaintiffs were "prevailing parties" eligible for a fee award; if the plaintiffs could clear this hurdle, the parties would then brief "the amount and reasonableness of any fees" to be shifted.  J.A. 1017.

In our circuit, however, this initial hurdle amounted to a brick wall.  True, the plaintiffs noted, a party "prevails" for purposes of § 1988(b) if "actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff."  *Farrar v. Hobby*, 506 U.S. 103, 111–12 (1992).  And here, they argued, the district court's preliminary injunction did just that:  After determining that the plaintiffs were likely to succeed on the merits, the court ordered the Commissioner to reinstate their licenses, providing precisely the "actual relief" that the litigants sought by bringing suit.  The repeal of the challenged statute may have rendered further relief unnecessary, but that did not "detract from the legal significance" of their victory.  J.A. 1042.

But as the Commissioner responded, these arguments were squarely foreclosed by Fourth Circuit precedent:  In *Smyth ex rel. Smyth v. Rivero*, 282 F.3d 268, 277 (4th Cir.

2002), we held that winning a preliminary injunction is *never* sufficient to confer "prevailing party" status. Preliminary relief, we reasoned, is "necessarily uncertain," the product of an "incomplete examination of the merits" that "by no means represents a determination that the claim in question will or ought to succeed ultimately." *Id.* at 276–77 & n.8. We thus concluded that preliminary injunctions are, without exception, "not the stuff of which legal victories are made." *Id.* at 276 (quoting *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Hum. Res.*, 532 U.S. 598, 605 (2001)).

In a thoughtful report recommending denial of the fee petition, a magistrate judge noted that *Smyth* "stands alone," and that "a broad consensus among other circuits" holds that a "merits-based preliminary injunction that is not undone or otherwise modified by a later court order may confer prevailing party status." *Stinnie v. Holcomb*, No. 3:16-cv-00044, 2021 WL 627552, at *9–10 (W.D. Va. Feb. 16, 2021). Moreover, the magistrate judge concluded, it appeared that the plaintiffs here would indeed be prevailing parties under this consensus approach. *Id.* at *10–11. Nonetheless, in light of *Smyth*'s categorical rule, the magistrate judge felt compelled to recommend denial, and the district court adopted that recommendation. *See Stinnie v. Holcomb*, No. 3:16-cv-00044, 2021 WL 2292807, at *5 (W.D. Va. June 4, 2021).

On appeal, the plaintiffs did not contest that *Smyth* foreclosed their claim. Instead, they argued that intervening Supreme Court precedent rendered *Smyth* untenable. When we decided *Smyth*, courts in this circuit were permitted to grant preliminary injunctions for equitable reasons without finding that a plaintiff's claim was likely to succeed. *See Blackwelder Furniture Co. of Statesville v. Seilig Mfg. Co.*, 550 F.2d 189, 196 (4th Cir.

1977).  But in the years after *Smyth*, the Supreme Court clarified that a plaintiff may obtain preliminary relief *only* by first establishing a clear likelihood of success on the merits.  *See Winter*, 555 U.S. at 20.  This new, more rigorous merits requirement, the plaintiffs contended, obviated *Smyth*'s concerns about granting prevailing party status based on the "interplay of . . . equitable and legal considerations and the less stringent assessment of the merits of claims that are part of the preliminary injunction context."  *Smyth*, 282 F.3d at 277.

A panel of this court rejected the plaintiffs' argument and held that *Smyth* remains good law.  *Stinnie v. Holcomb*, 37 F.4th 977, 983 (4th Cir. 2022).  As the panel noted, "[w]e do not lightly presume that the law of the circuit has been overturned, especially where . . . the Supreme Court opinion and our precedent can be read harmoniously."  *Id*. (quoting *Taylor v. Grubbs*, 930 F.3d 611, 619 (4th Cir. 2019)).  Because such a harmonious reading remained possible after *Winter*, the panel concluded that "at this juncture, we are bound by *Smyth*."  *Id*.[4]  We then granted the plaintiffs' petition for rehearing en banc, and "[w]e now consider the case anew."  *Manning v. Caldwell for City of Roanoke*, 930 F.3d 264, 270 (4th Cir. 2019).

---

[4] The panel also rejected an argument that the Supreme Court's decision in *Lefemine v. Wideman*, 568 U.S. 1 (2012) – which observed that winning a *permanent* injunction confers prevailing party status – superseded *Smyth*.  *Stinnie*, 37 F.4th at 983.

## II.

This appeal turns on an issue of statutory construction:  the meaning of a "prevailing party" under 42 U.S.C. § 1988(b).  *Grabarczyk v. Stein*, 32 F.4th 301, 306 (4th Cir. 2022).  "Prevailing party," in turn, is a "legal term of art that we interpret consistently across all federal fee-shifting statutes."  *Reyazuddin v. Montgomery Cnty.*, 988 F.3d 794, 796 (4th Cir. 2021).  So before we revisit our decision in *Smyth*, we begin with the basics of the prevailing party inquiry, which help clarify the nature of the dispute before us.

### A.

As a general rule, parties are "required to bear their own attorney's fees – the prevailing party is not entitled to collect from the loser."  *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Hum. Res.*, 532 U.S. 598, 602 (2001).  But in recognition of the costly burdens of litigation and to ensure "effective access to the judicial process" for those with civil rights grievances, Congress passed 42 U.S.C. § 1988 as an exception to this general rule.  *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (quoting H.R. Rep. No. 94-1558, at 1 (1976)).  Section 1988 provides that in an action to enforce § 1983 or other specified civil rights laws, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."  42 U.S.C. § 1988(b).

A party "prevails" for purposes of § 1988 "when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff."  *Farrar v. Hobby*, 506 U.S. 103, 111–12 (1992).  The plaintiff need not achieve his "central" goal to prevail;

instead, if "the plaintiff has succeeded on any significant issue in litigation which achieved some of the benefit the parties sought in bringing suit, the plaintiff has crossed the threshold to a fee award of some kind." *Tex. State Tchrs. Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791–92 (1989) (cleaned up).

As the Supreme Court has emphasized, "[t]his is a generous formulation" that does no more than bring a plaintiff "across the statutory threshold" to eligibility for a fee award. *Hensley*, 461 U.S. at 433. "It remains for the district court to determine what fee is 'reasonable.'" *Id.* Accordingly, the Court has treated various forms of partial relief as sufficient to establish prevailing party status at this threshold stage of the inquiry. *See, e.g.*, *Lefemine v. Wideman*, 568 U.S. 1, 4 (2012) (permanent injunction); *Farrar*, 506 U.S. at 112 (nominal damages); *Rhodes v. Stewart*, 488 U.S. 1, 4 (1988) (declaratory judgment); *Maher v. Gagne*, 448 U.S. 122, 130 (1980) (settlement agreement enforced through consent decree).

Even this "generous formulation," to be sure, is not without limits. For one, the plaintiff's relief must be "judicially sanctioned." *Buckhannon*, 532 U.S. at 605. So a defendant's voluntary change in conduct, "although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur* on the change." *Id.* In addition, the plaintiff's success must be "enduring" rather than "ephemeral." *Sole v. Wyner*, 551 U.S. 74, 86 (2007). So a preliminary injunction that is later "reversed, dissolved, or otherwise undone by the final decision in the same case" cannot render a party prevailing. *Id.* at 83.

10

But in *Sole*, the Supreme Court expressly left open the question presented here: whether a preliminary injunction that is *not* "reversed, dissolved, or otherwise undone" by a later decision may confer prevailing party status. *See id.* at 86 (expressing "no view on whether, in the absence of a final decision on the merits of a claim for permanent injunctive relief, success in gaining a preliminary injunction may sometimes warrant an award of counsel fees"). Years earlier, however, we had answered that question for ourselves, holding that success in gaining a preliminary injunction may *never* render a party eligible for a fee award. *See Smyth ex rel. Smyth v. Rivero*, 282 F.3d 268 (4th Cir. 2002). We now review our holding in *Smyth* and decide anew whether a plaintiff who wins preliminary relief can ever "cross[] the threshold to a fee award of some kind." *Garland*, 489 U.S. at 792. [5]

## B.

*Smyth* presented very similar facts to the case before us. There, the plaintiffs brought a § 1983 action challenging a Virginia welfare policy on constitutional and statutory grounds. *Smyth*, 282 F.3d at 271–72. After the district court granted a

---

[5] Our dissenting colleagues provide their own thorough description of the Supreme Court's prevailing party case law. Though we agree with much of their review, we part ways on the suggestion that the Court's cases, taken as a whole, have effectively settled this question in favor of *Smyth*'s bright-line rule. *See* Diss. Op. at 54. In *Sole*, the Supreme Court was squarely presented with the opportunity to adopt *Smyth*'s approach, and if its precedent made "crystal clear" that preliminary relief can never confer prevailing party status, *see* Diss. Op. at 51, it would have said so. Instead, by identifying the issue as one on which it was taking "no view," *Sole*, 551 U.S. at 86, the Court created the space that has permitted virtually every court of appeals, as detailed below, to hold that preliminary relief may indeed support a fee award in appropriate circumstances.

preliminary injunction prohibiting enforcement of the policy, and with the plaintiffs' motion for summary judgment pending, the Commonwealth modified the policy to provide the plaintiffs the relief they sought on a permanent basis.  *Id.* at 273.  The district court concluded that the plaintiffs were prevailing parties and granted their fee petition.

A panel of this court reversed, concluding that a preliminary injunction cannot provide the merits-based "material alteration of the legal relationship of the parties necessary to permit an award of attorney's fees."  *Id.* at 274 (internal quotation marks omitted).  In so holding, the court focused on two features of the preliminary injunction inquiry.  For one, the panel observed that "in granting a preliminary injunction a court is guided not only by its assessment of the likely success of the plaintiff's claims, but also by other considerations, notably a balancing of likely harms."  *Id.* at 276.  Indeed, at that time, our circuit permitted courts to grant preliminary injunctions for primarily equitable reasons – namely, to prevent irreparable harm to the plaintiff – without making any finding that the plaintiff's claim was likely to succeed.  *See Blackwelder Furniture Co. of Statesville v. Seilig Mfg. Co.*, 550 F.2d 189, 196 (4th Cir. 1977).  And the *Smyth* court concluded that *Blackwelder*'s balance-of-hardships approach, which allowed a particularly strong showing of likely harm to compensate for a weak showing on the merits, rendered preliminary relief "an unhelpful guide to the legal determination of whether a party has prevailed."  *Smyth*, 282 F.3d at 277.

Second, the *Smyth* court looked to the "necessarily uncertain" nature of preliminary relief itself.  Even a merits-based preliminary injunction, in the panel's view, "is best understood as a prediction of a probable . . . outcome," one that "by no means represents a

determination that the claim in question will or ought to succeed ultimately." *Id*. at 276. Winning a preliminary injunction, the court concluded, was more "closely analogous" to surviving a motion to dismiss than securing a final judgment on the merits, and thus "ill-suited to guide the prevailing party determination." *Id.* at 276–77 & n.8.

For the last two decades, then, civil rights plaintiffs in our circuit who won preliminary relief but did not secure a final judgment have been categorically barred from recovering attorney's fees.  And although "we do not lightly overrule our precedent," *Hurlbut v. Black*, 925 F.3d 154, 161 (4th Cir. 2019) (en banc), three developments in the years since we decided *Smyth* now compel us to revisit its holding.

## C.

### 1.

First, there was the Supreme Court's decision in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008).  As noted above, the *Smyth* court's decision rested, in significant part, on *Blackwelder*'s lenient equitable standard for granting preliminary relief.  Under *Blackwelder*, the "first factor" courts were instructed to consider was the likelihood of irreparable harm to the plaintiff, which would then be balanced against the likelihood of harm to the defendant.  *Safety-Kleen, Inc. (Pinewood) v. Wyche*, 274 F.3d 846, 859 (4th Cir. 2001).  If this "hardship balance" tipped "sharply and clearly in the plaintiff's favor, the required proof of likelihood of success [was] substantially reduced."  *Ciena Corp. v. Jarrard*, 203 F.3d 312, 323 (4th Cir. 2000) (internal quotation marks omitted).  The *Smyth* court, then, was quite reasonably concerned about affording

prevailing party status to a plaintiff who had demonstrated no more than a "fair ground for litigation." *Rum Creek Coal Sales, Inc. v. Caperton*, 926 F.2d 353, 359 (4th Cir. 1991).

In *Winter*, however, the Supreme Court clarified that each preliminary injunction factor – likelihood of success, irreparable harm, the balance of equities, and the public interest – must be "satisfied as articulated." *Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 347 (4th Cir. 2009), *vacated on other grounds*, 559 U.S. 1089 (2010). Today, a plaintiff seeking preliminary relief must first make a "clear showing" that his claim is likely to succeed on the merits. *Winter*, 555 U.S. at 22; *see Real Truth About Obama, Inc.*, 575 F.3d at 346–47 ("The *Winter* requirement that the plaintiff clearly demonstrate that it will likely succeed on the merits is far stricter than the *Blackwelder* requirement.").

As the panel here rightly concluded, *Winter* did not supersede *Smyth* or render its reasoning wholly untenable. *Smyth*, after all, was concerned with not just "the *standard* for obtaining a preliminary injunction" but also the inherently tentative "*nature* of preliminary injunctions." *Stinnie*, 37 F.4th at 982. Nonetheless, *Winter*'s stringent merits requirement means that we may revisit *Smyth* without opening the door to the risk that so concerned the court there: that a plaintiff may prevail, and thus be entitled to fees, based on a preliminary injunction that had virtually nothing to do with the merits of her claim. *Smyth*, 282 F.3d at 277.

## 2.

*Winter* is not the sole development compelling us to reconsider *Smyth*. Second, we turn to an observation of the magistrate judge here: The bright-line rule set out in *Smyth*

14

USCA4 Appeal: 21-1562      Doc: 86      Filed: 08/07/2023      Pg: 15 of 58

has become a distinct outlier. Since we decided *Smyth*, almost every other circuit has weighed in on the question before us. And all have concluded that a plaintiff whose case is rendered moot after she wins a preliminary injunction – so that the injunction by definition cannot be "reversed, dissolved, or otherwise undone" by a later order, *Sole*, 551 U.S. at 83 – may qualify as a prevailing party in appropriate circumstances. *See Planned Parenthood Sw. Ohio Region v. Dewine*, 931 F.3d 530, 542 (6th Cir. 2019); *Higher Taste, Inc. v. City of Tacoma*, 717 F.3d 712, 716 (9th Cir. 2013); *Rogers Grp., Inc. v. City of Fayetteville*, 683 F.3d 903, 909–10 (8th Cir. 2012); *Kan. Jud. Watch v. Stout*, 653 F.3d 1230, 1238 (10th Cir. 2011); *Common Cause/Ga. v. Billups*, 554 F.3d 1340, 1356 (11th Cir. 2009); *People Against Police Violence v. City of Pittsburgh*, 520 F.3d 226, 233 (3d Cir. 2008); *Dearmore v. City of Garland*, 519 F.3d 517, 524 (5th Cir. 2008); *Dupuy v. Samuels*, 423 F.3d 714, 723 n.4 (7th Cir. 2005); *Select Milk Producers, Inc. v. Johanns*, 400 F.3d 939, 948 (D.C. Cir. 2005); *Haley v. Pataki,* 106 F.3d 478, 483–84 (2d Cir. 1997).[6]

These circuits vary slightly in their formulations of when, precisely, preliminary relief satisfies this standard, a question to which we return below. But every court disagrees with *Smyth*'s conclusion that a preliminary injunction *always* acts as a mere "prediction of a probable, but necessarily uncertain, outcome." *Smyth*, 282 F.3d at 276. As many courts have noted, this viewpoint "fails to account for fact patterns in which the claimant receives

---

[6] The First Circuit has not yet opined on the issue, *see Sinapi v. R.I. Bd. of Bar Exam'rs*, 910 F.3d 544, 552 (1st Cir. 2018), but district courts within that circuit have followed the consensus rule, *see, e.g.*, *Tri-City Cmty. Action Program, Inc. v. City of Malden*, 680 F. Supp. 2d 306, 314 (D. Mass. 2010).

USCA4 Appeal: 21-1756      Doc: 86         Filed: 08/07/2023      Pg: 16 of 58

everything it asked for in the lawsuit, and all that moots the case" before final judgment "is court-ordered success and the passage of time." *McQueary v. Conway*, 614 F.3d 591, 599 (6th Cir. 2010); *see, e.g.*, *Young v. City of Chicago*, 202 F.3d 1000, 1000–01 (7th Cir. 2000) (awarding fees to plaintiffs who won a preliminary injunction allowing them to protest at a convention, which was the only relief they sought). In these cases, the courts have explained, "although the plaintiff never secured a final judgment granting permanent injunctive relief, the preliminary injunction ended up affording all the relief that proved necessary." *Higher Taste*, 717 F.3d at 717; *see also Select Milk Producers*, 400 F.3d at 948.

To be sure, the fact that *Smyth* now represents a minority view of one does not by itself make it incorrect. But we take seriously the legal developments in the years since we decided *Smyth*. Our sister circuits have carefully and thoughtfully engaged with this question and come to a contrary consensus – and the Supreme Court, we note, has not intervened, except to flag the question as one it has left open. *See Sole*, 551 U.S. at 86. Ultimately, we find ourselves persuaded that *Smyth*'s categorical bar goes too far, and that some preliminary injunctions may suffice to confer prevailing party status.

### 3.

Finally, one more practical observation impacts our thinking. Congress enacted § 1988(b), we have noted, "in furtherance of the policy of facilitating access to judicial process for the redress of civil rights grievances." *Brandon v. Guilford Cty. Bd. of Elections*, 921 F.3d 194, 198 (4th Cir. 2019). Our circuit rule, however, may undermine that policy by allowing government defendants to game the system. Faced with a suit

challenging a potentially or even very probably unlawful practice, a defendant may freely litigate the case through the preliminary injunction phase, hoping for the best or, perhaps, to outlast an indigent plaintiff. And when the court confirms the likely merit of the plaintiff's claim, the government will have ample time to cease the challenged conduct, moot the case, and avoid paying fees. That leaves the plaintiff, who likely devoted considerable resources to obtaining the preliminary injunction, holding the bag. The predictable outcome of this gamesmanship is fewer attorneys willing to represent civil rights plaintiffs in even clearly meritorious actions – particularly those whose urgent situations call for interim relief. And that result, instead of furthering the goals of § 1988(b), contravenes the statute's entire purpose. *See Buckhannon*, 532 U.S. at 607 (observing that the Supreme Court interprets § 1988(b) in light of its legislative purpose).

This case illustrates the point. The plaintiffs here secured a preliminary injunction based on a "clear showing" that Va. Code § 46.2-395 was likely unconstitutional. *Stinnie*, 355 F. Supp. 3d at 527–31. And after years of "long, contentious, and no doubt costly" litigation, the plaintiffs were eager to proceed to summary judgment. *Stinnie*, 396 F. Supp. 3d at 660. But over the plaintiffs' protests, the Commissioner secured a stay so that the General Assembly could repeal the statute and moot the case. *Id.* at 661. Moreover, the Commissioner provided significant input on how to structure the repeal – including a draft bill – so that it would "result in the pending litigation being dismissed, relieving" the government's obligation to "incur costly legal fees." J.A. 968–69. And because Virginia is in the Fourth Circuit and not anywhere else in the country, the Commonwealth could rest assured that this eleventh-hour capitulation would insulate it from a fee award. As this

case so unfortunately demonstrates, instead of opening the courthouse doors to meritorious civil rights claimants, *Smyth*'s rule gives the government the key, allowing it to lock out civil rights plaintiffs whenever their success seems imminent.  This cannot have been Congress's intent in passing § 1988.

### III.

We turn now to the crux of this appeal.  Having overruled *Smyth*, we must articulate a new standard to take its stead.  In our view, a simple, workable test follows directly from Supreme Court precedent:  When a preliminary injunction provides the plaintiff concrete, irreversible relief on the merits of her claim and becomes moot before final judgment because no further court-ordered assistance proves necessary, the subsequent mootness of the case does not preclude an award of attorney's fees.

### A.

We begin with the Supreme Court's definition of a prevailing party:  one who receives "actual relief on the merits of his claim" that "materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar*, 506 U.S. at 111–12.  On the face of this formulation, there appears to be no aspect a preliminary injunction cannot satisfy.  After all, "the granting of a preliminary injunction assuredly changes the legal relationship between the parties" by modifying the defendant's behavior. *McQueary v. Conway*, 614 F.3d 591, 600 (6th Cir. 2010).  Indeed, this is "typically the whole point of an injunction":  to force the defendant, for the benefit of the plaintiff, to do something he otherwise would not. *Higher*

*Taste, Inc. v. City of Tacoma*, 717 F.3d 712, 716 (9th Cir. 2013).   For this reason, the

Supreme Court has "repeatedly held" that a *permanent* injunction will "usually satisfy that

test." *Lefemine*, 568 U.S. at 4.

Preliminary relief, however, differs from its permanent form in important ways.   It

does not require a final judicial determination that a plaintiff's claim is meritorious, and it

is, "by its very nature, intended to be temporary." *Higher Taste*, 717 F.3d at 716.   As we

have discussed, these two differences proved determinative for our court in *Smyth*.   But

other courts, rejecting *Smyth*'s bright-line rule, have been required to address a set of

"recurrent questions . . . when making prevailing-party determinations in this context." *Id.*

We turn to those questions, and their resolution by our sister circuits, for guidance.

1.

First, does a preliminary injunction provide the plaintiff "*actual* relief" by ordering

a "*material* alteration" of the parties' legal relationship?   On this prong, for a plaintiff to

prevail, he must practically "achieve[] some of the benefit" he ultimately "sought in

bringing suit." *Hensley*, 461 U.S. at 433 (internal quotation marks omitted).   So merely

surviving a motion to dismiss or securing reversal of a directed verdict, for example – even

if accompanied by a "favorable judicial statement of law," *Hewitt v. Helms*, 482 U.S. 755,

763 (1987) – cannot support an award of fees.   Such interim victories, which provide no

concrete relief beyond another day in court, are simply "not the stuff of which legal

victories are made." *Id.* at 760; *see also id.*   ("Respect for ordinary language requires that

a plaintiff receive at least some relief on the merits of his claim before he can be said to

prevail.").

In some cases, as illustrated here, there will be little question that a preliminary injunction's "alteration of the legal relationship of the parties" satisfies this standard. The plaintiffs brought this suit, at least in part, to secure reinstatement of their suspended licenses. The court's preliminary injunction ordered precisely that relief. *See Stinnie*, 355 F. Supp. 3d at 532. True, as the *Smyth* court anticipated, this relief was ordered on a provisional basis. 282 F.3d at 276. And we return to the question of what makes preliminary relief sufficiently "enduring" in a moment. But no matter what happened at the conclusion of the litigation, this injunction, for the time it remained in effect, allowed the plaintiffs to again drive to their jobs and personal engagements, providing concrete, irreversible economic and non-economic benefits that the plaintiffs sought in bringing suit. *Cf. Select Milk Producers*, 400 F.3d at 942 (noting that, where a preliminary injunction preventing enforcement of a proposed federal regulation saved the plaintiffs millions of dollars, this relief was "concrete and irreversible").[7]

---

[7] The Commissioner's attempts to distinguish *Select Milk Producers* are unavailing. There, the district court preliminarily enjoined enforcement of a proposed agency rule that would have caused the plaintiffs a "substantial monetary loss." 400 F.3d at 943. While the injunction was in place, it saved the plaintiffs an "estimated $5,000,000" that "could not have been recovered." *Id.* (internal quotation marks omitted). The government then abandoned the proposed rule, mooting the case before final judgment. And the D.C. Circuit held that the "concrete and irreversible redress" the preliminary injunction provided during the time it was in effect satisfied the prevailing party standard. *Id.* at 942.

This case is on all fours with *Select Milk Producers*. The Commissioner contends that unlike the "irreversible" monetary savings in *Select Milk Producers*, the plaintiffs' relief here was "temporary and reversible." But the concrete benefits of license reinstatement, which were provided directly by the preliminary injunction and reaped each day it remained in effect, were no less permanent and irrevocable than the plaintiffs' monetary savings in *Select Milk Producers*. And inasmuch as the Commissioner posits a

We caution, however, that some preliminary injunctions will not satisfy this standard. "The traditional office of a preliminary injunction," we have observed, "is to protect the status quo and to prevent irreparable harm during the pendency of a lawsuit," thus "preserv[ing] the court's ability to render a meaningful judgment on the merits." *Pashby v. Delia*, 709 F.3d 307, 319 (4th Cir. 2013) (internal quotation marks omitted). These so-called status quo injunctions, which simply maintain the "last uncontested status between the parties," *id.* at 320 (quoting *Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 366 (4th Cir. 2012)), may not provide the plaintiff any of the relief he ultimately seeks at the conclusion of the litigation. And as many courts of appeals have concluded, winning a simple "holding-pattern injunction," *McQueary*, 614 F.3d at 601, that does not provide some of the benefit the plaintiff ultimately seeks in bringing suit cannot confer prevailing party status.[8] But here – where the district court enjoined a longstanding statute and

---

distinction between the economic benefits in *Select Milk Producers* and the non-pecuniary relief at issue in this case, that contention misses the mark. For one, the district court here made specific findings of fact regarding the direct financial burdens of license suspension on the plaintiffs. *See Stinnie*, 355 F. Supp. 3d at 520–23. And more importantly, the Supreme Court has emphasized that the prevailing party inquiry in no way turns on the monetary nature of the relief involved, but rather on whether the plaintiffs "achieve[d] some of the benefit [they] sought in bringing suit." *Garland*, 489 U.S. at 791–92 (internal quotation marks omitted).

[8] *See, e.g.*, *McQueary*, 614 F.3d at 601; *Select Milk Producers*, 400 F.3d at 984; *N. Cheyenne Tribe v. Jackson*, 433 F.3d 1083, 1086 (8th Cir. 2006); *Dubuc v. Green Oak Twp.*, 312 F.3d 736, 753–54 (6th Cir. 2002). As courts and commentators have observed, distinguishing between status quo and non-status quo injunctions – and identifying the "last uncontested status between the parties" – often proves difficult. *See, e.g.*, *Chi. United Indus., Ltd. v. City of Chicago*, 445 F.3d 940, 944 (7th Cir. 2006) (Posner, J.) (describing the formulation as "much, and rightly, criticized"); Thomas R. Lee, *Preliminary Injunctions and the Status Quo*, 58 Wash. & Lee L. Rev. 109, 157–66 (2001). For our

ordered affirmative relief, much to the plaintiffs' concrete benefit – this first requirement is easily satisfied.

2.

So a preliminary injunction may, in appropriate circumstances, provide the necessary "actual relief" to render a party prevailing.  But is that relief sufficiently *on the merits* to justify prevailing party status?  Here, too, we think the answer is clear.  In *Buckhannon*, the Supreme Court held that relief "on the merits" requires a "*judicially sanctioned* change in the legal relationship of the parties."  532 U.S. at 605 (emphasis added).  It thus rejected the "catalyst theory," which allowed fee awards when a plaintiff "achieved the desired result because the lawsuit brought about a voluntary change in the defendant's conduct" without any court-ordered relief. *Id.* at 600.  Such a voluntary change in conduct, "although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur* on the change." *Id.* at 605.

Importantly, the plaintiffs here do not rely on the catalyst theory.  Their claim to fees rests entirely on their victory at the preliminary injunction stage, and not on the General Assembly's subsequent repeal of § 46.2-395.  There is little question that a preliminary injunction entails a "judicially sanctioned change" in the parties' legal relationship. *Id.* at 605.  And any concerns we had about this judicially sanctioned change resting only on the equities and not "on the merits," *see Smyth*, 282 F.3d at 276–77, were

---

purposes, however, what matters is whether the injunction itself provided "some of the benefit" the plaintiff ultimately "sought in bringing suit."  *Hensley*, 461 U.S. at 433 (internal quotation marks omitted).

addressed by the Supreme Court in *Winter*, *see* 555 U.S. at 22 (requiring plaintiff seeking preliminary relief to show likelihood of success on the merits).[9]   Today, we may expect all preliminary injunctions to be solidly merits-based – as was the case here, with the district court granting preliminary relief only after a "clear showing" that the plaintiffs' claim was likely meritorious.   *Stinnie*, 355 F. Supp. 3d at 527–31.   Accordingly, we conclude, following other courts of appeals, that "[a] preliminary injunction issued by a judge carries all the 'judicial imprimatur' necessary to satisfy *Buckhannon*."   *Higher Taste*, 717 F.3d at 716 (internal quotation marks omitted); *see, e.g.*, *Common Cause/Georgia v. Billups*, 554 F.3d 1340, 1356 (11th Cir. 2009); *Select Milk Producers*, 400 F.3d at 946.

The Commissioner, echoing our reasoning in *Smyth*, insists that a preliminary injunction is only an "initial prediction" and not a guarantee that the plaintiffs would have prevailed on the merits had their case proceeded to final adjudication.   But that simply begs the question now before us:   whether a plaintiff who wins a preliminary injunction has *already* "prevailed" for purposes of § 1988.[10]   The plaintiffs, that is, do not allege that they *would have* prevailed on the merits had the district court denied the Commissioner's stay

---

[9] Further mitigating this concern is the "heightened standard of review" we apply to injunctions that upend, rather than maintain, the status quo.   *Pashby*, 709 F.3d at 319–20 (noting that, when reviewing such injunctions, our "exacting standard of review is even more searching" (internal quotation marks omitted)).

[10] The Commissioner's passive-voice framing also elides the *reason* the plaintiffs' case did not proceed to final adjudication:   The Commissioner obtained a stay, over the plaintiffs' objection, so that the legislature could moot the plaintiffs' case by repealing the challenged statute.   What the Commissioner really means to say is that a preliminary injunction is not equivalent to the hypothetical final judgment that its own litigation strategy put out of reach.

motion and allowed their case to go to final judgment.  Instead, they claim that they *did*
prevail on the merits when the district court awarded them concrete, judicially sanctioned
relief, in the form of reinstated licenses, by way of a preliminary injunction.  Nor is it the
case, as the Commissioner suggests, that court-ordered relief cannot satisfy *Buckhannon*
without a final determination of liability on the merits.  Instead, *Buckhannon* itself
recognized that a consent decree, even without "an admission of liability by the defendant,
. . . nonetheless is a court-ordered change in the legal relationship between the plaintiff and
the defendant" that may be the basis for a fee award.  532 U.S. at 604 (cleaned up).  A
merits-based preliminary injunction amounts to no less of a "court-ordered change in the
legal relationship," *id.*, and confers the same "judicial imprimatur," *id.* at 605. [11]

---

[11] In the dissent's view, this understanding conflicts not only with *Smyth* but also
with our recent panel decision in *Ge v. U.S. Citizenship & Immigration Services*, 20 F.4th
147 (4th Cir. 2021).  *See* Diss. Op. at 54.  It would be unremarkable if this were so; in
overruling *Smyth*, we also "overrule [any] cases relying upon its reasoning."  *United States
v. Lancaster*, 96 F.3d 734, 736 (4th Cir. 1996) (en banc).  But as it happens, *Ge* is not such
a case.  *Ge* did not involve a preliminary injunction but instead a district court order
remanding a case to a federal agency for further consideration.  And the panel sensibly held
that a remand order, like any interlocutory procedural victory, provides neither actual relief
on the merits nor a material alteration of the parties' legal relationship and so cannot confer
prevailing party status.  *Ge*, 20 F.4th at 155–57.  This straightforward ruling presents no
conflict with – and in fact directly tracks – our reasoning here.

The dissent focuses not on *Ge*'s holding but instead on its observation that a party
"must obtain . . . a judgment, consent decree, *or similar order*" to prevail.  *Id.* at 153
(emphasis added); *see Buckhannon*, 532 U.S. at 604–05 (listing "enforceable judgments on
the merits and court-ordered consent decrees" as "examples" of orders that "create the
material alteration of the legal relationship of the parties necessary to permit an award of
attorney's fees" (internal quotation marks omitted)).  Because a preliminary injunction is
not "like a judgment or a consent decree," the dissent believes, our holding today conflicts
with *Ge*.  Diss. Op. at 54.  But our holding, of course, is that a preliminary injunction –
unlike a remand order – *is* "similar" to a final judgment and a consent decree for

3.

Preliminary relief thus appears capable of satisfying the basic requirements of prevailing party status: A preliminary injunction may provide concrete and irreversible relief on the merits of a plaintiff's claim, as the result of a judicially ordered change in the parties' relationship. But because of its preliminary nature, such relief implicates one further requirement: that the "court-ordered change in the legal relationship" be "enduring" rather than "ephemeral." *Sole v. Wyner*, 551 U.S. 74, 86 (2007); *see also Higher Taste*, 717 F.3d at 717.

A preliminary injunction, after all, might always be undone in later proceedings. That is what happened in *Sole*: A plaintiff won a preliminary injunction allowing her to stage a public antiwar display featuring nudity, but when she sought a permanent injunction for future displays, the district court reversed course and entered final judgment for the state defendant. 551 U.S. at 79–82. That plaintiff, the Supreme Court held, had not "prevailed" under § 1988 – notwithstanding preliminary relief that allowed for her first display – because her "initial victory was ephemeral," resting "on a premise the District Court ultimately rejected." *Id.* at 85–86. When preliminary relief is later "reversed, dissolved, or otherwise undone by the final decision in the same case," the Supreme Court reasoned, that "eventual ruling on the merits . . . supersede[s] the preliminary ruling" and the plaintiff cannot be said to have "prevailed." *Id.* at 83–85.

---

*Buckhannon* purposes, because it can effectuate the necessary "material alteration" of the parties' legal relationship. The dissent may disagree, but that holding is fully consistent with *Ge*.

In the mine-run of cases, *Sole*'s straightforward holding will begin and end the inquiry. Generally speaking, a preliminary injunction – even one that provides actual relief on the merits – will be revisited by a final decision in the same case. Under *Sole*, if the plaintiff loses at final judgment, she cannot prevail; if she wins, she prevails without recourse to her initial victory. But there is a third possibility, as this case illustrates: Sometimes, after a plaintiff wins preliminary relief, her case will become moot before final judgment, as her preliminary injunction will have "ended up affording all the relief that proved necessary." *Higher Taste*, 717 F.3d at 717. Because the case is moot, there can be no subsequent final judgment superseding the preliminary ruling. *Cf. Sole*, 551 U.S. at 84–85. And in those cases, courts regularly conclude that the plaintiffs have recovered sufficiently "enduring" relief to make them prevailing parties under *Sole*.

In some of those cases, a preliminary injunction provides concrete relief on the merits, and what moots the case is only "court-ordered success and the passage of time." *McQueary*, 614 F.3d at 599. The canonical example is a plaintiff who wins a preliminary injunction permitting a protest at a specific event. After the event ends, the litigation will be dismissed as moot, but only because the plaintiff has received all the court-ordered assistance required. Our sister circuits have little difficulty finding prevailing party status in such circumstances. *See id.* (describing cases). In others, the fact pattern mimics the one before us now: A plaintiff wins preliminary relief enjoining a statute or practice, but the policy is permanently repealed or abandoned before final judgment. And in this scenario, too, courts have held that the plaintiff may qualify as a prevailing party under § 1988. *See, e.g., Common Cause*, 554 F.3d at 1355–56; *People Against Police Violence*

26

*v. City of Pittsburgh*, 520 F.3d 226, 233–34 (3d Cir. 2008); *Rogers Grp., Inc. v. City of Fayetteville*, 683 F.3d 903, 913 (8th Cir. 2012); *Select Milk Producers*, 400 F.3d at 943.

We agree. What these two sets of cases have in common is that in each, a preliminary injunction has provided the plaintiff with precisely the merits-based relief she needs for precisely as long as she needs it – for the would-be protester, for as long as the event lasts; for the challenger to a statute, for as long as the statute remains on the books. *See Dupuy v. Samuels*, 423 F.3d 714, 723 n.4 (7th Cir. 2005) (reviewing cases finding prevailing party status where case becomes moot only "after the preliminary injunction had done its job" (internal quotation marks omitted)). In each, the relief the plaintiff receives is as "enduring" as if she had received a permanent injunction to the same effect. *See Higher Taste*, 717 F.3d at 717. And in each, mootness means that the material and concrete preliminary relief awarded cannot be superseded by a contrary final judgment on the merits in the same case. *See Sole*, 551 U.S. at 83; *Dupuy*, 423 F.3d at 723 ("The relief the plaintiffs had obtained through the preliminary injunction therefore was not defeasible for the same reason that the case was moot.").

It is true that, "as a matter of course, an injunction may dissolve when a case becomes moot and the injunction is no longer necessary." *Planned Parenthood Sw. Ohio Region v. Dewine*, 931 F.3d 530, 542 (6th Cir. 2019). But unlike an adverse decision on the merits, this matter-of-course vacatur does not negate the "change in the legal relationship" already effected by the preliminary injunction. *Id.* at 539–40. In *Sole*, the plaintiff's preliminary victory was deemed "fleeting" not because it failed to reach final judgment, but because the plaintiff's "temporary success rested on a premise the District

27

USCA4 Appeal: 21-1756      Doc: 86         Filed: 08/07/2023      Pg: 28 of 58

Court ultimately rejected" when it granted final judgment to the defendant. 551 U.S. at 85. This conclusion follows logically from *Buckhannon*: A reversal on the merits repudiates the earlier judicial mandate for a change in the parties' legal relationship, so that any preliminary relief obtained by the plaintiff – even if concrete and irreversible – no longer has "the necessary judicial *imprimatur*" to support a fee award. *Buckhannon*, 532 U.S. at 605; *see Kan. Jud. Watch v. Stout*, 653 F.3d 1230, 1240 (10th Cir. 2011).

But when a case is dismissed as moot because a preliminary injunction has done all it needed, the injunction is not "dissolved for lack of entitlement." *Watson v. Cnty. of Riverside*, 300 F.3d 1092, 1096 (9th Cir. 2002); *see Planned Parenthood*, 931 F.3d at 540 ("[V]acatur at that juncture . . . does not represent the kind of active, merits-based undoing the Supreme Court referred to in *Sole*."). No court ever "issue[s] an order undermining the district court's assessment of the merits" or "repudiat[ing]" the favorable change in the parties' legal relationship." *Kan. Jud. Watch*, 653 F.3d at 1240 & n.4. On the contrary, the plaintiff's victory is now sure to be enduring, as there is no longer any risk that the court-ordered relief will lose its judicial imprimatur.[12]

---

[12] This reasoning, the dissent suggests, is "little more than a new spin on the catalyst theory": Because a case becomes moot only through a "non-judicial act" – here, the legislative repeal of the challenged statute – the dissent posits that our holding relies on a "non-judicial decision" to "anoint a prevailing party." Diss. Op. at 52. But sometimes, as we have described above, it is not a "non-judicial decision" but only "court-ordered success and the passage of time" that moots a case. *McQueary*, 614 F.3d at 599. And in any event, as we have explained, this case simply does not implicate the catalyst theory, with or without a spin. Under the standard we adopt today, a plaintiff prevails not because her preliminary injunction "catalyzes" some subsequent mooting event, like a legislative repeal, but because the preliminary injunction *itself* provides her with concrete, irreversible

USCA4 Appeal: 21-1756      Doc: 86        Filed: 06/07/2023      Pg: 29 of 58

\*   \*   \*

Consistent with our reasoning above, we hold that the Supreme Court's "generous formulation" for prevailing party status, *Hensley*, 461 U.S. at 433, is satisfied when a plaintiff obtains a preliminary injunction that (a) provides her with concrete, irreversible relief on the merits of her claim by materially altering the parties' legal relationship, and (b) becomes moot before final judgment such that the injunction cannot be "reversed, dissolved, or otherwise undone" by a later decision.  Because the plaintiffs here satisfy these baseline criteria, they cross the "statutory threshold," *id.*, to qualify as prevailing parties whom "the court, in its discretion, may allow . . . a reasonable attorney's fee," 42 U.S.C. § 1988(b).

We believe this straightforward approach is not only faithful to Supreme Court guidance but also reflective of the broad consensus in our sister circuits.  As noted, though other federal courts of appeals are unanimous in their rejection of *Smyth*'s categorical rule, there are some differences in the way they assess prevailing party status and frame their inquiries in this context.  But we have done our best to synthesize the case law and capture the dominant approach.  And we think the requirements we articulate today – that the plaintiff receive "concrete and irreversible judicial relief" from the preliminary injunction itself, *Select Milk Producers*, 400 F.3d at 948; that the preliminary injunction rest on an "unambiguous indication of probable success on the merits," *Kan. Jud. Watch*, 653 F.3d at

---

relief.  The case's subsequent mootness – however it arises – simply guarantees that this enduring, merits-based relief will not lose its judicial imprimatur.

1238; and that the "plaintiff's initial victory [be] enduring rather than ephemeral," in that it lasts for as long as it is needed and may not be undone by a final ruling on the merits, *Higher Taste*, 717 F.3d at 718 – fairly encapsulate the weight of the authority.

We recognize that a few circuits impose additional, fact-specific barriers to prevailing party status. *See Dearmore v. City of Garland*, 519 F.3d 517, 524 (5th Cir. 2008) (requiring showing that preliminary injunction caused defendant to moot an action); *Singer Mgmt. Consultants, Inc. v. Milgram*, 650 F.3d 223, 230 n.4 (3d Cir. 2011) (en banc) (requiring a heightened showing on the merits); *McQueary*, 614 F.3d at 601 (outlining a "contextual and case-specific inquiry"). In our view, however, the majority approach better conforms to the Supreme Court's emphasis on judicial administrability when it comes to the threshold question of fee eligibility. *See Garland*, 489 U.S. at 790. At this early stage of the § 1988 inquiry, the Supreme Court advises, courts should avoid, where possible, "unstable" standards and fact-dependent criteria that would reliably "spawn a second litigation." *Id* at 791. The threshold standard we have enunciated here, we think, tracks the precedents of the Supreme Court without sacrificing clarity or administrability. And it still leaves room at the *next* stage of the § 1988 inquiry – a district court's discretionary assessment of a "reasonable" fee – for consideration of all the relevant facts and circumstances. *See Hensley*, 461 U.S. at 429 ("The *amount* of the fee, of course, must be determined on the facts of each case." (emphasis added)).

## B.

Our decision today is a narrow one. We hold only that when a preliminary injunction meets the criteria outlined above, the plaintiff satisfies the statutory definition

of a prevailing party.  But as we have emphasized, that "brings the plaintiff only across the statutory threshold.  It remains for the district court to determine what fee is 'reasonable.'" *Hensley*, 461 U.S. at 433.  In other words, that the plaintiffs here are prevailing parties means that they are "eligible for, rather than entitled to, an award of attorney's fees." *Mercer v. Duke Univ.*, 401 F.3d 199, 203 (4th Cir. 2005).  What constitutes a "reasonable fee" in this case is committed to the district court's "broad discretion." *Daly v. Hill*, 790 F.2d 1071, 1085 (4th Cir. 1986).

Our deference to district courts in determining a reasonable fee is "appropriate in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." *Hensley*, 461 U.S. at 437; *id.* at 430 n.3 (outlining twelve-factor test courts employ to calculate fees).  In this field, the district courts have longstanding expertise and "enjoy a decided advantage over appellate courts." *Carroll v. Wolpoff & Abramson*, 53 F.3d 626, 628 (4th Cir. 1995). Indeed, though the Commissioner expresses some doubt about the administrability of anything other than *Smyth*'s bright-line bar on fee recovery in this context, we note that district courts in other circuits – all of which have long allowed preliminary injunctions to confer prevailing party status – appear to have no trouble applying the usual factors to fee awards based on preliminary relief. *See, e.g.*, *P.G. v. Jefferson Cnty.*, No. 5:21-CV-388, 2023 WL 3496363, at *3–4 (N.D.N.Y. May 17, 2023); *Memphis A. Phillip Randolph Inst. v. Hargett*, No. 3:20-CV-00374, 2022 WL 576554, at *6 (M.D. Tenn. Feb. 25, 2022), *aff'd sub nom. Memphis A. Philip Randolph Inst. v. Hargett*, 2023 WL 411381 (6th Cir. Jan. 26, 2023); *Brakebill v. Jaeger*, No. 1:16-CV-008, 2020 WL 10456884, at *4 (D.N.D. May 7,

2020), *aff'd sub nom. Spirit Lake Tribe v. Jaeger*, 5 F.4th 849 (8th Cir. 2021); *Miller v. Davis*, 267 F. Supp. 3d 961, 979 (E.D. Ky. 2017); *Ne. Ohio Coal. for Homeless v. Brunner*, 652 F. Supp. 2d 871, 886 (S.D. Ohio 2009), *modified on reconsideration sub nom. Ne. Ohio Coal. for the Homeless v. Brunner,* No. C2-06-896, 2009 WL 10663619 (S.D. Ohio July 30, 2009).

And, importantly, a district court's multi-factored assessment of what constitutes a "reasonable" fee is capacious and flexible enough to account for many of the concerns that have been raised about allowing preliminary relief to support a fee award at all.  The Commissioner, for instance, argued strenuously that the preliminary injunction here should not confer prevailing party status in part because it gave the plaintiffs so little of what they wanted:  The named plaintiffs sought not only reinstatement of their own licenses, but also class certification, a declaratory judgment that § 46.2-395 was unconstitutional, and hence permanent license reinstatement for hundreds of thousands of Virginians.  Those are precisely the kinds of considerations that bear on the "extent of a plaintiff's success" – a critical factor in assessing a reasonable fee award in *any* fee litigation under § 1988.  *See Hensley*, 461 U.S. at 439–40; *McAfee v. Boczar*, 738 F.3d 81, 92 (4th Cir. 2013), *as amended* (Jan. 23, 2014).[13]   We of course express no view on the merits of the

---

[13] These considerations, however, have no relevance to the legal question before us of whether a party has prevailed in the first place.  As the magistrate judge here observed, "the limited nature of the relief granted is accounted for not by denying a fee award altogether, but rather by adjusting the amount of fees awarded." *Stinnie*, 2021 WL 627552, at *11; *see Farrar*, 506 U.S. at 114 ("[T]he *degree* of the plaintiff's success does not affect eligibility for a fee award." (internal quotation marks omitted)).

Commissioner's argument or the extent of the plaintiffs' success.  But we are confident that on remand, the district court, with its "ringside view of the relevant conduct of the parties and of the underlying dispute," *Alexander v. Mayor & Council of Cheverly*, 953 F.2d 160, 162 (4th Cir. 1992), will take account of all of the relevant facts and circumstances in exercising its discretion to order a "reasonable attorney's fee," 42 U.S.C. § 1988(b).

The district court, bound by *Smyth*'s categorical rule, had no choice but to deny the plaintiffs prevailing party status, rendering them ineligible for fees at the threshold.  For the reasons given above, we have reconsidered *Smyth*'s bright-line rule and replaced it with a standard under which the plaintiffs qualify as prevailing parties eligible for fees.  We therefore vacate the judgment of the district court and remand for further proceedings consistent with this opinion.

## IV.

The district court order denying the plaintiffs' fee petition is vacated and the case remanded for further proceedings.

*VACATED AND REMANDED*

QUATTLEBAUM, Circuit Judge, with whom Judges AGEE, RICHARDSON, and RUSHING join, dissenting:

Section 1988 of Title 42 in the United States Code permits awards of attorney's fees to a "prevailing party" in certain civil rights cases. The question presented in this appeal is whether a party that obtains a preliminary injunction is a prevailing party. To the majority, the answer is yes if "a plaintiff obtains a preliminary injunction that (a) provides her with concrete, irreversible relief on the merits of her claim by materially altering the parties' legal relationship, and (b) becomes moot before final judgment such that the injunction cannot be reversed, dissolved, or otherwise undone by a later decision." Maj. Op. at 29. In reaching that conclusion, the majority overrules our *Smyth ex rel. Smyth v. Rivero*, 282 F.3d 268 (4th Cir. 2002), decision. But the text of § 1988(b) and Supreme Court guidance make clear that temporary relief is insufficient. A court must resolve at least one issue once and for all on the merits, not merely predict how issues are likely to be resolved. Finally, the relief must come from a judicial decision, not the voluntary act of the opposing party, so that it is enforceable by the court. Obtaining a preliminary injunction does not meet these requirements. In my view, the majority's decision misconstrues the meaning of "prevailing party" under § 1988(b) and strays from Supreme Court precedent. In contrast, *Smyth* is faithful to both. So, I respectfully dissent.

## I.

This case arises from a challenge to the constitutionality of Virginia Code § 46.2-395, which has since been repealed. That statute authorized a state court to order the

34

suspension of a driver's license if a person convicted of any violation of the law of the Commonwealth, the United States or any valid local ordinances failed to pay any fine, costs, forfeiture, restitution or penalty or make installment payments as ordered by the court. Va. Code § 46.2-395 (B). The plaintiffs brought a class action complaint against Richard D. Holcomb in his official capacity as the Commissioner of the Virginia Department of Motor Vehicles alleging that the DMV suspended the plaintiffs' licenses immediately upon their default without a hearing or consideration of inability to pay court debts under § 46.2-395.

The plaintiffs sought a declaratory judgment that § 46.2-395 violated the Constitution's Due Process Clause, as well as various forms of injunctive relief. They also moved for a preliminary injunction. The district court granted the motion, concluding that "Plaintiffs are likely to succeed on the merits of their procedural due process claim because the Commissioner suspends licenses without an opportunity to be heard." J.A. 820. The order (1) "preliminarily enjoined [the Commissioner] from enforcing Virginia Code § 46.2-395 against the plaintiffs unless or until the Commissioner or another entity provides a hearing regarding license suspension[];" (2) required the Commissioner to remove any current suspensions of the plaintiffs' driver's licenses imposed under Virginia Code § 46.2-395; and (3) enjoined the Commissioner from charging a fee to reinstate the plaintiffs' drivers' licenses if there were no other restrictions on their licenses. J.A. 843. The district court made no determination as to the plaintiffs' motion to certify a class. And it did not determine that "final injunctive relief or corresponding declaratory relief [was] appropriate

respecting the class as a whole." J.A. 843. Thus, the order only applied to the named plaintiffs.

The case proceeded to discovery. Subsequently, the Virginia General Assembly passed a budget amendment that prohibited the suspension of drivers' licenses for failure to pay court fines and costs but did not repeal the statute. In response, the Commissioner moved to dismiss the case as moot or alternatively to stay the proceedings because of pending legislative action to rescind the statute. The district court denied the motion to dismiss. It found that the budget amendment did not moot the case because the statute remained on the books meaning it was possible that it could still be enforced. But over the plaintiffs' objections, it granted the motion to stay. Then, during its next regular session, the Virginia General Assembly passed legislation that eliminated § 46.2-395 and required the Commissioner to reinstate, without payment of fees, driving privileges that had been suspended by courts under § 46.2-395. Based on that legislative action, the parties stipulated to the dismissal of the case as moot. But the plaintiffs asserted they were entitled to attorney's fees under 42 U.S.C. § 1988(b), so the parties jointly requested the district court retain jurisdiction to determine whether to award attorney's fees.

The district court referred the plaintiffs' petition for attorney's fees to a magistrate judge for a report and recommendation. The magistrate judge recommended denying the petition, finding our *Smyth* decision controlling on the question of whether a plaintiff who won a preliminary injunction under the facts presented is a "prevailing party" under § 1988. The district court overruled the plaintiffs' objections and denied the petition, finding no

error in the magistrate judge's reasoning and ultimately concluding that "whether the Fourth Circuit would overrule *Smyth* today is, at best, unclear." J.A. 1264.

The plaintiffs timely appealed.

## II.

### A.

Section 1988(b) allows a district court, in its discretion, to "allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs" in certain civil rights cases. 42 U.S.C. § 1988(b). But while this provision provides an exception to the "American Rule"—where each party in a lawsuit ordinarily bears its own attorney's fees unless there is express statutory authority otherwise, *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983)—the statute itself does not define "prevailing party." Instead, Congress employed the "the legal term of art 'prevailing party'" in many statutes in addition to the one at issue here. *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 603 (2001). As Justice Scalia recognized in his concurrence in *Buckhannon*, "'prevailing party' is not some newfangled legal term invented for use in late-20th-century fee-shifting statutes." *Id.* at 610.

In interpreting statutes, we define terms based on their meaning at the time Congress enacted the statute. *Perrin v. U.S.*, 444 U.S. 37, 42 (1979) (describing this principle as a "fundamental canon of statutory construction"); *see also* A. Scalia & B. Garner, *Reading Law: The Interpretation of Legal Texts*, 69–92 (2012). At the time Congress enacted the Civil Rights Attorney's Fee Award Act of 1976, the term "prevailing party" was

37

understood in the law. Black's Law Dictionary's defined "prevailing party" as "one of the parties to a suit who successfully prosecutes the action or successfully defends against it, prevailing on the main issue, even though not to the extent of his original contention." Prevailing Party, *Black's Law Dictionary* (rev. 4th ed. 1968). *Black*'s added that a "prevailing party" is "[t]he one in whose favor the decision or verdict is rendered and judgment entered."[1] *Id*. And it further explains that prevailing party is "[t]he party ultimately prevailing when the matter is finally set at rest." *Id*. Offering more clarity, *Black*'s told us that "[t]o be [a prevailing party] does not depend upon the degree of success at different stages of the suit, but whether at the end of the suit, or other proceeding, the party who has made a claim against the other, has successfully maintained it." *Id.*

These definitions reveal that to prevail, a party must achieve final, not temporary, success. Absent that, it is not clear whether a party has "successfully prosecute[d]" an action. Without final success, no "decision or verdict is rendered and judgment entered" and the matter is not "set at rest." In sum, *Black*'s tells us to look to the "end of the suit" to see if a party has "successfully maintained" a claim, not to interim events.

B.

But we have more than legal dictionaries to help us understand what it means to be the prevailing party. The Supreme Court has interpreted the phrase "prevailing party" from

---

[1] This is very close to the definition cited by the Supreme Court in *Buckhannon*. There, the Court cited the 1999 seventh edition of Black's Law Dictionary which "define[d] 'prevailing party' as '[a] party in whose favor a judgment is rendered, regardless of the amount of damages awarded.'" *Buckhannon*, 532 U.S. at 603.

§ 1988(b) on numerous occasions. A quick tour through those decisions provides additional guidance on the meaning of a prevailing party. And the guidance makes clear—contrary to the majority's reading—that while a prevailing party need not obtain relief on every claim asserted, it must obtain enduring judicially-sanctioned relief.

In *Hensley*, the plaintiffs challenged the constitutionality of conditions and treatment of those involuntarily confined at a state hospital. 461 U.S. at 426. While the plaintiffs did not succeed on all their claims, the district court held that an involuntarily committed patient has a constitutional right to minimally adequate treatment. *Id.* at 427. The district court determined that the plaintiffs were prevailing parties under § 1988(b) even though they had not succeeded on every claim. The court of appeals affirmed. The Supreme Court granted certiorari and then vacated and remanded for further proceedings so that the district court could determine the proper fee award in relation to the results obtained by the plaintiffs. The Court did not settle on one particular standard for defining "prevailing party." Its primary concern was clarifying the "proper standard for setting a fee award where the plaintiff has achieved only limited success." *Id.* at 431. But in holding that "the extent of a plaintiff's success is a crucial factor in determining the proper amount of an award for attorney's fees under 42 U.S.C. § 1988," it made clear that a party need not prevail on all its claims to be a prevailing party. *Id.* at 440. And in explaining this, the Court stated that success on any significant issue that achieves some of the benefits the parties sought in bringing suit was a "generous formulation" that might bring a party "only across the statutory threshold." *Id.* at 433. So, from *Hensley* we learn that complete victory

39

on all claims is not required. Even so, the partial relief that conferred prevailing party status was a judgment finding constitutional violations following a three-week trial on the merits.

In *Hewitt v. Helms*, 482 U.S. 755 (1987), an inmate brought a § 1983 action against prison officials alleging that a Pennsylvania correctional facility failed to give him a prompt hearing on misconduct charges and convicted him of misconduct in violation of his due process rights. *Id.* at 757. After his release, the district court granted summary judgment in favor of the prison officials on the constitutional claims without ruling on qualified immunity. *Id.* at 758. The Third Circuit reversed, holding the facility violated the inmate's due process rights and ordered the district court to grant summary judgment for the inmate on a claim on remand. *Id.* at 758. But before that could happen, the Supreme Court granted certiorari and held that the prisoner's administrative segregation did not violate the due process clause. *Id.* When the case returned to the district court, it granted summary judgment on the basis of qualified immunity. *Id.* After the plaintiff appealed, the Pennsylvania Bureau of Corrections revised its regulations for inmate disciplinary proceedings. *Id.* at 759. The inmate then sought attorney's fees under § 1988(b). The Supreme Court rejected the Third Circuit's conclusion that its holding that the inmate's constitutional rights were violated prior to the Supreme Court's decision was a form of judicial relief. The Court held that "[r]espect for ordinary language requires that a plaintiff receive at least some relief on the merits of his claim before he can be said to prevail." *Id.* at 760. It then explained that the plaintiff there received no damages award, injunction or declaratory judgment. *Id.* at 760. And it added that "[t]he most that he obtained was an interlocutory ruling that his complaint should not have been dismissed for failure to state a

constitutional claim [,but] that is not the stuff of which legal victories are made." *Id. Hewitt* is quite different from our case. Unlike the plaintiff there, the plaintiffs here obtained a preliminary injunction. But the Supreme Court made clear that relief on the merits is required for a party to prevail and its examples of such relief—a damages award, an injunction or a declaratory judgment—indicate that provisional relief precludes eligibility. *Id.* The Court's inclusion of "injunction" does not suggest otherwise. Read in context with the rest of the opinion, the Court's insistence of relief on the merits and its inclusion of injunction along with damages awards and declaratory judgments indicates that by referencing injunctions, it meant permanent injunctions that result in final judgments. *Id.* In fact, the Court explained that the fact that the plaintiff obtained the benefit of the new procedures "can hardly render him, retroactively, a 'prevailing party' in this lawsuit, even though he was not such when the final judgment was entered." *Id.* at 764. Thus, the Court seems focused on final judgments.

Next, in *Texas State Teachers Association v. Garland Independent School District*, 489 U.S. 782 (1989), several teachers' unions brought a § 1983 action challenging the constitutionality of the school district's communications policy. The school district obtained summary judgment on a number of the claims, but not all. And as to other claims, the teachers' unions were awarded summary judgment. *Id.* at 787. The teachers' unions then filed for attorney's fees under § 1988. *Id.* The Supreme Court held that although they only prevailed on some of their claims, the unions were nevertheless prevailing parties. *Id.* at 793. The Court explained that the "touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties in a manner which Congress

41

sought to promote in the fee statute." *Id.* at 792–93. And it reasoned that the teachers' union prevailed "on a significant issue in the litigation and [had] obtained some of the relief they sought," in obtaining "*a judgment* vindicating the rights of public employees in the workplace." *Id.* at 793 (emphasis added). *Texas State Teachers Association* confirms that complete victory is not required to be a prevailing party. But importantly, while the unions' success was limited, it was final—they received a final judgment on the merits of some of their claims. To be sure, the Court said "pendente lite" relief might suffice in addition to relief afforded at "the conclusion of the litigation." *Id.* at 791. But read as a whole, the opinion makes clear that such relief must necessarily be based on a party establishing his entitlement to relief on the merits. *Id.* at 790.

In *Farrar v. Hobby*, 506 U.S. 103 (1992), the Supreme Court held that a civil rights plaintiff who receives a nominal damages award is a "prevailing party" eligible to receive attorney's fees under § 1988. *Id.* at 112. While the Court affirmed the denial of fees in that particular case, it held that a plaintiff receiving only nominal damages was in fact a prevailing party. *Id.* at 105. The Court clarified that a "plaintiff must obtain at least some relief on the merits of his claim." *Id.* at 111. It added that a party prevails "when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Id.* at 111–12. Continuing, the Court explained that a civil rights plaintiff must obtain at least some relief on the merits of his claim. *Id*. And giving specific guidance as to what type of relief is needed, the Court instructed that "[n]o material alteration of the legal relationship between the parties occurs until the plaintiff becomes entitled to enforce a judgment,

consent decree, or settlement against the defendant." *Id.* at 113. So, *Farrar* reiterates *Texas State Teachers Association*'s standard of materially altering the legal relationship between the parties and adds "by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Id.* at 111–12. But importantly, it clarifies that a material alteration does not occur until the plaintiff becomes entitled to enforce "a judgment, consent decree, or settlement against the defendant." *Id.* at 113.

That brings us to *Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health and Human Resources*, 532 U.S. 598 (2001). In that case, the Court addressed the question of whether "a party that has failed to secure a judgment on the merits or a court-ordered consent decree, but has nonetheless achieved the desired result because the lawsuit brought about a voluntary change in the defendant's conduct" is a prevailing party. *Id.* at 600. The Supreme Court said no. There, West Virginia's state fire marshal shut down assisted living facilities operated by a corporation because, as required by state law, certain residents were incapable of moving themselves in the event of imminent danger. *Id.* at 600. The corporation sued claiming the state self-preservation requirement violated the American with Disabilities Act and the Fair Housing Amendments Act. *Id.* at 601. After the litigation began, West Virginia eliminated the self-preservation requirement. *Id.* And after the district court granted a motion to dismiss the case as moot, the corporation then sought attorney's fees arguing that that it was the "catalyst" for the change in West Virginia law. *Id.* Specifically, the corporation argued that it was entitled to fees as a prevailing party because the lawsuit brought about a voluntary change in the defendant's conduct. *Id.* at 601. The Supreme Court disagreed emphasizing the need for a "judicially sanctioned

43

change in the legal relationship of the parties." *Id.* at 605. After reviewing prior decisions involving § 1988(b), it explained "enforceable judgments on the merits and court-ordered consent decrees create the material alteration of the legal relationship of the parties necessary to permit an award of attorney's fees." *Id.* at 604 (internal quotation marks and citation omitted). And it held that the catalyst theory "falls on the other side of the line from these examples." *Id.* at 605. *Buckhannon* provides important guidance about the meaning of a prevailing party. First, it makes clear that the alteration of the parties' legal relationship must be a judicial act, not the voluntary conduct of the parties or a third party. And following *Farrar*, it instructs that the judicial act needs to be akin to "a judgment on the merits or a court-ordered consent decree." *Id.* at 600.[2]

In *Sole v. Wyner*, 551 U.S. 74 (2007), the Court addressed a single question: "[d]oes a plaintiff who gains a preliminary injunction after an abbreviated hearing, but is denied a permanent injunction after a dispositive adjudication on the merits, qualify as a 'prevailing party' within the compass of § 1988(b)?" *Id.* at 77. The Supreme Court again said no. There, Wyner applied to conduct an anti-war event on Valentine's Day in a public park where participants, while nude, would form a peace symbol. Florida officials advised her that they could only do so if the participants complied with the state's "Bathing Suit Rule,"

---

[2] Recall that *Farrar* held that a settlement could confer prevailing party status. *Farrar*, 506 U.S. at 113. *Buckhannon* did not explicitly overrule that part of *Farrar* but clarified that "settlement agreements enforced through a consent decree may serve as the basis for an award of attorney's fees." *Buckhannon*, 532 U.S. at 604. And its requirement of a judicial act and emphasis on relief on the merits makes clear that settlements generally would not qualify.

which required patrons in Florida's state park to wear at least bathing suit-type clothing. *Id.* at 78. In response, Wyner sued claiming the restrictions the state imposed on the proposed event violated the First Amendment. She requested an injunction against the restrictions at the proposed event and future such events. *Id.* at 79. The district court granted the preliminary injunction, concluding the Bathing Suit Rule was overbroad since the state's interest in protecting the visiting public from nudity could be accomplished by requiring the display to take place behind a screen. *Id.* at 80. But in carrying out the peace display, the participants ignored the required barrier. So later, as Wyner pursued an injunction against state interference with future events, the district granted summary judgment to the defendants ruling that the participants deliberate noncompliance with the screen requirement established that the Bathing Suit Rule was not overbroad after all. *Id.* at 80-81.

Despite losing at summary judgment, Wyner sought attorney's fees claiming that she was a prevailing party under § 1988(b) since she earlier obtained the preliminary injunction that allowed the peace display to go forward without the bathing suit requirement. The Supreme Court disagreed. *Id.* at 81. Characterizing the preliminary injunction as "fleeting success," *id.* at 83, the Court explained that "Wyner had gained no enduring 'chang[e] [in] the legal relationship' between herself and the state officials she sued." *Id.* at 86 (quoting *Texas State Tchr's. Ass'n*, 489 U.S. at 792). *Sole* is different from our case because the preliminary injunction here was never altered or rescinded. In fact, the Supreme Court indicated that it was expressing no view on whether "in the absence of a final decision on the merits of a claim for permanent injunctive relief, success in gaining

a preliminary injunction may sometimes warrant an award of counsel fees." *Id.* at 86.[3] But it also made clear that obtaining the benefit of a preliminary injunction that was later overturned—in that case, the ability to participate in a peace display nude—did not convey prevailing party status because that "initial victory was ephemeral." *Id.* at 76.

Finally, in *Lefemine v. Wideman*, 568 U.S. 1 (2012), the Supreme Court, in a per curiam opinion concluded that a protester who secured a permanent injunction but no monetary damages was a prevailing party. *Id.* at 2. The Court held "a plaintiff 'prevails . . . when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff.'" *Id.* at 4 (quoting *Farrar*, 506 U.S. at 111–12). It then explained that an "injunction or declaratory judgment, like a damages award, will usually satisfy [the *Farrar*] test." *Id.* at 4. While *Lefemine* does not explicitly address a preliminary injunction, its explanation that a permanent injunction is like a damages award indicates the judicial act must provide final, permanent relief.

## C.

Considering these Supreme Court cases interpreting § 1988(b), several principles emerge. To prevail, a party must first obtain a judicial decision that is like a judgment or a consent decree. The Court's language from *Farrar* says this explicitly. And *Buckhannon*, in particular, reinforces it. True, *Buckhannon* did not expressly state that judgments on the

---

[3] In leaving the question open, *Sole* also confirms that *Hewitt*'s reference to an injunction and *Texas State Teachers Association*'s reference to pendente lite relief had not answered the question either.

46

merits and court-ordered consent decrees were the only types of relief that provide prevailing party status. *Buckhannon*, 532 U.S. at 604. But *Farrar* was clear as to that point, and the focus of *Buckhannon* was rejecting the "catalyst theory" by emphasizing that prevailing party status is dependent on a "judicially sanctioned change in the legal relationship of the parties." *Id.* at 605.

Second, the judicial decision must irreversibly alter the legal rights of the parties. While the Supreme Court may not have expressly said that relief must be final, it has never approved a claim for attorney's fees under § 1988(b) for temporary relief. Also, the Court rejected the claim for fees in *Sole* where the preliminary injunction had not permanently altered the rights of the parties calling it "ephemeral." *Sole*, 551 U.S. at 86. And in *Hewitt*, it held judicial pronouncement of a constitutional violation without relief does not entitle a party to prevailing party status and looked to the final judgment as the basis for determining which party prevailed. *Hewitt*, 482 U.S. at 764.

Relatedly, the judicial decision must resolve at least one issue on the merits. The Supreme Court has consistently emphasized this requirement. *See Hewitt,* 482 U.S. at 760; *Texas State Tchrs. Ass'n*, 489 U.S. at 786; *Sole*, 551 U.S. at 86. And resolving an issue on the merits means deciding who ultimately wins.

On the other hand, if the final determination of the legal rights of the parties is decided by the voluntary conduct of the defendant, the party does not prevail. Also, if the judicial decision provides practical benefits to the moving party, even substantial practical benefits, but does not resolve at least one issue on the merits, the party does not prevail.

Last, if the judicial decision provides provisional rather than ultimate relief, the party has not prevailed.

Of significance, current Fourth Circuit law virtually mirrors these requirements. While not in the context of a preliminary injunction, we have framed the inquiry about prevailing party as a four-part test, requiring a plaintiff seeking fees to "obtain (1) a judgment, consent decree, or similar order, (2) that grants him some relief on the merits, (3) that materially alters the legal relationship between him and the defendant, and (4) that is enforceable by the court." *Ge v. U.S. Citizenship & Immigr. Servs.*, 20 F.4th 147, 153 (4th Cir. 2021).

## D.

This brings us, at last, to the ultimate question presented by this appeal—does a preliminary injunction satisfy the requirements of a prevailing party? Simply put, no.

We start by considering what a preliminary injunction is and, more importantly, is not. Consider the Supreme Court's decision in *University of Texas v. Camenisch*, 451 U.S. 390 (1981). There, a deaf college student sued the University of Texas under the Rehabilitation Act for not providing a sign-language interpreter. *Id.* at 392. During the course of the case, the student obtained a preliminary injunction requiring the school provide the interpreter. *Id.* Relevant here, in granting the preliminary injunction, the trial court was required to consider the likelihood of success on the merits and found that the student established that he was. *Id.* The school appealed challenging the injunction. But during the appeal, the school provided the interpreter and then the student graduated. These events implicated the issue of whether the case was moot. Complicating the mootness

question was the fact that not only did the student seek injunctive relief; he also sought to recover the amount he spent on interpreters prior to the school's decision to provide them. *Id.* at 393.

The Supreme Court held that the question of whether a preliminary injunction should have been issued was moot "because the terms of the [preliminary] injunction . . . ha[d] been fully and irrevocably carried out." *Id.* at 398. But it also held the question of whether the university should pay for the interpreter remained for a trial on the merits. *Id*. Said differently, the preliminary injunction did not resolve the question of the student's entitlement to recover interpreter fees. Instead, the Court explained, "a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *Id.* at 395. A party is not required to prove his case in full at a preliminary injunction hearing and the findings of fact and conclusions of law made by a court in granting a preliminary injunction are not binding at a trial on the merits. *Id.* "In light of these considerations, it is generally inappropriate for a federal court at the preliminary-injunction stage to give a final judgment on the merits." *Id*. at 395. The Court continued, "where a federal district court has granted a preliminary injunction, the parties generally will have had the benefit neither of a full opportunity to present their cases nor of a final judicial decision based on the actual merits of the controversy." *Id*. at 396.

While the analysis was not under § 1988(b), *Camenisch* shows why preliminary injunctions—by their very nature—are insufficient to confer prevailing party status. They are provisional. That's why they are called *preliminary* injunctions. And that's why they

are not binding at the trial on the merits. True, this decision pre-dates *Winter* which moved a showing on the merits to a more central role in obtaining a preliminary injunction. But that does not change the provisional nature of a preliminary injunction.[4]

After all, for a preliminary injunction, a plaintiff need only show a "mere 'likelihood of success.'" *Mayor of Balt. v. Azar*, 973 F.3d 258, 274 (4th Cir. 2020) (en banc). Showing a likelihood of success on the merits is a far cry from the "actual success" needed to obtain a permanent injunction. *Id.* A showing only predicts the outcome of a future decision. *See Smith v. Univ. of N. Carolina*, 632 F.2d 316, 347 (4th Cir. 1980). It does not definitively decide the merits of anything.

If anyone doubts that there is a difference between actually prevailing and having a likelihood of success, just ask the Atlanta Falcons—or better yet, their fans. Mid-way through the third quarter of the 2017 Super Bowl, the Falcons had achieved a great deal of success. They led the New England Patriots 28-3 and were dominating every facet of the game. By any measure, the Falcons were likely to succeed. But they had not prevailed. And since one and one-half quarters still had to be played, the Patriots still had time to come back. And they did. They Patriots came back to win 34-28, the largest comeback in Super Bowl history. Likelihood of success is just not the same thing as prevailing.

The cases defining "prevailing party" make clear the importance of finality. This makes sense. Until the final whistle blows, fortunes can change—as it did for the Falcons.

---

[4] Importantly, much like the *Winter* test, the plaintiff in *Camenisch* had to and did prove a likelihood of success. But the Supreme Court still held that to be insufficient to make a final determination on who should bear the costs. The same logic applies here.

And *Camenisch* shows that preliminary injunctions—by their nature—do not provide finality. Admittedly, in this case, the fortunes did not change after the preliminary injunction. The plaintiffs ultimately got what they wanted. But they did not get what they wanted because a federal court decided the merits of their challenge. They got what they wanted because the General Assembly of Virginia decided to change the law. Although § 46.2-395 had been rescinded by the end of the case, no judicial decision permanently altered the legal rights of the parties. So, the plaintiffs cannot be prevailing parties. *Buckhannon* is crystal clear on this point. The plaintiffs' claim to prevailing party status is little more than a new spin on the catalyst theory.

## E.

Last, my conclusion here conforms with the canon that statutes in derogation of the common law should be construed narrowly and not extended beyond their express terms. *Farish v. Courion Indus., Inc.*, 754 F.2d 1111, 1115 (4th Cir. 1985). Our precedent has been to follow that canon with other statutes modifying the American Rule that each party ordinarily bears its own attorney's fees. *In re Crescent City Estates, LLC*, 588 F.3d 822, 825 (4th Cir. 2009) ("[I]f Congress wishes to overcome either premise underlying the American Rule, it must express its intent to do so clearly and directly."). To be sure, § 1988(b) represents Congress' intent to modify the American Rule in part. But only as to prevailing parties. Nothing in § 1988(b) indicates an intent to expand that modification to parties that do not obtain enduring judicially sanctioned relief.

III.

The majority, of course reaches the opposite conclusion. In an attempt to "synthesize the case law and capture the dominant approach," it holds that a plaintiff is a prevailing party if she "obtains a preliminary injunction that (a) provides her with concrete, irreversible relief on the merits of her claim by materially altering the parties' legal relationship, and (b) becomes moot before final judgment such that the injunction cannot be 'reversed, dissolved, or otherwise undone' by a later decision." Maj. Op. at 29. To me, that conclusion strays from the text of § 1988(b) and the guidance from the Supreme Court in at least five ways.

First, while claiming otherwise, the majority's new standard allows a non-judicial decision to anoint a prevailing party. The majority states that plaintiffs' "claim to fees rests entirely on their victory at the preliminary injunction stage, and not on the General Assembly's subsequent repeal of § 46.2-395." Maj. Op at 22. But the second part of the majority's test—that the claim "becomes moot before final judgment such that the injunction cannot be 'reversed, dissolved, or otherwise undone' by a later decision," Maj. Op. at 29—necessitates a non-judicial act. Why this runaround? Because either way the majority turns, its conclusion conflicts with Supreme Court precedent. The majority claims to rely on only the preliminary injunction. Yet the relief that the plaintiffs received under the preliminary injunction is every bit as "ephemeral" as the relief afforded in *Sole*. *See* 551 U.S. at 86. The majority needs something more. What does it have? The fact that the

injunction was never "undone."[5] Maj. Op. at 29. But that is only the case because the Virginia General Assembly changed the law. To rely on that legislative, not judicial, action would conflict with *Buckhannon*'s holding that a "defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur* on the change." *Buckhannon,* 532 U.S. at 605. In short, the majority points to the preliminary injunction but that cannot make the plaintiffs prevailing parties because it did not give them permanent relief. So the majority turns to the fact that the preliminary injunction was not "undone." But it was not "undone" because the case became moot. And that means that the lasting change did not come from the court.

Second, the majority points to *Farrar* for the Supreme Court's definition of a prevailing party as "one who receives 'actual relief on the merits of his claim' that 'materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff.'" Maj. Op. at 18 (quoting *Farrar*, 506 U.S. at 111–12). I agree that language sets out part of the analysis required under § 1988(b). But it omits the Court's explanation, in the very same case, of the limited circumstances

---

[5] That said, even the majority acknowledges that "'as a matter of course, an injunction may dissolve when a case becomes moot.'" Maj. Op. at 27 (quoting *Planned Parenthood Sw. Ohio Region v. Dewine*, 931 F.3d 530, 542 (6th Cir. 2019)). But, the majority says, "this matter-of-course vacatur does not negate the 'change in the legal relationship' already effected by the preliminary injunction." *Id.* (quoting *Planned Parenthood*, 931 F.3d at 542). To the contrary, it seems to me, if the preliminary injunction has been vacated, then we know with absolute certainty that any lasting change must arise from somewhere else.

that qualify as a material alteration of the legal relationship between the parties. *Farrar*, 506 U.S. at 113. More specifically, the Supreme Court instructed that "to qualify as a prevailing party, a civil rights plaintiff must obtain at least some relief on the merits of his claim . . .[t]he plaintiff must obtain an enforceable judgment against the defendant from whom fees or sought, [] or comparable relief though a consent decree or settlement." *Id.* at 111. And *Buckhannon* reiterated the need for such relief. Despite that, the majority all but ignores this strong guidance.

In so doing, without saying as much, the majority undermines part of our *Ge* decision. Following *Buckhannon* and *Farrar* by extension, we held in *Ge* that to convey prevailing party status, relief must be like an enforceable judgment or consent decree. *Ge*, 20 F.4th at 154. Significantly, that decision post-dated *Winter*. And we recently reaffirmed it in *Cities4Life, Inc. v. City of Charlotte*, 52 F.4th 576, 580 (4th Cir. 2022), a § 1988(b) attorney's fees case. So, the majority's decision today kills two birds with one stone. With the stroke of a pen, we wipe away *Smyth* and undermine *Ge* and *Cities4Life*.

In my view, we should follow our precedent and the Supreme Court's guidance requiring a judicial decision like a judgment or a consent decree. And as already discussed, a preliminary injunction is not like either of those.

Third, the majority's analysis, in my view, waters down the Supreme Court's and our requirement that relief conferring prevailing party status be on the merits. To the majority, since *Winter* requires a showing of likely success on the merits to obtain a preliminary injunction, "we may expect all preliminary injunctions to be solidly merits-based." Maj. Op. at 23. But I'm not sure what "solidly merits-based" means. Under *Winter*,

the most it can mean is that a party is likely to succeed on the merits. And *Camenisch* tells us that is not enough. "On the merits" means a court actually makes a final decision. In other words, it does not just forecast success; it determines success. And once again, a preliminary injunction does not do that.

Fourth, in adopting its broader view of prevailing party, the majority relies on its belief that *Smyth*'s rule "allow[s] government defendants to game the system." Maj. Op at 16. Maybe it does. But even if true, this rationale is not a legal interpretation of prevailing party; it is a policy argument for a different rule. If the meaning of prevailing party leads to unintended consequences, it is Congress' job to fix it, not ours. Our role is to apply the law, not rewrite it when it produces outcomes we do not like.

What's more, rather than relying on legislative intent to expand the definition of prevailing party, we should require clear and direct expression of intent in interpreting statutes that modify the common law. *In re Crescent City Estates, LLC*, 588 F.3d at 826. Congress did not provide such an expression that § 1988(b) applies to parties that obtain preliminary injunctions.

Fifth and finally, the Supreme Court admonished in *Buckhannon* that "[a] request for attorney's fees should not result in a second major litigation." *Buckhannon*, 532 U.S. at 609. The bright line rule from *Smyth* furthers that important interest. In contrast, the majority's approach will lead to collateral litigation on attorney's fees. What is concrete relief? What is irreversible relief? How much discussion of the merits is necessary? Is any event that makes a claim moot enough? Make no mistake, the majority may feel its approach "straightforward." Maj. Op. at 29. But creative lawyers haggling over fees will

contest these and likely other issues undoubtedly bringing about what *Buckhannon* sought to avoid—"a second major litigation."

IV.

I recognize decisions from our sister circuits do not follow *Smyth*'s bright-line rule that a party that obtains a preliminary injunction is not a prevailing party under § 1988(b). *See e.g., Planned Parenthood Southwest Ohio Region v. Dewine*, 931 F.3d 530, 539 (6th Cir. 2019) (concluding that the preliminary injunction there represented an unambiguous indication of probable success on the merits, particularly where the Sixth Circuit had already upheld part of the injunction after reviewing the merits of the claims); *Dearmore v. City of Garland*, 519 F.3d 517, 521–22 (5th Cir. 2008) (finding three-prong test for prevailing party status satisfied where the district court's merit-based order clearly informed the city that certain provisions of its ordinance violated the Fourth Amendment); *Select Milk Producers, Inc. v. Johanns,* 400 F.3d 939, 948 (D.C. Cir. 2005) (noting that the likelihood of success on the merits was never seriously in doubt and that the preliminary injunction resulted in irreversible and substantial monetary savings to the milk producers); *Young v. City of Chicago*, 202 F.3d 1000, 1001 (7th Cir. 2000) (per curiam) (recognizing that case mootness does not alter prevailing party status); *Watson v. Cnty. of Riverside*, 300 F.3d 1092, 1095 (9th Cir. 2002) (concluding that "having won the preliminary injunction, the plaintiffs were prevailing parties notwithstanding the subsequent mooting of their case"). And in candor, that causes me to pause. But for two reasons, that does not convince me to join any of their approaches.

First, the standards and reasoning from those decisions are quite diverse. As the Fifth Circuit noted in *Dearmore*, "[w]ithout a Supreme Court decision on point, circuit courts considering this issue have announced fact-specific standards that are anything but uniform." *Dearmore*, 519 F.3d 517, 521–22 (5th Cir. 2008) (recognizing that "several circuits have determined that a preliminary injunction that merely preserves the status quo temporarily will not confer 'prevailing party' status on a party," while others "incorporate some combination of [] factors," which touch on the merits-based nature of a decision.). So, let's be clear. There is no unanimity of the circuit courts on this issue.

And today, we add a new standard to the mix. Admittedly, our new rule resembles the Sixth Circuit's approach. But it is not the same. In that sense, we add to the disparate ways courts will interpret § 1988(b). As an aside, such variety is hardly surprising. Counter-textual statutory interpretations, like kudzu, often creep unpredictably.

Second, decisions from our sister circuits should be carefully considered and indeed, we can learn a lot from our federal appellate court colleagues. But, as we learned as children, just because others are doing something, that does not make it right. And for many of the same reasons explained with respect to the majority's new test, to me, those other approaches are inconsistent with text of § 1988(b) and the Supreme Court's decisions on prevailing party. I would resist the temptation to follow the crowd.

V.

Over 20 years ago in *Smyth*, we established a bright line rule that preliminary injunctions do not convey prevailing party status. In my view, that rule is faithful to the

text of § 1988(b) and the Supreme Court's decisions. I would not overrule it. And as a result, I would affirm the district court's denial of the plaintiffs' petition for attorney's fees.

Respectfully, I dissent.